**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

In re: Consumer Vehicle Driving Data
Tracking Collection

No. 1:24-md-3115-TWT

ALL ACTIONS
ALL DEFENDANTS

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Pursuant to Fed. R. Civ. P. 26, Local Rule 16.2, and Case Management Order No. 1 (Dkt. 27), the parties submit this Joint Preliminary Report and Discovery Plan as follows.

1.    **Description of Case:**

(a)    **Describe briefly the nature of this action.**

**Plaintiffs' description of the nature of this action:** [1]

The consolidated actions all arise out of General Motors LLC's ("GM" or "General Motors") and its subsidiary software company OnStar LLC's ("OnStar") (together, the "GM Defendants") secret and surreptitious collection of detailed data regarding its consumers' driving habits ("Driving Data") through millions of its vehicles, and their monetization of consumers' Driving Data, including by selling

---

[1] Plaintiffs note that despite the joint obligation of the Parties to prepare this report, and despite Plaintiffs' repeated requests, Defendants did not provide their positions reflected in this report until approximately 48 hours before this joint report was due to be filed. Defendants then provided what are effectively legal briefs, which is inconsistent with the purpose of the joint report. Plaintiffs' positions as set forth below are therefore abbreviated in many respects and are made without prejudice to further briefing and argument to the Court.

their Driving Data to Verisk Analytics, Inc. ("Verisk") and LexisNexis Risk Solutions, Inc. ("LNRS") (together, the "CRA Defendants"). Verisk and LNRS, in turn, sold Driving Data to auto insurers, causing additional harm to consumers including increased insurance rates, termination or denial of insurance coverage, and additional statutory and common law harms.

Plaintiffs bring this action against Defendants on behalf of themselves and all persons whose driving data was unlawfully captured, stored, transferred, or sold by Defendants without their knowledge or consent (the "Class"). Plaintiffs anticipate alleging common law and statutory claims against all Defendants and seek relief including damages, injunctive relief, attorney's fees, and costs.

## GM/OnStar's description of the nature of this action:

GM and OnStar deny Plaintiffs' alleged claims.  In particular, GM and OnStar deny that they have violated any statutes or committed any common law torts against Plaintiffs.  GM and OnStar also deny that they have caused Plaintiffs any harm or damages as alleged.

Plaintiffs' claims arise out of GM and OnStar's alleged collection and sale of certain driving data to LNRS and Verisk in connection with the Smart Driver program, which was an optional program offered to OnStar customers who elected to enroll in it.  Contrary to Plaintiffs' allegations, GM and OnStar's collection and furnishing of this driving data was neither "secret" nor "surreptitious."  Rather, in connection with enrolling in OnStar and Smart Driver, consumers were presented with user terms and privacy statements that expressly disclosed the collection and sharing of the driving data at issue, and consumers consented to those terms by enrolling in those programs and services.  Likewise, GM's contracts with LNRS and Verisk required that information regarding the driving data obtained from GM could be provided by those companies to an insurance company in connection with usage-based insurance offerings only if the insurer first obtained consent from the customer.  GM's furnishing of certain driving data to LNRS and Verisk for inclusion in consumer reports to be used for the purpose of obtaining insurance was also governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which preempts Plaintiffs' claims.

Finally, GM and OnStar deny that Plaintiffs' claims are suitable for class treatment or that this case meets the prerequisites for class certification in Federal Rule of Civil Procedure 23, including because the claims of certain Plaintiffs are subject to binding individual arbitration.

**LNRS' and Verisk's description of the nature of this action:**

As to LNRS and Verisk, this case relates to two primary topics Plaintiffs fail to include in their description of the case: usage-based insurance ("UBI") and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et*, *seq.* (the "FCRA").

UBI is a type of automobile insurance that uses driving behavior-based data associated with a vehicle (also known as "telematics" data) to underwrite and personalize the terms of a household's automobile insurance policy. UBI has been around for decades, received approval from various state Departments of Insurance across the country, and provides benefits to both consumers and society as a whole. For example, LNRS and Verisk understand insurance carriers often provide consumers with discounts based on the use of driving behavior-based data in the underwriting process. Plus, with the use of driving behavior-based data, a household's own driving behavior helps to shape its premium costs. Further, the use of driving behavior-based data also improves road safety, incentivizing consumers to be more aware of their conduct and thus more restrained.

Insurers may obtain driving behavior-based data associated with vehicles in multiple ways, including: from a device a consumer may request and obtain directly from his or her insurer and install directly in the vehicle; from a mobile app the consumer downloads, which records driving behavior-based data; and, at issue in the present matter, from consumer reporting agencies, such as LNRS and Verisk, which obtained the data through a contractual relationship with GM. LNRS and Verisk shared certain driving behavior-based data with certain insurers, which then used the data in connection with the underwriting of insurance, as explicitly permitted by the FCRA. The FCRA is a privacy statute and provides consumers with extensive rights, such as the right to access the data (15 U.S.C. § 1681i), the right to dispute and correct data (15 U.S.C. § 1681i), the right to have data used only for limited purposes (15 U.S.C. § 1681b), and the right to know who receives the data (15 U.S.C. § 1681g). In the context of driving behavior-based data, LNRS and Verisk act as "consumer reporting agencies," as defined under the FCRA, and GM acts as a "furnisher" of information, as also defined under the FCRA. LNRS and Verisk thus already have in place processes and procedures to fulfill each of their obligations under the FCRA with respect to the driving behavior-based data at issue.

LNRS and Verisk deny they violated any federal or state statutes or committed any common law torts against Plaintiffs. LNRS and Verisk deny they caused Plaintiffs any damages, as claimed. LNRS and Verisk further deny this case would meet the requirements for class certification under Rule 23.

**(b)    Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

<u>**Plaintiffs' Recitation**</u>:

This litigation challenges Defendants' unlawful collection and sale of Plaintiffs' and Class members' Driving Data without their knowledge or consent. Specifically, contrary to driver expectations, Defendants deceived Plaintiffs and the Class by surreptitiously collecting a wide array of their Driving Data, including location data, and data detailing acceleration, braking and other driving statistics, under the guise of improving users' driving safety—and then selling that data to the CRA Defendants for millions of dollars a year. The CRA Defendants then sold this data to auto insurance companies—who in turn used it to increase Plaintiffs' and Class members' auto insurance rates.

Beginning in about 1996, the GM Defendants entered a partnership with several technology companies to launch OnStar, which provided embedded "telematics" systems for use in GM vehicles. "Telematics," a term which came into widespread use with the introduction of OnStar, is a combination of "telecommunication" and "informatics," and describes services that provide information about a portable device through the use of telecommunications networks. Telematics often describes vehicle systems that combine Global Positioning Systems ("GPS") and cellular technologies with onboard electronics. Telematics can include safety, communication, vehicle diagnostic and entertainment features.

GM markets OnStar as providing drivers with subscription-based communications, in-vehicle security, navigation, remote diagnostics, and more. But, unbeknownst to Plaintiffs and Class members, the GM Defendants used OnStar (both through the vehicle's on-board "telematics" system, as well as through the associated mobile applications), to collect Plaintiffs' and Class members' detailed Driving Data without their consent. Also unbeknownst to Plaintiffs and Class members, the GM Defendants then marketed and sold that Driving Data to consumer risk analysis companies like the CRA Defendants.

Specifically, the GM Defendants never disclosed to Plaintiffs and Class members in their privacy policies, terms and conditions of service, or other documents and webpages provided to customers that they would share driver data. OnStar's frequently asked questions webpage (as of September 2023) contained no language about sharing driver data with third parties, beyond the misstatement that

4

"OnStar doesn't share personally identifiable information with an insurance company without your express consent." Indeed, the OnStar Privacy Statement from January 2023 misleads drivers by advising only that OnStar "may" share drivers' information with certain third-party companies, but only to "to develop, enhance, provide, service, maintain, and improve the safety, security, and quality of our products, programs, and services," as well as for product marketing and nowhere states that driving data may be sold to risk assessors and insurers to evaluate risk and set premium rates.

Defendants' data sharing practices had largely been operating in secret until late 2023, when elements of these practices were first exposed by a Mozilla Foundation report, followed by a Congressional inquiry, and ultimately a *New York Times* investigative report published on March 11, 2024.[2] Shortly thereafter, on March 22, 2024, GM announced that it had stopped sharing Driving Data with Verisk and LNRS. The extent to which any of the related practices continue is not yet known.

GM and OnStar may argue that customers who accepted the terms of service agreed to arbitration and class action waiver provisions. Plaintiffs dispute that they agreed to such provisions, and will seek discovery from Defendants and third parties, including GM Dealers, regarding the privacy policies, terms and conditions of service, other documents and webpages, and communications between and among GM, its dealers and OnStar describing and promoting OnStar to customers.

**GM/OnStar's Recitation:**

While a Master Consolidated Complaint has not yet been filed, and the allegations and claims against GM and OnStar are not yet known, based on a review of the various class action complaints that were consolidated in this multi-district litigation, GM and OnStar understand the facts of the case to be as follows.

OnStar is GM's optional vehicle connectivity system that offers a variety of features and services to enrolled customers, including in-vehicle security, emergency services, remote diagnostics, Wi-Fi, entertainment, and navigation. At the times relevant to this case, when enrolling in OnStar, customers were presented with the General Motors User Terms for Connected Vehicle Services and the

---

[2] The article is available at
https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html.

General Motors U.S. Connected Services Privacy Statement (collectively, the "OnStar Terms").

The U.S. Connected Services Privacy Statement[3] disclosed that GM may collect various types of information about the customer and the customer's vehicle, including driving data and geolocation information:

> [GM may collect] [i]nformation about the use of your vehicle, including operational and safety related information: such as geolocation, route history, driving schedule, speed, air bag deployments, crash avoidance alerts, impact data, safety system status, braking and swerving/cornering events, event data recorder (EDR) data, seat belt settings, vehicle direction (heading), audio or video information such as information collected from camera images and sensor data, voice command information, stability control or anti-lock events, security/theft alerts, and infotainment (including radio and rear-seat infotainment) system and WiFi data usage.

The U.S. Connected Services Privacy Statement also disclosed that GM may share customer information in the following ways, including specifically that information may be provided to usage-based insurance providers:

- GM Family of Companies: Within the GM family of companies (for example, including OnStar) for the above uses.

- Emergency Service Providers: With emergency service providers, such as law enforcement, roadside assistance providers, and ambulance providers, to protect your safety or the safety of others, and to deliver related services (for example, Stolen Vehicle Assistance Services).

- Third-Party Business Relationships: With business that GM enters into business relationships, such as Sirius XM, in connection with their products and services; research institutes, for research and development purposes (for example, improving highway safety); or dealers, fleet, or rental car companies, for service or maintenance of your vehicle. We may also share

---

[3] The 2023 U.S. Connected Services Privacy Statement is available at https://www.onstar.com/content/dam/onstar/na/us/en/index/legal/privacy-statement/02-pdfs/US_Connected_Services_Privacy_Statement_070123_final.pdf.html.

data with third parties for marketing activities (with necessary consents) or where you have elected to receive a service from them and/or authorized them to request data from GM (for example, financial organizations who offer financing for their purchase or lease of GM vehicles or usage based insurance providers).

