**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection Litigation | MDL Docket No. 3115<br>Case No. 1:24-md-3115-TWT |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO LEXISNEXIS RISK SOLUTIONS INC. AND VERISK ANALYTICS, INC.'S MOTION TO DISMISS PLAINTIFFS' FAIR CREDIT REPORTING ACT CLAIM AND STATE LAW CLAIMS**

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................1

FACTUAL BACKGROUND ......................................................................2

A. Verisk and LNRS are Data Brokers. ..................................................2

B. Defendants Exploited Plaintiffs' Driving Data for FCRA and Non-FCA Purposes. .......................................................................................3

C. Defendants Know Consent is Required to Collect Driving Data. ..................4

D. Defendants Know Driving Data is Inaccurate. ...........................................4

LEGAL STANDARD ..............................................................................5

ARGUMENT ........................................................................................5

I. Plaintiffs' state law claims are expressly preserved by FCRA. ..........................5

A. The Scope of FCRA Preemption Is Defined by Statute and Does Not Bar Plaintiffs' State Law Claims. ..............................................................6

B. Plaintiffs' State Law Claims are Not Inconsistent with FCRA. ....................11

C. Plaintiffs' State Law Claims are Not Covered by FCRA's Express Preemption Provisions. ...........................................................................16

II. Plaintiffs' Claims Are Not Preempted Under 15 U.S.C. § 1681h(e). ...............17

A. 15 U.S.C. § 1681h(e) is Inapplicable to Plaintiffs' Claims. ..........................18

B. Plaintiffs' Claims Are Not All "In the Nature of Invasion of Privacy" and are Therefore Not Preempted. ...........................................................20

C. Defendants Reported Plaintiffs' Inaccurate Information with Malice or Willful Intent. ..........................................................................................21

D. Defendants' Reporting of Plaintiffs' Inaccurate Information Constituted Willful, or at Least Negligent, Non-Compliance with FCRA. .......................24

III. Plaintiffs State a Plausible Claim for Relief Under FCRA. ..........................25

A. All Plaintiffs Plausibly Allege Inaccuracies. ...............................................26

B. Plaintiffs Adequately Allege Defendants Failed to Use Reasonable Procedures Under § 1681e(b). ................................................................30

C. Plaintiffs Have Adequately Alleged an Injury in Fact. ................................31

D. Plaintiffs Have Adequately Alleged Willful Conduct. .................................34

E. Defendants Did Not Furnish Reports For any Permissible Purpose under FCRA. ....36

CONCLUSION ....37

# TABLE OF AUTHORITIES

*Aghaeepour v. N. Leasing Sys., Inc.*,
378 F. Supp. 3d 254 (S.D.N.Y. 2019) ........ 11, 15

*Aldrich v. N. Leasing Sys., Inc.*,
91 N.Y.S.3d 401 (N.Y. App. Div. 2019) ........ 9

*Alexander v. Certegy Check Services, Inc.*,
2016 WL 7478961 (M.D. Fla. Dec. 29, 2016) ........ 36

*Apodaca v. Discover Fin. Serv.*,
417 F. Supp. 2d 1220 (D.N.M. 2006) ........ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Benjamin v. Experian Info. Sols., Inc.*,
561 F. Supp. 3d 1330 (N.D. Ga. 2021) ........ 28

*Callum v. New Rez, L.L.C.*,
2021 WL 2792134 (M.D. Fla. Apr. 28, 2021) ........ 10

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ........ 7

*Coleman v. Experian Information Solutions, Inc.*,
Supp. 3d 1300 (N.D. Ga. 2023) ........ 34

*Collins v. Experian Info. Solutions, Inc.*,
775 F.3d 1330 (11th Cir. 2015) ........ 24

*Credit Data of Ariz., Inc. v. State of Ariz.*,
602 F.2d 195 (9th Cir. 1979) ........ 9, 11, 15

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) ........ 6, 7

*Cushman v. Trans Union Corp.*,
115 F.3d 220 (3rd Cir. 1997) ........ 23

*Davenport v. Farmers Ins. Group*,
378 F.3d 839 (8th Cir. 2004) ........ 9

*DeVries v. Experian Info. Sols., Inc.*,
2018 WL 1426602 (N.D. Cal. Mar. 22, 2018) ....................................15

*Dickens v Trans Union Corp.*,
18 Fed. App'x 315 (6th Cir. 2001) ....................................29

*Dixie Plumbing Specialties, Inc. v. Cain Indus., Inc.*,
2019 WL 13061187 (N.D. Ga. May 22, 2019) ....................................34

*Embrey v. First Franklin Fin. Corp.*,
2013 WL 1289401 (S.D. Fla. Mar. 12, 2013) .................................... 10, 22

*Erickson v. First Advantage Background Servs. Corp.*,
981 F.3d 1246 (11th Cir. 2020) .................................... 26, 29, 31

*Frye v. Capital One Auto Fin.*,
2015 WL 3540445 (S.D. Fla. June 3, 2015) ....................................10

*Garcia v. Kashi Co.*,
43 F. Supp. 3d 1359 (S.D. Fla. 2014) ....................................8

*Gen. Motors Corp. v. Abrams*,
897 F.2d 34 (2d Cir. 1990) ....................................8

*Gilette v. Uber,*
*Tech., Inc.*, 2015 WL 4931793 (N.D. Cal. Aug. 18, 2015) ....................................11

*Harmon v. Regions Bank*,
961 So. 2d 693 (Miss. 2007) ....................................21

*Hickman v. Pa. Higher Educ. Assistance*,
2017 WL 8186732 (N.D. Ga. Sept. 27, 2017) .................................... 17, 20

*In re Equifax Fair Credit Reporting Act Litig.,*
2023 WL 6192732 (N.D. Ga. Sept. 11, 2023) ....................................18

*Irving v. Mazda Motor Corp.*,
136 F.3d 764 (11th Cir. 1998) ....................................8

*Johnson v. Citimortgage, Inc.*,
351 F. Supp. 2d 1368 (N.D. Ga. 2004) .................................... 20, 22

*Jordan v. Trans Union LLC*,
377 F. Supp. 2d 1307 (N.D. Ga. 2005) ....................................6, 22

*Kamps v. Midland Funding, LLC*,
2013 WL 622505 (N.D. Ala. Feb. 19, 2013) ....................................22

*Lewis v. Experian Information Solutions, Inc.*,
2024 WL 1308705 (E.D.N.Y. Mar. 27, 2024) ....................................36

*Losch v. Nationstar Morag. LLC,*
995 F.3d 937 (11th Cir. 2021) .......... 24, 31

*Lofton-Taylor v. Verizon Wireless*,
262 F. App'x 999 (11th Cir. 2008) .......... 19, 21

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024) .......... 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 31, 32

*Matthews v. Experian Credit Bureau*,
2024 WL 3342227 (M.D. Fla. Apr. 24, 2024) .......... 30

*McWhorter v. Trans Union LLC,*
2024 WL 3385676 (11th Cir. July 12, 2024) .......... 26

*Medtronic, Inc. v. Lohr*,
518 U.S. 470, (1996) .......... 7

*Morse v. Trans Union Corp.,*
2024 WL 5346414 (N.D. Fl. Nov. 26, 2024) .......... 21

*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*,
60 F.4th 1314 (11th Cir. 2023) .......... 7

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 22

*Nickens v. Equifax Info. Servs., LLC*,
2013 WL 4786975 (N.D. Ga. Sept. 6, 2013) .......... 37

*Padilla v. Experian Info. Sols, Inc.,*
2023 WL 4014700 (S.D. Fla. May 12, 2023) .......... 30

*Pedro v. Equifax Inc.*,
868 F.3d 1275 (11th Cir. 2017) .......... 35

*Peterson v. Equifax Info. Servs. LLC*,
2018 WL 7348859 (N.D. Ga. Dec. 27 .......... 28

*Pinckney v. SLM Fin. Corp.*,
433 F. Supp. 2d 1316 (N.D. Ga. Apr. 27, 2005) .......... 18

*Purdy v. Experian Information Solutions, Inc*.
2005 WL 8157972 (N.D. Ala. Nov. 3, 2005) .......... 33

*Ramirez v. TransUnion, L.L.C.*,
899 F. Supp. 2d 941 (N.D. Cal. 2012) .......... 15

*Ramirez v. TransUnion, L.L.C.*
594 U.S. 413 (2021) ....................15

*Rex v. Chase Home Fin. L.L.C.*,
905 F. Supp. 2d 1111 (C.D. Cal. 2012) ....................5, 15

*Rhodes v. First Advantage Background Servs. Corp.*,
2024 WL 4615775 (11th Cir. 2024) ....................25

