**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection Litigation | MDL Docket No. 3115<br>Case No. 1:24-md-3115-TWT |

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO LEXISNEXIS RISK SOLUTIONS INC. AND VERISK ANALYTICS, INC.'S MOTION TO DISMISS THE MASTER CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS


I. THE MCC IS NOT A SHOTGUN PLEADING....5

II. Plaintiffs State A Claim Under the Federal Wiretap Act ("FWA") (Count 2)....7

A. The Driving Data Intercepted by GM is an "Electronic Communication" With "Contents" Under the FWA....8

B. The Tracking Device Exception Does Not Apply....9

C. The Party Exception Does Not Apply....10

III. PLAINTIFFS ALLEGED CLAIMS UNDER STATE WIRETAP LAWS (COUNTS 14, 23, 25, 30, 35, 41, 43, AND 55)....14

IV. PLAINTIFFS SUFFICIENTLY PLED ALL COMMON LAW CLAIMS....18

A. Georgia Law Applies to Plaintiffs' Common Law Claims at the Pleading Stage....18

B. Plaintiffs State a Claim for Invasion of Privacy (Count 5)....19

C. Plaintiffs State a Claim for Conspiracy to Commit Invasion of Privacy (Count 6)....23

D. Plaintiffs State a Claim for Unjust Enrichment (Count 7)....24

E. Plaintiffs State a Claim for Trespass to Chattels (Count 9)....27

V. PLAINTIFFS ALLEGED VIOLATIONS UNDER THE STATE PRIVACY STATUTES....30

A. Plaintiffs State an Invasion of Privacy Claim Under the California Constitution (Count 13)....30

B. Plaintiffs State a Claim for Violation of the California Consumer Privacy Act ("CCPA") (Count 17)....32

VI. PLAINTIFFS STATE CLAIMS FOR VIOLATIONS OF STATE CONSUMER PROTECTION LAWS....33

A. Plaintiffs Have Standing to Bring Consumer Protection Claims Against Defendants....33

B. Plaintiffs Alleged Losses Caused by Defendants' Conduct....37

C. Plaintiffs Alleged their Consumer Protection Claims with the Requisite Specificity....40

D. Plaintiffs Adequately Pled UDAP Claims....41

E. Plaintiffs' Claims are Not Subject to Dismissal Based on a Pre-Suit Notice Requirement. ....................................................................43

VII. PLAINTIFFS' REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF SHOULD NOT BE DISMISSED. ..................................................46

**TABLE OF AUTHORITIES**

*ALK 2, LLC v. K2 Marine, Inc.*,
647 F. Supp. 3d 1253 (M.D. Ala. 2022)....................................................41

*Allergan, Inc. v. Athena Cosms., Inc.*,
640 F.3d 1377 (Fed. Cir. 2011)....................................................34

*Am. Online, Inc. v. LCGM, Inc.*,
46 F. Supp. 2d 444 (E.D. Va. 1998)....................................................28

*Amin v. Mercedes-Benz USA, LLC*,
301 F. Supp. 3d 1277 (N.D. Ga. 2018)....................................................47

*Amin v. Mercedes-Benz USA, LLC*,
349 F. Supp. 3d 1338 (N.D. Ga. 2018)....................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................5

*Ass'n Servs., Inc. v. Smith*,
S.E.2d 454 (Ga. App. 2001)....................................................24

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021)....................................................7

*Bass v. Hendrix*,
931 F. Supp. 523 (S.D. Tex. 1996)....................................................35

*Bazemore v. U. S. Bank Nat'l Ass'n*,
872 S.E.2d 491 (Ga. App. 2022).................................................... 20, 22

*BCR Aviation, LLC v. Texas Gyro, Inc.*,
2019 WL 2437034 (N.D. Tex. June 11, 2019)....................................................38

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)....................................................5

*Bishop v. 7–Eleven, Inc.*,
651 F. App'x 657 (9th Cir. 2016)....................................................39

*Blakey v. Victory Equip. Sales, Inc.*,
259 Ga. App. 34 (Ga. Ct. App. 2002)....................................................22

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*,
344 F.3d 211 (2d Cir.)....................................................38

*Bolling v. Mercedes-Benz USA, LLC*,
2024 WL 3972987 (N.D. Ga. Aug. 27, 2024).....6, 47

*Bolling v. Mercedes-Benz USA, LLC*,
2025 WL 83826 (N.D. Ga. Jan. 10, 2025) ..... 25, 45

*Bowen v. Porsche Cars, N.A., Inc.*,
561 F Supp 3d 1362 (N.D. Ga. 2021) .....29

*Bracy v. Americold Logistics LLC*,
2025 WL 552676 (N.D. Ga. Feb. 19, 2025).....47

*Brown v. Transworld Sys. Inc.*,
646 F. Supp. 3d 1328 (W.D. Wash. 2022) .....38

*Bullard v. MRA Holding, LLC*,
740 S.E.2d 622 (Ga. 2013) .....20

*Cabaniss v. Hipsley*,
151 S.E.2d 496 (Ga. App. 1966) .....20

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021).....28

*Callen v. Daimler AG*,
2020 WL 10090879 (N.D. Ga. June 17, 2020) ..... 47, 48

*Carpenter v. United States*,
585 U.S. 296 (2018) ..... 21, 31

*Chemence, Inc. v. Doherty*,
2007 WL 10025204 (N.D. Ga. Mar. 23, 2007) .....26

*Chen v. Target Corp.*,
2022 WL 1597417 (D. Minn. May 19, 2022) .....46

*Clayworth v. Pfizer, Inc.*,
49 Cal. 4th 758 (2010).....34

*CompuServe Inc. v. Cyber Promotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997).....29

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*,
114 F. Supp. 3d 1342 (N.D. Ga. 2015) .....43

*Crook v. Foster*,
333 Ga. App. 36 (2015)..... 26, 27

*Cumberland Contractors, Inc. v. State Bank & Tr. Co.*,
327 Ga. App. 121 (2014).....23

*Davis v. Angelcare USA, LLC*,
727 F. Supp. 3d 99 (D. Conn. 2024) ....................38

*Dolmage v. Combined Ins. Co. of Am.*,
2015 WL 292947 (N.D. Ill. Jan. 21, 2015) ....................23

*Duncan v. Ellis*,
11 S.E.2d 841 (Ga. App. 1940) ....................28

*Flo Health, Inc., et al.*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) ....................32

*Frazier v. U.S. Bank Nat. Ass'n,*
2013 WL 1385612 (N.D. Ill. Apr. 4, 2013)....................34

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009)....................32

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................39

*Ground Zero Museum Workshop v. Wilson*,
813 F. Supp. 2d 678 (D. Md. 2011) ....................28

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021)....................32

*Hickson v. Home Fed. of Atlanta*,
805 F. Supp. 1567 (N.D. Ga. 1992)....................20

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. 2013)....................39

*Humphrey v. Citibank NA.*,
2013 WL 5407195 (N.D. Miss. Sept. 25, 2013) ....................42

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) ....................35

*In re Actiq Sales & Mktg. Pracs. Litig.*,
790 F. Supp. 2d 313 (E.D. Pa. 2011)....................34

*In re Application for Pen Reg. & Trap/Trace Device with Cell Site Location Auth.,*
396 F. Supp. 2d 747 (S.D. Tex. 2005)....................10

*In re Application of U.S. for an Ord. Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*,
849 F. Supp. 2d 526 (D. Md. 2011) ....................10

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)....................................................................37

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
2021 WL 3568394 (D.S.C. Aug. 12, 2021) ........................................................34

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017)....................................................................42

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
2008 WL 2132233 (N.D. Ga. May 21, 2008) ......................................................18

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..................................................................11

*In re Equifax, Inc., Customer Data Sec. Breach Litig.,*
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ............................................... 5, 18, 25

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011)..................................................................35

*In re Facebook Privacy Litigation*,
572 F. App'x 494 (9th Cir. 2014) ........................................................................29

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020) ........................................................................ 12, 13

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
749 F. Supp. 3d 1240 (S.D. Fla. 2024)..................................................................36

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018)..................................................................36

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ................................................................................12

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,
2024 WL 4333246 (N.D. Ill. Sept. 27, 2024)........................................................46

*In re HCA Healthcare, Inc. Data Sec. Litig.*,
2024 WL 3857330 (M.D. Tenn. Aug. 15, 2024)....................................................36

*In re Home Depot, Inc.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016) ......................................................48

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)............................................... 9, 31, 32

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ....................................................................29

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................28

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)....................11

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,*
613 F. Supp. 3d 1284 (S.D. Cal. 2020)....................36

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024)....................13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017).................... 23, 30

*In re Zetia (Ezetimibe) Antitrust Litig.*,
400 F. Supp. 3d 418 (E.D. Va. 2019)....................42

*In re Zoom Video Comm's Inc. Privacy Litig.*,
2021 WL 930623 (N.D. Cal. Mar. 11, 2021)....................44

*In re Zynga Priv. Litig.*,
2011 WL 7479170 (N.D. Cal. June 15, 2011)....................9, 35

*Jean-Baptiste v. Public Supermarkets, Inc.*,
2024 U.S. App. LEXIS 10971 (11th Cir. May 6, 2024)....................6

*Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*,
720 F. Supp. 2d 904 (S.D. Ohio 2010)....................28

*Johnson v. City of Hoboken*,
476 N.J. Super. 361 (N.J. App. Div. 2023)....................22

*Keilholtz v. Superior Fireplace Co.*,
2009 WL 839076 (N.D. Cal. March 30, 2009)....................34

*Klein v. Oved*,
2022 WL 4772399 (S.D. Fla. Aug. 19, 2022)....................28

*Kwikset Corp. v. Superior Ct.,*
51 Cal. 4th 310 (2011)....................38

*Lan Li v. Walsh*,
2017 WL 3140522 (S.D. Fla. July 24, 2017)....................26

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025)....................21

*Libman v. Apple*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024).................... 15, 16

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)....................................................33

*Miller v. NextGen Healthcare, Inc.*,
742 F. Supp. 3d 1304 (N.D. Ga. 2024) ............................................................46

*Monge v. Madison Cnty. Rec. Inc.*,
802 F. Supp. 2d 1327 (N.D. Ga. 2011) ............................................................22

*Monopoli v. Mercedez-Benz USA, LLC,*
2022 WL 409484 (N.D. Ga. Feb. 10, 2022).......................................................18

*Nalley v. Gen. Motors LLC*,
2022 WL 18459646 (N.D. Ga. Aug. 30, 2022)...................................................25

*New Mexico ex rel. Balderas v. Tiny Lab Prods.*
516 F. Supp. 3d 1293 (D.N.M. 2021)................................................................35

*New Mexico ex rel. Balderas v. Tiny Lab, Prods.*,
457 F. Supp. 3d 1103 (D.N.M. 2020)................................................................35