- Service Providers: With our product and service providers who work on our behalf in connection with the uses described in the preceding section, such as dealer managed service providers, wireless service providers (e.g. AT&T), companies that administer our contests and promotions, host and/or operate our websites, send communications, perform data analytics, process, store, or manage credit card information (we will not otherwise share your credit card information).

Customers that accept the OnStar Terms acknowledge that they have read and agree to them, including the U.S. Connected Services Privacy Statement.  The OnStar Terms also include a binding arbitration agreement and class action waiver.

Customers who enrolled in OnStar also had the ability to enroll in the Smart Driver program.  Smart Driver was an optional service that, utilizing vehicle connectivity from the OnStar system, provided customers with information about their driving behavior to encourage safe driving skills.  When enrolling in Smart Driver, customers were presented with an additional Smart Driver and Notifications Opt-In, which generally explained the Smart Driver program and the type of information that is collected from the vehicle:

We'll use information we collect about where and how you operate your vehicle, such as your vehicle's location, routes driven, driving schedule, fuel or charging levels, fuel economy, battery status, overall vehicle health, and driving behavior, such as hard braking, hard acceleration, tailgating, vehicle speed, late night driving, driver and passenger seatbelt status, and driver attention.

Customers who first accepted the OnStar Terms could enroll in Smart Driver at the dealership at the time they purchased their vehicle, via a GM-branded mobile application or through a web option.  Customers could also unenroll from Smart Driver at any time by contacting an OnStar advisor, through a web option, or through the branded mobile application.

After a customer enrolled in Smart Driver and received insights concerning their driving behavior, they could also choose to utilize this information to obtain an insurance quote from insurers based on their driving behavior (such programs are called "usage-based insurance"). GM and OnStar entered into agreements with LNRS and Verisk regarding certain data that was collected in connection with the Smart Driver program to facilitate GM customers' ability to participate in such insurance programs. Under GM's contracts with LNRS and Verisk, LNRS and Verisk could not provide information regarding a customer's driving data to an the insurance company absent customer consent. LNRS and Verisk acted as consumer reporting agencies in this regard, and GM's furnishing of certain driving data to LNRS and Verisk for inclusion in consumer reports to be used for the purpose of obtaining insurance was governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

GM stopped sharing Smart Driver data with LNRS and Verisk on March 20, 2024 and more generally sunset the Smart Driver program on June 26, 2024.

**LNRS' and Verisk's Recitation:**

While a Master Consolidated Complaint has not yet been filed, and the allegations and claims against LNRS and Verisk are not yet known, based on a review of the various class action complaints that were consolidated in this multi-district litigation, LNRS and Verisk understand the facts of the case to be as follows. This case concerns data that LNRS and Verisk received pursuant to contracts with GM to purchase driving behavior-based data associated with GM vehicles that GM collected through its connected cars.

LNRS and Verisk function as consumer reporting agencies ("CRAs") with respect to their telematics businesses. LNRS used driving behavior-based data received from GM to calculate scores and attributes for its product called Telematics OnDemand ("TOD"). LNRS would then sell the TOD product to insurers for the purpose of underwriting insurance policies that consumers sought.

Verisk similarly used driving behavior-based data received from GM to power its Verisk Telematics Data Exchange®("VDE"). The VDE allowed Verisk to provide a Verisk driving score (the model for which was widely filed with state insurance regulators) and other insurer-specific data products upon request by an insurer for the purpose of underwriting insurance policies.

Upon request from an insurer, the CRAs would return to the insurer a consumer report referencing driving behavior-based data associated with the

household's vehicles for the insurers to consider during underwriting. The CRAs understand the insurer would review the data to determine whether the driving behavior-based data associated with the vehicles warranted an adjustment on their insurance premium. The CRAs played no role in making insurance underwriting decisions or determining insurance premiums.

Plaintiffs allege they were owners or lessors of GM connected cars, signed up for certain GM or OnStar programs that recorded driving behavior-based data from their vehicles, and may not have reviewed the associated contract language and policies, which disclosed that GM may collect and disclose data about their driving behavior to third parties. Plaintiffs further allege GM disclosed their driving behavior-based data to the CRAs pursuant to contracts, which in turn sold that data to insurers for use in underwriting Plaintiffs' UBI policies. Finally, Plaintiffs allege they either experienced an increase in their insurance policy premiums or a denial of their insurance application as a result of GM's collection and furnishing of driving history data to the CRAs and the CRAs' subsequent sale of that data to certain insurers.

### (c)    The legal issues to be tried are as follows:

**<u>Plaintiffs' Statement of Legal Issues</u>:**

Plaintiffs anticipate that the key legal issues to be tried will include whether GM and OnStar breached their contracts with consumers; whether Defendants were unjustly enriched by their monetization of consumer Driving Data; whether Defendants' practices resulted in tortious interference with consumers' relationships with their automobile insurers; whether Defendants' conduct resulted in violations of state consumer protection statutes, including those prohibiting unfair or deceptive trade practices; whether Defendants violated consumers' statutory and common law privacy rights (such as, for example, the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, and the right to be free from intrusion upon seclusion); whether Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and similar state statutes in their handling of consumer Driving Data; and the amount of damages suffered by and due to affected consumers. At the appropriate time, the Court must also determine whether to certify these claims and allow them to proceed as a class action under Fed. R. Civ. P. 23.

**<u>GM/OnStar's Statement of Legal Issues</u>:**

While Plaintiffs have not yet filed their Master Consolidated Complaint and thus the specific nature of the claims are unknown at this time, GM and OnStar anticipate that the legal issues to be tried may include the following:

1)  Whether Plaintiffs have suffered an injury-in-fact sufficient to confer Article III standing;

2)  Whether any of Plaintiffs' alleged injuries are fairly traceable to GM and OnStar's conduct;

3)  Whether any of Plaintiffs' alleged injuries are redressable by a favorable ruling;

4)  Whether Plaintiffs have suffered any cognizable injury sufficient to satisfy the damages element of any of their substantive claims;

5)  Whether Plaintiffs are required to submit their claims to binding individual arbitration;

6)  Whether Plaintiffs' claims are preempted by the FCRA;

7)  Whether Plaintiffs can meet their burden of proving they have satisfied the numerosity requirement of Federal Rule of Civil Procedure 23;

8)  Whether Plaintiffs can meet their burden of proving that their claims are subject to common proof as required by Rule 23;

9)  Whether Plaintiffs can demonstrate that their claims are typical of the putative class as required by Rule 23;

10) Whether Plaintiffs can meet their burden of proving they are adequate class representatives as required by Rule 23;

11) If Plaintiffs intend to seek class certification under Federal Rule of Civil Procedure 23(b)(2), whether GM and OnStar have acted or refused to act on grounds that apply generally to the class;

12) If Plaintiffs intend to seek class certification under Federal Rule of Civil Procedure 23(b)(3), whether Plaintiffs can meet their burden of proving that questions of law or fact common to class members predominate over any questions affecting only individual members;

13) If Plaintiffs intend to seek class certification under Federal Rule of Civil Procedure 23(b)(3), whether Plaintiffs can meet their burden of showing that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy;

14) Whether Plaintiffs claims are barred by their consent to the alleged collection and sharing of the Driving Data at issue;

15) Whether GM and OnStar made any actionable misrepresentation regarding OnStar and/or Smart Driver;

16) Whether GM and OnStar committed any of the common law or statutory violations alleged by Plaintiffs in the forthcoming Consolidated Complaint;

17) Whether GM's and OnStar's alleged conduct caused any injury or damages to Plaintiffs;

18) If Plaintiffs can prove injury, the amount of damages to be recovered by each Plaintiff; and

19) Whether Plaintiffs are entitled to recover attorney's fees and costs.

**LNRS' and Verisk's Statement of Legal Issues:**

A Master Consolidated Complaint has not yet been filed, and the specific claims against LNRS and Verisk are thus not yet known. However, based on a review of the various class action complaints consolidated in this multi-district litigation, LNRS and Verisk expect the following legal issues to be addressed in this case, in addition to the legal issues identified by GM above:

1) Whether any Plaintiff has Article III standing to pursue claims against LNRS or Verisk;

2) Whether a Plaintiff has statutory standing to pursue claims against LNRS or Verisk, including with respect to a state where a plaintiff does not reside;

3) Whether a Plaintiff may be compelled to arbitrate his or her claims against all defendants either under the express terms of the GM Defendants' contracts with Plaintiffs, and/or as a matter of equitable estoppel;

4)      Whether the claims against Verisk or LNRS could proceed in this case consistent with the requirements of Fed. R. Civ. P. 19 if the claims against GM are compelled to arbitration.

5)      Whether the Court has personal jurisdiction over claims brought by a Plaintiff in a state where a defendant is not headquartered or located, where an insurer is not located, and/or where a Plaintiff did not purchase insurance;

6)      Whether a Plaintiff's state and common law claims are preempted by the FCRA;

7)      Whether LNRS or Verisk sold a consumer report regarding a Plaintiff that contained driving behavior-based data;

8)      Whether any LNRS or Verisk consumer report regarding a Plaintiff contained an "inaccuracy";

9)      Whether a Plaintiff can prove LNRS or Verisk failed to follow reasonable procedures to assure the maximum possible accuracy of the information in a consumer report furnished by LNRS or Verisk about that Plaintiff;

10)     Whether a Plaintiff can prove LNRS' or Verisk's alleged conduct was in "negligent" or "willful" violation of the FCRA;

11)     Whether a Plaintiff incurred any actual damages proximately caused by LNRS' or Verisk's alleged conduct, and, if so, the amount of actual damages to which that Plaintiff is entitled;

12)     Whether a Plaintiff is entitled to statutory and/or punitive damages under the FCRA;

13)     Whether a Plaintiff conferred a benefit on LNRS or Verisk;

14)     Whether any alleged benefit a Plaintiff conferred on LNRS or Verisk had measurable value;

15)     Whether LNRS or Verisk retained a benefit from that Plaintiff;

16)     Whether that Plaintiff had an expectation of payment from LNRS or Verisk;

17)     Which state's laws govern a Plaintiff's unjust enrichment claim;

18)    Whether LNRS or Verisk invaded a Plaintiff's privacy;

19)    Whether that alleged invasion of privacy was highly offensive;

20)    Whether a Plaintiff suffered damages as a result of any alleged invasion;

21)    Which state's laws govern a Plaintiff's invasion of privacy claim;

22)    Whether LNRS or Verisk tortiously interfered with a contract or relationship between a Plaintiff and a third party;

23)    Whether LNRS or Verisk acted purposefully to harm the contract or relationship a Plaintiff allegedly had with a third party;

24)    Whether a Plaintiff suffered any damages from the alleged tortious interference;

25)    Which state's laws govern a Plaintiff's tortious interference claim;

26)    Whether LNRS or Verisk engaged in any unlawful, unfair, or deceptive conduct;

27)    Whether a Plaintiff qualifies as "consumers" for purposes of state unfair and deceptive acts and practices laws that apply only to consumers;

28)    Whether LNRS or Verisk are subject to state unfair and deceptive acts and practices claims when they do not sell products directly to a Plaintiff;

29)    Whether a Plaintiff justifiably relied on LNRS' or Verisk's allegedly unlawful, unfair, or deceptive conduct;

30)    Whether LNRS or Verisk are in privity with a Plaintiff;

31)    Whether a Plaintiff suffered any damages from an alleged unlawful, unfair, or deceptive practices;

32)    Whether LNRS' or Verisk's alleged unlawful, unfair, or deceptive practices was intentionally committed as to a Plaintiff;

33)    Which state's laws govern a Plaintiff's state unfair and deceptive acts and practices claims; and

34)     Whether a Plaintiff and the members of any proposed Class or Subclass can satisfy the requirements of Fed. R. Civ. Proc. 23 to establish entitlement to class certification.