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) ....................7

*Safeco Insurance Co. of America v. Burr*,
551 U.S. 47, (2007) .................... 24, 34

*Saho v. Equifax, Inc.*,
2019 WL 11499337 (N.D. Ga. Oct. 31, 2019) ....................30

*Saho v. Equifax, Inc.*,
2020 WL 7388449 (N.D. Ga. Mar. 23, 2020) ....................30

*Saindon v. Equifax Info. Serv.*,
608 F. Supp. 2d 1212 (N.D. Cal. 2009) ....................22

*Spencer v. National City Mortg.*,
2011 WL 13217023 (N.D. Ga. Apr. 13, 2011) ....................11

*Spencer v. Nat'l City Mortg.*,
831 F. Supp. 2d 1353 (N.D. Ga. 2011) ....................10

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ....................31

*Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*,
537 U.S. 51 (2002) ....................7

*Thomas v. Equifax Info. Servs. LLC*,
2023 WL 4049317 (N.D. Ga. Apr. 12, 2023) ....................25

*Twumasi-Ankrah v. Checkr, Inc.*,
954 F.3d 938 (6th Cir. 2020) ....................29

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ....................5

*Vickie M. Champion v. Global Credit Card Serv., L.L.C.*,
2012 WL 3542225 (N.D. Ala. Aug. 15, 2012) ....................22

*Welch v. Target Nat'l Bank*,
2009 WL 1659708 (M.D. Fla. June 15, 2009) ....................9

*Whelan v. Trans Union Credit Reporting Agency*,
862 F. Supp. 824 (E.D.N.Y. 1994) .......... 23

*Williams v. Trans Union LLC*,
2024 WL 4649363 (N.D. Ga. Oct 2, 2024) .......... 30

*Younger v. Experian Info. Solutions, Inc.*,
817 Fed. App'x 862 (11th Cir. 2020) .......... 24

Statutes

15 U.S.C. § 1681 .......... 8

15 U.S.C. § 1681(a)(4) .......... 8

15 U.S.C. § 1681e(b) .......... passim

15 U.S.C. § 1681h(e) .......... passim

15 U.S.C. § 1681j(a) .......... 16

15 U.S.C. § 1681t(a) .......... 9, 16

15 U.S.C. §§ 1681c(g) .......... 16

15 U.S.C. §§ 1681t(a) and (b) .......... 5

15 USCS § 1681g, 1681h, or 1681m .......... 17, 18, 19, 20

15 USCS §§ 1681n and 1681o .......... 17, 24, 25

Cal. Civ. Code § 1785.31(b) .......... 15

N.Y. Gen. Bus. Law § 349 .......... 23

Rules

Fed. R. Civ. P. 15 .......... 37

Other Authorities

116 Cong. Rec. 36 .......... 19

CFPB, The Fair Credit Reporting Act's Limited Preemption of State Laws,
87 Fed. Reg. 41 (July 11, 2022) .......... 10

Senate Report 91-517 .......... 9

# INTRODUCTION

Data brokers LexisNexis Risk Solutions Inc. (“LNRS”) and Verisk Analytics, Inc. (“Verisk”) (collectively, “Defendants”) conspired with General Motors LLC and OnStar LLC (“GM”) to seize and monetize Plaintiffs’ highly private and valuable Driving Data[1] through “data exchanges” without Plaintiffs’ knowledge or consent. Defendants now claim that using and selling inaccurate Driving Data without consent does not violate the Fair Credit Reporting Act (“FCRA”) and that Plaintiffs’ state law claims are preempted. Defendants’ position is clear: consumer consent is either unnecessary or, at a minimum, solely GM’s responsibility. Defendants go so far as to argue that compliance with state law would interfere with their business practices—because consumers, if given a choice, would never agree to this surveillance.

But FCRA does not authorize Defendants to evade fundamental consumer expectations around consent. Driving Data is not credit data—i.e., static financial information that comprises a credit history or report, which consumers know may be shared with credit bureaus. Consumers do not drive their cars with the expectation

[1] “Driving Data” is data “tied to individual drivers and vehicles and include[s] geolocation, route history, driving schedule, fuel or charging levels, hard braking events, hard acceleration events, tailgating, time spent idle, speeds over 80 miles per hour, vehicle speed, average speed, late night driving, driver attention, and more.” Master Consolidated Class Action Complaint (“MCC”) ¶ 1. Citations to “¶” are to paragraphs of the MCC.

that data brokers are real-time tracking their physical movements and behaviors behind the wheel. Stretching FCRA to cover this practice would create a dangerous loophole, allowing companies to avoid accountability for invasive data collection by mislabeling behavioral surveillance as "consumer reporting." FCRA was not designed to shield such behavior from liability. Plaintiffs' state law claims are not inconsistent with, and not preempted by, FCRA.

Finally, Plaintiffs sufficiently allege a FCRA claim for Defendants' negligent, willful, and malicious failure to ensure the maximum possible accuracy of the information in their consumer reports. Defendants' motion should be denied.

## FACTUAL BACKGROUND

### A. Verisk and LNRS are Data Brokers.

Verisk provides "advanced data analytics, software, scientific research, and deep industry knowledge." ¶ 695. LNRS is a self-described "analytics provider for industries around the globe, including financial services, retail/ecommerce, logistics, and telecommunications." ¶ 738. For years, both Defendants conspired with GM to construct a marketplace of "exchanges" for third parties to buy and sell Plaintiffs' Driving Data. ¶¶ 689, 694. Both companies marketed themselves as a "bridge" between market participants—a "single point of contact" between "hundreds" of automakers and "hundreds of insurers wanting access to the data[.]" ¶¶ 694, 739.

The ultimate objective for GM, Verisk, and LRNS was the same: turning Plaintiffs' vehicles into fully-connected data centers to churn for profit. ¶ 698.

### B. Defendants Exploited Plaintiffs' Driving Data for FCRA and Non-FCA Purposes.

In October 2015, Verisk secretly arranged with GM to buy control of its consumers' Driving Data. ¶¶ 695–737. Over the next ten years, Verisk received steady streams of Driving Data, which it then manipulated, sold, and used it to "generate[] proprietary analytics, "drive development of sophisticated insurance models," and build a portfolio of telematics offerings, including a suite of products aptly named "DrivingDNA." ¶¶ 719–731.

In 2017, LNRS also secretly arranged with GM to purchase Driving Data, including Driving Data from years prior, which LNRS used to build its telematics business, "market and deliver FCRA and non-FCRA products and solutions to Insurers," and expand its market share. ¶¶ 738–768. "The insights we've gained from 300 million US drivers," LNRS stated in 2019 promotional materials, "allows companies to view the big picture, easily spot trends and patterns, understand usage patterns of products, analyze millions of data points for predictive and prescriptive analytics"—"giving you 'inside information' on your own drivers." *Id.* By 2022, LNRS opined that telematics was "core" to future business success, promising: "We won't stop here, as there are industry challenges to solve and a growing, evolving exchange data set can be used in a variety of telematics solutions beyond UBI, while

also creating the opportunity to improve the overall vehicle ownership experience." ¶ 768.

### C. Defendants Know Consent is Required to Collect Driving Data.

Defendants argue that no consent was required to collect Driving Data. Yet, for nearly a decade, Defendants have promised consumers, journalists, and the public the exact opposite. ¶ 809 ("The consumer is always going to have to consent to their data being used this way,"); ¶ 811 ("Privacy is critical. Everyone is concerned with Big Brother monitoring every move. Verisk requires two consents from consumers before sharing driving data: the first consent is to actually participate in the program and to allow collection of data; the second consent is for sharing data or a score with insurers."); ¶ 812 ("***we have very stringent practices around opt in, opt out, you know, consumer consent***"); *see also* ¶¶ 756, 761, 799, 800, 806, 810, 813–816.

### D. Defendants Know Driving Data is Inaccurate.

Not only did Defendants know, or should have known, that the Driving Data they purchased from GM was being collected and sold without consumers' consent, they also knew, or should have known, this Driving Data was inaccurate and they did nothing to verify its accuracy. *See* ¶¶ 916–31, 1101–07. Nevertheless, Defendants used and monetized this Driving Data by including it in reports they sold to third parties. *See* ¶¶ 695–768.