*Newman v. Metro. Life Ins. Co.*,
885 F.3d 992 (7th Cir. 2018).............................................................................37

*Peterson v. Aaron's, Inc.*,
2017 WL 364094 (N.D. Ga. Jan. 25, 2017) .......................................................18

*Petric v. State*,
504 A.2d 1168 (Md. Ct. Special App. 1986) .....................................................16

*Regions Bank v. Kaplan*,
2021 WL 4852268 (11th Cir. Oct. 19, 2021) .....................................................23

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................................... 13, 14

*Rickman v. BMW of N. Am.*,
2020 WL 3468250 (D.N.J. June 25, 2020) ........................................................46

*Rudy v. Fam. Dollar Stores, Inc.*,
583 F. Supp. 3d 1149 (N.D. Ill. 2022)................................................................37

*Saika v. Ocwen Loan Servicing, LLC*,
357 F. Supp. 3d 704 (N.D. Ill. 2018)..................................................................38

*Sebastian v. Ortiz*,
918 F.3d 1301 (11th Cir. 2019).........................................................................14

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*,
2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018).....................................................45

*Severn Place Assocs. v. Am. Bldg. Servs., Inc.*
930 So.2d 125 (La. Ct. App. 2006) ....................40

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ....................45

*Shah v. Cap. One Fin. Corp.*,
2025 WL 714252 (N.D. Cal. Mar. 3, 2025) ....................33

*Smith v. Maryland*,
442 U.S. 735 (1979) ....................16

*Sowa v. Mercedes-Benz Grp. AG Mercedes-Benz USA, LLC*,
2024 WL 5290887 (N.D. Ga. Dec. 31, 2024) ....................48

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*,
621 F. Supp. 2d 309 (E.D. Va. 2009) ....................28

*State v. Ayers*,
383 A.2d 87 (N.H. 1978) ....................17

*State v. Locke*,
761 A.2d 376 (N.H. 1999) ....................17

*Sun Kin Chan v. State*,
552 A.2d 1351 (Md. Ct. Special App. 1989) ....................16

*Sunshine Children's Learning Ctr., LLC v. Waste Connections of Fla., Inc.*,
2022 WL 218896 (S.D. Fla. Jan. 25, 2022) ....................44

*Tarpon Bay Partners LLC v. Zerez Hldgs Corp.*,
547 F. Supp. 3d 195 (D. Conn. 2021) ....................36

*Vita v. New England Baptist Hospital*,
243 N.E.3d 1185 (Mass. 2024) ....................15

*Weiland v. Palm Beach Cnty.*,
792 F.3d 1313 (11th Cir. 2015) ....................5, 6

*Weinberg v. Sun Co.*,
565 Pa. 612 (2001) ....................35

*WESI, LLC v. Compass Env't, Inc.*,
509 F. Supp. 2d 1353 (N.D. Ga. 2007) ....................25

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ....................12

Statutes

18 U.S.C. § 2510(8) ..... 8
18 U.S.C. § 2510(12) ..... 8, 16, 17
18 U.S.C. § 2511(1)(c), (d) ..... 7
720 ILCS 5/14-1 ..... 17
815 ILCS 505/2 ..... 41
Ala. Code § 8-19-5 ..... 41
Ala. Code § 8-19-10(e) ..... 45
Conn. Gen. Stat. Ann. § 42-110 ..... 41
Fla. Stat. 501.204 ..... 41
Ind. Code § 24-5-0.5-5 ..... 45
Ind. Code § 24-5-0.5-3(a) ..... 41
K.S.A. § 50-624(l) ..... 35
K.S.A. § 50-627 ..... 41
Ky. Rev. Stat. Ann. § 367.170 ..... 41
Mass. Gen. Laws ch. 93A, § 2(a) ..... 41
Mass. Gen. Laws ch. 93A, § 9(3) ..... 45
Md. Cts. & Jud. Pro. § 10-401(5) ..... 16
Miss. Code § 75-24-5(2) ..... 42
N.C. Gen. Stat. § 75-1.1(a) ..... 41
N.Y. Civil Rights Law §§ 50 and 51 ..... 30
N.Y. Gen. Bus Law §§ 899aa ..... 30
Nev. Rev. Stat. §§ 598.0915 ..... 41
NY GBL § 349 ..... 34

Rules

Fed. R. Civ. P. 12(b)(6) ..... 5

Other Authorities

Restatement (Second) of Torts § 217 ....................................................................27
Restatement (Second) of Torts § 652D ....................................................................21

# INTRODUCTION

Verisk Analytics, Inc. ("Verisk") and LexisNexis Risk Solutions Inc. ("LNRS") (collectively, "Defendants") are data brokers—meaning, companies that generate profit by surreptitiously collecting and selling consumer Driving Data without their knowledge or consent. Specifically, over the last decade, GM and Defendants turned Plaintiffs' and the Class vehicles into real-time data collection devices of consumers' Driving Data. ¶¶ 693–94, 698, 702, 742–44.[1] Defendants developed "data exchanges" using Plaintiffs' Driving Data whereby they built and licensed this information to insurers and other third parties, without regard to the accuracy of the Driving Data or the legality of their practices, for their financial and commercial benefit. ¶¶ 759–62, 799–816, 828–30, 835–43, 858–871, 916–931, 952, 1006–1008, 1061, 1171, 1173, 1226, 1233, 1236, 1298, 1301, 1344, 1574, 1632, 1686, 1844.

Defendants' scheme with GM was uncovered only when they were forced to disclose that they collected and sold Driving Data to insurers and other third parties, causing privacy violations, inflated insurance premiums and other harms to Plaintiffs and the Class by providing Driving Data to insurers.

[1] Citations to "¶" are to paragraphs of the Master Consolidated Class Action Complaint ("MCC").

## BACKGROUND

Verisk is a data aggregator that offers multiple products to the automotive industry. Starting in October 2015, and until 2024, when GM discontinued Smart Driver after the true nature of the program was exposed, Verisk bought, stored, manipulated, and sold GM customers' Driving Data without their knowledge or consent. ¶¶ 702, 957. The GM contract was a "major win for Verisk, which ha[d] been fighting for a foothold" in the usage-based insurance market.[2] ¶¶ 696–697. Since 2014, Verisk has operated a "Verisk Telematics" division, which promised to "innovate and provide solutions that help our customers retain their edge and improve their margins[.]" ¶ 695. In 2016, Verisk's Vice President of Telematics wrote that telematics "brought auto manufacturers and insurers into alignment, with both industries recognizing the potential of telematics…. [which] gives auto-makers the potential to capitalize on vast amounts of data." ¶ 701.

Under the terms of the agreement, Verisk independently developed a "Driving Score" for GM's customers using their Driving Data. ¶ 704. Verisk also "mined [the data] to prepare Driving Behavior Data History Reports[,]" and then "sold these reports to auto insurance companies[.]" *Id.* Further, Verisk developed a database to store the Driving Data, which Verisk called the "Verisk Data Exchange," and marketed and sold licenses to insurance companies to use and access the Exchange.

---

[2] Usage-based insurance ("UBI"). ¶ 682.

¶ 705. Verisk paid GM ongoing "royalty payments" based on revenue generated from those licenses in addition to an initial multi-million-dollar lump sum payment for the Driving Data—a fact that contradicts GM's previous claim that it was "not being compensated" for sending Driving Data to Verisk. ¶¶ 705, 710. With consumers in the dark about GM and Verisk's data sharing, the Verisk Data Exchange grew quickly. ¶ 713. At the end of 2016, Verisk received data from 900,000 vehicles covering more than 3 billion trip miles. *Id*. By 2023, Verisk boasted records on 280 million vehicles covering more than 500 billion trip miles of detailed telematics data. ¶ 718. And this data was not amassed only to develop insurance models and sell access to insurers, *see*, *e.g*., ¶ 709, but data on this scale allowed Verisk to develop analytic tools to market its telematics program to insurance companies, including Driveway Software, Duck Creek Technologies, True Motion, Mile Auto, and others. ¶¶ 721, 729, 733, 734–37.

Meanwhile, GM was also marketing Driving Data to LNRS for the same profiteering purposes. LNRS is another global data and analytics company that provides data and technology services, analytics, predictive insights, and fraud prevention for a wide range of industries, including the automotive industry. ¶ 658. Seeking to enlarge profits from the data it was mining from customers, GM began selling Driving Data to LNRS in 2019. ¶¶ 742, 744, 754. GM sold the Driving Data it collected in exchange for a multi-million-dollar payment. ¶ 743. Like Verisk,

LNRS grew its telematics exchange platform and profited from offering access to billions of records, including telematics data and various products to insurance companies and other third parties. ¶¶ 740–41, 748–58, 1004–05.

LNRS recognized that GM customers' "most valuable asset" is their "vehicle data," ¶ 760, and that obtaining this "valuable asset" could be difficult to do legally, as the necessary process of requiring and obtaining consumer consent could cause customer "friction." ¶ 761, *see also* ¶¶ 809, 814, 815, 816. Verisk and LNRS understood and repeatedly emphasized the importance of "consent" and "consumer control." ¶¶ 800, 807, 810–14. But *all* of GM's representations to customers and the public assured that customer Driving Data, if collected at all, would be kept completely private, ¶¶ 836–40, 859, 861, 862, 863, 864, 866, and, for drivers enrolled in Smart Driver, that personally identifiable information would not be shared. ¶¶ 864–68. Nevertheless, GM collected and shared personal Driving Data with the Defendants, who accepted and profited from this scheme. ¶¶ 2, 732, 762, 843; *see also* ¶¶ 1006, 1063, 1169–70, 1234, 1295, 1300, 1338, 1342–43, 1514, 1573, 1631, 1685, 1843 (allegations of profit set forth in claims).

Data privacy and security are top-of-mind issues for consumers. ¶¶ 667–75. Surveillance practices and the resulting sale and use of personal data cause significant harm—including denying consumers freedom, depriving them of control over their own personal data, and diminishing their ability to manage risk. ¶¶ 2, 676–

80; *e.g.*, ¶¶ 23–25 (harm); 1065, 1076, 1093-94, 1123 (allegations of harm set forth in claims).

## LEGAL STANDARD

In ruling on Defendants' motion to dismiss, the Court must accept the facts pled in the complaint as true and construe them in the light most favorable to Plaintiffs. *In re Equifax, Inc., Customer Data Sec. Breach Litig. ("In re Equifax"),* 362 F. Supp. 3d 1295, 1311 (N.D. Ga. 2019). Plaintiffs' complaint should be dismissed only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. THE MCC IS NOT A SHOTGUN PLEADING.