**(d)     The cases listed below (include both style and action number) are:**

(1)   Pending Related Cases:

Pursuant to a series of transfer orders by the Judicial Panel on Multidistrict Litigation, cases have been transferred to the Northern District of Georgia and consolidated for pre-trial proceedings. A list of these cases is attached hereto as **Exhibit A**.

Additionally, while not consolidated into this multi-district litigation, the following matter is related to the pending litigation:

*State of Texas v. General Motors LLC and OnStar LLC*, Cause No. 24-08-12392 (Dist. Ct. Montgomery County – 457th Judicial District) (Santini, J.).

(1)   Previously Adjudicated Related Cases:

None.

**2.  This case is complex because it possesses one or more of the features listed below (please check):**

**Plaintiffs' Position:**

<u>X</u>     (1)  Unusually large number of parties
<u>X</u>     (2)  Unusually large number of claims or defenses
<u>X</u>     (3)  Factual issues are exceptionally complex
<u>X</u>     (4)  Greater than normal volume of evidence
<u>X</u>     (5)  Extended discovery period is needed
<u>X</u>     (6)  Problems locating or preserving evidence
<u>X</u>     (7)  Pending parallel investigations or actions by government
<u>X</u>     (8)  Multiple use of experts
<u>X</u>     (9)  Need for discovery outside United States boundaries
<u>X</u>     (10) Existence of highly technical issues and proof
<u>X</u>     (11) Unusually complex discovery of electronically stored information

**Defendants' Position**:

    <u>X</u>   (1)  Unusually large number of parties
    <u>X</u>   (2)  Unusually large number of claims or defenses
    <u>  </u>   (3)  Factual issues are exceptionally complex
    <u>X</u>   (4)  Greater than normal volume of evidence
    <u>X</u>   (5)  Extended discovery period is needed
    <u>  </u>   (6)  Problems locating or preserving evidence
    <u>X</u>   (7)  Pending parallel investigations or actions by government
    <u>X</u>   (8)  Multiple use of experts
    <u>  </u>   (9)  Need for discovery outside United States boundaries
    <u>X</u>  (10)  Existence of highly technical issues and proof
    <u>X</u>  (11)  Unusually complex discovery of electronically stored information

**3. Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiffs:** Pursuant to Dkt. 63, the Court has appointed the following leadership:

### *MDL Co-Lead Counsel to Oversee All Litigation:*

**Norman E. Siegel**
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112

**John R. Bevis**
The Barnes Law Group, LLC
31 Atlanta Street
Marietta, GA 30060

### *OnStar Litigation Track Co-Lead Counsel:*

**Amy E. Keller**
DiCello Levitt LLP
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602

**Bryan L. Clobes**
Cafferty Clobes Meriwether & Sprengel LLP
135 S. LaSalle, Suite 3210
Chicago, IL 60603

*LNRS/Verisk Litigation Track Co-Lead Counsel:*

**Joseph P. Guglielmo**
Scott+Scott Attorneys at Law LLP
230 Park Avenue
24th Floor
New York, NY 10169

**Sabita J. Soneji**
Tycko & Zavareei LLP
The Tower Building
1970 Broadway, Suite 1070
Oakland, CA 94612

*Plaintiffs' Steering Committee for the OnStar Litigation Track:*

**Stuart A. Davidson**
Robbins Geller Rudman & Dowd LLP – BR FL
225 NE Mizner Blvd., Suite 720
Boca Raton, FL 33432

**Gayle M. Blatt**
Casey Gerry Schenk Francavilla Blatt & Penfield, LLP
110 Laurel Street
San Diego, CA 92101

**Gary S. Graifman**
Kantrowitz, Goldhamer & Graifman, P.C.
135 Chestnut Ridge Rd., Suite 200
Montvale, NJ 07645

**Jennifer M. French**
Lynch Carpenter, LLP
1234 Camino Del Mar
Del Mar, CA 92014

**Jeffrey M. Ostrow**

Kopelowitz Ostrow P.A.
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301

**Chris Springer**
Keller Rohrback LLP – CA
801 Garden Street, Suite 301
Santa Barbara, CA 93101

*Plaintiffs' Steering Committee for the LNRS/Verisk Litigation Track:*

**Kiley Grombacher**
Bradley/Grombacher, LLP
2815 Towngate Road
Westlake Village, CA 91361

**Emily E. Hughes**
The Miller Law Firm, P.C.
950 W. University Dr., Suite 300
Rochester, MI 48307

**Thomas E. Loeser**
Cotchett Pitre & McCarthy LLP
999 N. Northlake Way, Suite 215
Seattle, WA 98103

**P. Graham Maiden**
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

**Adam E. Polk**
Girard Sharp LLP
601 California St., Suite 1400
San Fransisco, CA 94108

**John A. Yanchunis**
Morgan & Morgan Complex Litigation Group
201 N. Franklin Street, 7th Floor
Tampa, FL 33602

*Plaintiffs' Liaison Counsel:*

**M. Brandon Smith**
Childers, Schlueter & Smith, LLC
1932 N. Druid Hills Road, Suite 100
Atlanta, GA 30319

**Defendants:**

The following attorneys are lead counsel for Defendants General Motors LLC, General Motors Holdings LLC, and OnStar, LLC:

**David L. Balser**
**Susan M. Clare**
King & Spalding LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309

The following attorneys are lead counsel for Defendant LexisNexis Risk Solutions Inc.:

**Ronald I. Raether, Jr.**
Troutman Pepper Hamilton Sanders, LLP
100 Spectrum Center Drive
Suite 1500
Irvine, CA 92618

**Julie Hoffmeister Smith**
**Timothy J. St. George**
Troutman Pepper Hamilton Sanders, LLP
1001 Haxall Point
Suite 1500
Richmond, VA 23219

**Cindy D. Hanson**
Troutman Pepper Hamilton Sanders, LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308

The following attorneys are lead counsel for Defendant Verisk Analytics, Inc.:

**Jasmeet K. Ahuja**
Hogan Lovells US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103

### 4.    Jurisdiction:

Is there any question regarding this Court's jurisdiction?

$\underline{X}$  Yes          _____ No

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

Plaintiffs' statement related to jurisdictional issues is attached as **Exhibit B**.

Defendants' statement related to jurisdictional issues is attached as **Exhibit C**.

### 5.    Parties to This Action:

(a)    The following persons are necessary parties who have not been joined: None known at this time.

(b)    The following persons are improperly joined as parties: None known at this time.

(c)    The names of the following parties are either inaccurately stated or necessary portions of their names are omitted: None known at this time.

(d)    The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

### 6.    Amendments to the Pleadings:

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.

(a)    List separately any amendments to the pleadings that the parties anticipate will be necessary:

**Plaintiffs' Position:**

Plaintiffs intend to file a Master Consolidated Complaint. Pursuant to CMO-1 ¶ 1 (Dkt. 27), after the Master Consolidated Complaint is filed, the Court has directed the Clerk to "administratively close each of the individual cases and…to do so in all future individual cases filed going forward."

Plaintiffs agree that any currently-named Plaintiff who does not join the Master Consolidated Complaint shall have their claims dismissed without prejudice, and Plaintiffs shall dismiss any such Plaintiffs under Rule 41(a)(1) within fourteen days of the filing of the Master Consolidated Complaint, allowing them to proceed as absent class members and participate in any recovery at the end of this MDL. Plaintiffs further agree that any claims asserted in any of the existing complaints that are not included in the Master Consolidated Complaint shall be dismissed without prejudice within fourteen days of the filing of the Master Consolidated Complaint.

**Defendants' Position:**

Defendants do not oppose the filing of a Master Consolidated Complaint for administrative purposes, but they do not consent to the filing of a superseding Master Consolidated Complaint that would displace the underlying complaints transferred into this MDL without certain conditions listed below.

With respect to Plaintiffs' Master Consolidated Complaint, Defendants will consent to the Master Consolidated Complaint acting as a superseding complaint, as opposed to an administrative consolidated complaint, only on the following additional conditions:

- By agreeing to a superseding Master Consolidated Complaint, Defendants do not waive any arguments they would otherwise have if the consolidated complaint was administrative in nature, rather than superseding. Those arguments include, but are not limited to: (1) arguments as to varying choice of law analysis and varying substantive law pertaining to the state law claims; (2) arguments as to varying choice of law analysis and varying substantive law pertaining to any item that is not governed by a uniform application of law; (3) arguments regarding extraterritorial application of state law; (4) arguments regarding venue; (5) arguments regarding arbitrability; and (6) arguments regarding personal jurisdiction.

- Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

## 7.    **Filing Times for Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below. All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a)    *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b)    *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c)    *Other Limited Motions*: Refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)    *Motions Objecting to Expert Testimony*: <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**Scheduling Proposal:**

**<u>Plaintiffs' Proposal</u>:**

Plaintiffs oppose an open-ended scheduling process as set forth as Defendants' "Option 1" below as inconsistent with the Rules. Moreover, the argument that Defendants cannot contemplate the claims in the case are belied by the dozens of complaints centralized in this Court, and the scores of legal issues Defendants have already identified above. However, as an accommodation to Defendants, Plaintiffs have modified their proposed schedule, which is now largely consistent with Defendants' "Option 2" as set forth in Defendants' proposal below. Plaintiffs note that Defendants refusal to agree to a direct filing order (*see infra*) may result in a longer period for Plaintiffs to file a Master Consolidated Complaint.

| EVENT | DEADLINE/DATE |
|---|---|
| File Stipulated Proposed Protective Order | On or before **November 18, 2024** |

| | |
|---|---|
| File Stipulated Proposed ESI Protocol | On or before **November 18, 2024** |
| Parties serve initial discovery requests to shape scope of discovery (including lack of personal jurisdiction and arbitrability defenses set forth in JPRDP) | On or before **November 18, 2024** |
| File Master Consolidated Complaint | On or before **December 13, 2024** |
| Parties to meet and confer regarding custodians, search terms, production protocol, and scope of initial RFPs | To begin on or after **December 13, 2024** |
| File Stipulated Proposed Discovery Order | **60 days** after the filing of the Master Consolidated Complaint |
| File Motions to Dismiss | On or before **March 13, 2025** |
| File Opposition to Motions to Dismiss | On or before **April 24, 2025** |
| File Replies in Support of Motions to Dismiss | On or before **May 23, 2025** |
| Fact Discovery begins | **30 days** after the Answer is filed in the GM/OnStar or LNRS/Verisk Track |
| Add Additional Parties and/or Amend Pleadings | **4 months** after beginning of fact discovery |
| Substantial completion of document production | **8 months** after the beginning of fact discovery |
| Fact Discovery closes | **12 months** after the beginning of fact discovery |

| | |
|---|---|
| Disclosure of Plaintiffs' Expert(s) and Expert Report(s) | **30 days** after Fact Discovery closes |
| Disclosure of Defendants' Experts(s) and Expert Report(s) | **60 days** after the disclosure of Plaintiffs' expert(s) and expert report(s) |
| Disclosure of Plaintiffs' Rebuttal Expert(s) and Serve Rebuttal Expert Reports | **30 days** after disclosure of Defendants' expert(s) and report(s) |
| Completion of Expert Discovery | **45 days** after the disclosure of Plaintiffs' rebuttal expert(s) and report(s) |
| Local Rule 16.3 Conference | Within **14 days** of the completion of expert discovery |
| Plaintiffs' Class Certification Motions | **45 days** after Rule 16.3 Conference |
| Opposition to Plaintiffs' Class Certification Motions | **60 days** after service of Plaintiffs' motion for class certification |
| Reply in Support of Class Certification Motions | **45 days** after Defendants' opposition to class certification |
| Summary Judgment Motions | **45 days** after Class Certification ruling |
| Opposition to Summary Judgment | **30 days** after motions are filed |
| Reply in Support of Summary Judgment | **30 days** after oppositions to summary judgment are filed |
| Pretrial Conference | **TBD by Court** |