## LEGAL STANDARD

To survive a motion to dismiss, the MCC must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether to dismiss under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

## ARGUMENT

### I. PLAINTIFFS' STATE LAW CLAIMS ARE EXPRESSLY PRESERVED BY FCRA.

Defendants improperly treat federal preemption by FCRA like "a highly-contagious and fatal disease" that insulates them from liability for Plaintiffs' state law claims and injuries. *See Rex v. Chase Home Fin. L.L.C.*, 905 F. Supp. 2d 1111, 1150 (C.D. Cal. 2012) (construing FCRA preemption provision at issue narrowly). FCRA does not immunize Defendants from violations of all state laws that would otherwise apply to and cover credit reporting agencies; instead, FCRA explicitly preserves Plaintiffs' state law claims. Indeed, FCRA preempts a non-FCRA claim only where: (1) complying with the non-FCRA claim would *violate* FCRA (conflict preemption) or (2) where the non-FCRA claim is *explicitly* covered by limited, enumerated FCRA provisions (express preemption). 15 U.S.C. §§ 1681t(a) and (b);

*see CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (the text of a statue is "the best evidence of Congress' pre-emptive intent.").[2]

Neither is true here. Plaintiffs' state law claims are neither inconsistent with nor covered by FCRA's limited, express preemption provisions and Defendants' motion to dismiss should be denied. Further, even if FCRA's qualified immunity provision applies to Plaintiffs' invasion of privacy claims, it does not warrant dismissal of those claims because Plaintiffs adequately allege Defendants acted intentionally and with malice. *See Jordan v. Trans Union LLC*, 377 F. Supp. 2d 1307, 310 (N.D. Ga. 2005) (malice sufficiently pled where defendants willfully published misleading and/or inaccurate information to third parties).

### A. The Scope of FCRA Preemption Is Defined by Statute and Does Not Bar Plaintiffs' State Law Claims.

FCRA's text and legislative history highlight the limited scope of its preemptive effect. Indeed, Defendants cite a general preemption standard that does

---

[2] All of Plaintiffs' state law claims against Defendants are viable, including: common law **Invasion of Privacy** (¶¶ 1048–1067), **Civil Conspiracy to Invade Privacy** (1068-1077), **Unjust Enrichment** (1078–1082), and **Trespass to Chattels** (1089–1095); the **state UDAP statutes of AL** (1111–1125), **AZ** (1126–1138), **CA** (1222–1252), **CT** (1253–1266), **FL** (1307–1321), **ID** (1366–1381), **ILL** (1382–1397), **IN** (1417–1434), **KS** (1435–1458), **KY** (1459–1475), **MA** (1537–1549), **MS** (1597–1610), **NV** (1694–1709), **NY** (1723–1730), **NC** (1757–1768), **OK** (1780–1792), **PA** (1807–1820), **RI** (1873–1885), and **SC** (1886–1898); the **state wiretap statutes of CA** (1151–1179), **DE** (1279–1306), **FL** (1322–1350), **IL** (1398–1416), **MD** (1491–1521), **MS** (1550–1580), **NE** (1611–1639), **NH** (1660–1693), **NY** (1738–1748), **PA** (1821–1850); the **CA Constitution** (1139–1150) and **CA Consumer Privacy Act** (1151–1179); and the **NY Civil Rights Law** (1749–1756).

not concern FCRA at all. Doc. 140-1 at 6. Defendants are correct that "[f]ederal law can preempt state law through conflict preemption and express preemption," both of which are specifically limited to circumstances "when the text of a federal statute *explicitly manifests* Congress's intent to displace state law." *Id.* at 7 (quoting *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1321 (11th Cir. 2023) (emphasis added)). The scope of federal preemption depends on the statutory language, along with that of any savings clause in the act. *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 63 (2002).[3] The plain language of a preemption clause is "the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc.*, 507 U.S. at 664.

When state law pertains to "a field which the States have traditionally occupied," the federal act will preempt the state's laws *only when* "that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).[4] "[A] strong presumption exists *against* finding express preemption when the subject matter…is one that has traditionally been regarded as properly

---

[3] *See also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) (where Congress preempted state law "requirements or prohibitions" based on smoking and health advertising, claims with respect to express warranties, fraud, misrepresentation, and conspiracy were not preempted because they were predicated on general standard not to deceive which is not duty based on "smoking or health").

[4] *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, (1996) (plurality opinion) (federal Medical Device Amendments provisions did not preempt state products liability claims).

within the scope of the states' rights." *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998) (emphasis added); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359 (S.D. Fla. 2014) (citing same) (narrowly construing federal preemption).

Here, the presumption against preemption applies because Plaintiffs' state law claims against Defendants arise from fields that states have traditionally occupied—tort and consumer protection. *See Mazda Motor Corp.*, 136 F.3d at 767 (recognizing "tort" as "properly within the scope of the states' rights"); *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1990) ("Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area."). Defendants have made no such strong showing.

Contrary to Defendants' arguments, the purpose of FCRA is not to ensure the "free flow of consumer information" to the exclusion of all other rights supplied by state law. Doc. 140-1 at 9. Rather, its purpose is to ensure that consumer reporting is "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of consumer information. 15 U.S.C. § 1681.[5]

FCRA's general rule is that the Act *does not* preempt state law claims:

> Except as provided in subsections (b) and (c), this title does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers or for

---

[5] *See also* 15 U.S.C. § 1681(a)(4) ("[T]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.").

> the prevention or mitigation of identity theft, <u>except to the extent that those laws are inconsistent</u> with any provision of this title, and then <u>only to the extent of the inconsistency</u>.

15 U.S.C. § 1681t(a) (emphasis added).[6] Plaintiffs address the limited exceptions to this general rule below in Section I (B) and (C).

Although the Eleventh Circuit has not explicitly ruled upon the proper scope of FCRA preemption, courts have consistently held that Congress did not intend to comprehensively preempt state law claims from the field of credit reporting regulation. *See Farmers Ins. Group*, 378 F.3d 839, 842 (8th Cir. 2004) (provision demonstrates Congress did not intend to preempt field of claims); *Credit Data of Ariz., Inc. v. State of Ariz.*, 602 F.2d 195, 197 (9th Cir. 1979) (same); *Aldrich v. N. Leasing Sys., Inc.*, 91 N.Y.S.3d 401 (N.Y. App. Div. 2019) (FCRA does not prevent states from giving consumers more protection than federal statute). Indeed, the U.S. Senate bill for FCRA made clear that "no state law would be preempted unless compliance would involve a violation of Federal law." Senate Report 91-517, 91st Cong., 1st Sess. at 8 (Nov. 5, 1969); *see also* Petruccelli, FTC Informal Staff Opinion Letter (July 15, 1981) ("FTC Letter") (appended at Exhibit 1 at 474) ("[FCRA] was intended to preempt state law only where compliance with the state law would cause

---

[6] *See also Davenport v. Farmers Ins. Group*, 378 F.3d 839, 842 (8th Cir. 2004) ("FCRA makes clear that it is not intended to occupy the entire regulatory field with regard to consumer reports"); *Welch v. Target Nat'l Bank*, 2009 WL 1659708, at *2 (M.D. Fla. June 15, 2009) (plaintiff's claim under Florida Consumer Collection Practices Act was not preempted, citing Section 1681t(a)).

a violation of the Federal statute.”). Not surprisingly, Defendants fail to acknowledge this clear legislative intent limiting FCRA’s preclusive effect.

District courts in this Circuit have endorsed a narrow interpretation of FCRA preemption, expressly holding that state law claims brought in the credit reporting context are not preempted or are only partially preempted where those claims challenge conduct beyond that remedied by FCRA.[7] Other courts in this Circuit have implicitly recognized the same by holding plaintiffs’ state common law claims are not preempted where defendants acted intentionally or with malice.[8] Indeed, the Consumer Financial Protection Bureau (“CFPB”) has clarified that FCRA’s express preemption provisions have a “narrow and targeted scope.”[9]

---

[7] *See, e.g., Frye v. Capital One Auto Fin.*, 2015 WL 3540445, at *2 (S.D. Fla. June 3, 2015) (emphasizing that “[c]ourts within the Eleventh Circuit have also highlighted the limited nature of the preemption provision,” and preserving part of plaintiff’s state debt collection practices act claim); *Spencer v. Nat’l City Mortg.*, 831 F. Supp. 2d 1353, 1365 (N.D. Ga. 2011) (emotional distress claim would survive preemption “to the extent it is based on conduct not regulated under § 1681s-2”); *Callum v. New Rez, L.L.C.*, 2021 WL 2792134 (M.D. Fla. Apr. 28, 2021) (Florida statutory claim based on direct contact with consumer in attempt to collect debt no longer owed was not tied to credit reporting, and thus not preempted).

[8] *See, e.g., Embrey v. First Franklin Fin. Corp.*, 2013 WL 1289401 (S.D. Fla. Mar. 12, 2013) (implicitly rejecting total preemption; because malice is sufficiently alleged, defamation claim is not preempted).