Defendants claim Plaintiffs' MCC is a shotgun pleading. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Here, Defendants object to Plaintiffs' inclusion of a paragraph in each Count that repeats and re-alleges the statement of facts. Doc. 141-1 at 24; *see, e.g.,* ¶ 974. In support of their argument, Defendants cite to an Eleventh Circuit case where a *pro se* plaintiff's complaint contained "conclusory, vague, and immaterial facts that were not obviously connected to a particular count." Doc. 141-1 at 24 (citing *Jean-*

*Baptiste v. Public Supermarkets, Inc.*, 2024 U.S. App. LEXIS 10971, at *5 (11th Cir. May 6, 2024)).

Adopting initial factual allegations into each count is not improper and does not convert the MCC into a shotgun pleading. *Bolling v. Mercedes-Benz USA, LLC*, 2024 WL 3972987, at *7 (N.D. Ga. Aug. 27, 2024) (holding that where a complaint adopts the initial factual allegations into each count, but does not "carry all that came before" into every count, it is not a shotgun pleading); *accord Weiland*, 792 F.3d at 1324 (incorporating a facts section at the beginning of each count does not make a complaint a shotgun pleading). Plaintiffs have done more than enough to give Defendants adequate notice. Plaintiffs pled detailed allegations describing how Defendants collected Driving Data; how they used and sold Driving Data without consumers' consent and despite knowing it was inaccurate; and critically, how Defendants' actions harmed Plaintiffs and the Class. *See, e.g.,* MCC at ¶¶ 12–654; Sections II(A), (B), and VIII. Further, each Count contains facts specific to that cause of action. Defendants have sufficient notice of the facts underlying each claim against them and the MCC should be sustained.

Defendants also complain that Plaintiffs "improperly treat[] all Defendants as a group." Doc. 141-1, at 24–25. This argument lacks merit. Plaintiffs sufficiently identify the Defendant or Defendants each count is brought against and the conduct

giving rise to the claim.[3] Where allegations against GM, LNRS, and Verisk describe the conduct of "Defendants," they do so because *all Defendants committed the alleged misconduct.* Defendants' shotgun pleading argument fails.[4]

## II. PLAINTIFFS STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT ("FWA") (COUNT 2).

LNRS and Verisk violated the FWA by intentionally storing, using, and disclosing Driving Data they knew GM obtained in violation of the FWA. *See* ¶¶ 997–1011; 18 U.S.C. § 2511(1)(c), (d). Defendants contend that Plaintiffs' FWA claim should be dismissed for two reasons: first, that Plaintiffs' Driving Data are not the "contents" of "electronic communications" covered by the FWA; and second, that even if the Driving Data are communications, the FWA's "party exception" applies because GM was a party to the communications. Doc. 141-1 at 26–30. Defendants' arguments ignore the statutory text, misapprehend applicable case law, are belied by Plaintiffs' allegations, and fail to warrant dismissal.

---

[3] *See* ¶ 1080 (alleging "GM, LNRS, and Verisk knew and appreciated that benefit: GM collected and sold Plaintiffs' and Class Members' Driving Data, without Plaintiffs' and Class Members' consent, to LNRS and Verisk, and LNRS and Verisk in turn sold Plaintiffs' and Class Members' Driving Data to other third parties and also used it to build products and services.").

[4] To the extent the Court finds any of Plaintiffs' allegations are deficient, Plaintiffs request an opportunity to amend. *See Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (explaining that a court must afford a litigant who files a shotgun pleading an opportunity to replead).

### A. The Driving Data Intercepted by GM is an "Electronic Communication" With "Contents" Under the FWA.

Defendants argue that Driving Data are not "contents" of an electronic communication because they are not intended to convey a substantive message to another person or entity. *See* Doc. 141-1 at 26–27. This argument ignores the statutory text and Plaintiffs' allegations. Under the FWA, "'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). And an [e]lectronic communication" is "*any transfer* of signs, *signals*, writing, images, sounds, *data*, or intelligence *of any nature* . . ." 18 U.S.C. § 2510(12) ((emphasis added)).

GM uses a telematics control unit ("TCU") to intercept the signals created by vehicle sensors that are processed within Plaintiffs' vehicles. ¶¶ 844; 846–48. Driving Data provides detailed information regarding each vehicle's operation: including, for example, driving schedule, hard braking events, hard acceleration events, tailgating, time spent idle, speeds over 80, driver attention, seatbelt usage, information from vehicle cameras, and more. *See* ¶¶ 1, 846. The TCU acts as a bug: unbeknownst to Plaintiffs, it takes this detailed, private data and diverts it to GM. ¶¶ 850–52. GM has intercepted the "contents" of an electronic communication.

Defendants attempt to mischaracterize the FWA requirements by relying on inapposite cases regarding "record information." "Record information" is a term

defined under the Stored Communications Act ("SCA") to include identifying information about a user, such as "name," "address," and "subscriber number or identity." *In re Zynga Privacy Litig.*, 750 F.3d at 1104. Courts contrast "record information" under the SCA (information identifying the user) with the actual "contents" of the user's communication (the message conveyed by the user). "[T]he term 'contents' refers to *the intended message conveyed* by the communication, and does not include record information *regarding the characteristics* of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d at 1106; *see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (data "*about* a telephone call, such as the call's time of origination and its duration," are not "content" (emphasis added)).

These cases fail to support Defendants' motion because Plaintiffs pled that GM intercepted the substance of their vehicles' communications themselves, (*i.e.*, the Driving Data), and not just information *about* those communications (such as for example, data reflecting *when* data was transmitted to GM, or the *volume* of data transmitted). *See, e.g.,* ¶¶ 1, 846.

**B. The Tracking Device Exception Does Not Apply.**

Defendants are wrong that Driving Data is excepted from the definition of "electronic communication" because it is collected from a "tracking device" that

"permits the tracking of the movement of a person or object." Doc. 141-1 at 28.[5] Although the TCU tracks vehicle location, *see* ¶ 852, it *also* intercepts non-location information, such as information regarding driver attention, seatbelt usage, information from vehicle cameras, and more. *See, e.g.*, ¶¶ 1, 771, 846. When a device tracks location *and* sends other electronic communications, the "tracking device" exception does not extend to the other electronic communications sent by the device. *See, e.g., In re Application of U.S. for an Ord. Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526 (D. Md. 2011) (collecting cases); *In re Application for Pen Reg. & Trap/Trace Device with Cell Site Location Auth.,* 396 F. Supp. 2d 747, 756 (S.D. Tex. 2005).

**C. The Party Exception Does Not Apply.**

Defendants claim the FWA's "party exception" excuses GM's interception of Plaintiffs' private Driving Data, thus absolving them of liability as well. Plaintiffs explain why this argument fails in their response to GM's motion to dismiss, incorporated by reference herein, *see* GM MTD Opp. Section II(A)(5). To the extent Defendants' argument differs, it likewise fails.

[5] Congress's inclusion of a "tracking device" exception undermines GM's argument that the FWA only covers person-to-person communications. *See, e.g.*, Doc. 141-1 at 27. If the FWA only covered person-to-person messages, no exception would be necessary for signals sent from a tracking device.

First, the "one-party consent rule" or "party exception" is an *exception* to liability, with the burden of proof falling on the party seeking the benefit of the exception. *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003). A claim may only be dismissed based on a statutory exception that appears on the face of the complaint. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507-08 (S.D.N.Y. 2001). Plaintiffs make clear that GM is neither a party nor intended recipient.[6]

In asserting the "party exception" on GM's behalf, Defendants rely solely on Plaintiffs' allegation that the TCU or OnStar unit "was part of their vehicles," and argue "GM was necessarily a 'party' to the communications." Doc. 141-1 at 29 (citing ¶ 850). But this is a logical fallacy: the cited paragraph merely describes the physical location and functionality of the "bug," *i.e.*, *how* GM was able to divert the contents of Plaintiffs' Driving Data. A wiretapping eavesdropper is not excused from liability because it installed the bug that is intercepting and collecting

[6] GM was *never* an intended party to the communications, which Plaintiffs intended to be communicated (if to anyone) exclusively *to Plaintiffs*. ¶ 665 (OnStar "designed to help protect you and your family and provide peace of mind on the road."); ¶ 828 (OnStar Smart Driver promoted as a new service that "'provided customers with information about their driving behavior[.]'"); ¶¶ 800–801 (connected vehicle service allows OnStar customers a chance to enroll in a program that provides a detailed driving assessment at the end of a 90-day evaluation period. The assessment, provided only to OnStar customers who sign up for this service, will reveal how the customer performed in important driving metrics…"); ¶¶ 835, 836 (similar); *Id*. at ¶ 840 (GM represented that "Driving Data collected would be kept completely private and sent 'only' to the customer."); ¶ 866 ("GM expressly represented that it would not collect Driving Data at all unless consumers enrolled separately in Smart Driver.").

communications. Defendants' reliance on *In re Google Cookie Placement Consumer Priv. Litig*. ("*Google Cookie*"), 806 F.3d 125, 143 (3d Cir. 2015), and *Zak v. Bose Corp.,* 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019), for the proposition that the exception applies to "one who takes part in the conversation," evidences the problem with the logic. Doc. 141-1 at 29.

In contrast to the facts of those cases, Plaintiffs here alleged GM was not a participant in the exchange of data between Plaintiffs and their vehicles resulting in the electronic communications at issue.[7] Rather, as a "non-participant," GM "use[d] other means [OnStar] to gain access to—*i.e.*, intercept—the communication." *See Zak*, 2019 WL 1437909, at *3 (dismissing wiretap claim without prejudice, concluding plaintiffs failed to plead facts sufficient to establish that defendant was not a party to or a participant in the communication). Indeed, many courts disagree with *Google Cookie* precisely because it applies the party exception in a manner that threatens to swallow the rule—and on the facts alleged here, would do so.

For example, in *In re Facebook, Inc. Internet Tracking Litig. ("Facebook")*, 956 F.3d 589 (9th Cir. 2020), the court reversed the dismissal of a FWA claim (and its California corollary under CIPA), arising from Facebook's use of plug-ins to track unwitting users' browsing histories across third-party websites even when

---

[7] *See* ¶¶ 1, 14, 28, 44, 58, 74, 89, 102, 113, 125, 141, 152, 164, 176, 194, 205, 217, 228, 247, 264, 276, 287, 300, 316, 327, 345, 362, 374, 390, 400, 411, 431, 444, 458, 476, 492, 510, 526, 539, 548, 569, 581, 592, 611, 629, 642, 833, 986–96.

users were logged out of Facebook, enabling it to compile personal profiles sold to advertisers for revenue. The *Facebook* court adopted the First and Seventh Circuits' understanding that "simultaneous, unknown duplication and communication of [data] do not exempt a defendant from liability under the party exception," disagreeing with *Google Cookie*, and concluding that "the Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor,'" and that "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule" *Id*. at 608; *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, *2 (N.D. Cal. Oct. 23, 2019) ("it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly."); *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at *12 (N.D. Ill. Oct. 1, 2024) (defendant's "status as the *medium* for users' communications does not elevate it to the status of a *participant* in those communications. An argument to the contrary would be like saying that a telecommunications provider automatically becomes a party to any conversation that takes place over their phone line."); *Revitch,* 2019 WL 5485330,

at *2 (denying motion to dismiss wiretap claim where plaintiffs alleged that Facebook acquired their communications by causing their browsers to transmit parallel signals, holding that means of interception did not "strip[] Facebook of its third-party status" as to the communications).