**<u>Defendants' Proposal</u>:**

Defendants do not oppose the deadline that Plaintiffs have proposed for filing of the Master Consolidated Complaint. However, Defendants believe it is premature to set a briefing schedule for responding to the Master Consolidated Complaint, including Rule 12(b) motions or motions to compel arbitration, before the Master

Consolidated Complaint is filed. At this time, Defendants have no way of knowing which Plaintiffs, or how many, will be included in the Master Consolidated Complaint. Nor do Defendants have any information regarding what causes of action will be included in the Master Consolidated Complaint. Prior to centralization, Plaintiffs had filed nearly three dozen separate lawsuits raising dozens of different causes of action, ranging from state common-law claims to equitable relief claims to state and federal statutory claims. Defendants do not know which claims from these separate lawsuits will be part of the Master Consolidated Complaint or if Plaintiffs intend to assert new or different claims. Because Defendants have no way of knowing who the Plaintiffs will be and what causes of action they intend to raise in the Master Consolidated Complaint, Defendants are prejudiced in their ability to reasonably estimate what will constitute an appropriate response and thus a schedule for their response(s).

Defendants accordingly propose that the parties be given thirty (30) days from the filing of the Master Consolidated Complaint to submit a briefing schedule to the Court for any motion(s) directed at the Master Consolidated Complaint. After the Master Consolidated Complaint is filed, Defendants will have the opportunity to evaluate that filing, including the number of Plaintiffs, and the number and nature of the claims, and assess an appropriate response schedule (including, if possible, coordination among Defendants on filings to eliminate potentially duplicative filings). The parties can then meet and confer about an appropriate briefing schedule.

Defendants further propose that no additional deadlines be set until after the Court has ruled on Defendants' forthcoming motions. It is premature to set deadlines for fact and expert discovery, class certification, summary judgment, and a post-discovery settlement conference before the parties have certainty regarding which, if any, claims will remain in the case after adjudication of Defendants' Rule 12(b) motions, motions to compel arbitration, and any other motion(s) directed toward the forthcoming Master Consolidated Complaint. The scope of Plaintiffs' surviving claims, if any, will not be fully determined until after the Court has ruled on Defendants' forthcoming motions. Defendants, therefore, respectfully submit that the parties be given thirty (30) days from the Court's ruling on those motions to submit a proposed schedule for all remaining case deadlines for the Court's consideration.

Additionally, Defendants object to Plaintiffs' demand for "pre-Motion to Dismiss" discovery.  The reasons why such proposal should not be allowed are set forth in **Exhibit D**.

For the reasons described above, Defendants propose the following schedule

(Option 1) be entered at this time:

| EVENT | DEADLINE/DATE |
|---|---|
| File Master Consolidated Complaint | On or before December 13, 2024 |
| Submit Proposed Briefing Schedule for Rule 12(b) Motions and/or Motions to Compel Arbitration to Court | On or before January 13, 2025 |
| Submit Proposed Schedule to Court Regarding Discovery and Remaining Case Deadlines | 30 days after the Court issues a ruling on the Rule 12(b) Motions and/or Motions to Compel Arbitration |

Should the Court determine that entry of a schedule is appropriate at this time, Defendants disagree with certain of Plaintiffs' proposed deadlines, as described below. Defendants have proposed an alternative schedule below if the Court does not elect to enter Option 1.

*First*, Plaintiffs' dispositive briefing deadline is insufficient due to the size and complexity of this case. Plaintiffs propose summary judgment motions be filed forty-five (45) days after a Class Certification ruling. Defendants propose summary judgment motions be filed five (5) months from the Rule 16.3 conference.

*Second*, Plaintiffs' attempt to tee up certain discovery events before they have even filed their Master Consolidated Complaint, much less before Defendants have filed their Rule 12(b) motions and/or motions to compel arbitration, should be rejected. While Defendants are willing to compromise on negotiating and filing administrative motions like the Proposed Discovery Order, Protective Order, and ESI Protocol before the Court decides Rule 12 motions, they do not believe it is appropriate to engage in substantive discovery-related activity—such as serving initial requests for production and meeting and conferring about custodians, search terms, production protocol, and the scope of the initial requests for production—as Plaintiffs have suggested here. In this case in particular, it would be futile for the parties to exchange initial requests for production and meet and confer before Defendants' motions are decided. Defendants will likely raise entirely case-dispositive issues, including but not limited to preemption and/or mandatory arbitration—in their Rule 12(b) motions. A ruling on these motions could dramatically alter the scope of this case going forward, if not dispose of it entirely. Accordingly, Defendants propose that these events be excluded from the schedule and instead be conducted in the normal course of discovery after Defendants'

motions have been decided. Defendants' proposal is set out below, should the Court not adopt Defendants' proposed Option 1 schedule.

Defendants' Option 2 Proposal:

| EVENT | DEADLINE/DATE |
|---|---|
| File Stipulated Proposed Protective Order | On or before November 18, 2024 (same as Plaintiffs) |
| File Stipulated Proposed ESI Protocol | On or before November 18, 2024 (same as Plaintiffs) |
| File Master Consolidated Complaint | On or before December 13, 2024 (same as Plaintiffs) |
| File Stipulated Proposed Discovery Order | 60 days after the filing of the Master Consolidated Complaint (same as Plaintiffs) |
| File Motions to Dismiss | On or before March 13, 2025 (same as Plaintiffs) |
| File Opposition to Motions to Dismiss | On or before April 24, 2025 (same as Plaintiffs) |
| File Replies in Support of Motions to Dismiss | On or before May 23, 2025 (same as Plaintiffs) |
| Fact Discovery begins | 30 days after an Answer is filed in the GM/OnStar or LNRS/Verisk Tracks (same as Plaintiffs) |
| Add Additional Parties and/or Amend Pleadings | 2 months after beginning of fact discovery |
| Substantial completion of document production | 8 months after the beginning of fact discovery (same as Plaintiffs) |
| Fact Discovery closes | 12 months after the beginning of fact discovery (same as Plaintiffs) |
| Disclosure of Plaintiffs' Expert(s) and Expert Report(s) | 30 days after Fact Discovery closes (same as Plaintiffs) |

| EVENT | DEADLINE/DATE |
|---|---|
| Disclosure of Defendants' Experts(s) and Expert Report(s) | 60 days after the disclosure of Plaintiffs' expert(s) and expert report(s) (same as Plaintiffs) |
| Disclosure of Plaintiffs' Rebuttal Expert(s) and Serve Rebuttal Expert Reports | 21 days after disclosure of Defendants' expert(s) and report(s) |
| Completion of Expert Discovery | 60 days after the disclosure of plaintiff's rebuttal expert(s) and report(s) |
| Local Rule 16.3 Conference | Within 14 days of the completion of expert discovery (same as Plaintiffs) |
| Plaintiffs' Class Certification Motions | 6 weeks after Rule 16.3 Conference |
| Opposition to Plaintiffs' Class Certification Motions | 60 days after service of Plaintiffs' motion for class certification (same as Plaintiffs) |
| Reply in Support of Class Certification Motions | 30 days after defendants' opposition to class certification |
| Summary Judgment Motions | No earlier than 5 months after Rule 16.3 Conference |
| Opposition to Summary Judgment | 30 days after motions are filed (same as Plaintiffs) |
| Reply in Support of Summary Judgment | 30 days after oppositions to summary judgment are filed (same as Plaintiffs) |
| Pretrial Conference | TBD by Court (same as Plaintiffs) |

## 8.    Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).

**Plaintiffs' Proposal**: The parties will serve initial disclosures 30 days after the deadline for Defendants to file their Motion(s) to Dismiss.

**Defendants' Proposal**: The parties will serve initial disclosures 30 days after the Court enters an Order on the Motion(s) to Dismiss.

### 9.    Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

The parties request a conference with the Court to address the issues in this report, as well as periodic, regularly scheduled status conferences to facilitate the progression of this case.

### 10.    Discovery Period:

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period. Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing. Please state below the subjects on which discovery may be needed:

**Plaintiffs' Proposal**:

Consistent with Fed. R. Civ. P. 26, the parties will seek discovery only as to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.

**Document Preservation**

**Plaintiffs' Position:**

The parties have met and conferred "to identify potential third parties who may possess discoverable documents and to agree upon a procedure of notifying such third parties of the necessity of preserving their documents." *See* CMO-1, Dkt. 27 at ¶ 11. The parties disagree on a procedure, as Defendants claim preservation letters and subpoenas are premature.

***Third Party Preservation Letters***. Plaintiffs provided Defendants with the following list of third parties who may have discoverable information:

- State insurance regulators for all 50 states and D.C.
- Auto Insurance Companies:
  - State Farm Mutual Automobile Insurance Company
  - Progressive Corporation
  - Geico
  - Allstate Insurance Company
  - USAA
  - Liberty Mutual Group
  - Farmers Insurance Group
  - American Family Insurance
  - Travelers
  - Nationwide
  - Kemper Corporation
  - Berkshire Hathaway Inc.
  - Branch
  - Root Insurance
  - National General
  - 21st Century
  - Plymouth Rock
  - Esurance
  - Safeco
  - MetroMile
  - Noblr Car Insurance
- The University of Michigan
- Insurance Regulatory Consultants, LLC
- Wejo Limited
- Jacobs Engineering Group Inc.
- INRIX, Inc.
- Guildwire Marketplace
- Geotab
- Jornaya
- AWS/AWS Marketplace
- Snowflake

Plaintiffs requested that Defendants identify, as soon as possible, any other third parties that may possess discoverable information, and requested an agreement to serve document preservation subpoenas on relevant third parties.

During the parties' conferral efforts, Defendants stated that third party preservation subpoenas were "ancillary" to other issues, and took a hard line that this issue was premature. Plaintiffs were unequivocal that, given Defendants' position, Plaintiffs would begin sending document preservation letters (without objection from Defendants) and presenting the disputed issue of preservation subpoenas to the Court for resolution. Defendants did not object to Plaintiffs sending document preservation letters at that time, and Defendants gave Plaintiffs their commitment to sending, in writing, any specific issues with Plaintiffs' list of third parties, and any other third parties that may have discoverable information. After Plaintiffs began sending document preservation letters, Defendants stated, for the first time, their request to be involved in that process.