[9] CFPB, The Fair Credit Reporting Act’s Limited Preemption of State Laws, 87 Fed. Reg. 41, 42 (July 11, 2022) (hereinafter “CFPB Interpretive Rule”), available at https://www.consumerfinance.gov/rules-policy/final-rules/the-fair-credit-reporting-acts-limited-preemption-of-state-laws/. Although this guidance was recently withdrawn by the current administration, its reasoning was not challenged and it remains the reasoned analysis of FCRA preemption by subject area experts.

The non-binding authority Defendants cite in support of a sweeping interpretation of FCRA preemption is directly contrary to the text and legislative history of FCRA. Doc. 140-1 at 8 (citing *Spencer v. National City Mortg.*, 2011 WL 13217023, at *9 (N.D. Ga. Apr. 13, 2011), *report and recommendation adopted*, 831 F. Supp. 2d 1353 (Aug. 11, 2011). As such, this Court should also recognize that FCRA does not preempt state laws unless complying with state law would require Defendants to violate FCRA or certain explicit FCRA exceptions apply.[10] Neither circumstance exists here.

**B. Plaintiffs' State Law Claims are Not Inconsistent with FCRA.**

State law is preempted as inconsistent with FCRA only where complying with the state law would "cause a violation" of FCRA. *See* Ex. 1, FTC Letter; *see also Credit Data of Ariz., Inc.*, 602 F.2d at 198 ("compliance with the [state law] would not trigger a federal enforcement action on the ground that the [state law] is

---

*See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2262 (2024) ("[C]ourts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes."); CFPB, Compendium of Recent CFPB Guidance (Jan. 14, 2025) ("[The CFPB's] interpretations [ ] reflect the best reading of the federal consumer financial laws and [ ] the reasoning provided therein will therefore prove to be durable.").

[10] *See, e.g., Credit Data of Ariz., Inc.*, 602 F.2d at 198 (finding no conflict between Arizona law obligating CRAs to provide consumer reports for free when FCRA allows a "reasonable charge" for same); *Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254 (S.D.N.Y. 2019) (New York law requiring notice to consumer before consumer report was obtained was not preempted by FCRA); *Gilette v. Uber Tech., Inc.*, 2015 WL 4931793, at *3 (N.D. Cal. Aug. 18, 2015) (statutory language disclaims field preemption).

inconsistent with [FCRA]."). A state law is not inconsistent with FCRA merely because it gives consumers *more* protection than FCRA.

Plaintiffs' state law claims are not in conflict with FCRA because (1) they in part concern conduct that is not regulated by FCRA and (2) complying with state laws would not cause Defendants to violate FCRA. Regarding (1), Plaintiffs' state law claims are not—and cannot be—in conflict with FCRA to the extent that they challenge conduct that is *not regulated* by FCRA at all, but rather challenge Defendants' invasion of privacy, theft, and unfair and deceptive acts and practices:

1. Plaintiffs' federal and state wiretap claims allege that Defendants intentionally disclosed the contents of "*electronic communications* sent within, to, and from Plaintiffs' [cars]" that were intercepted by GM (¶¶ 1402-05) (emphasis added); used those intercepted communications to "*create products* they market, license, and sell, including so-called driving scores, risk ratings, and access to databases containing [Plaintiffs' electronic communications]" (¶ 1412) (emphasis added); and that Defendants knew or should have known that this information was captured in secret, (¶ 1413).

2. Plaintiffs' statutory and common law invasion of privacy claims, or conspiracy to commit invasion of privacy, allege that despite Plaintiffs' "reasonable expectation that data regarding their locations, driving abilities, patterns, decisions, and habits engaged in while they are in their own vehicles would not be collected by GM without their express consent, and that such data would not be shared with or used by third parties without their express consent" (¶ 1054), Defendants conspired to (¶ 1069) and did "deliberately design devices and programs that surreptitiously obtain, improperly gain knowledge of, review, retain, package, and sell [Plaintiffs' data]" (¶ 1057); and improperly profiting from same, (¶ 1063).

3. Plaintiffs' trespass to chattels claim alleges Defendants committed trespass in part by "(1) accessing and utilizing Driving Data generated

by Plaintiffs' vehicle and associated systems/hardware without Plaintiffs' informed consent and authorization, and (2) embedding, enabling, and activating software/hardware to extract Driving Data from Plaintiffs' vehicle without informed consent to do so." (*Id.* at ¶ 1092).

4. Plaintiffs' Unfair and Deceptive Acts and Practices ("UDAP") and unfair competition law claims allege Defendants engaged in unfair conduct in part by "soliciting and accepting Plaintiffs' [ ] Driving Data from GM with knowledge that such data was obtained without Plaintiffs' [ ] consent, and further using, selling and disseminating [such information]," (*see, e.g.*, ¶ 1136), and by "knowingly taking advantage of Plaintiffs' [ ] inability to reasonably protect their interests due to their lack of knowledge regarding GM's practices, of which LexisNexis and Verisk were aware[,]" (¶ 1137).

5. Plaintiffs' unjust enrichment claim alleges Defendants were unjustly enriched by selling Plaintiffs' Driving Data, which was surreptitiously collected and transmitted, without providing any benefit to Plaintiffs (*See, e.g.*, ¶¶ 1079 and 1081).

Plaintiffs' state law claims challenge conduct beyond Defendants' technical credit reporting. Plaintiffs allege Defendants "sought to carve out a role in "build[ing] an ecosystem [of connected cars] that supports profitable growth[,]" and vied for access to consumers' Driving Data, pitching the opportunity for automakers and insurers alike to use them as a "single point of contact" between "hundreds" of automakers and "hundreds of insurers wanting access to the data[.]" ¶ 694. They pursued these unprecedented roles including by, in Verisk's case, creating a dynamic "'DrivingDNA Lab,' a 'research and development environment where an insurer can study the lift and impact of Verisk's score and telematics data attributes with information from its existing portfolio,'" ¶ 728, and LNRS "used the Driving Data

to 'market and deliver FCRA and *non-FCRA products and solutions* to Insurers.'" ¶ 751 (emphasis added). Defendants argue that because CRAs are not obligated by FCRA to provide notice and consent to consumers in circumstances such as here and that any state law that would require otherwise is preempted by FCRA. Yet, this argument is undercut by Plaintiffs' allegations that Defendants *knew* that notice and consent were legal prerequisites to obtaining Plaintiffs' Driving Data, and that Plaintiffs were unlikely to consent if Defendants' practices were revealed:

> LexisNexis was also very mindful that obtaining this 'valuable asset' [Driving Data] could be difficult to do legally—under 'challenges and barriers,' it noted that creating 'steps required to gain consent' could cause customer 'friction'—meaning that a customer may not, ultimately, agree to share their Driving Data. Further, LexisNexis also acknowledged the problem of a 'broken consent chain'—or that consumers may consent to data sharing for some purposes, but not for others. Fully aware of these 'challenges and barriers,' LexisNexis accepted Driving Data from GM. ¶¶ 761–62.

To the extent Plaintiffs' state law claims touch upon consumer reporting, such claims do not interfere with FCRA's requirements. Defendants argue that because FCRA does not obligate them to provide direct notice or obtain express consent from consumers before sharing a consumer report with third parties, including insurers, they cannot be obligated to do so by state law. Mot. at 6. Not so. Section 1681b(a) of FCRA provides that Defendants may only furnish consumer reports to third parties under certain enumerated circumstances, including to a user who "intends to use the information in connection with the underwriting of insurance involving

the consumer" and "no other [circumstances]," Section 1681b(a).[11] If Defendants were to comply with state law by providing consumers with notice prior to creating a consumer report containing Plaintiffs' Driving Data, such actions would not violate Section 1681b(a). Indeed, in *Aghaeepour v. N. Leasing Sys., Inc.*, the court held that a law that *explicitly* required notice to a consumer before a consumer report was obtained was not preempted by FCRA. 378 F. Supp. 3d 254 (S.D.N.Y. 2019); *see also Credit Data of Ariz., Inc.*, 602 F.2d at 198 (upholding state law that mandated CRAs provide free credit disclosures even where FCRA allows CRAs to assess a reasonable charge for same). Because the CRAs' compliance with state law would not violate FCRA, Plaintiffs' state law claims are not inconsistent with FCRA, and are therefore not preempted on that basis.[12]

---

[11] Because FCRA Sections 1681b(a) and 1681e(b) are not enumerated in FCRA's express preemption provisions, as discussed below in Section I(C), they are not subject to express preemption either.