Moreover, concluding that GM was a participant in the communication, *i.e.*, the Driving Data, simply because the device used to intercept that data was pre-installed in Plaintiffs' vehicles, would require a court to ignore the plain language of the statute and importantly, ignore the allegations actually pled in the Complaint. *See supra*, n. 10, 11 (citing allegations); *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). Because Plaintiffs alleged Driving Data is the content of a communication, and neither the tracking device exception nor the party exception apply, this Court should deny Defendants' Motion to Dismiss Plaintiffs' FWA claim.

## III. PLAINTIFFS ALLEGED CLAIMS UNDER STATE WIRETAP LAWS (COUNTS 14, 23, 25, 30, 35, 41, 43, AND 55).[8]

The analysis of certain of Plaintiffs' state wiretapping claims overlap with portions of the FWA. Defendants incorporate by reference some FWA arguments against the state wiretapping claims: (1) whether Driving Data constitutes contents of a communication, (2) the applicability of a tracking device exception, and (3) the

---

[8] In light of the Massachusetts Supreme Judicial Court's recent decision in *Vita v. New England Baptist Hospital*, 243 N.E.3d 1185 (Mass. 2024), Plaintiffs withdraw Count 38—violation of the Massachusetts wiretapping law.

purported party exception. *Id.* For the same reasons explained above, the Court should sustain Plaintiffs' state wiretapping claims.[9]

In response to Plaintiffs' California, Maryland, New Hampshire, and Illinois wiretap claims, Defendants argue that the Driving Data GM intercepted is not a "communication" or "telecommunication" as defined by those statutes. Doc. 141-1, at 32–36. Defendants are wrong.

First, Defendants assert that Driving Data is not a "communication" for purposes of the California claim (Count 15). In support, Defendants cite *Libman v. Apple*, 2024 WL 4314791, at *48 (N.D. Cal. Sept. 26, 2024), but misstate the holding. The *Libman* court did not hold that data transmission never constitutes a communication, rather, it found that "at least some of the data" such as screen resolution was not a communication and that plaintiffs did not provide sufficient details about the data collected to conclude it was a communication. *Id.* at *13–14. That is not the case, here—Plaintiffs provide sufficient details to demonstrate that Driving Data is a communication. *See* ¶¶ 1, 850, 985–90, *supra*, Section II(A).

Similarly, the Driving Data is a "communication" under the Maryland Wiretapping and Electronics Surveillance Act ("MWESA") (Count 36). The

[9] In the unlikely event the Court finds any of the arguments concerning the FWA claim support dismissal, only certain state wiretapping claims fall. For example, Defendants raise the "party exception" argument relative to only the California, Delaware, Illinois, and Nebraska wiretapping claims. Doc. 141-1, at 12–13.

definition of "electronic communication" under the MWESA is nearly identical to the definition used in the FWA. *Compare* Md. Cts. & Jud. Pro. § 10-401(5), *with* 18 U.S.C. § 2510(12). Moreover, Maryland Courts have noted that the MWESA provides greater protections to individuals than the FWA. *See Petric v. State*, 504 A.2d 1168, 1171 (Md. Ct. Special App. 1986). Because the Driving Data constitutes an "electronic communication" under the FWA, it equally falls under the scope of the MWESA. *Sun Kin Chan v. State*, 552 A.2d 1351 (Md. Ct. Special App. 1989), is inapposite, as that case pertained to the use of pen register and trap and trace devices, which, by their very definitions, do not intercept communications. *Id.* at 1356 ("[A] pen register differs significantly from the listening device . . . for pen registers do not acquire the *contents* of communications.") (quoting *Smith v. Maryland*, 442 U.S. 735, 741 (1979)). In contrast, here, Plaintiffs alleged that GM intercepts Driving Data, which includes information concerning the substance, purport, and meaning of signals, data, or intelligence transmitted electronically, and therefore constitutes an "electronic communication" under the MWESA.

Driving Data also falls under the scope of the New Hampshire Wiretapping and Eavesdropping Act ("NHWEA") (Count 43). New Hampshire courts have repeatedly held that the NHWEA provides greater protections than the FWA. *See State v. Locke*, 761 A.2d 376, 356 (N.H. 1999) ("the wiretap statute generally 'protects the individual's right to privacy to a greater degree than the United States

Constitution or [its] federal statut[ory] [counterpart]'") *overruled on other grounds by State v. Rivera*, 27 A.3d 676 (N.H. 2021) (quoting *State v. Ayers*, 383 A.2d 87, 88 (N.H. 1978)). Because Driving Data falls under the scope of the FWA, it would be contrary to the New Hampshire Supreme Court's longstanding interpretation of the NHWEA to hold that the law does not protect data communications while the FWA does.

The Illinois Eavesdropping law, 720 ILCS 5/14-1, *et seq*. (Count 30), defines "private electronic communication" similarly to the FWA. *Compare* 720 ILCS 5/14-1(e), *with* 18 U.S.C. § 2510(12). Defendants contend that because the Illinois law provides the electronic communication must be made under circumstances reasonably justifying an expectation of privacy, the Illinois claims fail as Defendants assert that Plaintiffs had no expectation of privacy in their Driving Data. But Defendants are wrong—as discussed below, Plaintiffs had a reasonable expectation of privacy. *See supra,* Section IV(B) and V(A); *see also* Plaintiffs' Opposition to Doc. 142-1 ("GM MTD Opp.") Section III(D)(1). Because Plaintiffs had a reasonable expectation of privacy in their Driving Data, and the Driving Data constitutes "electronic communications," the Illinois Eavesdropping claim survives.

## IV. PLAINTIFFS SUFFICIENTLY PLED ALL COMMON LAW CLAIMS.

### A. Georgia Law Applies to Plaintiffs' Common Law Claims at the Pleading Stage.

Defendants' argument regarding which state's law applies to Plaintiffs' common law claims is one for class certification, not the pleading stage. Georgia courts apply the "common law developed in Georgia rather than foreign case law" when no specific statute is involved for ruling on a motion to dismiss. *In re Equifax,* 362 F. Supp. 3d 1295, 1311–12 (N.D. Ga. 2019). *See also Monopoli v. Mercedez-Benz USA, LLC,* No. 1:21-CV-01353-SDG, 2022 WL 409484, at *4 (N.D. Ga. Feb. 10, 2022) ("The Georgia Supreme Court, notably, has upheld this aspect of Georgia's choice-of-law rules."). Defendants rely on out of jurisdiction cases to argue that choice of law must be determined now. While a more fact-intensive choice of law analysis may be necessary when determining if a class may be certified, *Peterson v. Aaron's, Inc.*, 2017 WL 364094, at *6 (N.D. Ga. Jan. 25, 2017), it is "premature to conduct a rigorous choice of law analysis at this stage." *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2008 WL 2132233, at **1, 4 (N.D. Ga. May 21, 2008) ("concerns regarding the variations of state law-especially a small minority of states-are more properly considered at. . . class certification"). Regardless, Plaintiffs have more than sufficiently alleged common law claims recognized not only by Georgia law but all other jurisdictions as well.

Defendants also argue that Plaintiffs should be foreclosed from amendment because other state laws would "render[] attempted amendment futile." Doc. 141-1 at 20. To make this argument, Defendants mischaracterize Plaintiffs' claims. Defendants inaccurately assert that "all" Plaintiffs alleged Defendants have done is "shar[e] Driving Data with insurance companies for the purpose of underwriting automobile insurance policies." *E.g.*, Doc. 141-1 at 22. Not so. Plaintiffs assert that Defendants were able to use the information from GM to identify each customer, ¶¶ 703, 742–45, 754; then created flawed tools which inaccurately reported Driving Data, ¶¶ 917–31; used Plaintiffs' information to create and sell to third parties so-called driving scores, risk ratings, and access to databases containing Plaintiffs' and Class Members' Driving Data, ¶¶ 704–05, 709, 721, 724, 746, 861, 1004; and developed "characteristics" or "behavior information" for drivers and vehicles to create expansive industry databases for sale, ¶ 718, 748–49, 766. Defendants' actions go far beyond insurance underwriting.

### B. Plaintiffs State a Claim for Invasion of Privacy (Count 5).

Plaintiffs state a claim against Defendants for invasion of privacy through false light, intrusion upon seclusion, and public disclosure of private facts—three of four recognized categories for invasion of privacy under Georgia law.[10] *Bullard v.*

[10] Plaintiffs are not at this time asserting claims for misappropriation against Defendants. Plaintiffs reserve their rights to amend the pleadings to do so if discovery unearths facts supporting such claims against Defendants.

*MRA Holding, LLC*, 740 S.E.2d 622, 626 (Ga. 2013); *Hickson v. Home Fed. of Atlanta*, 805 F. Supp. 1567, 1573 (N.D. Ga. 1992), *aff'd*, 14 F.3d 59 (11th Cir. 1994) (citing *Cabaniss v. Hipsley*, 151 S.E.2d 496 (Ga. App. 1966)).

Plaintiffs state a claim for invasion of privacy through a false light. Under that theory, Plaintiffs need only allege the existence of false publicity that depicts the plaintiff as something or someone which they are not, and that the false light in which they are depicted would be highly offensive to a reasonable person. *Bazemore v. U. S. Bank Nat'l Ass'n*, 872 S.E.2d 491, 499 (Ga. App. 2022). Plaintiffs have done so here. All Plaintiffs alleged Defendants packaged and shared their Driving Data in an inherently and contextually misleading fashion that inaccurately reported their driving events and abilities. *See* ¶¶ 916–931 (data was inaccurate, flawed, and materially misleading); ¶ 726 (distracted driving assumptions).

Plaintiffs also alleged Defendants' actions amount to intrusion upon seclusion because Defendants continued to share information which they illicitly collected with third parties. *See, e.g.* ¶¶ 734–737, 753–755. Far from driving on public roads, Doc. 141-1 at 22, their databases include information that goes well beyond what is needed for insurance underwriting. *See Carpenter v. United States*, 585 U.S. 296, 314–15 (2018) ("with more pervasive tracking. . . longer term GPS monitoring of

even a vehicle traveling on public streets" even constitutes a search under the Fourth Amendment).[11]

Defendants' argument that Plaintiffs fail to allege Defendants publicly disclosed their Driving Data ignores both the nature of the disclosures and Plaintiffs' allegations. "[Public disclosure] . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, comment a, at 384–85 (1977). Plaintiffs alleged Defendants shared Plaintiffs' Driving Data with insurance companies, as well as other third parties (including but not limited to additional data brokers). ¶¶ 704–709, 746–747, 751–753, 766–85, 933, 1074. LNRS's insurance company client portfolio alone represents 42% of the U.S. auto insurance market. ¶ 752. Such a widespread, industry-specific disclosure constitutes disclosure to the public. The breadth of Defendants' disclosure here also distinguishes this case from *Blakey v. Victory Equip. Sales, Inc.*, 259 Ga. App. 34, 38 (Ga. Ct. App. 2002), where the court held that a report provided to a single credit agency was not disclosure to the public at large.