Moreover, during the parties' conferral efforts, GM informed Plaintiffs that it considers GM Dealers to be independent parties for document preservation purposes—meaning, GM is not directing its Dealers to preserve relevant documents. To ensure that evidence is not being lost or destroyed, Plaintiffs intend to send document preservation letters to GM Dealers. Defendants' objection to this effort is without merit. Directing preservation efforts toward GM Dealers is not a "fishing expedition." Defendants argue Plaintiffs were aware of their data collection practices, and are subject to binding arbitration, based on terms GM contends were presented to Plaintiffs at GM Dealers. Highly-relevant discovery on these issues lies with GM Dealers—for example, Plaintiffs will seek discovery on (1) how GM Dealers were instructed to, and did, present customers with terms and conditions, including relating to OnStar; (2) the GM-backed incentives for enrolling customers in OnStar services and how those incentives informed GM Dealer's practices for enrolling customers in OnStar; and (3) communications with customers relating to OnStar.

***Third Party Preservation Subpoenas***. The parties have reached an impasse on the timing of document preservation subpoenas, and thus, Plaintiffs will seek leave from the Court to serve them on all third parties who may have discoverable information.

Plaintiffs will continue to confer with Defendants on the list of third parties, but note that the preliminary list provided by Plaintiffs is not "overly broad and harassing." Nor is the list necessarily complete, as Defendants have not yet disclosed the third parties that they believe may have discoverable information.

Plaintiffs' request for preservation subpoenas is not premature, as a non-party generally "has no obligation to preserve documents prior to receipt of a subpoena." The Sedona Conference, Commentary on Rule 45 Subpoenas to Non-Parties, Second

Edition, 22 SEDONA CONF. J. 1 at 33 (2021). They impose no undue burden because the receiving party's only obligation is to preserve—not to collect, review, or produce. *See Tesla, Inc. v. Tripp*, 2018 U.S. Dist. LEXIS 108911, at \*6 (D. Nev. Jun. 27, 2018) (authorizing document preservation subpoenas prior to Rule 26(f) conference, noting that such subpoenas impose "no undue burden" because "[t]he non-parties will not be required at this time to collect, review, and produce anything. Rather, their only obligation will be to preserve evidence, so that it is not forever lost before discovery even commences."). Given the delayed discovery period, the proposed schedules contemplated by the parties, and the risk that evidence may be lost, authorizing document preservation subpoenas now is necessary, appropriate, and consistent with the practice of this Court, Rule 26, and Rule 45. *See* F.R.C.P. 26(f)(3)(C); *In re Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-02800-TWT (N.D. Ga.); *In re Heckmann Corp. Sec. Litig.*, 2011 WL 10636718, at \*5 (D. Del. Feb. 28, 2011) ("[s]ending preservation letters . . . is distinct from serving preservation subpoenas because the latter imposes a legal obligation on third parties to take reasonable steps to preserve relevant documents") (relying in part upon *Koncelik v. Savient Pharms., Inc.*, 2009 WL 2448029, at \*2 (S.D.N.Y. Aug. 10, 2009) ("The only thing that is certain is that without preservation subpoenas, the third party corporations in possession of potentially relevant information are free to destroy that information.")).[4]

### Early Targeted Discovery

Along with document preservation efforts, Plaintiffs intend to seek leave from the Court to conduct targeted early discovery for three limited purposes: (1) to secure information from third parties such as GM dealers that likely possess relevant information; (2) to secure documents and other information provided by Defendants to regulators regarding the facts at issue; and (3) to secure documents and other

---

[4] *In re Smith Barney Transfer Agent Litig.*, 2012 U.S. Dist. LEXIS 58070, at \*11 (S.D.N.Y. Apr. 25, 2012) (plaintiffs permitted to serve document preservation subpoena even where no imminent risk of destruction because entity's "status as a non-party significantly increases the risk that evidence may be lost;" *Houlihan v. Andrews*, 347 F. Supp. 2d 538, 542 (S.D. Ohio 2004) (noting that "it may be necessary to issue a preservation subpoena to a non-party when the non-party does not have actual notice of the litigation or when the non-party is a corporate entity which typically destroys electronic information by 'performing routine backup procedures.'")(citing *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 U.S. Dist. LEXIS 11659 at \*9 (D.N.H. Jul. 27, 2000).

information necessary to meaningfully engage in a process to facilitate the agreement and implementation of an ESI protocol. Each of these purposes falls well within the anticipated scope of discovery, and early discovery is proportional to the case's needs and will assist in efficiently moving the case forward once formal discovery commences. Indeed, the 2015 amendments to Federal Rule of Civil Procedure specifically contemplates early Rule 34 Requests, prior to a Rule 26(f) conference.  See F.R.C.P. Rule 26(d)(2).

Defendants' opposition to this request, stated in **Exhibit D**, including their feigned ignorance on the scope and relevance of the requested discovery, is unpersuasive. Although the Master Consolidated Complaint has yet been filed, Defendants are familiar with the core factual allegations, as summarized in this Joint Report.

Plaintiffs' request for discovery from third parties falls well within this scope: as Plaintiffs have alleged in the underlying actions, third parties—including GM dealerships—are in possession of relevant information regarding the manner in which OnStar and/or Connected Vehicle Services were marketed to consumers, the manner in which related disclosures were provided to consumers, and the manner in which consumer consent for data collection and sharing was purportedly obtained. There is no reason to delay this relevant discovery and, particularly given Defendants' opposition to issuing preservation subpoenas and the indefinite period they request for responding to the Master Consolidated Complaint (the date from which Defendants contend discovery should begin), Plaintiffs' risk the loss or destruction of this relevant information if not obtained early. This discovery is also relevant to threshold issues that Defendants have already indicated that they intend to raise, such as formation of any agreement to arbitrate and personal jurisdiction. As Defendants have indicated they already intend to raise these defenses, early discovery is appropriate.

Similarly, the documents Defendants have provided to regulators regarding the core facts at issue in this action—Defendants' policies and practices regarding driving data collection, sharing, and use—are plainly relevant, even with no Master Consolidated Complaint yet filed. Production of these previously produced documents imposes minimal burden on Defendants and will likely assist the parties in streamlining future discovery requests and responses.

Finally, in this complex matter, Plaintiffs require limited discovery regarding Defendants' organizational charts, document storage, accessibility, and retention in order to confer on an ESI protocol that meets the needs of this case. Limited discovery as to these issues at the outset will enable the parties to design a mutually

agreeable framework, identify anticipated disputes, and avoid or narrow them to the extent possible.

Plaintiffs propose to serve such request on or before November 18, 2024.

## Other Discovery-Related Steps

The following discovery-related steps should be taken as soon as practicable:

a.    Submission of a Protective Order

b.    Submission of a protocol governing electronically stored information.

## Defendants' Proposal:

Consistent with Fed. R. Civ. P. 26, the parties will seek discovery only as to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.

While Defendants agree that a stipulated Protective Order and submission of a protocol governing electronically stored information should be entered, they disagree with Plaintiffs that these filings need or should be entered "as soon as practicable." Plaintiffs' schedule proposes filing a stipulated Protective Order and ESI Protocol on or before November 18, 2024, well before Plaintiffs are due to file their Master Consolidated Complaint—and several months before Defendants will submit dispositive motions directed toward the Master Consolidated Complaint. There is no reason to rush to get a stipulated Protective Order and ESI Protocol on file months before the parties have any clarity as to the claims that will be asserted, and remain, in the case.

Moreover, Defendants' position with respect to Plaintiffs' proposal to send preservation letters to third parties is as follows:  Case Management Order No. 1 (Dkt. 27) directed the parties to meet and confer "to identify potential third parties who may possess discoverable documents and to agree upon a procedure of notifying such third parties of the necessity of preserving their documents.  In the absence of an agreement between the parties upon an appropriate procedure, the Court will consider a request for leave to serve document preservation subpoenas upon third parties who may have discoverable documents."

In their proposal, Plaintiffs identify thousands of "parties [they believe] likely possess discoverable information and intend to send preservation letters on or before September 20, 2024."  Those third parties can be grouped into the following

categories: (1) state insurance regulators and consultants, (2) automobile insurance companies, (3) a university, (4) data aggregators, (5) fleet management company, (6) analytics companies, and (7) cloud computing services.

Plaintiffs' request for document preservation subpoenas is premature. Defendants disagree with Plaintiffs' characterization of the parties' meet and confer efforts. During the meet and confer discussions, Defendants requested that Plaintiffs identify the relevance of the parties identified. Plaintiffs have not provided that information. Coming out of those meet and confer discussions, and in preparation of this report, Defendants proposed to Plaintiffs that Defendants initially send letters to certain relevant third parties requesting those third parties preserve documents. Defendants are willing to attempt to negotiate the language of the letters with Plaintiffs, and Defendants will confirm to Plaintiffs when the letters have been sent. This is the same process the parties initially followed in *In re Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-02800-TWT (N.D. Ga.). Plaintiffs have offered no reason why this process would not be sufficient in this multi-district litigation. Defendants also requested that any form preservation letters be shared, but those draft letters have not yet been received. For other third parties, like GM dealerships, Defendants do not agree that preservation letters are appropriate and thus to the extent Plaintiffs believe such letters are necessary, Plaintiffs will need to send them.

Plaintiffs' list of third parties is overly broad and harassing. Defendants have advised Plaintiffs they are unaware of any connection to many of the identified third parties. Plaintiffs have been unable to articulate any reason why these non-relevant third parties should be subpoenaed and subject to the expense and burden of responding to those subpoenas. In particular, Plaintiffs have provided no justification for taking the unprecedented step of sending preservation letters or subpoenas to the nearly 4,000 independent GM-authorized dealerships nationwide, particularly when any potentially relevant information in those dealerships' possession, custody, and control is likely to be largely duplicative of the information in GM's possession. The subpoenas are evidently "fishing expeditions" with no justifiable basis. Accordingly, any request to subpoena these non-relevant entities should be denied. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden of expense on a person subject to the subpoena."); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

Defendants' proposal to send letters to these third parties balances the need to ensure these parties preserve documents while protecting Defendants' business

relationships. Certain of these third parties are customers of LRNS or Verisk. Sending letters to these customers (versus sending subpoenas from Plaintiffs' counsel) is less likely to interfere in Defendants' business relationships and helps to avoid unnecessary work for both parties. The parties can also negotiate the scope of the letter, which will likely vary based on the specific third party relationship, and ensure they are minimizing any burden on the third party.

Further, Defendants do not agree that Plaintiffs' proposed "pre-Motion to Dismiss" (or really "pre-Complaint") discovery is either contemplated or appropriate under the Federal Rules of Civil Procedure or by L.R. 26.2(A). Defendants have attached as **Exhibit D** support for their position that "pre-Motion to Dismiss" discovery should not be permitted in this case.

***

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

**Plaintiffs' Proposal:**

Plaintiffs' position is that discovery will likely extend beyond the assigned discovery track unless Plaintiffs are able to undertake limited pre-Motion to Dismiss discovery as set forth above.

**Defendants' Proposal:**

The parties do not propose that discovery should be conducted in phases, but they have agreed consistent with the proposed schedule above that fact discovery should precede expert discovery.

While Defendants agree with Plaintiffs that discovery is likely to extend beyond the assigned discovery track, it disagrees that any "limited pre-Motion to Dismiss discovery," which is neither contemplated by the Federal Rules of Civil Procedure or the Local Civil Rules, is warranted or appropriate here. Additionally, as stated above, it is premature to assess which discovery track is appropriate for this case before the scope of the claims, if any, that survive past the pleadings stage has been determined.