[12] Further, differences in remedy between FCRA and state law do not trigger preemption. *See Ramirez v. TransUnion, L.L.C.*, 899 F. Supp. 2d 941 (N.D. Cal. 2012) (FCRA does not preempt availability of injunctive relief under Cal. Civ. Code § 1785.31(b), *rev'd on other grounds*, 594 U.S. 413 (2021); *Rex v. Chase Home Fin. L.L.C.*, 905 F. Supp. 2d 1111, 1153–1154 (C.D. Cal. 2012) (inclusion of false reporting in measuring damages is not a "requirement or prohibition" within the meaning of FCRA's express preemption provisions and does not result in preemption); *DeVries v. Experian Info. Sols., Inc.*, 2018 WL 1426602, at *4 (N.D. Cal. Mar. 22, 2018) (injunctive relief not preempted).

### C. Plaintiffs' State Law Claims are Not Covered by FCRA's Express Preemption Provisions.

FCRA does not preempt state laws unless they are inconsistent with FCRA or, unless they are explicitly preempted by FCRA. Section 1681t(b) states "[n]o requirement or prohibition may be imposed under the laws of any State" with respect to five different areas. Of these five areas, only Sections 1681t(b)(1) and (1681t(b)(5)) are relevant here.[13] Regarding express "subject matter" preemption, only four subjects concern CRAs, none of which concern Plaintiffs' state law claims.[14] And regarding express "conduct required" preemption, all of the provisions relate explicitly to the right to a free annual consumer report[15] or identity theft.[16] As

[13] Plaintiffs' claims do not concern: the exchange of information among affiliates as GM, LNRS, and Verisk are separate entities (1681t(b)(2)); nor designated disclosures required by Section 1681g, as Plaintiffs' claims do not seek disclosures from LNRS and Verisk in addition to those required pursuant to FCRA (Section 1681t(b)(3)); nor the frequency with which consumers can obtain free consumer reports, as Plaintiffs make no allegations regarding the cost of consumer reports (Section 1681t(b)(4)).

[14] Plaintiffs' state law claims impose no requirement or prohibition with respect to: concern the prescreening of consumer reports (Section 1681b(c)); consumer's election to be removed from prescreened lists (Section 1681b(e)); the time by which a CRA must take any action in any procedure related to disputed information in a consumer's file (Section 1681c); or obsolescence periods for information contained in consumer reports (Section 1681i).

[15] 15 U.S.C. § 1681j(a) (free annual consumer report).

[16] 15 U.S.C. §§ 1681c(g); 1681c-1, 1681c-2, 1681g(a)(1)(A), 1681m(e)-(g); 1681s(f); 1681s-2(a)(6), 1681w (all concerning identity theft). FCRA savings clause's specific *reservation* of state laws "for the prevention or mitigation of identity theft," 15 U.S.C. § 1681t(a), further argues for a strict construction of this preemption provision.

such, Plaintiffs' state law claims "impose no requirement or prohibition with respect to" these enumerated subjects or mandated conduct and are not preempted.

## II. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED UNDER 15 U.S.C. § 1681H(E).

Section 15 U.S.C. § 1681h(e) provides as follows:

> **Except as provided in sections 616 and 617 [15 USCS §§ 1681n and 1681o]**, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615 [15 USCS § 1681g, 1681h, or 1681m], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report [,] **except as to false information furnished with malice or willful intent to injure such consumer**.

15 U.S.C. § 1681h(e) (emphasis added). To determine whether claims are preempted under 15 U.S.C. § 1681h(e), a court undertakes a two-step inquiry:

> The court asks at the first step whether Plaintiff's…claim falls within the scope of § 1681h(e), which includes only claims based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report. At the second step, the court asks whether the malice or willful intent to injure' exception to the general bar against state law actions applies.

*Hickman v. Pa. Higher Educ. Assistance*, 2017 WL 8186732 at *8 (N.D. Ga. Sept. 27, 2017). For the reasons discussed below, Section 1681h(e) does not preempt Plaintiffs' claims.

**A. 15 U.S.C. § 1681h(e) is Inapplicable to Plaintiffs' Claims.**

Section 15 U.S.C. § 1681h(e) applies only to claims that are "based on information disclosed pursuant to Section 1681g [concerning disclosures to consumers], 1681h [concerning conditions and form of disclosures to consumers], or 1681m [concerning the requirements on users of consumer reports], of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[.]" Courts have confirmed in numerous decisions that Section 1681h(e) does not apply outside of the circumstances enumerated in the section. *See*, *e.g. In re Equifax Fair Credit Reporting Act Litig.,* 2023 WL 6192732 at *6 (N.D. Ga. Sept. 11, 2023) (Section 1681h(e) inapplicable where negligence claim "not based on information disclosed pursuant to § 1681g, § 1681h, or § 1681m, as those statutes all pertain to disclosures that must be made to consumers, nor is the claim based on a disclosure made by 'a user of a consumer report'") (internal citations omitted); *see also Pinckney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1321-22 (N.D. Ga. Apr. 27, 2005) (Section 1681h(e) inapplicable where action not based on disclosures under Sections 1681g, 1681h, or 1681m or a user of a consumer report who took adverse action against a consumer).

Therefore, as a threshold matter, this section is inapplicable to Plaintiffs' claims because they do not fall under any of the sections stated in Section 1681h(e)

and do not concern allegations that a user of collected information has taken adverse action against a consumer. Instead, Plaintiffs' claims are based on the collection and sale of Plaintiffs' Driving Data by Defendants to third parties who further used and monetized that information, all without Plaintiffs' knowledge or consent. Nor are Plaintiffs' claims based on information disclosed to them under 15 USCS § 1681g. Instead, Plaintiffs' claims are based on Plaintiffs' discovery of the CRAs' tortious conduct through information taken and collected directly from Plaintiffs' cars and devices, through investigation by Plaintiffs' counsel, and public news reporting.[17]

Defendants heavily rely on *Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999 (11th Cir. 2008), but that case is very different from the facts here. In *Lofton-Taylor*, the plaintiff alleged that "Verizon [a furnisher] knew that she did not owe it any money, but still willfully reported that she did to Certegy [a check servicer], which used the false information to prevent her from writing checks to pay for goods and services." *Id.* at 1002. In that case, unlike here, adverse action had been taken against the plaintiff by a user of a consumer report. As such, her claims fell within

[17] Representative Leonor Sullivan, House sponsor of FCRA, put it this way: "The bill bars defamation and the invasion of privacy suits against an agency, but only if the individual bases his suit on information disclosed under the act. If the individual uses information obtained through independent sources, whether he has also obtained disclosures under the act or not, he may of course bring any action allowed by common law or statute. It is not intended that the bill grant any immunity to an agency from such suits by individuals whenever the agency has furnished information under this act." 116 Cong. Rec. 36,573 (1970).

Section 1681h(e), and her state law defamation and invasion of privacy claims were preempted.

Here, Plaintiffs' claims are neither based on 15 USCS §§ 1681g, 1681h nor 1681m, nor based on information disclosed by a user who took adverse action against Plaintiffs. Thus, Plaintiffs' claims are not preempted under Section 1681h(e).

### B. Plaintiffs' Claims Are Not All "In the Nature of Invasion of Privacy" and are Therefore Not Preempted.

Even if Section 1681h(e) was applicable to Plaintiffs' claims (which it is not), Defendants have cited no authority indicating that this Section applies broadly to preempt any claim involving the non-consensual collection and disclosure of consumer data. Yet, Defendants argue that Section 1681h(e) preempts Plaintiffs' causes of action, including state wiretapping, UDAP, and unfair competition statutes, each of which involve different elements than a tortious invasion of privacy claim. *See* Doc. 140-1 at 15–17.

As a preliminary matter, Section 1681h(e) does not apply to statutory claims at all, only tort claims. *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1375 (N.D. Ga. 2004); *Hickman*, 2017 WL 8186732 at *8; *see also Apodaca v. Discover Fin. Serv.*, 417 F. Supp. 2d 1220, 1235 (D.N.M. 2006) (holding Section 1681h(e) did not extend to claims under state statute). For this reason alone, Section 1681h(e) cannot preempt any of Plaintiffs' statutory claims. And caselaw does not support

applying Section 1681h(e) to tort claims other than those specifically listed: defamation, negligence and invasion of privacy.

Indeed, cases cited by Defendants only preempt the specific claims listed in the statute. *See, e.g., Lofton-Taylor*, 262 F. App'x at 1002 (defamation and invasion of privacy); *Morse v. Trans Union Corp.,* 2024 WL 5346414 at *2 (N.D. Fl. Nov. 26, 2024) (defamation). These cases do not support expanding Section 1681h(e) to preempt a broader range of tort claims, as Defendants argue here.