[11] The Fourth Amendment is seen as a "floor" for privacy claims. *See, e.g., Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3 (S.D.N.Y. Feb. 20, 2025) (discussing in context of CIPA claim). Accordingly, if something does not pass muster under the Fourth Amendment, it surely is a privacy violation.

Plaintiffs also alleged Defendants' disclosure of Plaintiffs' Driving Data amounts to "false light" because it depicts them "as something or someone which they are not." *Bazemore*, 872 S.E.2d at 499. All Plaintiffs alleged Defendants packaged and shared their Driving Data in an inherently and contextually misleading fashion that inaccurately reported their driving events and abilities. *See* ¶¶ 916–931 (explaining how the Driving Data was inaccurate, flawed, and materially misleading).[12] These allegations distinguish this case from *Monge v. Madison Cnty. Rec. Inc.*, 802 F. Supp. 2d 1327, 1336 (N.D. Ga. 2011) and *Johnson v. City of Hoboken*, 476 N.J. Super. 361, 375 (N.J. App. Div. 2023) where there was no false publicity because the statements at issue were true.

Further, Defendants' conduct was highly offensive to a reasonable person. Unlike the information at issue in *Cumberland Contractors, Inc. v. State Bank & Tr. Co.*, 327 Ga. App. 121, 126 (2014), *Regions Bank v. Kaplan*, 2021 WL 4852268, at *12–13 (11th Cir. Oct. 19, 2021), and *Dolmage v. Combined Ins. Co. of Am.*, 2015 WL 292947, at *9 (N.D. Ill. Jan. 21, 2015), Defendants' public disclosure of the surreptitiously collected Driving Data for commercial gain is highly offensive.

[12] *See also* ¶¶ 16–18, 30–33, 46–48, 60–63, 76–79, 91–93, 104, 115–116, 127–130, 143, 154–155, 166, 178–180, 196–198, 207–209, 219–222, 230–235, 249–252, 265–266, 278–279, 289–291, 302–307, 318-–20, 329–334, 347–352, 364–366, 376–380, 392–394, 402–405, 413–416, 433–438, 446–449, 460–462, 478–482, 494–496, 512–514, 528–529, 541–543, 550–554, 571–572, 583–585, 594–596, 613–616, 631–634, 644–646.

Defendants did not disclose "public" information—they bought and sold profiles of Plaintiffs' behavior and personal lives, extending far beyond what casual public observation could reveal. Courts consistently find such conduct highly offensive.

For example, in *In re Vizio, Inc., Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017), the court found that unauthorized collection of viewing habits for commercial purposes was "highly offensive," because such comprehensive tracking "reveals deeply personal details" about individuals' lives. So too, here. Plaintiffs' detailed behavior data (¶¶ 697–98, 702–09, 741–750) reveals intimate details about their lives, such as where they go, when they travel, and their personal patterns and preferences (to the extent the information is accurately reported). Defendants' commercial exploitation of Plaintiffs' private information (¶ 843) also constitutes an egregious breach of social norms underlying the right to privacy." ¶ 1058.

### C. Plaintiffs State a Claim for Conspiracy to Commit Invasion of Privacy (Count 6).

Defendants challenge Plaintiffs' conspiracy claim on three grounds–failure to plead the underlying tort of invasion of privacy, preemption, and failure to allege that Defendants acted in concert. Defendants' challenges fail.

First, Plaintiffs have adequately pled a claim for invasion of privacy against all Defendants. *See* ¶¶ 1070–1074, *see also* GM MTD Opp. Section III(D). They have pled the necessary "underlying actionable conduct" to support their conspiracy

claim. *Ass'n Servs., Inc. v. Smith*, 249 Ga. App. 629, 634, 549 S.E.2d 454, 460 (2001).

Second, the FCRA does not preempt Plaintiffs' common law invasion of privacy claim. *See* Plaintiffs' Opposition to Doc. 140-1 ("FCRA MTD Opp.") Section II(A).

Finally, "[a] conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Ass'n Servs* 249 Ga. App. at 634 (internal citation omitted). Defendants fail to meaningfully challenge Plaintiffs' allegations that GM and Defendants conspired together to commit the tort of invasion of privacy against Plaintiffs. *See, e.g.,* ¶¶ 738–39, 742–44, 1070–1076.

### D. Plaintiffs State a Claim for Unjust Enrichment (Count 7).

Defendants contend that Plaintiffs have an adequate remedy at law. Doc.141-1 at 29–30. But the existence or absence of an adequate remedy at law determines whether a plaintiff can ultimately recover for unjust enrichment, not whether she can bring a claim for unjust enrichment in the first instance. *In re Equifax, Inc.*, 362 F. Supp. 3d at 1330–31 ("[w]hile a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative."); *WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007) (same). A plaintiff may plead inconsistent claims and remedies. *Id.*

It is also incorrect that unjust enrichment requires a direct relationship between Plaintiffs and Defendant or the direct conferral of a benefit. Doc.141-1 at 30. Georgia law does not limit unjust enrichment claims to receipt of direct benefits. *See Bolling v. Mercedes-Benz USA, LLC*, 2025 WL 83826, at *8 (N.D. Ga. Jan. 10, 2025) (rejecting argument that "unjust enrichment assertedly requires direct conferral of a benefit"); *Nalley v. Gen. Motors LLC*, 2022 WL 18459646, at *9 (N.D. Ga. Aug. 30, 2022) ("[T]o maintain an action for unjust enrichment, it is not necessary that the plaintiff allege a direct payment by the plaintiff to the allegedly unjustly-enriched defendant."); *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1363 (N.D. Ga. 2018) ("[T]he conferral of direct benefit as opposed to indirect benefit is not required to adequately plead a cause of action sounding in unjust enrichment."). Here, the Driving Data collected by Defendants constitutes billions of records that enabled them to create new products and offerings to their customers. ¶¶ 713–24, 752–55. Thus, Plaintiffs alleged they conferred a benefit.

Nor can Defendants escape liability by claiming that Plaintiffs did not expect remuneration. The Driving Data was taken and used without Plaintiffs' consent and without compensation. ¶¶ 1062, 1080–81. Under such circumstances need not expressly alleged an expectation of remuneration. *Chemence, Inc. v. Doherty*, 2007 WL 10025204, at *3 (N.D. Ga. Mar. 23, 2007) (plaintiff entitled to damages equaling the "benefit of [plaintiff's] research, development, and marketing" due to

defendant's theft of trade secrets because defendant "would have been required to expend approximately the same amount as [plaintiff] on the research, development and marketing of its [process] from scratch."); *Lan Li v. Walsh*, 2017 WL 3140522, at *8 (S.D. Fla. July 24, 2017) (claim for unjust enrichment properly stated for stolen funds).

Finally, Defendants' argument that Plaintiffs could not expect remuneration from Defendants for their commercialization and use of Plaintiffs' Driving Data because Plaintiffs were not consumers of products offered by Defendants misses the mark. Doc.141-1 at 31. The purpose of the expectation of remuneration requirement is to distinguish between benefits voluntarily given such as gifts, and those "which the benefitted party equitably ought to return or compensate for." *Crook v. Foster*, 333 Ga. App. 36, 39–40 (2015) (internal citation omitted). Plaintiffs did not voluntarily give Defendants their Driving Data; Defendants took it and knowingly used it for their own financial benefit without providing Plaintiffs anything in return. ¶¶ 3, 1062, 1079-1081. Given Defendants' own use of the Driving Data for commercial gain, *e.g.*, ¶¶ 701-09, 756-57, 760-61, it is reasonable to infer that had Defendants asked Plaintiffs to provide their Driving Data to Defendants, Plaintiffs would have refused, or only would have consented to do so in exchange for remuneration from Defendants. This is an issue for the trier of fact. *Crook*, 333 Ga. App. at 40.

**E. Plaintiffs State a Claim for Trespass to Chattels (Count 9).**

Under the law of trespass to chattels, liability exists for "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Restatement (Second) of Torts* § 217. Harm includes not just physical damage, but also impairment of the chattel's condition, quality, or value, or deprivation of the owner's use of the chattel for a substantial time. *Id*. at § 218.

Defendants contend that Driving Data is not a chattel, Plaintiffs do not have a property interest in their Driving Data, and Plaintiffs were not harmed. Doc. 141-1 at 32, 33–34. These arguments ignore the evolution of tort law in the digital age. While the *Restatement* was drafted before widespread electronic systems, common law principles inherently adapt to technological developments. "The gist of such an action of trespass [to personal property] is the injury done to the possession of the property." *Duncan v. Ellis*, 11 S.E.2d 841, 843 (Ga. App. 1940).

First, personal intangible property like the Driving Data is a chattel. *See, e.g., Klein v. Oved*, 2022 WL 4772399, at *6 (S.D. Fla. Aug. 19, 2022) (allowing claim for trespass to chattels based on "[d]efendants' repeated access to [p]laintiffs' accounts with iCloud, Evernote, Gmail and Instagram" to proceed); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011) (finding a website is chattel); *Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*, 720 F. Supp. 2d

904, 925 (S.D. Ohio 2010) (recognizing a claim for trespass to chattels through use of the internet); *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 320 (E.D. Va. 2009) (allowing trespass to chattels claim when defendant accessed password-protected area of website without authorization); *Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451-52 (E.D. Va. 1998) (stating transmission of unsolicited bulk emails can constitute trespass to chattels).

Second, Plaintiffs have a continued property interest in their Driving Data. ¶¶ 1090–94. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (consumers "have a property interest in their personal information"); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1025 (N.D. Cal. 2024) (allegation that defendant's unlawful disclosure of plaintiffs' personal information deprived them of their right to exclude defendant from their intangible property sufficiently pled "diminishment of a 'present or future property interest'"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this [personal] information.").

Finally, Georgia law and common law generally recognize that harm for trespass need not be limited to physical damage. *See*, *e.g.*, *Bowen v. Porsche Cars, N.A., Inc.*, 561 F Supp 3d 1362, 1375 (N.D. Ga. 2021); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) (holding that electronic

intrusions that "harm the value" of the computer system or interfere with its "intended function" can support a trespass claim). Harm to the value of Plaintiffs' personal information is actionable damage. *In re Facebook Privacy Litigation*, 572 F. App'x 494, 494 (9th Cir. 2014) (holding that plaintiffs' allegations that they were harmed by the dissemination of their personal information and by losing the sales value of that information were sufficient to show damages).