11.    **Discovery Limitation and Discovery of Electronically Stored Information**:

    (a)    What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

The parties will meet and confer regarding proposed changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure rules or by local rule. Such proposed changes will be set forth in the Stipulated Proposed Discovery Order.

    (b)    Is any party seeking discovery of electronically stored information?

          <u>X</u>  Yes          _____  No

If "yes,"

        (1)    The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

*See* below regarding the entry of proposed discovery orders.

        (2)    The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF) or native, method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

*See* below regarding the entry of proposed discovery orders.

In the absence of an agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

12.    **Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

In accordance with CMO No. 1 (Dkt. 27) and Fed. R. Civ. P. 23(f)(3)(C), (D), and (F), the parties have met and conferred regarding further case management and discovery orders and have submitted the competing proposed deadlines for the filing of such orders and the items to be addressed by each order.

Pursuant to Local Rule 23.1(C)(2), however, the parties have met and conferred regarding "whether proper management of this multidistrict litigation or the interests of putative class members require the entry of an order limiting communications with putative class members." *See* CMO-1, Dkt. 27 at ¶ 12. The parties agree no order limiting class member communications is necessary at this time.

Next, while the parties disagree with respect to the appropriate timing, the parties agree they will ultimately submit a Stipulated Proposed Discovery Order that will address, *e.g.*,:

- Provisions governing inadvertent disclosure of privileged material under Fed. R. Evid. 502(d);

- Provisions regarding the logging of documents withheld or redacted as privileged or protected as attorney work product;

- Designation of an e-discovery liaison who will be primarily responsible for meeting and conferring regarding ESI;

- Scope and limitations of the preservation of documents (including ESI);

- Agreement to accept service of documents in this case by email; and

- Dates by which subsequent tasks addressed in the order (e.g., ESI disclosures) will be accomplished.

The parties will also submit a Stipulated Proposed Protective Order that will address, *e.g.*:

- Protocols for the handling of confidential documents, information, and transcripts, including challenges to such designations;

- Disclosure of such documents to parties, witnesses, experts, and other third parties;

- The process for filing documents under seal.

Finally, the parties will submit a Stipulated Proposed ESI Protocol that will address, *e.g.*:

- A process for the identification and disclosure of custodians; storage systems; and non-custodian sources ("ESI disclosures");

- A process for the identification and disclosure of any potentially discoverable ESI that has been lost, destroyed, is inaccessible, or is only of limited accessibility;

- A methodology for searching ESI, including whether the use of technology assisted review ("TAR") and/or search terms are appropriate; the TAR methodology and/or search terms that will be used; and a sampling/testing procedure to validate that the agreed-upon search methodology is valid and identifies an acceptable, agreed-upon percentage of responsive documents;

- Stipulations regarding the presumed authenticity of certain documents produced in discovery; and

- Technical specifications governing the form of production of hard copy documents and ESI.

**13.    Settlement Potential:**

(a)    Lead counsel for the parties certify by their signatures below that they conducted the conferences required under Case Management Order No. 1. on September 13, 2024, and that they discussed the possibility of settlement discussions at the appropriate time in the litigation. Other persons who participated in the settlement discussions are listed according to party.

(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.
(  X  ) A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(_____) No possibility of settlement.

**14.    Trial by Magistrate Judge:**

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

The parties do not consent to having this case tried before a magistrate judge of this Court.

**[*Signatures on final page*]**

Date: October 9, 2024                           Respectfully submitted,

/s/ *John R. Bevis*                             /s/ *Norman E. Siegel*
John R. Bevis                                   Norman E. Siegel, MO Bar No. 44378
**THE BARNES LAW GROUP, LLC**                   **STUEVE SIEGEL HANSON LLP**
31 Atlanta Street                               460 Nichols Road, Suite 200
Marietta, Georgia 30060                         Kansas City, Missouri 64112
Tel: (770) 227-6375                             Tel: (816) 714-7100
bevis@barneslawgroup.com                        siegel@stuevesiegel.com

### *MDL Co-Lead Counsel*

Bryan L. Clobes                                 Amy Keller
**CAFFERTY CLOBES**                             **DICELLO LEVITT LLP**
**MERIWETHER & SPRENGEL**                       Ten North Dearborn Street
**LLP**                                         Sixth Floor
135 S. LaSalle St., Suite 3210                  Chicago, Illinois 60602
Chicago, Illinois 60603                         Tel: (312) 214-7900
Tel: (312) 782-4880                             akeller@dlcfirm.com
bclobes@caffertyclobes.com

### *OnStar Track Co-Lead Counsel*

Joseph P. Guglielmo                             Sabita J. Soneji
**SCOTT+SCOTT ATTORNEYS AT**                    **TYCKO & ZAVAREEI LLP**
**LAW LLP**                                     1970 Broadway, Suite 1070
230 Park Avenue, 17th Floor                     Oakland, California 94612
New York, New York 10169                        Tel: (510) 254-6808
Tel: (212) 223-4478                             ssoneji@tzlegal.com
jguglielmo@scott-scott.com

### *LNRS/Verisk Track Co-Lead Counsel*

Kiley L. Grombacher                             Emily E. Hughes
**BRADLEY/GROMBACHER LLP**                      **THE MILLER LAW FIRM, P.C.**
31365 Oak Crest Drive, Suite 240                950 W. University Dr., Suite 300
Westlake Village, California 91361              Rochester, Michigan 48307
Tel: (805) 270-7100                             Tel: (248) 841-2200
Kgrombacher@bradleygrombacher.com               eeh@millerlawpc.com

P. Graham Maiden
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9670
gmaiden@motleyrice.com

Thomas E. Loeser
**COTCHETT, PITRE &
MCCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Tel: (206) 802-1272
tloeser@cpmlegal.com

Adam E. Polk
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Fransisco, California 94108
Tel: (415) 981-4800
apolk@girardsharp.com

John A. Yanchunis
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
jyanchunis@forthepeople.com

### *OnStar Track Steering Committee*

Gayle M. Blatt
**CASEY GERRY SCHENK
FRANCAVILLA BLATT &
PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
gmb@cglaw.com

Stuart A. Davidson
**ROBBINS GELLER RUDMAN &
DOWD LLP**
225 NE Mizner Blvd., Suite 720
Boca Raton, Florida 33432
Tel: (561) 750-3000
sdavidson@rgrdlaw.com

Jennifer M. French
**LYNCH CARPENTER, LLP**
1234 Camino Del Mar
Del Mar, California 92014
Tel: (619) 762-1903
jennf@lcllp.com

Gary S. Graifman
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
135 Chestnut Ridge Rd., Suite 200
Montvale, New Jersey 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**

Chris Springer
**KELLER ROHRBACK LLP**

One West Las Olas Blvd., Suite 500    801 Garden Street, Suite 301
Fort Lauderdale, Florida 33301       Santa Barbara, California 93101
Tel: (954) 332-4200                  Tel: (805) 456-1496
ostrow@kolawyers.com                 cspringer@kellerrohrback.com

### *LNRS/Verisk Track Steering Committee*

M. Brandon Smith
**CHILDERS, SCHLUETER & SMITH LLC**
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Tel: (404) 419-9500
bsmith@cssfirm.com

### *Plaintiffs' Liaison Counsel*

*/s/ Susan M. Clare*
David L Balser
Georgia Bar No. 035835
Susan M. Clare
Georgia Bar No. 262830
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, GA 30309
Tel: (404) 572-4600
dbalser@kslaw.com
sclare@kslaw.com

### *Lead Counsel for Defendants General Motors LLC and Onstar, LLC*

*/s/ Ronald I. Raether*
Ronald I. Raether, Jr.
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
100 Spectrum Center Drive
Suite 1500
Irvine, California 92618
Tel: (949) 622-2700
ron.raether@troutman.com

Cindy D. Hanson
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street, N.E.
Suite 3000
Atlanta, Georgia 30308
Tel: (404) 885-3000
cindy.hanson@troutman.com

Julie Hoffmeister Smith
Timothy J. St. George
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, Virginia 23219
Tel: (804) 697-1200
julie.hoffmeister@troutman.com
timothy.st.george@troutman.com

***Lead Counsel for Defendant LexisNexis Risk Solutions Inc.***

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja*
**HOGAN LOVELLS US LLP**
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Allison Caplis*
**HOGAN LOVELLS US LLP**
100 International Drive, Suite 2000
Baltimore, MD 21202
Tel: (410) 659-2784
allison.caplis@hoganlovells.com

**Lead Counsel for Defendant Verisk Analytics, Inc.**

\* *Admitted Pro Hac Vice*

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

_____

_____

**IT IS SO ORDERED**.

Date:_____, 2024       _____

Thomas W. Thrash, Jr.
United States District Judge

### Exhibit A
### In Re: Consumer Vehicle Driving Data Tracking Litigation
### MDL No. 3115

| | |
|---|---|
| **Romeo Chicco v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>9:24-cv-80281<br>Transferred from Southern District Florida | **Suzanne Block and Charles Justus, III v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>Case No. 2:24-cv-10824<br>Transferred from Eastern District of Michigan |
| **Jonathan Dinardo v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>Case No. 3:24-cv-00524<br>Transferred from Middle District of Pennsylvania | **Leah Landman v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>Case No. 1:24-cv-02238<br>Transferred from Southern District of New York |
| **Michael King and Gus Lopez v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>Case No. 2:24-cv-02560<br>Transferred from Central District of California | **Jariya Thongsawang v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>8:24-cv-00695<br>Transferred from Central District of California |
| **Larry Reed and Darnell McCoy, Sr., v. General Motors, LLC and OnStar, LLC**<br>Case No. 2:24-cv-10804<br>Transferred from Eastern District of Michigan | **Bruce Mason v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>Case No. 1:24-cv-01558<br>Transferred from Northern District of Georgia |
| **Daniel Carnine, Chad Weaver, Jeffrey Jordan, Thomas MacKey and Tory Skyers v. General Motors, LLC, OnStar, LLC, and LexisNexis Risk Solutions Inc.**<br>Case No. 2:24-cv-11004<br>Transferred from Eastern District of Michigan | **Colin Cogle v. General Motors LLC, OnStar, LLC and LexisNexis Risk Solutions Inc.**<br>Case No. 2:24-cv-11062<br>Transferred from Eastern District of Michigan |
| **Barbara Figlio and Morris D. Gordin v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions Inc. and Verisk Analytics, Inc.** | **Christopher Valencia v. General Motors, LLC, OnStar, LLC, and LexisNexis Risk Solutions Inc.**<br>Case No. 2:24-cv-02978 |