*Harmon v. Regions Bank*, 961 So. 2d 693 (Miss. 2007) also provides Defendants no support. In that case, the court applied Section 1681h(e) to bar a harassment claim because Mississippi law defined invasion of privacy to include disclosures which would subject a person to harassment. *Id.* at 699. The reasoning in *Harmon*, which was based on a specific aspect of Mississippi law and involved a harassment claim, cannot be extended to Plaintiffs' claims here.

**C. Defendants Reported Plaintiffs' Inaccurate Information with Malice or Willful Intent.**

Even if 15 U.S.C. § 1681h(e) was applicable to any of Plaintiffs' claims, they fall within the exception to this section, which applies to "false information furnished with malice or willful intent to injure such consumer." Defendants gloss over this section, providing no substantive analysis. *See* Doc. 140-1 at 17–18.

First, as discussed below and in MCC Section III(A), Plaintiffs' Driving Data as collected and transmitted by Defendants was "false."

Second, for Section 1681h(e) purposes, courts use the Supreme Court's definition of malice: a statement made with "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).[18] Malice need not be pled with particularity and can be "averred generally." *Jordan*, 377 F. Supp. 2d at 1310; *see also Johnson*, 351 F. Supp. 2d 1368, 1376; *Vickie M. Champion v. Global Credit Card Serv., L.L.C.*, 2012 WL 3542225, at *6 (N.D. Ala. Aug. 15, 2012) (allegation that actions "were willful, reckless, wanton and/or made with malice" are sufficient.).

Third, for Section1681h(e) purposes, willful intent to injure is sufficiently alleged when a plaintiff alleges that an entity reported information it knew to be false. *Kamps v. Midland Funding, LLC*, 2013 WL 622505, at *4–5 (N.D. Ala. Feb. 19, 2013). The standard for willful intent to injure under Section 1681h(e) is essentially the same as the standard for punitive damages under Section 1681n—an entity either knowing its actions violated the consumer's rights under FCRA or

[18] *See, e.g., Jordan v. Trans Union LLC*, 377 F. Supp. 2d 1307, 310 (N.D. Ga. 2005) (malice sufficiently pled where defendants willfully published misleading and/or inaccurate information to third parties); *Johnson*, 351 F. Supp. 2d at 1376 (defendant reported plaintiff's disputed account as delinquent); *Embrey v. First Franklin Fin. Corp.*, 2013 WL 1289401, at *5 (S.D. Fla. Mar. 12, 2013) (malice sufficiently alleged where defendants "exhibited a knowing disregard for the truth."); *Saindon v. Equifax Info. Serv.*, 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) (malice sufficiently alleged where plaintiff pled defendant's procedures did "virtually nothing to determine the actual credibility of the source" of information in credit reports).

acting with reckless disregard as to whether its actions contravene those rights. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 227, 229 (3rd Cir. 1997). Willful intent to injure under this section has also been found when an entity "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 833 (E.D.N.Y. 1994).

Plaintiffs have sufficiently alleged malice and willful intent to injure under these standards. *See, e.g.,* ¶ 931 ("Smart Driver is a fundamentally flawed system, and LexisNexis and Verisk fully understand, or were reckless in not understanding, the flaws within the system").[19] These allegations, coupled with the specific details of Defendants' actions that Plaintiffs allege in the MCC, sufficiently pled the requisite malice and willful intent to injure.

[19] *See e.g.,* ¶ 1061 ("In sharing Plaintiffs' and Class Members' Driving Data . . . Defendants acted in reckless disregard of Plaintiffs' and Class Members' Privacy rights"); ¶ 1067 ("Defendants' malicious, oppressive and willful actions were done in conscious disregard of their [Plaintiffs'] rights"); ¶ 1106 ("LexisNexis and Verisk have knowingly and willfully engaged in the collection and production of inaccurate data metrics regarding Plaintiff[s'] and Class Members' driving abilities."); ¶ 1108 (Defendants' "deceptive acts and practices constitute reckless and/or negligent violations of FCRA"); ¶ 1690 ("Defendants' installation and use of the TCU, as well as interception, tracking, disclosure and use of Plaintiffs' . . . communications, were intentional, willful, and wanton."); ¶ 1726 ("Defendants acted intentionally, knowingly, and maliciously to violate N.Y. Gen. Bus. Law § 349, or acted with reckless disregard for the rights of Plaintiffs and New York Subclass Members."); ¶ 1790 (similar); ¶ 1805 (similar); ¶ 1819 (similar); ¶ 1897 (similar).

### D. Defendants' Reporting of Plaintiffs' Inaccurate Information Constituted Willful, or at Least Negligent, Non-Compliance with FCRA.

Finally, Section 1681h(e) applies "except as provided" in 15 U.S.C. §§ 1681n and 1681o. Under 15 U.S.C. § 1681n, any person who "willfully fails to comply" with FCRA "with respect to any consumer" is liable to that consumer for damages as set out in that section. Either a knowing violation or a reckless violation of FCRA will constitute a willful violation. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57–59, (2007); *see also Collins v. Experian Info. Solutions, Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015). Recklessness is "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. Under Section 1681o, any person who "is negligent in failing to comply" with FCRA "with respect to any consumer" is liable to that consumer for actual damages, as set out in that section. This is a lower standard than what is required under Section 1681n and can be satisfied when, for example, an entity fails to take steps to verify the accuracy of disputed information. *See Losch v. Nationstar Morag. LLC,* 995 F.3d 937, 944-947 (11th Cir. 2021); *see also Younger v. Experian Info. Solutions, Inc.*, 817 Fed. App'x 862, 864–65, 871 (11th Cir. 2020).

Plaintiffs have sufficiently alleged Defendants' willful and negligent failure to comply with FCRA, for the same reasons as discussed above in Section II(C). In addition, Plaintiffs have specifically alleged Defendants' willful and negligent

violation of FCRA under 15 U.S.C. §§ 1681n and 1681o in Count 10. *See* ¶¶ 1096–1110. This is yet another reason why Section 1681h(e) does not preempt Plaintiffs' claims.

## III. PLAINTIFFS STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER FCRA.

15 U.S.C. § 1681e(b) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" when a consumer report is prepared. To state a claim under this section, a Plaintiff must allege that the report "contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't reasonable, and that damages followed as a result." *Rhodes v. First Advantage Background Servs. Corp*., 2024 WL 4615775, at *4 (11th Cir. 2024) (internal citations omitted). The elements of a claim under this section have also recently been set out in the following terms: "(1) that a CRA published an inaccurate consumer report to a third party; (2) that it failed to follow reasonable procedures to ensure maximum possible accuracy of its reports; and (3) its failure to follow reasonable procedures caused damages to the plaintiff." *Thomas v. Equifax Info. Servs. LLC*, 2023 WL 4049317, at *2 (N.D. Ga. Apr. 12, 2023), *report and recommendation adopted*, 2023 WL 4049315 (N.D. Ga. May 3, 2023). As discussed below, Plaintiffs have sufficiently alleged each factor to state a claim under Section 1681e(b).

### A. All Plaintiffs Plausibly Allege Inaccuracies.

Inaccurate information under Section 1681e(b) includes information which is either false or which is factually correct but misleading. *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). A "report that contains factually incorrect information is plainly inaccurate under the Fair Credit Reporting Act. So too for a report that contains factually correct information but nonetheless misleads its users as to its meaning or implication." *Id.* While Defendants claim that to be "misleading" under this section, a report must be objectively likely to cause adverse action to be taken against the consumer (*see* Doc. 140-1 at 21), this is not a requirement under *Erickson*, but was cited as an example of a circumstance where a report would be sufficiently misleading. *Id.* Decisions from this circuit confirm that a report must only be "objectively likely to mislead its intended user." *Id.*; *see also McWhorter v. Trans Union LLC,* 2024 WL 3385676, at *3 (11th Cir. July 12, 2024) ("[a] report must be either factually incorrect or objectively likely to mislead its intended user, or both to violate FCRA's standard for accuracy.") (internal citations omitted).

Here, Plaintiffs sufficiently allege their Driving Data, as set out in the consumer reports prepared and furnished by Defendants, was inaccurate, in that it

was both false and misleading. [20] In its motion to dismiss, Defendants do not respond to issues Plaintiffs raise regarding the inaccuracy of the Driving Data reflected in their consumer reports, arguing only that FCRA does not obligate them to "contextualize each element of data" in consumer reports. *See* Doc. 140-1 at 22–23. Defendants are wrong.