Here, Plaintiffs alleged their property, which includes "the Driving Data collected while they are in the confines of their own vehicles and conducting private matters," and "any compilation of highly personalized driving behavior profiles resulting from the nonconsensual intrusive collection and disclosures of such data from their personal vehicles" (¶ 1090) were "harmed and diminished in value" through Defendants' unauthorized and intrusive use, access, and interference and that they suffered "loss of their ability to control the use and dissemination of their private information" ¶ 1093. Plaintiffs further alleged Defendants "intentionally interfered" with Plaintiffs' "possessory interest in their private property" by "accessing and utilizing Driving Data" (¶¶ 1090–94), and that "Defendants' interference caused Plaintiffs to suffer damages, including economic harm related to the unauthorized exploitation of Plaintiffs' Driving Data." ¶ 1094. That is enough to plead trespass damages.

## V. PLAINTIFFS ALLEGED VIOLATIONS UNDER THE STATE PRIVACY STATUTES.[13]

### A. Plaintiffs State an Invasion of Privacy Claim Under the California Constitution (Count 13).

Defendants argue that California Plaintiffs Smith and Haiden have no legally protected interest in their driving data Driving Data and therefore cannot allege a violation of the California Constitution. Doc. 141-1 at 35. To the contrary, courts across the country have determined that individuals have a legally protected interest in their data, and a reasonable expectation of privacy in it. ¶ 1050; *See In re Vizio, Inc., Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017).

Defendants' behavior was not that of an innocuous middleman helping consumers allegedly achieve better insurance rates; Defendants collected billions of datapoints about Plaintiffs and the Class, and surreptitiously created and monetized complex driving reports, a driving score, and data exchanges. ¶¶ 57–62, 74–79, 704–706, 722–728, 748–750. This is not a situation akin to the cases Defendants cite in which the alleged privacy invasion was to sell advertisements. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (citing cases). Nor is it similar to the vehicle cases in which courts have said that consumers do not have an expectation to privacy in observable driving information: "with more pervasive

[13] Plaintiffs withdraw their N.Y. Civil Rights Law §§ 50 and 51 Claim (Count 49), and their N.Y. Gen. Bus Law §§ 899aa; 899-bb (SHIELD Act) Claim (Count 48).

tracking. . . longer term GPS monitoring of even a vehicle traveling on public streets" even constitutes a search under the Fourth Amendment. *Carpenter v*, 585 U.S. at 314–15.

Second, Defendants knowingly collected and sold Plaintiffs' Driving Data without their consent and for commercial gain, constituting highly offensive conduct, beyond mere negligence. *See* Section IV(B) *infra*; *see also In re Vizio, Inc.*, at 1232. California Plaintiffs specifically alleged it was Defendants' conduct of surreptitiously collecting and selling the Driving Data to third parties—and not solely GM's conduct—that constitutes an invasion of their privacy under the California Constitution. *See* Doc. 141-1 at 36. And as discussed *infra* at Part IV(C), Plaintiffs alleged Defendants, together with GM, conspired to invade Plaintiffs' privacy. *See* ¶¶ 1070–1074. Courts have held that this form of "deceit can be a kind of 'plus' factor [that is] significant in . . . making a privacy intrusion especially offensive." *In re Google Location Hist. Litig.,* at 1157 (citations omitted); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021).

Third, and as discussed in detail in Plaintiffs' accompanying brief, these privacy violations cannot be preempted under FCRA. *See* FCRA MTD Opp. Section I. The Ninth Circuit has declined to find that a FCRA claim may preempt state claims based on malice—malice that Plaintiffs have alleged here with regard to Defendants'

conduct of publishing inaccurate information to third parties. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1167 (9th Cir. 2009).

Finally, although Defendants argue that Plaintiffs are only entitled to injunctive relief, recent authority supports certification of *damages* classes for privacy violations under the California Constitution. *Erasco, et al. v. Flo Health, Inc., et al.*, 2025 WL 1433825, at *20 (N.D. Cal. May 19, 2025).

### B. Plaintiffs State a Claim for Violation of the California Consumer Privacy Act ("CCPA") (Count 17).

Defendants claim they did not breach the CCPA, arguing that Driving Data is not among the types of information protected by the CCPA, that Plaintiffs have not sufficiently alleged a privacy violation, and that the disclosure was authorized under FCRA.

Plaintiffs alleged the Driving Data Defendants "intercepted, collected, and obtained. . . constitutes personal information within the scope of the CCPA." ¶ 1215. Indeed, Defendants—as data brokers—collect, mine, and combine information about the Plaintiffs, including—as the Defendants argue—highly sensitive information for the purpose of insurance underwriting. Doc. 141-1 at 38–39. Defendants cannot hide behind an authorized practice to commit unauthorized data collection and dissemination. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 2025 WL 714252, at *8 (N.D. Cal. Mar. 3, 2025) ("Because Plaintiffs allege that Defendant allowed third parties to embed trackers, such as Google and Microsoft, on its website

and that these trackers transmitted Plaintiffs' personal information, Plaintiffs need not allege a data breach [for their CCPA claim]."); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024).

Further, the dissemination of Plaintiffs' driving data was not an authorized disclosure by Defendants "for the purpose of insurance underwriting." Doc. 141-1 at 38-39. To the contrary, such publication of Plaintiffs' data was not permissible purpose under FCRA's Section 1681b(a)(3)(C), as Plaintiffs were never made aware that Defendants would collect and share such data with third parties.[14] *See also* GM MTD Opp. Section I.

## VI. PLAINTIFFS STATE CLAIMS FOR VIOLATIONS OF STATE CONSUMER PROTECTION LAWS.[15]

### A. Plaintiffs Have Standing to Bring Consumer Protection Claims Against Defendants.

Defendants argue Plaintiffs' state consumer protection claims fail because no Plaintiff purchased or leased any goods or services directly from them. Doc. 141-1 at 60–61. But the consumer protection laws involved here do not require Plaintiffs to allege a "direct, transactional relationship between a plaintiff and a defendant." *Id*. at 60. To the contrary, because "privity is not required to state a claim [], it is irrelevant that [] Plaintiffs are not direct consumers of [Defendant]." *In re*

[14] ¶¶ 57, 59–60, 69-71, 73–77.

[15] Counts 11–13, 17–22, 24, 26, 28–29, 31–34, 37, 39–40, 44–54, and 57–65.

*Blackbaud, Inc., Customer Data Breach Litig*., 2021 WL 3568394, at *13 (D.S.C. Aug. 12, 2021) (addressing NY GBL § 349).[16] Plaintiffs need only allege a sufficient connection between the parties such that Defendants' misconduct caused the injuries Plaintiffs and Class members suffered—or, as many courts describe it, a consumer "nexus." *See Frazier v. U.S. Bank Nat. Ass'n,* 2013 WL 1385612, at *4 (N.D. Ill. Apr. 4, 2013) ("A consumer nexus requires a showing of 'trade practices directed to the market generally' or that the conduct 'otherwise implicates consumer protection concerns.') (citation omitted).[17] Plaintiffs' claims here arise from injuries suffered as a direct and proximate result of Defendants' unauthorized misappropriation, use, and sale of their Driving Data.[18] Whether Defendants charged Plaintiffs for goods or

---

[16] *See also, e.g.*, *In re Actiq Sales & Mktg. Pracs. Litig*., 790 F. Supp. 2d 313, 325 (E.D. Pa. 2011) (ruling that plaintiffs need not directly purchase a good from defendant to bring Indiana consumer protection claims); *Allergan, Inc. v. Athena Cosms., Inc.*, 640 F.3d 1377, 1378 (Fed. Cir. 2011); *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *3–4 (N.D. Cal. March 30, 2009) (finding a CLRA claim could be asserted against defendants who do not sell goods or services directly to consumers); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010) (under California's UCL, plaintiffs need only show they suffered a loss "as a result of" a defendant's unfair business practice).

[17] *Weinberg v. Sun Co.*, 565 Pa. 612 (2001) (To assert a Pennsylvania's UTPCPL claim a plaintiff only needs to "suffer an ascertainable loss *as a result of* the defendant's prohibited action."); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 223 (3d Cir. 2008), *as amended* (Nov. 6, 2008); *Bass v. Hendrix*, 931 F. Supp. 523, 535 (S.D. Tex. 1996) (finding a consumer does not need to have "contractual privity" with a defendant in order to bring a Texas DTPCPA claim.").

[18] Defendants contracted with GM to obtain their Driving Data. ¶¶ 661, 664, 715, 787. Defendants provided that data to insurance carriers. ¶¶ 34, 36, 131, 255, 622, 636, 649, 709, 749, 944. Insurance carriers used the data to underwrite automotive policies and increase the premiums Plaintiffs and other consumers were required to

services has no bearing on the analysis.[19] Plaintiffs state claims for violations of each state consumer protection statute.[20]

Defendants also seek dismissal of the Connecticut, Illinois, Oklahoma, and Pennsylvania Plaintiffs' consumer protection claims on the additional ground that those statutes require out-of-pocket damages. Doc. 141-1, at 61–62; *see* MCC at Count 21 (CUTPA); Count 29 (ICFA); Count 52 (OCPT); and Count 54 (UTPCPL). Defendants are wrong again. The Connecticut, Oklahoma, and Pennsylvania consumer protection statutes *do not* require an out-of-pocket economic loss. *See*

pay. ¶¶ 20, 22, 38, 49, 64, 94, 144, 156, 183, 199, 210, 237, 253, 267, 280, 292, 308, 335, 354, 367, 369, 384, 417, 450, 945.

[19] The case law on which Defendants rely is inapposite. Doc. 141-1 at 60, n.17. In each case, consumers willingly opted into programs offered by defendants, and in exchange, received services. *See, e.g.*, *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd*, 572 F. App'x. 494 (9th Cir. 2014); *In re Zynga Priv. Litig.*, 2011 WL 7479170 (N.D. Cal. June 15, 2011), *aff'd*, 750 F.3d 1098 (9th Cir. 2014); *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1123 (D.N.M. 2020), *on reconsideration,* 516 F. Supp. 3d 1293 (D.N.M. 2021). Conversely, Plaintiffs here neither chose to engage with nor received benefits from Defendants. *See* ¶¶ 702, 830, 843, 851.

[20] Defendants also argue that they did not violate the Kansas Consumer Protection Act because they are not "suppliers." Doc. 141-1 at 61, n.18 (citing K.S.A. § 50-624(l) (a "supplier" is "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.")). Defendants undoubtedly are "suppliers" within the meaning of the Act because they solicited and engaged in consumer transactions by collecting, using, selling, and otherwise profiting from Plaintiffs' Driving Data. *See* ¶¶ 661, 664, 715, 787; *see In re HCA Healthcare, Inc. Data Sec. Litig.*, 2024 WL 3857330, at *7 (M.D. Tenn. Aug. 15, 2024); *see also In re Fortra File Transfer Software Data Sec. Breach Litig*., 749 F. Supp. 3d 1240, 1273–74 (S.D. Fla. 2024).