| | |
|---|---|
| Case No. 1:24-cv-01669<br>Transferred from Northern District of Georgia | Transferred from Central District of California |
| **Michael Behm v. General Motors, LLC, OnStar, LLC, and LexisNexis Risk Solutions Inc.**<br>0:24-cv-01517<br>Transferred from District of Minnesota | **Brian LaFalce v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-01807<br>Transferred from Northern District of Georgia |
| **David Lima v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions Inc., and Verisk Analytics, Inc.**<br>Case No. 2:24-cv-11119<br>Transferred from Eastern District of Michigan | **Joseph Davids and Thomas Fuhrer v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-03203<br>Transferred from Southern District of New York |
| **Donald Smith, Jr. v. General Motors, LLC, OnStar, LLC, and LexisNexis Risk Solutions Inc.**<br>5:24-cv-02540<br>Transferred from Northern District of California | **David Garcia, III v. General Motors, LLC, OnStar, LLC, and LexisNexis Risk Solutions Inc**<br>Case No. 2:24-cv-03515<br>Transferred from Central District of California |
| **Karen and Melvin Drews v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions Inc., and Verisk Analytics, Inc.**<br>Case No. 2:24-cv-11194<br>Transferred from Eastern District of Michigan | **Manuel and Kathleen Martinez v. General Motors, LLC, OnStar, LLC, Verisk Analytics, Inc., and LexisNexis Risk Solutions Inc.**<br>Case No. 2:24-cv-11221<br>Transferred from Eastern District of Michigan |
| **Grace Gilmore v. General Motors, LLC, OnStar LLC, Verisk Analytics, Inc.**<br>Case No. 1:24-cv-02070<br>Transferred from Northern District of Georgia | **Nathaniel Haiden v. General Motors, LLC, General Motors Holdings LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 2:24-cv-04030<br>Transferred from Central District of California |
| **Tomika Hindson v. General Motors, LLC, LexisNexis Risk Solutions, Inc., Verisk Analytics, Inc.** | **Donald Parton v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-00648 |

| | |
|---|---|
| Case No. 4:24-cv-00173<br>Transferred from Southern District of Iowa | Transferred from Northern District of Alabama |
| **Michael Torres v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-02295<br>Transferred from Northern District of Georgia | **Zachary Smith v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 2:24-cv-06516<br>Transferred from the District of New Jersey |
| **Jeffrey Horvath v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-04480<br>Transferred from Northern District of Illinois | **Amy Brunet v. General Motors, LLC, General Motors Holding, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-02479<br>Transferred from Northern District of Georgia |
| **Michael Alamorian v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-02574<br>Transferred from Northern District of Georgia | **Richard Cashon v. General Motors, LLC, OnStar LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 2:24-cv-03856<br>Transferred from District of South Carolina |
| **Jennifer Melberg v. General Motors, LLC, OnStar, LLC, LexisNexis Risk Solutions, Inc., and Verisk Analytics, Inc.**<br>Case No. 1:24-cv-03135<br>Transferred from Northern District of Georgia | **Michael Laursen v. General Motors, LLC and OnStar, LLC**<br>Case No. 2:24-cv-11153<br>Transferred from Eastern District of Michigan |

## Exhibit B
### Plaintiffs' Position on Jurisdictional Issues

During the parties' conference, Defendants identified two, separate jurisdictional issues which Plaintiffs believe could be addressed through tools at this Court's disposal to streamline the litigation. Those issues concern Defendants' challenge of personal jurisdiction, and Plaintiffs' desire to include additional named plaintiffs in any consolidated pleading.

In supporting the creation of this MDL, each of the Defendants acknowledged the efficiencies that transfer for coordinated or consolidated pretrial treatment would create. *See* J.P.M.L. Dkts.[5] 57 at 10 (GM and OnStar, supporting transfer, argue that "centralization will result in significant efficiency and convenience benefits for the parties and the courts and placing the actions before a single judge will result in a significant savings of judicial and party resources") (cleaned up); 103 at 2 (wherein Verisk argues that "[c]onsolidation for pretrial proceedings is warranted when, like here, transfer will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions") (quotation marks omitted); 50 at 1-2 (LexisNexis, "concur[ing] in the argument" for creation of the MDL).

In order to maximize the efficiencies from coordinating or consolidating cases, transferee courts are afforded a number of case management tools to streamline pretrial proceedings. *See In re Glucagon-Like Peptide-1 Receptor Agonists Prod. Liab. Litig.*, No. MDL 3094, 2024 WL 436482, at *3 (J.P.M.L. Feb. 2, 2024) ("We do not discount the case management-related complexities that a multi-product and multi-defendant MDL such as this may entail. . . . [A] transferee judge can employ any number of techniques. . . to manage pretrial proceedings efficiently."). *See also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 488 (7th Cir. 2020) (acknowledging that "a district court and parties may use specialized procedures to manage the pretrial proceedings" in multidistrict litigation).

Plaintiffs understand that Defendants will raise a number of jurisdictional challenges either now or at the end of the litigation after remand. In order to avoid a challenge to jurisdiction that would extinguish the litigation after the parties have

---

[5]    Refers to the docket before the Judicial Panel on Multidistrict Litigation for *In re Consumer Vehicle Driving Data Tracking Litig.*, MDL No. 3115.

taken the time and expense to litigate pretrial issues within the MDL,[6] Plaintiffs requested that the parties enter into a direct-filing order, which would allow the parties to remand already-filed cases to jurisdictions where the defendants are headquartered, and enter into a an agreement to toll the statute of limitations to allow Plaintiffs who file cases "directly" into the MDL to file their cases into Defendants' home jurisdictions, once the MDL concludes. This straightforward approach would eliminate any question about personal jurisdiction, regardless of any arguments that Plaintiffs would pose in the transferee courts.

Direct-filing orders have been adopted by transferee courts in a number of MDLs. *See, e.g., Axline v. 3M Co.*, 8 F.4th 667, 670–71 (8th Cir. 2021) (noting that a direct filing order "allow[ed] plaintiffs joining the MDL in the future to file their complaints directly in the district court, thereby minimizing delays associated with the transfer of individual actions that would otherwise be filed elsewhere."); *Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 493 (6th Cir. 2015) ("this MDL panel issued a 'Direct Filing Order' that permitted plaintiffs to avoid the seemingly inefficient step of filing-and-transfer required in the absence of such an order"); *In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (after securing defendant's consent that it "will not assert any objection of improper venue" to cases that would be properly included in the MDL, transferee judge explained that "a plaintiff may now file any such complaint against [the defendant] directly in the [MDL court], rather than in a federal district court affording proper venue"). This order would eliminate the need to brief personal jurisdiction issues and would also allow the parties to proceed in an efficient manner.

Defendants will not agree to an approach that would remand cases to their home jurisdictions, nor will they agree to a direct filing order to toll the statute of limitations to allow new Plaintiffs to file directly into the MDL. Instead, they want to preserve any personal jurisdiction arguments for later, not agree on a remand court, and only add Plaintiffs if their cases proceed through the transfer process. Defendants' approach would immediately slow the litigation of the MDL, blunting many of the efficiencies gained through transfer of the dozens of actions to this Court.

Accordingly, because Defendants will not agree to this efficiency, Plaintiffs may dismiss and re-file some of the transferred cases to avoid a case-ending personal

---

[6]    *See, e.g., Matthews v. Chas. Kurz & Co.*, 791 F. App'x 556, 562 (6th Cir. 2019) (noting that personal jurisdiction challenges, if preserved, could be raised after the conclusion of the MDL).

jurisdiction challenge that would be raised only at the end of the MDL. Some of the cases mentioned in Exhibit A will be voluntarily dismissed without prejudice, and re-filed in Michigan, New Jersey, and Georgia. Once filed in those jurisdictions, the parties will alert the Judicial Panel on Multidistrict Litigation to transfer the "tag-along" actions to this Court for inclusion in the MDL. This process may take several months longer than Plaintiffs' direct-filing proposal, and may delay the filing of Plaintiffs' Master Consolidated Complaint.

**Defendants' approach**. Defendants have initially proposed that they would seek to challenge personal jurisdiction for any Plaintiffs who filed in jurisdictions outside of Defendants' headquarters or place of incorporation.[7] This means that GM and OnStar would seek to dismiss any actions not filed in Michigan, Verisk would seek to dismiss any actions not filed in New Jersey, and LexisNexis would seek to dismiss any actions not filed in Georgia. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir. 2004) (finding that "the transferee court can exercise personal jurisdiction to the same extent that the transferor court could.").

Plaintiffs have valid arguments for the exercise of personal jurisdiction in courts across the Country given that Defendants conduct business in each and every state, and Plaintiffs may seek jurisdictional discovery to properly present this issue to the Court. But even assuming that Defendants are correct, Plaintiffs could simply re-file their complaints in Defendants' home jurisdictions. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (directing district court to find that a dismissal for lack of personal jurisdiction is without prejudice to allow a plaintiff to file in an appropriate forum). Relatedly, Defendants would also challenge the Court's jurisdiction with respect to any Plaintiffs who are named in a consolidated pleading in the multidistrict litigation who did not file a case in one of Defendants' home jurisdictions. They, too, could file separate complaints in the Defendants' home states. Following this process, it would take several months for the Judicial Panel on Multidistrict Litigation to transfer the actions to this Court. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1254 (S.D. Fla. 2022) (dismissing plaintiffs who were added to the complaint in the MDL without prejudice, allowing them to file elsewhere and be transferred back); *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 946 (N.D. Ill. 2016) (striking plaintiff from consolidated complaint until after the Panel transferred the action several months later). If the parties were to brief personal jurisdiction following the filing of an

---

[7]    Although Defendant Verisk's corporate headquarters is located in Jersey City, New Jersey, it preferred litigating pretrial matters in the Southern District of New York. *See* J.P.M.L. Dkt. No. 103 at 2.

operative complaint, it could take well over a year before the issues are addressed. Notably, no decision would be on the *merits* of Plaintiffs' claims.

### *Plaintiffs' Response to Defendants' Ex. C on Jurisdictional Issues*

<u>Plaintiffs' Statement on Subject-Matter Jurisdiction</u>.  Plaintiffs are aware that certain Defendants have made vague representations concerning challenges that they may have to subject matter jurisdiction and Article III standing.  To the extent Defendants assert that standing does not exist for certain Plaintiffs' claims, jurisdictional discovery may be necessary to understand from what data set Defendants are reviewing Plaintiffs' data to come to certain determinations. For example, Defendants' regular document retention policy may delete Telematics Data on a regular basis, which would prevent the Defendants from being able to make certain assertions. To the extent Defendants make any fact-based challenge to jurisdiction, Plaintiffs would request jurisdictional discovery. *See, e.g., Fox Int'l Corp. v. Farnsworth Hill Co., LLC*, No. 1:14-CV-2855-ODE, 2016 WL 11745555, at *1 (N.D. Ga. Sept. 26, 2016) (noting that court ordered limited discovery on jurisdictional issues).

<u>Plaintiffs' Statement on Arbitration</u>. Many of the Plaintiffs have already disputed that they were *shown* the terms of their purported agreements with GM, let alone agreed to them. In addition to this argument, Plaintiffs have other arguments concerning the enforceability of the purported agreements to arbitrate. *See, e.g., Howell, et al. v. Argent Trust Co., et al.*, No. 22-cv-03959-SDG, 2024 WL 4369688 (N.D. Gal. Sept. 30, 2024) (denying a motion to compel arbitration as certain provisions were unenforceable, but also noting that a lack of consent would also invalidate such an agreement).  *See also Peters v. The Keyes Co.*, 402 F. App'x 448, 451 (11th Cir. 2010) (noting that a finding that a party is a third-party beneficiary to a contract must first be made before they can enforce an arbitration agreement).

<u>Plaintiffs' Statement on Personal Jurisdiction</u>. Although Plaintiffs have many arguments against Defendants' position on personal jurisdiction, they believe that waiting until the end of the MDL to raise these arguments in transferor courts would waste significant time and resources. This is why Plaintiffs have suggested that the parties agree to a direct-filing order, which would allow claims to be tried in jurisdictions where Defendants are headquartered.