First, contrary to Defendants' characterization of Plaintiffs' allegations, all Plaintiffs allege the Driving Data is *so* decontextualized that safe driving habits (like suddenly braking to avoid a collision), are inaccurately characterized as unsafe. *See* ¶¶ 918–19. In addition, the Driving Data collects information relating to any driver of a vehicle, not just Plaintiffs, also rendering the reports inaccurate. And Plaintiffs allege that the time of a trip, speed, and braking can be misleading absent context, such as the speed limit. *See id.*

Second, Defendants' attempt to compare their decontextualized Driver Data collection to the reporting of a tradeline delinquency on a consumer report. *See* Doc. 140-1 at 22. However, credit card payments are a binary report indicator—a person

[20] Examples include: (1) indicators on consumer reports containing Driving Data that suggested inaccuracy (for example some reports reflected a "negative" number of events); (2) the Driving Data was decontextualized; (3) multiple drivers' Driving Data would be captured in a report attributed to a single consumer; (4) the Driving Data and resulting metrics were not reflected in a consistent manner across different reports (e.g., data was compiled in different ways across the reports and the reports used different definitions for various driving events); (5) the Driving Data relating to a specific date is sometimes different in reports prepared by each Defendant regarding the same individual and same vehicle. *See* ¶¶ 916–31, 1106.

either has or has not made a timely payment. Here, Driving Data is used in a subjective manner, including by insurers to determine the risk they would bear in insuring a consumer. This is a situation where context matters. And as explained in the MCC, the Driving Data, as collected and reported by Defendants, is objectively misleading (if not outright false).[21] *See e.g.,* ¶¶ 918–919. Plaintiffs' claims therefore differ from those in *Peterson v. Equifax Info. Servs. LLC,* cited by Defendants, where the plaintiff conceded that her accounts were delinquent as reported but sought to provide an explanation for why she had been unable to make the required payments. 2018 WL 7348859, at *9 (N.D. Ga. Dec. 27, 2018).

Third, Defendants' argument that automobile insurers assess risk per household, not per individual, is a factual inquiry. *See* Doc. 140-1 at 23. How insurers assess risk will depend on that insurers' practices, and automobile insurance policies typically include authorized drivers who are specifically covered. Nor does Defendants' assertion address the allegations regarding the inaccurate Driving Data they collect and use. Plaintiffs pled a claim under Section 1681e(b) that inaccurate information appeared on <u>their</u> consumer reports. Notably, the sole legal authority

---

[21] Defendants note the ability to dispute information in consumer reports under FCRA. *See* FCRA MTD at 22 n7. But "there is no requirement that a customer file a dispute with a [credit reporting agency] before bringing a claim against the [credit reporting agency] for a violation of § 1681e(b)." *Benjamin v. Experian Info. Sols., Inc.,* 561 F. Supp. 3d 1330, 1339 (N.D. Ga. 2021).

upon which Defendants rely for this argument is an unpublished, twenty-year old decision that has since been overruled: *Dickens v Trans Union Corp.*, 18 Fed. App'x 315 (6th Cir. 2001), which held that factually accurate information that was misleading was nevertheless accurate for Section 1681e(b) purposes. Revisiting this reasoning in 2020, the Sixth Circuit held that the "technical-accuracy standard" in *Dickens* was in "error." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 944 (6th Cir. 2020) ("[B]ecause *Dickens* and *Turner* are unpublished decisions they are not "precedent," [] and they do not bind us.") (citations omitted).

Other cases cited by Defendants' also fail to support dismissal. In *Erickson*, 981 F.3d 1246, a softball coach claimed a company providing background reports violated FCRA for issuing a report that identified a registered sex offender with the same name and in the same city as the plaintiff. The Eleventh Circuit affirmed the District Court's finding that the defendant company had not violated FCRA's requirement for "maximum possible accuracy" because the report included a disclaimer that the report could be inaccurate and that further review was "required" through checking the state's offender website. *Id*. at 1252 ("[T]he report's language made clear what the report was and was not."). Unlike the defendant in *Erickson*, Defendants include no such disclaimers regarding the potential (and manifold) inaccuracies of Plaintiffs' collected Driving Data, or any independent manner to confirm the reported information.

Defendants cite additional cases that are factually distinguishable as they involve *pro se* plaintiffs who failed to allege or even identify the inaccurate information on their reports, or to provide any factual explanation for why the disputed information was inaccurate, in contrast to the present case where Plaintiffs have provided detailed allegations regarding the inaccuracy of the Driving Data.[22]

**B. Plaintiffs Adequately Allege Defendants Failed to Use Reasonable Procedures Under § 1681e(b).**

Section 1681e(b) of FCRA imposes a clear and non-delegable duty: consumer reporting agencies must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Defendants failed to meet even the lowest threshold of this standard. A prima facie case under Section 1681e(b), "must show at least two

[22] *Saho v. Equifax, Inc.*, 2019 WL 11499337, at *5–6 (N.D. Ga. Oct. 31, 2019), *report and recommendation adopted*, 2020 WL 7388449 (N.D. Ga. Mar. 23, 2020) (unopposed motion to dismiss granted because plaintiff did not identify the alleged inaccuracy or explain what was inaccurate); *Williams v. Trans Union LLC*, 2024 WL 4649363, at *3–4 (N.D. Ga. Oct 2, 2024) (plaintiff filed to "allege facts that supports the reasonable inference that there was an inaccuracy"); *Matthews v. Experian Credit Bureau*, 2024 WL 3342227, at *2 (M.D. Fla. Apr. 24, 2024) (plaintiff did not identify or describe what information on his credit report was inaccurate); *Padilla v. Experian Info. Sols, Inc.,* 2023 WL 4014700, at *3 (S.D. Fla. May 12, 2023) (plaintiff did not "factually allege what information on his credit report is inaccurate.").

things: that a consumer report was inaccurate and that the inaccurate report caused [them] to suffer damages." *Erickson,* 981 F.3d at 1251. A plaintiff must also show "that the procedures [Defendants] took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." *Losch,* 995 F.3d at 944. "Whether [a CRA's] procedures were reasonable will be a jury question in the overwhelming majority of cases." *Id.*

Rather than implementing even basic safeguards to ensure reliability, Defendants used flawed systems, despite knowing those systems could not reliably match data to the correct person or provide the context necessary to make the information meaningful. *See* Section III(A) *supra*. At the pleading stage, Plaintiffs need only plausibly allege that Defendants failed to follow reasonable procedures, and Plaintiffs have done so here. Accordingly, Defendants' motion to dismiss Plaintiffs' Section 1681e(b) claims should be denied.

**C. Plaintiffs Have Adequately Alleged an Injury in Fact.**

Defendants next contend that Plaintiffs have suffered no injury. Plaintiffs, however, sufficiently pled injury in fact. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotations omitted). "At the

pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.

Plaintiffs' allegations are far from boilerplate. The MCC details multiple, individualized examples where Plaintiffs have alleged harm, including experiencing significant premium increases **after** insurers accessed their Driving Data through Defendants' reports containing inaccurate Driving Data.[23] For instance, Plaintiff Horvath was notified by State Farm in April 2024 of a $24 monthly increase, which was later reversed after his Driving Data was removed. ¶ 237–40. Plaintiff Angerhofer's premium increased by more than $334 with American Family Insurance in April 2024, and he also received a quote from Progressive that was more than double his existing rate. ¶ 618. Plaintiff Johnson received an increased premium in July 2024 from American Family Insurance and was also denied coverage or quoted higher rates by other insurers using LexisNexis reports. ¶¶ 34–36. Plaintiff Griner alleges a $208.36 increase in his premium between January 2022 and October 2024 following inclusion of Driving Data. ¶ 183. Plaintiff Kovein's

[23] Several other Plaintiffs similarly allege that inaccurate Driving Data contained in reports prepared by Defendants was accessed by insurers and resulted in increased premiums. *See* ¶¶ 34–36 (Johnson); ¶ 308 (McDaniels); ¶ 354 (LaFalce); ¶ 381 (Melberg); ¶ 450 (S. Smith); ¶ 483 (Fuhrer); ¶¶ 598, 602 (Mason); ¶ 648 (DeVilbiss).

premium nearly doubled between 2020 and 2024, increasing from approximately $50 to $90 per month. ¶ 515. These allegations reflect more than theoretical harm; Plaintiffs specifically allege that they paid more for insurance, were denied insurance coverage, and spent time and resources trying to correct the misinformation.

The MCC plausibly alleges that Defendants disseminated incorrect Driving Data to insurers, the insurers relied on that information, and Plaintiffs suffered increased premiums as a result. This is sufficient to establish injury in fact under Article III. Plaintiffs' allegations of statutory and tangible harm are specific, concrete, and directly traceable to Defendants' conduct. Moreover, Defendants' assertion that Plaintiffs must rule out every alternative cause of premium increases misstates the standard. At the pleading stage, Plaintiffs need not disprove all possible contributing factors for insurance rate hikes. The MCC plausibly alleges that the reports prepared by Defendants contained materially inaccurate Driving Data and that those reports were relied on by insurers in making premium decisions. That is sufficient to establish a causal connection at the pleading stage.