*Tarpon Bay Partners LLC v. Zerez Hldgs Corp*., 547 F. Supp. 3d 195, 224–25 (D. Conn. 2021), *aff'd*, 79 F.4th 206 (2d Cir. 2023) (citation omitted) (under CUTPA, "[t]he term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury."); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 331 (S.D.N.Y. 2018) (finding the OCPA "authorize[s] recovery for lost free or personal time."); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* 613 F. Supp. 3d 1284, 1308 (S.D. Cal. 2020) ("the lost benefit of the bargain can satisfy the 'ascertainable loss' element of a UTPCPL claim.") (citation omitted). Each Plaintiff here alleges cognizable losses in the form of, among other things, the value of their data and privacy, increased insurance premiums, and being denied continuing or future insurance coverage. *See* ¶¶ 106–107 (Connecticut Plaintiff Brunet); ¶¶ 544–545 (Oklahoma Plaintiff Blakefield); ¶¶ 587–589 (Pennsylvania Plaintiff Guc). *See also* Section VI(B), *infra*.

And while the Illinois Consumer Fraud Act requires pecuniary harm, *see In re Arthur J. Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022), Illinois Plaintiff Gray alleges that Defendants collected inaccurate Driving Data, which may be used in the future to increase his insurance premiums, and that he would not have purchased his vehicle had he known of Defendants' conduct. *See* ¶¶ 215, 222–23; *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160 (N.D.

Ill. 2022) (ICFA pecuniary harm substantiated where Plaintiff "would not have purchased the product had she known the truth" about the product) (collecting cases). In addition, Plaintiff Horvath suffered pecuniary harm through an increase in his insurance premiums. ¶¶ 226, 236–237. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (inducing plaintiff to pay higher insurance premiums is deceptive, violates public policy, and violates ICFA). These losses and potential losses are more than sufficient to state Illinois Consumer Fraud Act claims.

**B. Plaintiffs Alleged Losses Caused by Defendants' Conduct.**

Defendants also contend Plaintiffs do not allege a loss caused by Defendants' unlawful actions. Doc. 141-1 at 62. Defendants misstate the relevant causation pleading standard and ignore Plaintiffs' detailed allegations regarding the harms suffered as a direct and proximate result of Defendants' statutory violations.

The relevant consumer protection statutes do not require that a defendant's conduct be the *sole* proximate cause of the injuries alleged; instead, plaintiffs need only allege that a defendant's alleged statutory violations were a "substantial cause" of the harms they suffered. *See, e.g.*, *BCR Aviation, LLC v. Texas Gyro, Inc.*, 2019 WL 2437034, at *5 (N.D. Tex. June 11, 2019) (Texas Deceptive Trade Act requires "but-for" causation).[21]

[21] *See also, e.g.*, *Brown v. Transworld Sys. Inc.,* 646 F. Supp. 3d 1328, 1343 (W.D. Wash. 2022) (Washington CPA requires showing that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."); *Saika v.*

Plaintiffs do exactly that. Plaintiffs alleged Defendants' unlawful and non-consensual acquisition, use, and sale of their Driving Data was a substantial factor in Plaintiffs' loss of privacy,[22] led to an increase in the insurance premiums they paid,[23] and that they would not have purchased their vehicles had they known of Defendants' conduct. *See, e.g., Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1046 (S.D. Cal. 2023) (unauthorized collection, use and dissemination of personal information and geolocation data constitutes a privacy injury).[24]

---

*Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 718 (N.D. Ill. 2018) (ICFA requires allegation that "unfair conduct 'proximately cause[d]' their injury.") (citation omitted); *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99, 133 (D. Conn. 2024) (citation omitted) (for CUPTA "[t]he language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff.") (citation omitted); *see also Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 219 (2d Cir.) (For New York' consumer protection law, "[t]he key phrase, "by reason of", has been interpreted to *not* require proximate cause."); *Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 330 (2011) ("but-for" allegations are "sufficient to allege causation" under the California Unfair Competition Law).

[22] *See* ¶¶ 34, 36, 131, 255, 622, 636, 649, 664, 699, 709, 710, 715,748, 749, 787, 843, 863, 944.

[23] ¶¶ 20, 22, 38, 49, 64, 94, 144, 156, 183, 199, 210, 237, 253, 267, 280, 292, 308, 335, 354, 367, 369, 384, 417, 450, 945.

[24] To the extent that reliance is required in any of the state consumer protection statutes (which Defendants have not specified), this is satisfied, as Plaintiffs alleged they did not consent to Defendants' data sharing practices and would not have purchased their vehicles had they been told about it. ¶¶ 23, 39, 53, 69, 84, 97, 105, 120, 136, 147, 159, 170, 189). *See Bishop v. 7–Eleven, Inc.*, 651 F. App'x 657, 658 (9th Cir. 2016) (where plaintiff alleged reliance by alleging he would not have purchased a good if defendant had fully disclosed information about the product); *see also Hughes v. Ester C Co*., 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) (same).

Defendants argue Plaintiffs' claims are implausible as Plaintiffs do not allege receiving "any notice of adverse action." Doc. 141-1 at 63. Defendants cite no authority supporting the proposition that the applicable consumer protection statues require Plaintiffs to allege the existence of an "adverse action" within the meaning of FCRA to state a claim. Plaintiffs alleged Defendants' conduct was a substantial factor leading to their injuries.[25] Accordingly, the Court should reject Defendants' arguments seeking dismissal.[26]

---

[25] Contrary to Defendants' assertion, Doc. 141-1, at 62, n.22, they are not mere "third parties" incidentally involved in the case but instead engaged in a multi-year scheme to intercept consumer data and proximately cause Plaintiffs to suffer increased insurance premiums and other damages. That distinction renders inapposite *Severn Place Assocs. v. Am. Bldg. Servs*., *Inc*., in which the court declined to hold incidental third parties—a janitorial service that caused flooding in an office building that resulted in increased insurance premiums—liable for those increase premiums both as a matter of public policy and due to the lack of proximate causation. 930 So.2d 125, 129 (La. Ct. App. 2006).

[26] In a footnote, Defendants argue that Plaintiffs fail to state a claim under California's Unfair Competition Law because Plaintiffs could have prevented the damages (Defendants from bundling their driver data and negatively characterizing it), had Plaintiffs improved their "driving behavior." Doc. 141-1 at 64 n.24. This assertion is contradicted by Plaintiffs' allegations that the data collected by Defendants was fundamentally inaccurate and mischaracterized their driving. ¶¶ 916–921. Even if the data collected by Defendants was not riddled with inaccuracies, Plaintiffs' claimed driving behaviors, such as "hard braking," are not illegal or inherently unsafe. ¶¶ 47, 154, 232, 278, 378, 918–919. Defendants also provided no instructions to Plaintiffs about "improving their own driving behavior." Doc. 141-1, at 64 n.24.

### C. Plaintiffs Alleged their Consumer Protection Claims with the Requisite Specificity.

Plaintiffs allege, in extensive detail, how Defendants violated various state consumer protection statutes and harmed Plaintiffs and class members in the process.

Defendants nevertheless seek dismissal, arguing that Plaintiffs fail to identify the specific statutory section that Defendants violated. Doc. 141-1 at 65–66. Defendants cite only to summary language in the causes of action, *id*. at 65 (citing ¶¶ 1121–22) and ignore the detailed allegations throughout the MCC concerning Defendants' collection, use, and sale of Plaintiffs' Driving Data, all of which are expressly incorporated into each cause of action.[27]

Plaintiffs *do* identify each specific statutory provision that Defendants violated. *See, e.g.*, ¶ 1452 (violations of K.S.A § 50-627 and 627(b)); ¶ 1697 (violations of Nev. Rev. Stat. §§ 598.0915 through 598.0925); ¶ 1760 (violations of N.C. Gen. Stat. § 75-1.1(a)). Where Plaintiffs do not, the relevant statutes include catch-all provisions that prohibit unfair and deceptive practices generally, or otherwise define the unfair or deceptive conduct at issue, eliminating any need to identify the specific subsections pursuant to which a claim is brought. *See, e.g.*, Cal. Code § 17200 (defining prohibited practices); Conn. Gen. Stat. Ann. § 42-110 (referencing FTCA definitions for unfair or deceptive acts); Fla. Stat. 501.204

---

[27] *See* ¶¶ 702–734 (Verisk's alleged conduct), 738–768 (LNRS's alleged conduct), 916–931 (using flawed data is fundamentally unfair to consumers).

(same); Mass. Gen. Laws Ann. Ch. 93A, § 2(a)) (same); Ky. Rev. Stat. Ann. § 367.170 (defining unlawful acts as "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."); 815 ILCS 505/2; Ala. Code § 8-19-5; Idaho Code § 48-603; Ind. Code § 24-5-0.5-3(a).

The only two cases on which Defendants' hyper-technical argument relies are unavailing. In *ALK 2, LLC v. K2 Marine, Inc*., 647 F. Supp. 3d 1253, 1260 (M.D. Ala. 2022), the court dismissed a consumer's claim under Alabama's unfair competition law because the consumer lacked statutory standing—not because of a technical pleading deficiency. And In *Humphrey v. Citibank NA*., 2013 WL 5407195, at *7 (N.D. Miss. Sept. 25, 2013), the court dismissed the Mississippi CPA claim in part because plaintiff did not identify which of thirteen enumerated acts were engaged in by the defendant. However, contrary to *Humphrey,* the MCPA explicitly states that the practices identified in that section were not intended to "limit[] the scope of subsection (1)" and its prohibition on "unfair or deceptive" trade practices generally. Miss. Code § 75-24-5(2). The *Humphrey* court failed to consider that language. 2013 WL 5407195, *7–8. Dismissal therefore was inappropriate, and this Court should disregard that non-binding and nonprecedential decision.

**D. Plaintiffs Adequately Pled UDAP Claims.**

Defendants argue that Plaintiffs' consumer protection claims fail to satisfy Rule 9(b), which requires allegations of fraud to be pled with particularity. However,

Plaintiffs' UDAP claims against Defendants are based on unfair and/or unlawful conduct, not fraudulent conduct, and therefore are not subject to Rule 9(b). *See In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418, 440 (E.D. Va. 2019) (Rule 9(b) does not apply to the unfair competition prong of Florida's consumer protection statute); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 819 (N.D. Ill. 2017) ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the [Illinois] Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."); *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1373-74 (N.D. Ga. 2015). ("Absent some clear, binding directive from Congress, the Supreme Court, or the Eleventh Circuit, this Court finds it inappropriate to impose a heightened pleading standard in a consumer protection case, even if there is a fraud dimension to any of the claims.").