## Exhibit C
## Defendants' Position on Jurisdictional Issues

### Subject Matter Jurisdiction

<u>Plaintiffs Whose Data Was Not Shared with LNRS/Verisk or Insurers:</u> While it is not yet known who will be a plaintiff in the Master Consolidated Complaint and which claims will be asserted, certain Plaintiffs in the underlying complaints: (1) were not enrolled in the Smart Driver program, (2) did not have Telematics Data shared with Verisk and/or LNRS; and/or (3) did not have their Telematics Data shared with any insurer by LNRS or Verisk. Such Plaintiffs cannot demonstrate that any alleged increase in their insurance premiums or any other alleged injury related to their insurer is fairly traceable to any Defendant's conduct. *See, e.g., Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019) (no standing for named plaintiffs who failed to plead how injuries were connected to defendants' conduct).

<u>Plaintiffs Subject to Arbitration:</u> The GM Defendants' contracts with Plaintiffs contained an arbitration clause. The clause, which is governed by Michigan law, also covers Verisk or LNRS either as third-party beneficiaries—a question for the arbitrator—or as a matter of equitable estoppel. *See, e.g., SmithGroup, Inc. v. Pure Architecture & Dev., PLLC*, No. 1:24-CV-249, 2024 WL 3179176, at *4 (W.D. Mich. May 9, 2024); *Lyman v. Ford Motor Co.*, No. 21-CV-10024, 2022 WL 856393, at *4 (E.D. Mich. Mar. 22, 2022). Additionally, LNRS and Verisk reserve the right to argue that GM is an indispensable party under Fed. R. Civ. P. 19, such that this action could not proceed against them in the absence of GM being named as a co-party. GM also reserves the right to dispute any such contention.

### Personal Jurisdiction & Plaintiffs' Proposed Direct-Filing Order

Numerous Plaintiffs originally brought suit in transferor courts that lacked personal jurisdiction over one or more defendants. For example, for actions filed in this District prior to transfer, the Court would lack general personal jurisdiction over Verisk and GM and OnStar, which are neither incorporated in nor headquartered in Georgia. *See, e.g., Esslinger v. Endlink, LLC*, No. 3:22-CV-153-TCB, 2022 WL 18459850, at *2 (N.D. Ga. Nov. 30, 2022). Using the same example, many Plaintiffs who filed in this district do not reside in this District, did not buy their car(s) in this District, and did not try to buy insurance in this District. It is axiomatic that a court lacks personal jurisdiction over out-of-state claims suffered by out-of-state plaintiffs from alleged out-of-state conduct by an out-of-state defendant. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) (no

personal jurisdiction where plaintiffs did not buy product in forum, did not use product in forum, and were not injured in forum). That bedrock principle is not altered by consolidation and transfer of cases to a single forum in an MDL. Absent consent, an MDL court lacks personal jurisdiction over any direct-filed case, and Defendants do not consent to the entry of a direct-filing order. Rather, Defendants submit that the usual procedure for filing new claims on behalf of new plaintiffs in the proper jurisdiction and transferring such cases to the MDL through the JPML should be followed so as to promote clarity about the parties' rights.

Contrary to Plaintiffs' representations, a direct-filing order would not "eliminate any question about personal jurisdiction" or necessarily "streamline" the litigation. As an initial matter, it is far from clear that direct filing is even permitted under 28 U.S.C. § 1407, which requires a case to be transferred "to the district from which it was transferred" after consolidated pretrial proceedings. There would be no such transferor court for direct filed actions, and it is far from clear that either the parties or the court can override the statute's requirements. *See, e.g.*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (holding Section 1407 "obligates" the JPML "to remand any pending case to its originating court"). Indeed, numerous courts have rejected attempts by plaintiffs to directly file into MDLs for this very reason. *See, e.g., In re: Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, No. 20 C 5965, 2021 WL 3290962, at *6 (N.D. Ill. Aug. 1, 2021) (holding that "it is improper to add new plaintiffs . . . 'directly' to this MDL"); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d 922, 1021 (D. Kan. 2021) (dismissing claims under Rule 12(h)(3) because "an MDL proceeding isn't 'an environment that can spawn fresh actions by new plaintiffs'"), *reconsideration denied*, 568 F. Supp. 3d 1184, 1203–05 (D. Kan. Oct. 25, 2021); In re FCA US LLC Monostable Elec. Gearshift Litig., No. 16-MD-02744, 2017 WL 6402992, at *4 (E.D. Mich. Mar. 21, 2017) (striking complaint where "the plaintiffs here are simply trying to make an end run around the proper procedural framework that governs MDL proceedings").

Further, permitting direct filing creates a plethora of issues for the MDL transferee court because it makes it difficult to (1) determine choice of law; (2) deal with personal jurisdiction issues; and (3) determine how to transfer directly filed cases at the end of the consolidated pretrial proceedings. *See, e.g., In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 2521, 2023 WL 8113436 (N.D. Ill. Nov. 21, 2023) (noting where defendants will not agree to waive personal jurisdiction and venue objections, the better course is to require following the usual Section 1407 procedure of filing in a different court and transferring via the JPML to avoid the burdens and challenges with direct filing); *In re Norplant Contraceptive Prod. Liab. Litig.*, 946 F. Supp. 3

(E.D. Tex. 1996) (direct filing "threatens to burden this court with unnecessary transfer decisions"). This case is a prime example of the issues that can arise. For example, Plaintiffs' proposal envisions transfer to the home district of a Defendant to eliminate personal jurisdiction issues. Here, however, there are multiple Defendants headquartered in different states, and a trial in one Defendant's home state may still create personal jurisdiction issues for the other Defendants. Since the transferred complaints often include multiple Defendants, it would be extremely complicated and burdensome to transfer cases whether direct filed or not, involving severing of claims and parties into completely different lawsuits to be transferred to different courts that were not original transferor courts under Section 1407. Moreover, Defendants are not willing to waive personal jurisdiction or venue objections, adding even more complications for direct filing and transfers to Defendants' home states for trial. In light of these issues, Plaintiffs' proposal is neither workable nor lawful.

## Exhibit D
## Defendants' Position on Plaintiffs' Proposed "Pre-Motion to Dismiss" Discovery

In their proposed Joint Preliminary Report and Discovery Plan, knowing that Defendants likely will file motions to dismiss, Plaintiffs propose a schedule that would allow them to serve "pre-Motion to Dismiss Discovery" on or before November 18, 2024, with their proposed "Master Consolidated Complaint" then due on December 13, 2024.  Put another way, Plaintiffs are seeking discovery *before* they even file their forthcoming Master Consolidated Complaint, all while knowing that the Local Rules of this Court automatically stay discovery until a motion to dismiss is resolved.   In particular, Plaintiffs request the following forms of discovery:

> "Plaintiffs intend to seek leave from the Court to conduct targeted early discovery for three limited purposes: (1) to secure information from third parties such as GM dealers that likely possess relevant information; (2) to secure documents and other information provided by Defendants to regulators regarding the facts at issue; and (3) to secure documents and other information necessary to meaningfully engage in a process to facilitate the agreement and implementation of an ESI protocol. . .  Plaintiffs propose to serve such request on or before November 18, 2024."

There is no legal basis for such a proposal, which is contrary to both the Federal Rules of Civil Procedure and the Local Civil Rules of the Northern District of Georgia.

As a threshold matter, there is no judicial allowance for pre-Complaint discovery.  The Federal Rules of Civil Procedure provide that well-pleaded factual allegations are required to state a claim.  *See* Fed. R. Civ. P. 8(a).  A "[p]laintiff cannot skip her initial burden of stating a plausible claim for relief and demand Defendants respond to discovery she is not yet entitled to." *Barnes v. Holding*, 1:23-cv-05065, 2024 U.S. Dist. LEXIS 126753, at *4-5 (N.D. Ga. July 17, 2024).  And, where, as here, Defendants intend to raise "facial challenges to the legal sufficiency of [Plaintiffs'] complaint, there is no need for discovery before those issues are decided." *Id.* (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002)).  Simply put, Plaintiffs' proposal "puts the cart before the horse" and should be rejected. *Barnes*, 2024 U.S. Dist. LEXIS 126753, at *4-5.

Nor should discovery commence in advance of the forthcoming motions to dismiss. Local Rule 26.2 provides that "[t]he discovery period shall commence thirty days after the appearance of the first defendant *by answer to the complaint*, unless the parties mutually consent to begin earlier." L.R. 26.2 (emphasis added). No such mutual consent to start discovery exists here. That Local Rule – which exists to conserve judicial and party resources – is consistent with the litany of "other courts within the Eleventh Circuit [that] routinely find good cause to stay the discovery period where there is a pending motion to dismiss." *Alexander v. Wal-Mart Stores East, LP*, No.: 6:23-cv-36, 2023 U.S. Dist. LEXIS 135269 (S.D. Ga. Aug. 3, 2023); *see also Habib v. Bank of Am. Corp.*, No. 1:10-cv-04079, 2011 U.S. Dist. LEXIS 69858, 2011 WL 2580971, at *6 n.4 (N.D. Ga. Mar. 15, 2011) ("[T]here is good cause to stay discovery obligations until the District Judge rules on [the defendant's] motion to dismiss to avoid undue expense to both parties."); *Berry v. Canady*, No. 2:09-cv-765, 2011 U.S. Dist. LEXIS 27088, at *1 (M.D. Fla. Mar. 2, 2011) (quoting *Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005) ("[N]either the parties nor the court have any need for discovery before the court rules on the motion [to dismiss].")).

Moreover, even if "pre-Motion to Dismiss" discovery was conceptually proper (it is not), the three categories of requested discovery identified by Plaintiffs' counsel are themselves wholly unwarranted. Plaintiffs provide no basis as to why they would need to "secure" unspecified forms of "discovery" from unidentified "third parties" to draft their Complaint or oppose a motion to dismiss, and the specifics of such third-party discovery are left entirely unknown. Nor do Plaintiffs need discovery to discuss an "ESI protocol," as the attorneys can work collaboratively together to develop such a plan, just as undersigned counsel has done before in other matters. Plaintiffs' last generic request for "documents and other information provided to regulators regarding the facts at issue" also is inappropriate, as courts routinely reject such attempts at "clone" discovery, even when the discovery period has opened. *See, e.g.*, *Stellato v. Medtronic Minimed*, No: 6:19-cv-2180, 2021 U.S. Dist. LEXIS 158266, at *8-9 (M.D. Fla. Feb. 2, 2021) (same); *Insignia Systems Inc. v News Corp.*, No. 19-1820, 2020 U.S. Dist. LEXIS 259977, at * 3-4 (D. Minn. Mar. 24, 2020) ("There could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case. If relevant and proportional documents exist in the custody or control of the responding party, the appropriate thing to do is to request those documents."); *Forth v. Walgreen Co.*, No. 17 C 2246, 2019 U.S. Dist. LEXIS 233269, at *4 (N.D. Ill. July 20, 2019) (denying plaintiffs' motion to compel all documents defendant produced to the government in a parallel *qui tam* action).

For these reasons, the Court should deny Plaintiffs' request for an order permitting "pre-Motion to Dismiss" discovery. However, should the Court be inclined to consider any of Plaintiffs' proposals for "pre-Motion to Dismiss" discovery, including requests for the production of documents and other information provided to regulators, Defendants respectfully request the opportunity to formally brief this issue for the Court.