Defendants rely on a line of cases that are readily distinguishable. In *Purdy v. Experian Information Solutions, Inc*., the court dismissed a FCRA claim where the plaintiff failed to allege that the credit risk score was actually used for purposes of determining interest rates. 2005 WL 8157972, at *8 (N.D. Ala. Nov. 3, 2005). In *Dixie Plumbing Specialties, Inc. v. Cain Industries, Inc.*, the complaint was

dismissed for relying solely on allegations made "upon information and belief" without any factual support. *Dixie Plumbing Specialties, Inc. v. Cain Indus., Inc.*, No. 1:17-CV-03866, 2019 WL 13061187, at *3 (N.D. Ga. May 22, 2019). In *Coleman v. Experian Information Solutions, Inc.*, dismissal was appropriate where the plaintiff failed to allege that the inaccurate report was even accessed or used. 655 F. Supp. 3d 1300, 1304–05 (N.D. Ga. 2023). Unlike those cases, Plaintiffs here allege specific premium increases, tied to the timing of insurers' access to reports issued by Defendants, and supported by ample factual detail.

**D. Plaintiffs Have Adequately Alleged Willful Conduct.**

Plaintiffs have adequately alleged that Defendants willfully violated FCRA, as their conduct reflects a reckless disregard of their statutory obligations. *Safeco*, 551 U.S. at 57; *see also supra* Sections II(B)–(D).

The MCC alleges in detail that Defendants acted with reckless disregard by failing to identify, implement, maintain, and monitor systems capable of ensuring the accuracy or integrity of Driving Data. *See* ¶¶ 1101–1106. Rather than establish procedures to verify whether the data they received was accurate, relevant, and correctly attributed to the correct individual, Defendants knowingly relied on systems despite knowing those systems were incapable of performing such functions. *Id*. For example, Plaintiffs allege:

- Defendants "failed to implement any system to determine whether the Driving Data they received was accurate, complete, or related to the correct consumer." ¶ 1101.

- They "failed to adopt procedures to verify the authenticity, accuracy, or relevance of the Driving Data they received and did not confirm whether the data was associated with the consumer whose information appeared in the report." ¶ 1105.

- They "knowingly and willfully engaged in the collection and production of inaccurate data metrics," including "misreport[ing] Driv[ing] Data and PII as being associated with one individual, when that information should be associated with other individuals." ¶ 1106(a).

- They "continued to misreport Driv[ing] Data and PII even when [they] knew that the systems developed to collect and report such information [were] prone to errors, do not correctly report Driv[ing] Data, provide no context for certain Driv[ing] Data, and [were] not subject to review to ensure that the Driv[ing] Data is correct." ¶ 1106(b).

- They "prepared reports which [they] knew, or were reckless in not knowing, that the Driv[ing] Data included therein was inaccurate." ¶ 1106(c).

These allegations are far from conclusory. In response, Defendants mischaracterize Plaintiffs' allegations and dispute statutory definitions, attempting to minimize their obligations under FCRA. Moreover, the cases cited by Defendants are readily distinguishable and inapplicable here. In *Pedro v. Equifax Inc.*, the Eleventh Circuit declined to find willfulness where the defendant's reporting of authorized user information was based on an objectively unreasonable interpretation of FCRA. 868 F.3d 1275, 1282 (11th Cir. 2017). Here, Defendants have no plausible FCRA interpretation to fall back on. Plaintiffs allege that they knowingly used

flawed systems to collect Driving Data, failed to implement any accuracy checks, and continued providing flawed Driving Data to insurance companies. Defendants' reliance upon *Alexander v. Certegy Check Services, Inc.*, 2016 WL 7478961 (M.D. Fla. Dec. 29, 2016), and *Lewis v. Experian Information Solutions, Inc.*, 2024 WL 1308705 (E.D.N.Y. Mar. 27, 2024), is also unhelpful and misplaced. In *Alexander*, the court dismissed plaintiff's willfulness claim because they "merely allege[d] that the violations were 'willful,' without pleading any facts in support of this legal conclusion." 2016 WL 7478961, at *4. In *Lewis*, the court similarly found that the plaintiff's allegations were unsupported by specific facts therefore failing to state a plausible claim of willful misconduct. 2024 WL 1308705, at *6. Therefore, Defendants' motion to dismiss Plaintiffs' willfulness allegations under Section 1681e(b) must be denied.

### E. Defendants Did Not Furnish Reports For any Permissible Purpose under FCRA.

Defendants wrongly claim that Plaintiffs have not adequately alleged violations of Sections 1681b or 1681e(a), i.e., prohibiting furnishing of consumer reports for a purpose not authorized under FCRA. *See* Doc. 140-1 at 18 n.5. Under Section 1681b(a)(3)(C), a consumer reporting agency may furnish a consumer report "[t]o a person which it has reason to believe…intends to use the information in connection with the underwriting of insurance involving the consumer." However, where furnishing an insurance report is done in relation to an "insurance transaction

that is not initiated by the consumer," this may only be done under circumstances where the consumer has consented to the disclosure or, among other things, the transaction consists of a "firm offer of…insurance." Section 1681b(c)(1). Nor did Defendants have any permitted purpose to sell Driving Data to any third party to whom Plaintiffs did not provide "written instructions" to do so (Section 1681b(a)(2)), "initiate[]" transactions with, or seek employment from (Sections 1681b(a)(3)(A), (B) and (C)). In particular, to the extent Plaintiffs were already insured by insurers who received their Driving Data or had not sought insurance from insurers who received their Driving Data, they cannot be said to have "initiated" a transaction with that insurer. In addition, Plaintiffs allege that their Driving Data was shared with additional third parties (*See* ¶¶ 695–768), none of whom were permitted recipients under FCRA.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that Defendants' motion be denied in its entirety. If any part of the MCC is dismissed, pursuant to Fed. Rule Civ. P. 15(a), Plaintiffs request leave to amend.[24]

[24] Fed. R. Civ. P. 15(a)(2); *Nickens v. Equifax Info. Servs., LLC*, 2013 WL 4786975, at *4 (N.D. Ga. Sept. 6, 2013) (Thrash, J.) (recognizing Rule 15 "severely restricts the Court such that there must be "a substantial reason" for denying leave to amend).

Date: May 27, 2025

Respectfully submitted,

/s/ *John R. Bevis*
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

/s/ *Norman E. Siegel*
Norman E. Siegel,
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

***MDL Co-Lead Counsel***

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com

Amy R. Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
akeller@dicellolevitt.com

***GM/OnStar Track Co-Lead Counsel***

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 24th Floor
New York, New York 10169
Tel: (212) 223-4478
jguglielmo@scott-scott.com

Sabita J. Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel: (510) 254-6808
ssoneji@tzlegal.com

***LexisNexis/Verisk Track Co-Lead Counsel***

Kiley L. Grombacher
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: (805) 270-7100
Kgrombacher@bradleygrombacher.com

Emily E. Hughes
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
eeh@millerlawpc.com

P. Graham Maiden
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9670
gmaiden@motleyrice.com

Thomas E. Loeser
**COTCHETT, PITRE & MCCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Tel: (206) 802-1272
tloeser@cpmlegal.com

Adam E. Polk
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
apolk@girardsharp.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
jyanchunis@forthepeople.com

***OnStar Track Steering Committee***

Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
gmb@cglaw.com

Gary S. Graifman
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Rd., Suite 200
Montvale, New Jersey 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com

Jennifer M. French
**LYNCH CARPENTER, LLP**
1234 Camino Del Mar
Del Mar, California 92014
Tel: (619) 762-1903
jennf@lcllp.com

Chris Springer
**KELLER ROHRBACK LLP**
801 Garden Street, Suite 301
Santa Barbara, California 93101
Tel: (805) 456-1496
cspringer@kellerrohrback.com

Jeffrey M. Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

*LexisNexis/Verisk Track Steering Committee*

M. Brandon Smith
**CHILDERS, SCHLUETER & SMITH LLC**
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Tel: (404) 419-9500
bsmith@cssfirm.com

*Plaintiffs' Liaison Counsel*

**CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to L.R. 7.1D that the foregoing complies with the font and point selections permitted by L.R. 5.1C. This brief was prepared on a computer using the Times New Roman font (14 point).

*/s/ John R. Bevis*
John R Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 27th day of May, 2025.

*/s/ John R. Bevis*
John R Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com