Plaintiffs alleged the UDAP claims premised on unfair and/or unlawful acts, not on fraudulent or deceptive practices. *See* ¶¶ 1121–1122 (alleging that Defendants "engaged in unfair and unconscionable conduct innovation of the [Alabama] Act"); 1136-37 (the Arizona Act); 1231-32 (the California UCL); 1317-38 (the FDUTPA); 1377-78 (the Idaho Act); 1393-94 (Illinois Act); 1429-30 (Indiana Act); 1453-54 (Kansas Act); 1469-70 (Kentucky Act); 1542-43 (Massachusetts Act); 1705-06

(Nevada Act); 1761-62 (North Carolina Act); 1785-91 (alleging unfair and unlawful practices under the Oklahoma Act); 1812, 1818 (alleging unfair practices under the Pennsylvania Act). Instead, Plaintiffs alleged and claim that Defendants' practice of accepting Plaintiffs' Driving Data with knowledge that the data was unreliable, misleading, and obtained without consent, and further using, selling, and disseminating that personal Driving Data, was unfair and unconscionable. *See, e.g.*, ¶ 1231. These claims do not sound in fraud, but instead are unfair because Defendants' conduct caused substantial harm to consumers, which outweighs any potential benefits. *See In re Zoom Video Comm's Inc. Privacy Litig.*, 2021 WL 930623, at *23 (N.D. Cal. Mar. 11, 2021). Defendants do not address Plaintiffs' claims for violations of the unfair and unlawful prongs of the various UDAP laws.

**E. Plaintiffs' Claims are Not Subject to Dismissal Based on a Pre-Suit Notice Requirement.**

Plaintiffs sent a Consumer Notice Letter to Defendants on November 22, 2024 (prior to filing the MCC in December 2024) that summarized Defendants' wrongdoing and Plaintiffs' injuries. Doc. 141-2; ¶¶ 1114, 1220. The Notice Letter states that Defendants acquired Plaintiffs' Driving Data without their knowledge or consent and then used and further shared that data with third parties, including various insurers. Doc. 141-2. The Letter further details that Plaintiffs suffered economic damages as a result of Defendants' conduct, including a loss of privacy, increased insurance rates, and difficulties securing auto insurance. *Id.*

Yet Defendants improperly seek dismissal of Counts 11, 31, 37, and 40, asserting that Plaintiffs failed to comply with a pre-suit notice requirement under the UDAP statutes of Alabama, Indiana, Massachusetts, and Mississippi, respectively. Doc.141-1, at 69–71. Defendants argue that Plaintiffs' Notice Letter was deficient because it failed to "specifically" identify the claimant, the alleged improper conduct, and the injury suffered. *Id.* Plaintiffs disagree. In any event, the sufficiency of a notice is an issue of fact that cannot be decided on the pleadings. *Sunshine Children's Learning Ctr., LLC v. Waste Connections of Fla., Inc.*, 2022 WL 218896, at *4 (S.D. Fla. Jan. 25, 2022) (holding that the adequacy of a notice is a factual issue that cannot be determined on a motion to dismiss) (citation omitted). The Court should reject the Defendants' argument on this basis alone.

Further, even if Plaintiffs failed to provide any Notice Letter, such a failure would not warrant dismissal. First, the pre-suit requirements under Alabama, Indiana, and Massachusetts law do not apply to Plaintiffs' claims in this case based on their own terms. The notice requirements of Alabama and Massachusetts are inapplicable because neither Defendant has established that it has a place of business or assets in those states. *See Bolling v. Mercedes-Benz USA, LLC*, 2025 WL 83826, at *9 (N.D. Ga. Jan. 10, 2025) (Thrash, J.) (addressing Ala. Code § 8-19-10(e)); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, 2018 WL 7197233, at *44 (S.D.N.Y. Dec. 26, 2018) (addressing Mass. Gen. Laws ch. 93A, §

9(3)). Indiana's notice provision likewise is inapplicable because Defendants caused incurable harm to Plaintiff Lima—an Indiana resident—by collecting and distributing his Driving Data without his consent, increasing his insurance premiums. Ind. Code § 24-5-0.5-5; ¶¶ 249–253.

Second, because the statutory provisions requiring notice and other pre-suit conduct are procedural rather than substantive, a failure to comply does not preclude pursuing these claims in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (holding that state procedural rules do not control in federal court because Rule 23 sets forth the only requirements to file a class action). Indeed, federal courts consistently permit consumer protection claims to proceed notwithstanding non-compliance with statutory pre-suit notice provisions. *See, e.g.*, *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 4333246, at *13 (N.D. Ill. Sept. 27, 2024); *Chen v. Target Corp.*, 2022 WL 1597417, at *5 (D. Minn. May 19, 2022); *see also Rickman v. BMW of N. Am.*, 2020 WL 3468250, at *15–16 (D.N.J. June 25, 2020) (refusing to dismiss claim based on the Mississippi Consumer Protection Act because plaintiff did not participate in a settlement program required under the act prior to filing lawsuit). An alleged failure to submit pre-suit notice does not support dismissing Plaintiffs' claims.

## VII. PLAINTIFFS' REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF SHOULD NOT BE DISMISSED.

Defendants seek to dismiss Plaintiffs' claim for declaratory and injunctive relief. Defendants contend that Plaintiffs have adequate remedies at law precluding injunctive relief (Doc. 141-1 at 71), and that Plaintiffs lack standing because they are not at risk of future harm. *Id.*; Doc. 142-1 at 75 n.33. Both arguments fail.

First, Plaintiffs' legal claims do not preclude them from also seeking equitable relief, especially at the pleading stage. *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1325 (N.D. Ga. 2024) (plaintiffs are permitted to seek alternative remedies at pleading stage); *Bracy v. Americold Logistics LLC*, 2025 WL 552676, at *10 (N.D. Ga. Feb. 19, 2025) ("existence of another adequate remedy does not preclude a declaratory judgment"). Plaintiffs may request alternative or different types of relief. *Bolling v. Mercedes-Benz USA, LLC*, 2024 WL 3972987, at *6 (N.D. Ga. Aug. 27, 2024) (observing that "the Federal Rules of Civil Procedure authorize parties to plead for alternative or different types of relief'"). Accordingly, Defendants' motion should be denied as Plaintiffs are permitted to plead and develop the evidentiary record on their request for equitable relief. *See Callen v. Daimler AG*, 2020 WL 10090879, at *25 (N.D. Ga. June 17, 2020) (denying request to dismiss claims for equitable relief as premature before development of evidentiary record); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1297 (N.D. Ga. 2018) ("Plaintiffs may later prove that they are entitled to injunctive relief, or they

may not, but they will not be stripped of the opportunity to do so before the Court has the opportunity to weigh equitable relief factors upon a fuller evidentiary record.”).

Next, Defendants claim Plaintiffs lack standing to seek equitable relief because GM stopped sharing Driving Data with Verisk and LNRS. Doc. 141-1 at 72; Doc 142-1 at 75. That fact alone does not foreclose future harm. Plaintiffs’ Driving Data has already been transmitted to third parties and continues to be at risk of misuse for years to come. ¶¶ 1056, 1066.[28] In fact, LNRS is still promoting a driving behavior data report for insurers. ¶ 960. Although Verisk announced it was ending its telematics program in April/May 2024, it is unclear what happened to the data, and it has concealed the identities of insurers who purchased Verisk Reports, frustrating Plaintiffs’ efforts to trace their sources of continuing harm. ¶¶ 957–58.

In a similar case, a car manufacturer argued plaintiffs did not allege a real threat of future injury because it no longer sold the vehicle at issue. *Sowa v. Mercedes-Benz Grp. AG Mercedes-Benz USA, LLC*, 2024 WL 5290887, at *7 (N.D. Ga. Dec. 31, 2024). The court disagreed, finding plaintiffs’ allegation that vehicles still on the road posed a safety hazard was sufficient to show a likelihood of future injury. *Id.* at *7; *see In re Home Depot, Inc.*, 2016 WL 2897520, at *4 (N.D. Ga.

[28] Likewise, the January 16, 2025 Consent Agreement between the Federal Trade Commission and GM does not obviate the Class Members’ future harms because Driving Data has been transmitted to third parties.

May 18, 2016) (ongoing security inadequacies following a data breach are sufficient to justify injunctive relief). Here, a significant risk of ongoing and future harm exists because Plaintiffs' Driving Data will continue to be "viewed, distributed, and used by unauthorized third parties for years to come." ¶ 1066.

## **CONCLUSION**

For the reasons stated herein, and based on Plaintiffs' detailed allegations, the Court should deny Defendants' motion to dismiss or alternatively grant Plaintiffs leave to amend and claims that are dismissed.

Date: May 27, 2025

Respectfully submitted,

/s/ *John R. Bevis*
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

/s/ *Norman E. Siegel*
Norman E. Siegel, MO Bar No. 44378
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

***MDL Co-Lead Counsel***

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com

Amy Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
akeller@dicellolevitt.com

***OnStar Track Co-Lead Counsel***

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 24th Floor
New York, New York 10169
Tel: (212) 223-4478
jguglielmo@scott-scott.com

Sabita J. Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel: (510) 254-6808
ssoneji@tzlegal.com

***LexisNexis/Verisk Track Co-Lead Counsel***

Kiley L. Grombacher
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: (805) 270-7100
Kgrombacher@bradleygrombacher.com

Emily E. Hughes
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
eeh@millerlawpc.com

P. Graham Maiden
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9670
gmaiden@motleyrice.com

Thomas E. Loeser
**COTCHETT, PITRE & MCCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Tel: (206) 802-1272
tloeser@cpmlegal.com

Adam E. Polk
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
apolk@girardsharp.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
jyanchunis@forthepeople.com

***OnStar Track Steering Committee***

Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
gmb@cglaw.com

Gary S. Graifman
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Rd., Suite 200
Montvale, New Jersey 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com

Jennifer M. French
**LYNCH CARPENTER, LLP**
1234 Camino Del Mar
Del Mar, California 92014
Tel: (619) 762-1903
jennf@lcllp.com

Chris Springer
**KELLER ROHRBACK LLP**
801 Garden Street, Suite 301
Santa Barbara, California 93101
Tel: (805) 456-1496
cspringer@kellerrohrback.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301

Tel: (954) 332-4200
ostrow@kolawyers.com

***LexisNexis/Verisk Track Steering Committee***

M. Brandon Smith
**CHILDERS, SCHLUETER & SMITH LLC**
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Tel: (404) 419-9500
bsmith@cssfirm.com

***Plaintiffs' Liaison Counsel***

**CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to L.R. 7.1D that the foregoing complies with the font and point selections permitted by L.R. 5.1C. This brief was prepared on a computer using the Times New Roman font (14 point).

*/s/ John R. Bevis*
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with this Court via its CM/ECF service, which will send notification of such filing to all counsel of record this 27th day of May, 2025.

*/s/ John R. Bevis*
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com