**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection | No.: 1:24-md-3115-TWT |

# DEFENDANTS GENERAL MOTORS LLC AND ONSTAR, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE MASTER CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT.......................................................................1

ARGUMENT ..........................................................................................2

I. Plaintiffs' Federal Statutory Claims Must Be Dismissed. ...............................2

A. Plaintiffs Fail to State Federal Wiretap Act Claims. .............................2

B. Plaintiffs' Stored Communications Act Claims Fails..........................14

C. Plaintiffs' CFAA Claim Must Be Dismissed......................................19

II. Plaintiffs' State Law Claims Must Be Dismissed........................................27

A. Most of Plaintiffs' State Law Claims are Preempted by the FCRA..........................................................................................27

B. Plaintiffs' Alleged Injuries Are Not Cognizable or Caused by GM.............................................................................................31

C. Plaintiffs' Choice-of-Law Analysis Is Flawed. ..................................33

D. Plaintiffs' Invasion of Privacy Claim Must Be Dismissed.................35

E. Plaintiffs' Trespass to Chattels Claim Must Be Dismissed.................39

F. Plaintiffs' Breach of Contract Claim Must Be Dismissed. .................42

G. Plaintiffs' Unjust Enrichment Claim Must Be Dismissed..................43

III. Plaintiffs' State Statutory Claims Must Be Dismissed. ................................45

A. Claims Lacking a Representative Plaintiff Must Be Dismissed. ........45

B. Plaintiffs Failed to Comply with Pre-Suit Notice Requirements........46

C. Plaintiffs Fail to Satisfy Rule 9(b).....................................................47

D. Plaintiffs Fail to Allege Scienter.......................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu v. Dickson*,
107 F.4th 508 (6th Cir. 2024) ....................26

*Aghaeepour v. N. Leasing Sys., Inc.*,
378 F. Supp. 3d 254 (S.D.N.Y. 2019) ....................30

*Albonajim v. Allstate Ins.*,
2005 WL 2319122 (Mich. Ct. App. Sept. 22, 2005) ....................43

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ....................21

*In re Application*,
2009 WL 159187 (S.D.N.Y. Jan. 13, 2009) ....................5

*In re Application*,
396 F. Supp. 2d 747 (S.D. Tex. 2005) ....................6

*Ass'n Servs., Inc. v. Smith*,
549 S.E.2d 454 (Ga. Ct. App. 2001) ....................38

*AT&T Mobility LLC v. Does 1-4*,
2011 WL 13213864 (N.D. Ga. May 26, 2011) ....................40

*Austrian Motors v. Travelers Ins.*,
275 S.E.2d 702 (Ga. Ct. App. 1980) ....................40

*Auto. Assurance Grp. v. Giddens*,
2022 WL 18460629 (N.D. Ga. Sept. 20, 2022) ....................23

*Baker v. Akumin Corp.*,
2024 WL 1931480 (S.D. Fla. Apr. 16, 2024) ....................32

*Bazemore v. U. S. Bank N.A.*,
872 S.E.2d 491 (Ga. Ct. App. 2022) ....................39

*Blackmore v. Wachovia Mortg. Corp.*,
2013 WL 504388 (D. Utah Feb. 8, 2013) ....................46

*Blanton v. Deloach*,
2015 WL 6758230 (S.D. Ga. Nov. 5, 2015)....................................................36

*Bowen v. Porsche Cars, N.A.*,
561 F. Supp. 3d 1362 (N.D. Ga. 2021)..........................................20, 21, 24, 40

*Brown Jordan Int'l, Inc. v. Carmicle*,
846 F.3d 1167 (11th Cir. 2017) ..........................................................16, 20, 21

*Brown v. J.P. Turner & Co.*,
2011 WL 1882522 (N.D. Ga. May 17, 2011)............................................19, 39

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ..........................................................14

*M.H. ex. rel. C.H. v. Omegle.com LLC*,
122 F.4th 1266 (11th Cir. 2024) ....................................................................37

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024).....................................................33

*Callen v. Daimler AG*,
2021 WL 4523436 (N.D. Ga. Oct. 4, 2021) ....................................................46

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ............................................................................12

*Carpenter v. United States*,
585 U.S. 315 (2018)........................................................................................35

*CBS Inc. v. PrimeTime 24 Joint Venture*,
245 F.3d 1217 (11th Cir. 2001) ......................................................................11

*CFPB v. Frederick J. Hanna & Associates*,
114 F. Supp. 3d 1342 (N.D. Ga. 2015)............................................................48

*CFTC v. Hunter Wise Commodities, LLC*,
749 F.3d 967 (11th Cir. 2014) ........................................................................10

*In re Checking Acct. Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010)............................................................46

*Chemence, Inc. v. Doherty*,
2007 WL 10025204 (N.D. Ga. Mar. 23, 2007) ....................................................44

*Clemons v. Waller*,
82 F. App'x 436 (6th Cir. 2003) ....................................................................12

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
2008 WL 2132233 (N.D. Ga. May 21, 2008)......................................................34

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992)..........................................................................................6

*Conti v. Am. Honda Motor Co.*,
2019 WL 10371067 (C.D. Cal. Oct. 17, 2019) ....................................................49

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)..................................................................37

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
793 F. Supp. 2d 311 (D.D.C. 2011)....................................................................19

*Credit Data of Ariz., Inc v. Arizona*,
602 F.2d 195 (9th Cir. 1979) ............................................................................30

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)..........................................................................................29

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2015 WL 3988488 (N.D. Ill. June 29, 2015).......................................................43

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) ................................................................49

*David v. Am. Suzuki Motor Corp.*,
629 F. Supp. 2d 1309 (S.D. Fla. 2009) ...............................................................34

*Deerman v. Fed. Home Loan Mortg. Corp.*,
955 F. Supp. 1393 (N.D. Ala. 1997)...................................................................46

*Dep't of Lab. v. McConnell*,
828 S.E.2d 352 (Ga. 2019) ...............................................................................36

*Dial HD, Inc. v. Clearone Comms., Inc.*,
2010 WL 3732115 (S.D. Ga. Sept. 7, 2010) ....................40, 41

*Enhanced Recovery Co. v. Frady*,
2015 WL 1470852 (M.D. Fla. Mar. 31, 2015) ....................26

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ....................48

*Everhart v. Colonial Pipeline Co.*,
2022 WL 3699967 (N.D. Ga. July 22, 2022) ....................32

*Expert Janitorial, LLC v. Williams*,
2010 WL 908740 (E.D. Tenn. Mar. 12, 2010) ....................19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................10, 11, 14, 15

*Fish v. Tesla, Inc.*,
2022 WL 1552137 (C.D. Cal. May 12, 2022) ....................25

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
339 F. Supp. 3d 408 (S.D.N.Y. 2018) ....................42

*Fox v. Ritz-Carlton Hotel Co.*,
977 F.3d 1039 (11th Cir. 2020) ....................45

*Fox v. Saginaw Cnty., Mich.*,
67 F.4th 284 (6th Cir. 2023) ....................45

*Fraga v. UKG, Inc.*,
2022 WL 19486310 (S.D. Fla. May 10, 2022) ....................32

*Freedom Banc Mortg. Servs. v. O'Harra*,
2012 WL 3862209 (S.D. Ohio Sept. 5, 2012) ....................17

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015) ....................28

*Garcia v. City of Laredo, Tex.*,
702 F.3d 788 (5th Cir. 2012) ....................15

*Geier v. American Honda Motor Co.*,
529 U.S. 861 (2000)..............................................................................................30

*Gonzales v. Raich*,
545 U.S. 1 (2005)....................................................................................................8

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018).................................................................3

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ...........................................................................*passim*

*In re Google, Inc. Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013).......................................................18

*Gumner v. Pepsico*,
2023 WL 8351560 (C.D. Cal. Oct. 5, 2023) ........................................................50

*In re Haas*,
48 F.3d 1153 (11th Cir. 1995) ..............................................................................11

*Hately v. Watts*,
917 F.3d 770 (4th Cir. 2019) ................................................................................19

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
497 F. Supp. 2d 627 (E.D. Pa. 2007).............................................................20, 21

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)................................................................27

*Helpling v. Rheem Mfg. Co.*,
2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ......................................................47

*Hogin v. Cottingham*,
533 So. 2d 525 (Ala. 1988)...................................................................................36

*Holden v. Holiday Inn Club Vacations Inc.*,
98 F.4th 1359 (11th Cir. 2024) ..............................................................................31

*Hollifield v. Monte Vista Biblical Gardens, Inc.*,
553 S.E.2d 662 (Ga. Ct. App. 2001)....................................................................32

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012).............................................................4

*J.R. v. Walgreens Boots All., Inc.*,
470 F. Supp. 3d 534 (D.S.C. 2020) ...................................................................44

*Jackson Nat'l Life Ins. v. Crum*,
2023 WL 6442932 (N.D. Ga. July 20, 2023) ......................................................39

*Jacobson v. BH Assocs. Ltd. P'ship*,
2001 WL 738408 (Mich. Ct. App. June 29, 2001) ...............................................43

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................41

*Jurgens v. Build.com, Inc.*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017).........................................................2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)..................................................................45

*Kenney v. Bank of Am., N.A.*,
2025 WL 1489549 (C.D. Cal. May 23, 2025) .......................................................50

*Lan Li v. Walsh*,
2017 WL 3140522 (S.D. Fla. July 24, 2017) ........................................................44

*Larson v. Liberty Mut. Fire Ins.*,
2012 WL 93181 (D. Haw. Jan. 10, 2012)...............................................................7

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)..........................................................................................6, 12

*Lisk v. Lumber One Wood Preserving, LLC*,
792 F.3d 1331 (11th Cir. 2015) ...........................................................................50

*Loper Bright Entr. v. Raimondo*,
144 S. Ct. 2244 (2024).........................................................................................30

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012).................................................................40

*Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*,
762 F. App'x 719 (11th Cir. 2019) .....48

*McCann v. Iroquois Mem'l Hosp.*,
622 F.3d 745 (7th Cir. 2010) .....13

*Melzer v. Johnson & Johnson Consumer Inc.*,
2023 WL 3098633 (D.N.J. Apr. 26, 2023) .....45

*Meyer v. Mittal*,
2024 WL 385129 (D. Or. Feb. 1, 2024) .....35

*Mills v. Foremost Ins. Co.*,
511 F.3d 1300 (11th Cir. 2008) .....45

*Mobley v. State*,
834 S.E.2d 785 (Ga. 2019) .....36

*Moonlight Mountain Recovery, Inc. v. McCoy*,
2024 WL 4027972 (D. Idaho Sept. 3, 2024) .....21, 23

*Murphy v. DCI Biologicals Orlando, LLC*,
797 F.3d 1302 (11th Cir. 2015) .....10

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) .....23

*NLRB v. Reliance Fuel Oil Corp.*,
371 U.S. 224 (1963) .....8

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
692 F. Supp. 2d 373 (S.D.N.Y. 2010) .....23

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .....27

*Peterson v. Aaron's, Inc.*,
2017 WL 364094 (N.D. Ga. Jan. 25, 2017) .....34

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) .....29

*In re Pharmatrak, Inc.*,
329 F.3d 9, 18 (1st Cir. 2003)....................................................................4, 7, 11

*Provost v. Aptos, Inc.*,
2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ..................................................41

*Register.com, Inc. v. Verio*,
356 F.3d 393 (2d Cir. 2004) ..........................................................................42

*Rene v. G.F. Fishers, Inc.*,
817 F. Supp. 2d 1090 (S.D. Ind. 2011)...........................................................3, 9

*Riley v. Gen. Motors, LLC*,
664 F. Supp. 3d 1336 (M.D. Fla. 2023)..............................................................46

*Rodgers Grp., LLC v. Lewis*,
2022 WL 4095785 (D.N.J. Sept. 7, 2022)..........................................................44

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*
559 U.S. 393 (2010)....................................................................................46, 47

*Sitterli v. Csachi*,
811 S.E.2d 454 (Ga. Ct. App. 2018)................................................................44

*Smith v. Specialized Loan Servicing, LLC*,
2018 WL 4856039 (N.D. Ga. July 19, 2018) ....................................................31

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
2024 WL 4532937 (N.D. Cal. Oct. 15, 2024) ....................................................49

*Stacy v. Dollar Tree Stores, Inc.*,
274 F. Supp. 3d 1355 (S.D. Fla. 2017) ............................................................31

*Stanley v. Huntington Nat'l Bank*,
492 F. App'x. 456 (4th Cir. 2012) ....................................................................46

*Summers v. Bailey*,
55 F.3d 1564 (11th Cir. 1995) ........................................................................36

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) ....................................................12

*In re Takata Airbag Prods. Liab. Litig.*,
193 F. Supp. 3d 1324 (S.D. Fla. 2016) ........................................................47

*In re Takata Airbag Prods. Liab. Litig.*,
462 F. Supp. 3d 1304 (S.D. Fla. 2020) ........................................................34

*Ticketmaster Corp. v. Tickets.com, Inc.*,
2000 WL 1887522 (C.D. Cal. Aug. 10, 2000) ...............................................41

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022)..........................................................50

*Trump v. Clinton*,
626 F. Supp. 3d 1264 (S.D. Fla. 2022) ........................................................24

*U.S. v. Barrington*,
648 F.3d 1178 (11th Cir. 2011) .................................................................8, 9

*U.S. v. Batiste*,
2007 WL 2412837 (S.D. Fla. Aug. 21, 2007) ..................................................4

*U.S. v. Campagnuolo*,
592 F.2d 852 (5th Cir. 1979) .....................................................................12

*U.S. v. Eddings*,
2021 WL 2527966 (E.D. Pa. June 21, 2021)..................................................23

*U.S. v. Pasha*,
332 F.2d 193 (7th Cir. 1964) .....................................................................11

*U.S. v. Ropp*,
347 F. Supp. 2d 831 (C.D. Cal. 2004) ............................................................9

*U.S. v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) ........................................................7, 15, 16

*U.S. v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) ...................................................................7, 12

*U.S. v. Taketa*,
923 F.2d 665 (9th Cir. 1991) .......................................................................4

*In re U.S. for an Order Pursuant to 18 U.S.C. § 2705(b)*
289 F. Supp. 3d 201 (D.D.C. 2018) ....................16

*Van Buren v. United States*,
593 U.S. 374 (2021)....................*passim*

*Vita v. New Eng. Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024)....................13

*In re Vizio, Inc., Consumer Priv. Litig, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................37

*Vox Mkg. Grp. v. Prodigy Promos*,
556 F. Supp. 3d 1280 (D. Utah 2021)....................22, 23

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020)....................20

*Young v. Grand Canyon Univ., Inc.*,
57 F.4th 861 (11th Cir. 2023)....................48

*In re ZF-TFW Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022)....................49

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................4

**Statutes**

15 U.S.C. § 1681s-2(a) ....................27, 28

15 U.S.C. § 1681b(a)(3)(C) ....................31

15 U.S.C. § 1681t(b)(1)(F) ....................27, 28

18 U.S.C. §§ 1030(g) ....................20

18 U.S.C. § 2510....................2, 3, 8, 16, 17

18 U.S.C. § 2701(a) ....................16, 17, 18, 19

Ind. Code § 24-5-0.5-2(a)(8)....................47

Miss. Code § 75-24-15(2)....................46

N.H. Rev. Stat. § 570-A:1-2 .......... 13

O.C.G.A. § 44-1-3 .......... 40

O.C.G.A. § 51-10-1 .......... 41

O.C.G.A. § 51-10-3 .......... 40, 41

W. Va. Code § 46A-5-108(a) .......... 47

**Other Authorities**

87 FR 41042-01 .......... 30

Restatement (Second) Torts § 217 .......... 41

S. Rep. No. 90–1097 (1968) .......... 11

## PRELIMINARY STATEMENT

Plaintiffs' Opposition (ECF No. 153, "Opp.") does not save the defective claims in their sprawling Master Complaint ("MC").

*First*, Plaintiffs' attempts to apply federal criminal statutes in expansive and novel ways should be rejected. Driving a vehicle does not create a communication with content under the Federal Wiretap Act. Nor have Plaintiffs identified any parties to such "communications" aside from GM itself. Plaintiffs likewise fail to identify a "facility" as required by the Stored Communications Act, and they do not allege the sort of "technological harms" recoverable under the Computer Fraud and Abuse Act.

*Second*, the Opposition does not rebut GM's showing that most of Plaintiffs' state-law claims are preempted by the FCRA. Plaintiffs cannot escape the conclusion that their state-law claims would impose notice and consent requirements on GM, rendering them expressly and impliedly preempted. And their attempt to demonstrate otherwise based on an "impossibility" standard is not responsive to GM's argument.

*Third*, with respect to their common-law claims, Plaintiffs refuse to address the threshold question regarding which states' law should govern, aside from a suggestion that Georgia law should apply across the board. Nonetheless, the Opposition cites cases from a variety of jurisdictions without regard to choice of law. No matter which law is applied, these claims fail for numerous reasons.

*Finally*, Plaintiffs fail to state claims under the 50+ consumer statutes they

invoke. Plaintiffs lack standing to assert statutory claims from states in which no named Plaintiff resides, and the heightened standards of Rule 9(b) are not satisfied.

## ARGUMENT

### I. Plaintiffs' Federal Statutory Claims Must Be Dismissed.

#### A. Plaintiffs Fail to State Federal Wiretap Act Claims.

##### 1. Driving Data is not an electronic communication with "contents."

A communication must consist of at least two parties. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015). Contrary to Plaintiffs' argument, that commonsense interpretation is compelled by the FWA's text. An "electronic communication" can only be a "*transfer* of signs, signals, . . . data, or intelligence of any nature." 18 U.S.C. § 2510(12).[1] The word "transfer" implies two parties, or at minimum, an origin and a destination.[2] That is why courts reject FWA liability where a plaintiff "communicates" only with herself. *Jurgens v. Build.com, Inc.*, 2017 WL 5277679, at *6 (E.D. Mo. Nov. 13, 2017) (plaintiff's interactions with "her own computer" were "not 'communications' at all"). Yet that is precisely what Plaintiffs allege here. *See* Opp. 16 ("Plaintiffs intended to communicate Driving Data (if at all) exclusively to themselves.").

---

[1] All emphases are added unless otherwise indicated.

[2] *Transfer*, https://www.merriam-webster.com/dictionary/transfer (definition 1: "to convey from one person, place, or situation to another"). GM never argued that a communication must be "made from one person to another." Opp. 11 n.8.

Here, the allegedly intercepted electronic communications existed within Plaintiffs' vehicles, and the only "transfer" alleged is *to GM*. Opp. 6. Plaintiffs' allegations put them in a bind: There is either no "transfer," in which case Plaintiffs have failed to plead an "electronic communication," or there is a "transfer" to GM, in which case the party exception applies. *Infra* § I.A.4. And any "transfer" of data between components of Plaintiffs' vehicles is not an "electronic communication" at all because an intra-vehicle signal is not "transmitted" through a "system that affects interstate or foreign commerce." 18 U.S.C § 2510(12); *see Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1094 (S.D. Ind. 2011); *see also infra* § I.A.3.

Even assuming the operation of a vehicle resulted in "communications," those communications lack "contents." Plaintiffs themselves define "[t]he term 'contents'" as "the *intended message conveyed* by [a] communication.'" ECF No. 152 at 9. Automatically generated data is "record" information, not content, because it is not generated through intent of the user; it thus lacks "substance, purport, or meaning," as those terms are defined in the case law. *See* ECF No. 142-1 ("Mot.") 17-19 (collecting cases); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1085-86 (N.D. Cal. 2018). Plaintiffs do not respond to this argument, instead focusing on the *types* of information held to be "record" information. In doing so, Plaintiffs ignore the FWA's text. It does not matter if Plaintiffs allege the interception of data "beyond [their] names or addresses." Opp. 10. What matters is whether the alleged

communication has "substance, purport, or meaning." Such "'content' is limited to information the user *intended to communicate*, such as the words spoken in a phone call." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012).

Plaintiffs' Opposition confirms that, by driving their cars, they did not intend to communicate with anyone. Opp. 15 ("Plaintiffs intended to communicate Driving Data (if at all) exclusively to themselves"); 17 ("Plaintiffs did not intend to send any Driving Data to GM—only to themselves."). Thus, Driving Data lacks "content." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) (no content where information was "not a search term or similar communication *made by the user*").[3]

Plaintiffs attempt to downplay the fact that silent video surveillance cannot violate the FWA. But courts have given several reasons for that conclusion, the most salient of which is that silent recordings lack content. *See U.S. v. Taketa*, 923 F.2d 665, 675 (9th Cir. 1991) (no violation where "videotaping did not intercept the contents of any communications"); *cf. U.S. v. Batiste*, 2007 WL 2412837, at *11 (S.D. Fla. Aug. 21, 2007) (physical surveillance "does nothing to prove the subject matter of their conversations"). Although video surveillance records a rich amount

[3] While Plaintiffs argue that this case is "analogous" to *Pharmatrak*, the "contents" element of the FWA was not disputed there. 329 F.3d 9, 18 (1st Cir. 2003). *Pharmatrak* is also distinguishable because the website users, intending to communicate their health information, "completed online forms." *Id.* Here, Plaintiffs merely operated their vehicles. This is more akin to *Zynga*, where the plaintiffs alleged the defendants "divulged identification and address information . . . *automatically generated* by the web browser." *In re Zynga*, 750 F.3d at 1107.

of expressive information, it does not capture the "contents" of communications. GM's acquisition of Driving Data similarly does not capture any "contents."

### 2. <u>The FWA's tracking device exception applies.</u>

The FWA's tracking device exception confirms that Plaintiffs' claims are outside of its scope. Plaintiffs do not dispute that the TCU qualifies as a tracking device under the FWA such that any transmission of location data from it is covered by the exception. Opp. 11. And Plaintiffs fail to respond to GM's argument that information *derived* from location data, e.g., route, speed, braking, and acceleration, is also covered by the exception because it relates to the "movement" of Plaintiffs ("person[s]") or their vehicles ("object[s]"). *See* Mot. 16-17. The FWA claim must at least be dismissed to the extent it is premised on location or location-derived data.

But the tracking device also mandates dismissal of the FWA claim altogether. Plaintiffs' contrary argument relies on cases holding that the tracking device exception does not cover every cell phone communication. That interpretation is not textual: "*all* information provided electronically by a cell phone (the 'tracking device') to a cell phone service provider—not just CSLI—would appear to fall outside the scope of 'electronic communication.'" *In re Application*, 2009 WL 159187, at *4 (S.D.N.Y. Jan. 13, 2009). The cases Plaintiffs cite reflect a judicial attempt at balancing the literal terms of the tracking device exception with the "multi-functional nature of the modern cell phone," which can "deliver[] many

different types of communication: live conversations, voice mail, pages, text messages, e-mail, . . . etc." *In re Application*, 396 F. Supp. 2d 747, 756 (S.D. Tex. 2005). None of those concerns is present here; according to Plaintiffs, the TCU is "a bug" that "intercepts and diverts electronic signals," Opp. 6, not a multifunctional device used for a litany of expressive communication. The TCU lacks the characteristics of a cell phone that have caused some courts to depart from the FWA's plain terms. Thus, this Court's inquiry should end with the plain text of the tracking device exception: "When the words of a statute are unambiguous, then . . . judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).[4]

### 3. Plaintiffs do not allege an interception.

Plaintiffs' theory of interception is as follows: Data flows "from vehicle sensors, to processing units, and then to the TCU," which then "diverts" it "to GM through cellular networks." Opp. 12. Plaintiffs fail to allege an interception under the FWA for two reasons: (1) they do not allege GM acquired Driving Data while it was "in flight"; and (2) even if the Data was "in flight," it was not being transmitted through a system affecting interstate commerce at the time of acquisition.

*First*, Plaintiffs contend they have alleged an interception because the TCU "simultaneously diverts" data to GM. Opp. 12. That argument fails:

---

[4] Any ambiguity as to whether the tracking device exception applies to Plaintiffs' claims cannot be resolved in Plaintiffs' favor. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (rule of lenity applies to civil applications of criminal statutes).

- Under the FWA, interception of an electronic communication must be "contemporaneous with transmission," i.e., "*while* in flight." *U.S. v. Steiger*, 318 F.3d 1039, 1147, 1050 (11th Cir. 2003).

- Plaintiffs do not allege Driving Data was "in flight" when it was intercepted—the MC alleges Driving Data reached each destination in the sequential chain (sensors, ECUs, and TCUs) and was not being transmitted beyond Plaintiffs' vehicles *at the time* GM allegedly used the TCU to acquire it. ¶¶ 847-54.

- Driving Data is allegedly sent "out of the vehicle" only after it reaches the TCU. ¶ 850 (alleging the TCU "transmit[s] Driving Data out of the vehicle"). And this transmission "out of the vehicle" is to GM. ¶ 851.

- GM cannot intercept a transmission to itself. *See Larson v. Liberty Mut. Fire Ins.*, 2012 WL 93181, at *8 (D. Haw. Jan. 10, 2012).[5]

The cases Plaintiffs cite do not help their argument. There was no interception in *Steiger*, which involved the use of a virus to download materials from a hard drive. 318 F.3d at 1047. The dicta that Plaintiffs quote merely suggests that emails may be susceptible to interception via automatic rerouting or duplication. *Id.* at 1050. That passage is irrelevant here because Driving Data was not "in flight" to begin with. So too with Plaintiffs' other cases. *U.S. v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010) (similarly concerning the alleged interception of emails); *Pharmatrak, Inc.*, 329 F.3d at 22 (concerning interception of information entered into a website form).

*Second*, even if Driving Data was "in flight" when acquired, Plaintiffs fail to allege this happened while the Data was being transmitted through a "system that

[5] Plaintiffs' analogy that the TCU acts as a "splitter on a garden hose" is inapt. Opp. 12. The MC alleges that *all* Driving Data is destined for the TCU; only *after* it arrives is some data sent to GM while other data is stored (in the TCU). ¶¶ 854-55.

affects interstate or foreign commerce." 18 U.S.C. § 2510(12). Plaintiffs allege the Data existed in a self-contained set of components in their vehicles at the time of the alleged interception (by the TCU). Opp. 12. They do *not* allege that Driving Data was "*at that time* being transmitted beyond" Plaintiffs' vehicles via an interstate network. *U.S. v. Barrington*, 648 F.3d 1178, 1201-03, n.25 (11th Cir. 2011).

Plaintiffs relegate *Barrington* and its progeny to a footnote, arguing that those cases are irrelevant since they involved "keystroke loggers on individual computers." Opp. 14. That distinction fails. Here, Plaintiffs allege that TCUs captured their interactions with their individual vehicles—which is analogous to a keylogger capturing a user's interactions with an individual computer.[6] Under *Barrington*, GM's alleged acquisition of Driving Data does not violate the FWA.

Plaintiffs also urge the Court to adopt an anti-textual interpretation of the FWA because GM acquired "petabytes" of data, some of which "presumably crossed state lines," "affect[ing] interstate commerce in the aggregate." Opp. 13-14. That might be relevant to whether Congress *could* proscribe the conduct alleged by Plaintiffs.[7] But the question here is whether Congress *did* that when enacting the FWA. The

---

[6] A "keylogger" is a software that "captures every key depression, or keystroke, made on a computer." *Barrington*, 648 F.3d at 1184 n.2.

[7] Plaintiffs' cited cases speak only to this irrelevant question. *NLRB v. Reliance Fuel Oil Corp*., 371 U.S. 224, 226 (1963) (construing the statutory jurisdiction of the NLRB); *Gonzales v. Raich*, 545 U.S. 1, 19 (2005) (discussing whether "homegrown marijuana" can be regulated under the Commerce Clause).

FWA's text, as interpreted by *Barrington* and its progeny, answers in the negative: an "interception must occur *while* the transmission is *traveling* through a system that affects interstate or foreign commerce." *Rene*, 817 F. Supp. 2d at 1094.

Plaintiffs' argument that they have alleged an interception because "GM tethered in-vehicle systems to cellular networks," Opp. 14, is likewise irrelevant because Plaintiffs do not allege that the TCU intercepts data *while* it is traveling through that cellular network. The court in *U.S. v. Ropp*, 347 F. Supp. 2d 831, 838 (C.D. Cal. 2004), rejected a similar argument, reasoning that "although [the] system is connected to a larger system—the network—which affects interstate or foreign commerce, the transmission in issue did not involve that system," and thus, the FWA did not apply because "[t]he network connection is irrelevant to the [allegedly intercepted] transmissions." *Id.*; *see also Barrington* 648 F.3d at 1202 n.25 (relying on *Ropp* to hold similarly even though keylogger software "automatically transmitted [the data] to . . . Barrington's personal email address" post-acquisition).

### 4. <u>The FWA's party exception applies.</u>

Plaintiffs allege that GM acquires Driving Data when the TCU transmits data directly to GM, and that GM is the sole recipient of that transmission. ¶¶ 849-52. Because the transmission from the TCU went directly to GM, the party exception applies. *In re Google*, 806 F.3d at 142-43. And because the facts needed to sustain this defense are apparent from Plaintiffs' complaint, GM's motion should be granted.

*See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015). Plaintiffs brush aside these allegations as "merely describ[ing] the technology GM uses" to "divert" Driving Data, Opp. 15, but the mechanics matter under this technical statute. Plaintiffs also argue the party exception applies only when a sender subjectively *intends* to communicate with a recipient or authorizes such communication, relying on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). Opp. 15-18. Plaintiffs' argument is wrong for several reasons.

*First*, Plaintiffs' interpretation of the party exception is unmoored from the text and structure of the FWA. "Party" is not defined, so the term is given its "plain and ordinary meaning." *CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 976 (11th Cir. 2014). It is not possible to interpret the word "party" to exclude a transmission's sole recipient. Critically, "[t]here is no statutory language indicating [the party exception] excludes intended recipients who procured their entrance to a conversation through a fraud in the inducement." *In re Google*, 806 F.3d at 143. Whatever deceit Plaintiffs have alleged is of no moment: "just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping." *Id.* at 144.

Plaintiffs' interpretation of "party"—to mean only a party with whom the other party consents to communicating—is also undermined by the FWA's structure. Section 2511(2)(d) separately immunizes a purported interception where "one of the parties to the communication has given prior consent to such interception."

Congress's decision not to condition the party exception on consent of any kind is dispositive, for "[w]here Congress knows how to say something but chooses not to, its silence is controlling." *In re Haas*, 48 F.3d 1153, 1156 (11th Cir. 1995).

*Second*, although resort to the legislative history is unnecessary, *see CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001), it too conflicts with Plaintiffs' interpretation. When Congress enacted the FWA, it stated the term "'party' would mean the person actually participating in the communication" and cited *U.S. v. Pasha*. *See* S. Rep. No. 90–1097, at 93-94 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2182. In *Pasha*, the Seventh Circuit held that an officer impersonating the intended recipient was an "immediate party" to a telephone conversation. *See* 332 F.2d 193, 198 (7th Cir. 1964). "By citing to *Pasha*, Congress strongly intimated that one who impersonates the intended receiver of a communication may still be a party to that communication . . . and that such conduct is not proscribed by the statute." *In re Google*, 806 F.3d at 144. In contrast, the legislative history cited by Plaintiffs and the Ninth Circuit does not relate to the party exception, and is irrelevant because it focuses on *"third-party* . . . auditor[s]" that definitionally are *not* parties to a communication. *In re Facebook*, 956 F.3d at 608.

*Third*, Plaintiffs' interpretation is contrary to the weight of precedent. *In re Facebook* essentially stands alone: In that case, the Ninth Circuit purported to draw support from two cases, but neither involve the party exception. *Pharmatrak*, 329

F.3d at 19-21 (addressing the distinct "prior consent" provision of Section 2511(2)(d)); *Szymuszkiewicz*, 622 F.3d at 705-06 (addressing contemporaneity).

In contrast, the reasoning of *In re Google* has been widely adopted. *See T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 5284883, at *3 (N.D. Ga. Dec. 10, 2024) (collecting cases). The Second, Fifth, and Sixth Circuits (plus the Seventh in *Pasha*) side with *In re Google*, rejecting the argument that a defendant's unauthorized participation in a conversation renders the party exception inapplicable. *See Caro v. Weintraub*, 618 F.3d 94, 96-97 (2d Cir. 2010) (rejecting "proposition that one must be invited to a conversation in order to be a party to it" and holding that defendant, who "unbeknownst to [plaintiff], used [an iPhone] to record the conversation" "was a party" for purposes of the FWA).[8] While these cases did not involve electronic communications, their reasoning focuses on receipt of a communication in fact, not on the sender's subjective intent. When this Court previously applied *In re Google*, it confirmed "the party exception applied to defendants like Piedmont" because "the defendants were the recipients of the communications," not because the plaintiffs subjectively intended to communicate with them. *T.D.,* 2024 WL 5284883, at *3.[9]

---

[8] *See also Clemons v. Waller*, 82 F. App'x 436, 441-42 (6th Cir. 2003) (discussed in Mot. 25, n.16); *U.S. v. Campagnuolo*, 592 F.2d 852, 861-63 (5th Cir. 1979) (same).

[9] To the extent any ambiguity remains about whether GM was a "party" to the communication in this case, under the rule of lenity the Court cannot adopt Plaintiffs' atextual rule that *expands* liability. *See Leocal*, 543 U.S. at 12.

**5. <u>Plaintiffs' fail to plead the requisite intent.</u>**

Plaintiffs' claims under §§ 2511(1)(c) and (d) fail because (1) they require a primary violation of the FWA, and (2) Plaintiffs have not plausibly alleged that GM "used" or "disclosed" communications that it "knew" or had "reason to know" were intercepted in violation of the FWA. Despite commercial adoption of telematics systems nearly three decades ago, *see* ¶ 661, Plaintiffs cite no case finding that operating a vehicle creates an "electronic communication" with "content," let alone a case finding an interception on facts like those alleged here. Nor could GM have known that "none of the statutory exceptions apply." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 753 (7th Cir. 2010). As explained above, GM would have reasonably expected the party exception to apply based on the weight of precedent.

**6. <u>Plaintiffs' state wiretapping claims fail for similar reasons.</u>**

Plaintiffs withdraw their claim under California Penal Code § 637.7 (Count 15). Opp. 20 n.13. They appear to do the same for their Massachusetts Wiretap Act claim (Count 38). ECF No. 152 at 14 n.8.[10] And they do not address GM's argument that the New Hampshire statute applies only to telecommunications and oral communications—not electronic communications. N.H. Rev. Stat. § 570-A:1-2.

The California, Delaware, Florida, Illinois, Maryland, Nebraska, New

---

[10] Plaintiffs explicitly withdrew this claim as to the CRA defendants. If they still intend to press it against GM, it should be dismissed under *Vita v. New Eng. Baptist Hosp.*, 243 N.E.3d 1185, 1203-04 (Mass. 2024).

Hampshire, and Pennsylvania claims likewise fail. *First*, as Plaintiffs acknowledge, courts analyze the FWA and its state analogs together, so the arguments for dismissal follow suit. *See* Opp. 20 (citing Mot. 27 n.19). These statutes prohibit the "interception" of "communications." *See* Mot. 27 n.18. Plaintiffs fail to allege these basic elements. *Second*, the distinction Plaintiffs draw between these state statutes and the FWA is irrelevant. While California, Florida, Illinois, Maryland, New Hampshire, and Pennsylvania are two-party consent jurisdictions, that is irrelevant to whether the party exception applies. *See, e.g.*, *In re Facebook*, 956 F.3d at 607 ("Courts perform the same analysis for both the [FWA] and CIPA regarding the party exemption.").[11] Plaintiffs' state wiretapping claims should be dismissed.[12]

**B. Plaintiffs' Stored Communications Act Claims Fails.**

**1. <u>ECUs and TCUs are not "facilities."</u>**

Plaintiffs acknowledge that to state an SCA claim, they must allege GM accessed a "facility through which an electronic communication is provided." Opp. 21. But they fail to establish that in-vehicle ECUs and TCUs qualify as "facilities." Instead of citing persuasive authority supporting their position, Plaintiffs emphasize

[11] In arguing otherwise, Plaintiffs "conflat[e] two issues and exceptions: the direct party exception and consent exception." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066 (C.D. Cal. 2023). A two-party consent exception requires consent from each party to a third-party's interception—an argument GM never made.

[12] GM joins in the CRAs' arguments on the state wiretap claims. CRA Defs.' Reply § III.

that "*no* case" has held that ECUs and TCUs are "categorically *not* facilities[.]" Opp. 22. That is not the standard—it is Plaintiffs' burden to state a cognizable claim. No court has ever even suggested that such in-vehicle components could be "facilities" under the SCA, and the MC contains *no* facts to support that conclusion. Plaintiffs also assert (without citation) that whether ECUs and TCUs are "facilities" is "a question of fact that cannot be resolved at the initial pleading stage." Opp. 23. That is wrong. Courts routinely dismiss SCA claims for failure to allege "storage" in a "facility." *See* Mot. 30 & n.21 (collecting cases).

Plaintiffs attempt to redefine the word "facility" in a manner that cuts against their position. Opp. 22. Plaintiffs state that a "facility" is "a place, usually including buildings," *id.*, hardly applicable to the vehicle components at issue here. Plaintiffs' dictionary definition further ignores that courts interpret the term "facility" to encompass "information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system[.]" *Steiger*, 318 F.3d at 104; *see also Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012) ("facilities" under the SCA "are not computers that enable the use of an electronic communication service, but instead are facilities that are operated by electronic communication service providers"); *In re Facebook*, 956 F.3d at 609 (similar). In other words, "facility" encompasses equipment like servers that are used by electronic communications service providers and stored in buildings.

Plaintiffs alternatively argue that their vehicles' ECUs and TCUs are akin to "cloud-based email servers." Opp. 22-23. To be sure, a "cloud-based service" that "provides the ability to send and receive emails" has been held to be a facility. *See Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1177 n.4 (11th Cir. 2017).[13] But ECUs and TCUs are not alleged to be cloud-based or a service—they are "sensors" and "processing units" within vehicles. ¶¶ 847, 1020-21. Indeed, Plaintiffs assert that the "physical electronic and wire components within Plaintiffs' vehicles *belong to Plaintiffs*," *id.* at 25, making them more akin to the hard drive on a personal device. *See* Mot. 30 & n.21. Accordingly, whether applying Plaintiffs' dictionary definition or their cloud computing analogy, ECUs and TCUs are not "facilities."

**2. <u>Driving Data is not in "electronic storage."</u>**

Plaintiffs' SCA claim also fails because the MC does not allege that "electronic communication[s]" were in "electronic storage." 18 U.S.C. § 2701(a); Mot. 31-33. Initially, the SCA and the FWA share the same definition of "electronic communication," so Plaintiffs' argument under the SCA fails for the same reasons as their FWA claim. *Supra* § I.A.1; 18 U.S.C. § 2510(12).

[13] Plaintiffs' other cases are irrelevant. The cited portion of *In re U.S. for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201 (D.D.C. 2018), concerns "whether Airbnb is a provider of ECS or RCS" and has nothing to do with what constitutes a "facility" under the SCA. *Id.* at 208. And Plaintiffs ignore the holding in *Steiger* that "the SCA … does not appear to apply" while citing dicta suggesting that the statute "may apply" to different facts. 318 F.3d at 1049.

Setting that aside, Plaintiffs also fail to allege their Driving Data was in "electronic storage." 18 U.S.C. § 2701(a); Mot. 31-33. Plaintiffs argue that their "*in-vehicle storage components* temporarily stored driving data incidental to [its] electronic transmission,"[14] Opp. 24, but that is precisely why Plaintiffs fail to state a claim. The term "electronic storage" encompasses "*only* that information that has been stored *by an electronic communication service provider*," such as information that an "internet or email provider stores to its servers" or "information stored with a telephone company." *Freedom Banc Mortg. Servs. v. O'Harra*, 2012 WL 3862209, at *8 (S.D. Ohio Sept. 5, 2012) (citing *Steiger*, 318 F.3d at 1049). By contrast, Plaintiffs' "in-vehicle storage components" are more akin to the in-device storage of a computer or cell phone—which is not "electronic storage" under the SCA. *Id.* at *9; *see also* Mot. 32 (collecting cases).

Plaintiffs do not cite a single case holding that "in-vehicle storage components" qualify as "electronic storage." Instead, they attempt to distinguish GM's authority on irrelevant factual grounds. *See* Opp. 24 n.18. These cases confirm that communications temporarily stored in servers on their way from one device to another are in "electronic storage" and that communications stored within devices are *not* in "electronic storage." Data stored in ECUs/TCUs falls in the latter category.

[14] Plaintiffs do not argue the communications were stored "for purposes of backup protection"—the second definition of "electronic storage." 18 U.S.C. § 2510(17)(B).

### 3. The SCA's exceptions apply.

Alternatively, even assuming Plaintiffs had alleged the other elements of their SCA claim, it fails because the statute's exceptions apply. *See* Mot. 33-35. To level-set, the SCA excepts "conduct authorized: (1) by the person or entity *providing a wire or electronic communications service*; [or] (2) by a *user of that service* with respect to a communication *of or intended for that user*." 18 U.S.C. § 2701(c). This means that no SCA claim lies where the *defendant itself* provided the electronic communication service. *See In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013); Mot. 33-34.

Plaintiffs assert that "a claim may only be dismissed based on a statutory exception that appears on the face of the complaint" and that they "do not allege facts" showing Defendants provided an electronic communications service. Opp. 25. That is incorrect. The MC alleges OnStar "provides communications . . . and information services to GM vehicles," including "telecommunication[s]" and "cellular technologies." ¶¶ 656, 661, 834, 1021. Plaintiffs plainly allege that OnStar provided an electronic communications service. *See also* Opp. 14 (arguing that GM cannot "sever the in-vehicle system from the broader network through which it constantly communicates"). Plaintiffs' assertion that the applicability of the SCA's exceptions cannot be resolved at the pleading stage, Opp. 25-26, is also wrong, as

courts dismiss SCA claims when the exceptions apply. *See* Mot. 33-34.[15]

Finally, Plaintiffs argue that "[t]he physical electronic and wire components within [their] vehicles belong to [them]." Opp. 25. This misapprehends the SCA's exceptions. The relevant question is who "provid[es]" the "electronic communications service," not who owns the device used to access the electronic communications service. 18 U.S.C. § 2701(c)(1). Plaintiffs allege GM and OnStar provided the electronic communications service. *See* ¶¶ 1, 656, 1021; Mot. 34-35.[16]

#### 4. <u>Plaintiffs' claims under analogous state statutes fail.</u>

Plaintiffs raise no argument in support of their claims under the Maryland, Nebraska, and Pennsylvania analogs of the SCA. *See* ¶¶ 1522-36, 1640–59, 1851-72; Mot. 35-36; Opp. 21-26. These abandoned claims must be dismissed. *See, e.g.*, *Brown v. J.P. Turner & Co.*, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011).

### C. Plaintiffs' CFAA Claim Must Be Dismissed.

#### 1. <u>Plaintiffs do not plead loss under the CFAA.</u>

Although Plaintiffs focus on whether GM's access was "unauthorized," their

[15] Plaintiffs' cases do not show otherwise. Plaintiffs cite *Hately v. Watts*, 917 F.3d 770, 789-90 (4th Cir. 2019), but that case did not concern the SCA's exceptions—and *does not even contain the language* Plaintiffs attribute to it, *see id.*; Opp. 26. As for *Gaubatz*, that case likewise did not concern the SCA's exceptions. *See* 793 F. Supp. 2d at 334-38. Moreover, the *Gaubatz* court denied the motion to dismiss because the plaintiff alleged the defendant accessed the plaintiff's "computer servers, networks, or systems"—which Plaintiffs do not allege here. *Id.* at 335.

[16] *Expert Janitorial, LLC v. Williams*, 2010 WL 908740 (E.D. Tenn. Mar. 12, 2010) does not help Plaintiffs—in that case, the plaintiff, not the defendant, was the provider of the electronic communication service at issue. *Id.* a *5.

CFAA claim fails for a simpler reason: Plaintiffs fail to plead the "loss" required by the statute. Opp. 36-38; 18 U.S.C. §§ 1030(g). Plaintiffs mischaracterize GM's arguments, asserting that GM contends "loss" includes only "pure informational losses." Opp. 37. GM instead argues that "loss" means "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, [or] system . . . to its [prior] condition," or "consequential damages incurred because of interruption of service." Mot. 41 (quoting § 1030(e)(11)). No such loss is alleged.

Eschewing the statute, Plaintiffs assert that "[a]ll that is required is that the loss be reasonable and causally linked to GM's misconduct." Opp. 37. That is incorrect. Under binding Eleventh Circuit law, a CFAA "loss" can *only* take the form of "(1) reasonable costs incurred in connection with . . . responding to a violation" and "(2) any revenue lost . . . or other consequential damages incurred because of interruption of service." *Brown Jordan*, 846 F.3d at 1174; *see also* Mot. 41-42. Even Plaintiffs' cases agree. In *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 647 (E.D. Pa. 2007), "the costs of time spent assessing computer systems" was a "loss." In *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020), the court found that "resources" expended "investigat[ing] and remediat[ing]" the defendant's alleged conduct was a "loss." *Id.* at 683. In *Bowen v. Porsche Cars, N.A.*, 561 F. Supp. 3d 1362 (N.D. Ga. 2021), which Plaintiffs cite extensively, the court found "loss" because the plaintiffs paid

to replace in-vehicle computer systems that were severely damaged by defendant's software update. *Id.* at 1371. *Bowen* thus involved precisely the sort of "technological harms . . . [that] unauthorized users cause to computer systems and data." *Van Buren v. United States*, 593 U.S. 374, 392 (2021).

In contrast to these cases, Plaintiffs allege damages in the form of lost "privacy," lost "control," "increase[d]" insurance premiums, and other unspecified "out-of-pocket costs." Opp. 37 (collecting allegations). None of these qualify as "losses" under the CFAA. These harms are not alleged to be related to investigating or remedying any damage to the vehicles' computer systems; nor do Plaintiffs allege lost revenue. *Brown Jordan*, 846 F.3d at 1174; *see also Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (loss of "personal information without compensat[ion]" does not suffice); *In re Google*, 806 F.3d 125, 148-49 (3d Cir. 2015) (similar).[17] Plaintiffs allege they lost "time," Opp. 37-38, but do *not* allege that lost time stems from investigating or remedying their vehicles' computer systems. *Brown Jordan*, 846 F.3d at 1174; *Healthcare Advocates*, 497 F. Supp. 2d at 647. Tellingly, Plaintiffs do not cite a *single case* holding that their alleged injuries qualify as "loss[es]" under the CFAA. The claim must be dismissed on this basis alone.

---

[17] Plaintiffs' cited authority also holds as much. *See Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972, at *5 (D. Idaho Sept. 3, 2024) (holding "misappropriation of information" was not sufficient).

### 2. GM's access was not unauthorized.

Plaintiffs' failure to allege GM "intentionally accesse[d] a computer," either "without authorization" or in a way that "exceed[ed] authorized access," is an independent basis for dismissal of the CFAA claim. Opp. 27.

***Without Authorization.*** Plaintiffs assert GM was "not permitted" to access their Driving Data, Opp. 27, but they do not explain why. They acknowledge GM "pre-installed" "OnStar technology" in their vehicles, ¶¶ 1, 662, and that OnStar provided drivers with navigation services and diagnostic checks—all of which require computerized access to vehicles, ¶ 663. Under the Supreme Court's "gates-up-or-down inquiry," GM and OnStar plainly "[could] access" the "computer system[s]" they themselves installed. *Van Buren*, 593 U.S. at 390.

Plaintiffs' attempts to minimize *Van Buren* are unconvincing. Opp. 27-28 & n.19. First, Plaintiffs assert *Van Buren* is limited only to "exceed[ing] authorized access" claims. *Id*. at 28. Not so: "[L]iability under *both clauses* stems from a gates-up-or-down inquiry." *Van Buren*, 593 U.S. at 390. Second, Plaintiffs rely on the *Vox* decision to argue it is unclear whether *Van Buren*'s "gates-up-or-down inquiry" hinges on "technological" limitations or "limits contained in contracts." Opp. 27 n.19 (citing *Vox Mkg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1285 (D. Utah 2021)). Plaintiffs overlook that, in *Vox*, it was "undisputed that someone seeking

access . . . would be required to enter a username and password." *Id.* at 1286.[18] Regardless, *even if* a contractual limitation could render access unauthorized, Plaintiffs identify no such contractual provision here.

Plaintiffs also adopt conflicting positions. On one hand, Plaintiffs note (correctly) that "one either can or cannot access a computer system." Opp. 29. This interpretation is consistent with *Van Buren*—under which there can be no liability given the MC's clear allegations that GM could access vehicles' systems. But Plaintiffs then argue that "the defendant is not required to have circumvented any technical or code barrier." *Id*. at 29. The out-of-circuit cases Plaintiffs rely on in this regard are distinguishable; all involve former employees accessing their former employers' computer systems (or helping a third party do so).[19] Plaintiffs cite no case like this one, where GM allegedly accessed computer systems they themselves manufactured and installed. *See* ¶¶ 1012-34. The facts here are akin to cases where defendants had "unfettered access" to the computer systems at issue. *E.g.*, *Orbit One*

---

[18] As noted in *Vox*, *Van Buren* "did reject the proposition that an individual who is authorized to access information for certain purposes 'exceeds authorized access' when he violates contractual terms barring" use "for other purposes." *Id.* at 1285 n.2.

[19] *See Moonlight*, 2024 WL 4027972, at *4 ("Moonlight alleges that Minnig received increased permissions in the BestNotes system from McCoy *after* McCoy left Moonlight."); *U.S. v. Eddings*, 2021 WL 2527966, at *4 (E.D. Pa. June 21, 2021) (similar); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 829 (N.D. Cal. 2014) (similar). These cases also do not reflect the law in this Circuit. *See Auto. Assurance Grp. v. Giddens*, 2022 WL 18460629, at *7 (N.D. Ga. Sept. 20, 2022) (former employee did not violate CFAA by using old credentials to access former employer's systems).

*Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 386 (S.D.N.Y. 2010). The "CFAA is a criminal anti-hacking statute." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1312 (S.D. Fla. 2022). Plaintiffs do not allege conduct that satisfies the CFAA's high bar; they merely assert "the access was unlawful," which is a "legal conclusion[ ] not entitled to the presumption of truth." *Id.* at 1314; *see* Opp. 27 ("Plaintiffs allege GM accessed the computers in their vehicles without authorization.").

***Exceeds Authorization.*** Plaintiffs' claim must therefore be that GM exceeded its authorization. Indeed, Plaintiffs contend that "Smart Driver reports [were] only to [be shared with] enrolled user[s] for personal use." Opp. 30. And ten named Plaintiffs allege that they affirmatively enrolled in OnStar, *see* Mot. Ex. 3, "for purposes such as GPS and navigation," *e.g.*, ¶ 246. Setting that aside, no Plaintiff alleges he was unaware of the availability or functionality of OnStar—the MC acknowledges that OnStar, launched in 1996, was the "first embedded telematics system," accessible by pressing a "blue button" in the vehicle. ¶¶ 661, 900.[20]

Plaintiffs argue that the relevant question under *Van Buren* is "not the defendant's motive" but whether GM "obtain[ed] information located in particular areas of the computer—such as files, folders, or databases—that are off limits." Opp.

[20]Plaintiffs rely on *Bowen*, but in that case, the plaintiff's "consent to receive satellite radio signals d[id] not imply consent to modify his vehicle's software." 561 F. Supp. 3d at 1370. Here, Plaintiffs consented to the collection, use, and sharing of their information by using OnStar. *See* Mot. 71.

32. That is wrong. *Van Buren* held the CFAA "does not cover those who . . . have improper motives for obtaining information that is otherwise available to them." *Van Buren*, 593 U.S. at 378. But Plaintiffs' claim fails even under their incorrect reading. The MC contains no allegations about particular "files" or "folders" in the TCU and whether access to them was permitted. Again, GM installed the ECUs and TCUs, and Plaintiffs allege those devices were used either for "legitimate" purposes (diagnostics or emergency services) or for allegedly improper purposes (collecting and sharing data). *See* ¶¶ 1, 663, 833, 843, 846-50. The CFAA does not prohibit "obtain[ing] information . . . for an improper purpose." *Van Buren*. 593 U.S. at 396.

*Fish v. Tesla, Inc.* is directly on point. 2022 WL 1552137 (C.D. Cal. May 12, 2022). The *Fish* plaintiffs alleged defendant "exceed[ed] authorization" by accessing in-vehicle computer systems; the court rejected the claim because the defendant, as manufacturer, had "unfettered access" to those components. 2022 WL 1552137, at *9. Plaintiffs' CFAA claim also hinges on allegations Defendants "exceed[ed] authoriz[ation]" by accessing "pre-installed" components. ¶¶ 833, 1038. Plaintiffs distinguish *Fish* by arguing that Tesla did not "access[] a physical part of the vehicle without authorization." Opp. 33. But that is a distinction without a difference, and in any event, the *Fish* plaintiffs alleged Tesla pushed "software updates" to their vehicles," 2022 WL 1552137, at *8, which is analogous to GM's alleged conduct.

***Intent.*** Finally, Plaintiffs assert "it is immaterial whether the gate was open or

closed 'from GM's perspective.'" Opp. 29. But the CFAA is a criminal statute that contains a strict *mens rea* requirement. *See* Mot. 40. To violate the CFAA, a defendant must "purposefully access an area of a computer and know that it is forbidden." *Abu v. Dickson*, 107 F.4th 508, 516 (6th Cir. 2024). GM disclosed its collection and sharing of Driving Data. *Infra* § II.F. And Plaintiffs allege that third-party dealers—not GM—activated OnStar without their knowledge. *Infra* § II.B. Accordingly, the fact that "*dealerships* enrolled Plaintiffs" is not "immaterial." Opp. 30. It is highly relevant to GM's mental state.

Plaintiffs' assertion that GM should be held "vicariously liable" for the acts of the dealerships (as "GM's [purported] agents") fails. Opp. 34-35. The CFAA "create[s] only a limited private right of action 'against the violator,' i.e., the person who violates the statute with the requisite criminal intent." *Enhanced Recovery Co. v. Frady*, 2015 WL 1470852, at *11 (M.D. Fla. Mar. 31, 2015). Plaintiffs have not pleaded facts that connect GM's alleged access with the requisite criminal intent.[21]

[21] Plaintiffs argue GM intentionally exceeded its authorization by accessing Driving Data "after [some Plaintiffs'] subscription period ended." Opp. 35. But Plaintiffs consented to the collection and sharing of Driving Data, *infra* § II.F, and allege no facts showing their consent to connected vehicle services ended when their "free trials" did. Plaintiffs' allegations are also inconsistent. For instance, Plaintiff Carnine asserts that the "free trial" of OnStar for his 2018 Chevrolet Bolt expired in 2021, ¶ 60, but elsewhere, the MC alleges GM provided 10 years of "free" OnStar services as of 2018, ¶ 878.

#### 3. Plaintiffs' CDAFA Claim Must Be Dismissed.

The CDAFA claim "fall[s]" with the CFAA claim. Opp. 38. Like the CFAA, CDAFA allows recovery only for "damage to the computer system," which is not alleged. *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). And Plaintiffs do not allege GM "circumvent[ed] technical or code based barriers." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014).

## II. Plaintiffs' State Law Claims Must Be Dismissed.

### A. Most of Plaintiffs' State Law Claims are Preempted by the FCRA.

Plaintiffs' state-law claims effectively require GM to provide notice to consumers or obtain their consent before furnishing information to CRAs. Mot. 46, n.28 (listing preempted claims). These claims are preempted by the FCRA.[22]

#### 1. Section 1681t(b)(1)(F) expressly preempts Plaintiffs' notice-and-consent based claims.

Plaintiffs do not dispute GM is a "furnisher" under the FCRA to the extent it provides information to CRAs, including Verisk and LNRS. Under 15 U.S.C. § 1681t(b)(1)(F), state law cannot "impose" any "requirement or prohibition" "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to" CRAs. The rules in § 1681s-2 establish when a furnisher is required to provide notice to consumers before sharing information with CRAs. *See* § 1681s-2(a)(7). They *do not ever*

[22] GM incorporates the CRA Defendants' reply arguments on FCRA preemption.

require a furnisher to obtain such consent. Here, the theory underlying Plaintiffs' claims is that GM deceived consumers by providing inadequate notice that their data would be shared with CRAs. Opp. 48, n.30 (collecting allegations). Because these claims seek to use state statutory and common law to regulate the same "subject matter" as § 1681s-2, they are expressly preempted under § 1681t(b)(1)(F).[23]

The FCRA's regulation of consumer notice also forecloses Plaintiffs' consent-based claims. It is impossible to obtain consent without providing notice. Plaintiffs allege GM failed to obtain informed consent *because* it provided inadequate notice that data would be shared with CRAs. Opp. 48 n.30. Plaintiffs' claims thus seek to impose requirements of notice *and* consent, which are "with respect to" the same "subject matter" as § 1681s-2(a)(7). Section 1681t(b)(1)(F) preempts these claims.

The rest of Plaintiffs' arguments regarding express preemption are irrelevant. Plaintiffs contend their claims escape preemption because they do not seek to regulate "GM's duty not to pass along inaccurate information." Opp. 43. That is a separate inquiry—GM did not invoke the accuracy requirements of § 1681s-2(a) as a basis for preemption. Plaintiffs also contend their claims are not preempted by

[23] Plaintiffs' footnote argument that § 1681s-2(a)(7) is "inapplicable" because GM "is not a . . . 'financial institution'" is irrelevant. Opp. 42 n.33. Section 1681s-2(a)(7) reflects a congressional determination that *only* financial institutions are required to provide notice of furnishing and *only* in certain circumstances, which shows that consumer notice is part of the subject matter regulated under § 1681s-2. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015) (holding that § 1681t(b)(1)(F) preempts claims that *concern* a furnisher's responsibilities).

section 1681t(b)(5), Opp. 44-45—a provision of the FCRA GM did not invoke.[24]

### 2. **Plaintiffs' consent-based claims are impliedly preempted.**

Congress enacted the FCRA to facilitate fair and accurate credit reporting. Plaintiffs do not dispute that a state-law requirement that furnishers obtain consent before providing information to CRAs would undermine that purpose by effectively allowing consumers to opt out of the credit-reporting scheme the FCRA was designed to promote. Opp. 39-40 (first and second bullets). If Plaintiffs' implied-preemption arguments were right, nothing would stop a state from enacting a law prohibiting creditors from reporting accurate information about delinquent debts to CRAs without consumer consent—a result plainly contrary to FCRA's framework.

Plaintiffs argue that their claims are not impliedly preempted because complying with their construction of state law would not cause a *violation* of the FCRA. Opp. 39. That is the standard for *impossibility* preemption. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011). GM invoked *obstacle* preemption—a separate strain of conflict preemption requiring courts to "examin[e] the federal statute as a whole and identify[ ] its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *see also* Mot. 49-50 (arguing claims are

[24] The critical point is not whether Plaintiffs "challenge conduct beyond that contemplated by FCRA." Opp. 39. It is that Plaintiffs' state-law claims depend not only on "collecting" Driving Data but also "selling" (i.e., furnishing) that Data to CRAs. *E.g.,* ¶¶ 1059, 1116(a)-(b).

preempted because they would "stand as an obstacle" to the purposes of federal law).

Plaintiffs' failure to engage with the correct preemption standard renders most of their implied preemption argument non-responsive. For example, Plaintiffs argue that states are free to regulate conduct in a way that "gives consumers more protection than the FCRA." Opp. 40. That may be relevant under the *impossibility* standard. However, under the obstacle preemption standard, a state law providing more protection to consumers is preempted where, as here, it would undermine the purposes of federal law.[25] *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000) is illustrative. There, federal law allowed carmakers "to choose among different passive restraint mechanisms." *Id.* at 878. The plaintiffs sued defendants for failing to install one type of restraint (an airbag) that they contended was safer than alternative restraints. The claim was preempted nonetheless. *See id.* at 881, 886. State law does not escape obstacle preemption by providing more protection.[26]

Plaintiffs' remaining contentions are unpersuasive. Contrary to Plaintiffs' suggestion (Opp. 41), they have not asserted an FCRA claim against GM for "the

[25] *Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254 (S.D.N.Y. 2019), and *Credit Data of Ariz., Inc v. Arizona*, 602 F.2d 195 (9th Cir. 1979), did not involve furnishers or state laws that would undermine the FCRA's purposes.

[26] Plaintiffs cite a since-withdrawn interpretive rule from the CFPB that briefly references conflict preemption. That is not the type of reasoned analysis that should be considered under *Loper Bright Entr. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024). The CFPB's withdrawn interpretation does not provide that more-protective state laws are *never* preempted; rather, it states (with no analysis) that they "are *generally* not preempted." 87 FR 41042-01, 41042.

provision of inaccurate information" and lack a private right of action to do so. *See Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1366 (11th Cir. 2024). Courts regularly hold that state-law inaccuracy claims against furnishers are preempted. *See, e.g.*, *Smith v. Specialized Loan Servicing, LLC*, 2018 WL 4856039, at *19 (N.D. Ga. July 19, 2018). Plaintiffs also fail to explain why the preemption analysis should turn on whether GM is "a bank," whether GM is engaged in what Plaintiffs view as "traditional consumer reporting," or on a person's subjective expectations while purchasing a vehicle. Opp. 41-42. Furnishing information for the "underwriting of insurance" is one of the FCRA's "permissible purposes." 15 U.S.C. § 1681b(a)(3)(C). Plaintiffs' notice- and consent-based claims are preempted.

**B. Plaintiffs' Alleged Injuries Are Not Cognizable or Caused by GM.**

In asserting that GM "conflat[es]" Article III standing with the elements of Plaintiffs' underlying tort and statutory claims, Opp. 46, Plaintiffs misapprehend GM's argument. *See* Mot. 51-53. GM does not contend that the MC must be dismissed in its entirety for lack of subject-matter jurisdiction. Rather, GM asserts that many of Plaintiffs' claimed injuries are insufficient even to confer standing, which means they cannot support Plaintiffs' underlying, substantive claims. *Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1361 (S.D. Fla. 2017).

While Plaintiffs rely on out-of-circuit authority to argue that personal data has "value," they ignore that, in the Eleventh Circuit, diminution in value of personal

data is *not* cognizable absent specific allegations explaining (1) how the value of the data was reduced, *see* Mot. 49; *Fraga v. UKG, Inc*., 2022 WL 19486310, at *12 (S.D. Fla. May 10, 2022), or (2) that Plaintiffs intended to sell such data, *Everhart v. Colonial Pipeline Co*., 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022).[27]

Plaintiffs also argue that they suffered "privacy injuries," Opp. 46, but a "loss of privacy" is "inadequate to plead an injury in fact" absent "facts showing how the loss of privacy has impacted or damaged" them. *Baker v. Akumin Corp.*, 2024 WL 1931480, at *6 (S.D. Fla. Apr. 16, 2024). It is telling that Plaintiffs focus on unjust enrichment—i.e., that "GM unjustly enriched itself at Plaintiffs' expense," Opp. 48—a claim for which damages are based on "the benefit conferred" to defendant rather than the harm suffered by the plaintiff, *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 553 S.E.2d 662, 669 (Ga. Ct. App. 2001).

Article III concerns aside, GM has also explained that the only economic harm alleged by (some) Plaintiffs relates to increased insurance premiums or insurance denials. Mot. 54-55. Plaintiffs disagree and allege that a deprivation of their "right to control" their Driving Data constitutes economic harm, Opp. 47-48, but the only case they cite for that proposition concerns Article III standing. *See id.* (citing dicta from *In re Marriott*). GM's argument, in contrast, focused on the eighteen UDAP

[27] Plaintiffs do not dispute that a "likelihood of future misuse of their Driving Data" is not an injury in fact. *See* Mot. 52.

statutes that require "monetary" or "economic damages." Mot. 54 & Ex. 4. Under those statutes, a "lost-value-of-PII theory" does not suffice. *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *2 n.5 (N.D. Cal. Jan. 19, 2024).

Even those Plaintiffs who allegedly suffered increased insurance premiums cannot show that GM caused their injuries. Plaintiffs assert GM was a "substantial factor" in their injuries because it "pre-installed OnStar in Plaintiffs' cars," "designed . . . the onboarding process," and "sold [Plaintiffs' data] to third parties." Opp. 50. These arguments do not address the MC's fatal flaw: its failure to plausibly allege that the sharing of Plaintiffs' Driving Data—rather than a myriad of other factors—caused their insurance premiums to go up. *See* Mot. 55-57. GM also noted Plaintiffs' failure to allege that their insurers universally participated in the Verisk or LNRS data exchanges—a necessary precondition for such a causal connection to even exist. *See id.* Plaintiffs do not respond to this argument. As for car dealers' alleged practice of enrolling consumers in OnStar Smart Driver without their consent, there is no allegation that GM directed dealers to do so, which Plaintiffs allege was contrary to GM's policy. ¶¶ 896-97. Plaintiffs instead allege only that GM provided incentives to "sign up as many customers as possible." ¶ 885.

### C. Plaintiffs' Choice-of-Law Analysis Is Flawed.

Plaintiffs fail to specify what law applies to their common-law claims. Despite asserting five common law claims for a nationwide class, and despite acknowledging

"a more fact-intensive choice of law analysis" will be required at class certification, Plaintiffs devote just two sentences to choice of law. Opp. 45. They suggest Georgia law applies across the board and that analyzing choice of law now is "premature." *Id.* The Court should reject Plaintiffs' invitation to punt choice-of-law questions until class certification; it "must determine which state's law applies" to "properly evaluate" this motion to dismiss. *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1314 (S.D. Fla. 2009); *see In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1315 (S.D. Fla. 2020) (conducting choice-of-law analysis at dismissal stage and concluding "certain claims must be dismissed under" that analysis).[28]

Georgia law does not uniformly apply to Plaintiffs' common law claims. The MC reveals no "significant aggregation of contacts to the claims asserted by each member of the plaintiff class" and Georgia. *See* Mot. 13, 58-59; *Peterson v. Aaron's, Inc.*, 2017 WL 364094, at *6-7 (N.D. Ga. Jan. 25, 2017). All but two Plaintiffs have *no* connection to Georgia whatsoever. *Id.* at 58-59. And even if Plaintiffs' Georgia law approach were sound (it is not), Plaintiffs do not follow it when it does not suit their argument. *See* Opp. 51-59 (citing Alabama, California, New York, and other states' invasion of privacy laws); 59-64 (citing Ohio, Maryland, and other states'

[28] Even the case cited by Plaintiffs observed that "some consideration of the applicable [choice-of-law] rules will be necessary to resolve the motion to dismiss"—otherwise, the Court will not know which law to apply in cases that "implicate[] more than Georgia law." *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2008 WL 2132233, at *1-2 (N.D. Ga. May 21, 2008).

trespass laws). Plaintiffs cannot contend that one state's law applies while cherry-picking the laws of numerous jurisdictions in a futile attempt to dodge dismissal.

### D. Plaintiffs' Invasion of Privacy Claim Must Be Dismissed.

Plaintiffs' Opposition fails to specify which species of the tort of invasion of privacy they assert or which state's law should govern such claims. Plaintiffs refer to "invasion of privacy" generally, cite to elements of different invasion of privacy claims interchangeably, and rely on cases applying various states' laws where favorable to their position. Regardless of the theory or state, Plaintiffs' claims fail.

#### 1. Plaintiffs do not allege a cognizable privacy interest.

Plaintiffs concede that invasion of a cognizable privacy interest is necessary to state a claim for intrusion upon seclusion or public disclosure of private facts. Mot. 59-60. Conduct that takes place in public is not sufficient to meet this requirement. *Id.* Plaintiffs argue that GM's alleged "electronic surveillance" implicates a privacy interest. Opp. 52-53. But they rely on criminal cases addressing searches and seizures under the Fourth Amendment. *Id.* 53-54. Criminal standards "do not apply to intrusion upon seclusion claims" and are an "imperfect guide" in this context. *Meyer v. Mittal*, 2024 WL 385129, at *9 (D. Or. Feb. 1, 2024). Indeed, Plaintiffs rely extensively on the Supreme Court's *Carpenter v. United States* decision, which the Court stressed was "a narrow one" that did not "express a view

on matters not before us." 585 U.S. 315, 316 (2018).[29] Moreover, courts—including in Georgia—hold that "surveillance" is not legally cognizable when it occurs in a "public place." *See, e.g.*, *Blanton v. Deloach,* 2015 WL 6758230, at *5 n.4 (S.D. Ga. Nov. 5, 2015). Without allegations that GM's surveillance was "deliberately calculated to frighten or torment" Plaintiffs, their "electronic surveillance" theory fails. *Summers v. Bailey*, 55 F.3d 1564, 1566 (11th Cir. 1995).

**2. <u>GM's alleged conduct was not "highly offensive."</u>**

In every relevant jurisdiction, GM's alleged conduct must be sufficiently offensive to state a claim for intrusion upon seclusion, public disclosure of private facts, or false light. *See* Mot. 62-63; Ex. 5. Plaintiffs' Opposition elides the high bar imposed by this element: while the standard varies among jurisdictions, it generally requires highly unreasonable conduct. *See* Mot. 62-63 & n. 42. In Georgia, for example, this standard is met by conduct like the "publication of a partially nude photograph." *Dep't of Lab. v. McConnell*, 828 S.E.2d 352, 360 n.7 (Ga. 2019).[30]

---

[29] Plaintiffs also cite *Mobley v. State*, 834 S.E.2d 785 (Ga. 2019), which involved the government's collection of data by a tracker on a vehicle. *Mobley* did not address whether the defendant had a privacy interest in this data, which the court found "unnecessary to resolve." *Id.* at 792. Instead, the court concluded that a search had occurred on a distinct trespass theory of the Fourth Amendment. *Id.* This discrepancy demonstrates that relying on Fourth Amendment cases in this context is fraught.

[30] Plaintiffs rest their definition of "offensiveness" on a single Alabama case, *Hogin v. Cottingham*, arguing that "[t]he 'offensiveness' inquiry . . . considers both the nature of the intrusion and the circumstances." Opp. 54. This portion of *Hogin* did not address whether an invasion is highly offensive, but instead, whether an intrusion into a private sphere happened at all. 533 So. 2d 525, 531 (Ala. 1988).

Plaintiffs claim that their allegation that GM's conduct was "highly offensive" and an "egregious breach of social norms" is "sufficient to satisfy this requirement." Opp. 54-55. It is not. Plaintiffs' formulaic recitation need not be accepted. *M.H. ex. rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1276 (11th Cir. 2024).

Plaintiffs further argue that GM committed a "flagrant abuse" of "consumer privacy" by collecting "detailed behavioral profiles." Opp. 55-56. But the case Plaintiffs cite, *In re Vizio, Inc., Consumer Priv. Litig.,* acknowledges that courts hold that the "routine collection" of personal information is not "highly offensive"; information must be particularly "intimate or sensitive" to state a claim. 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017). Courts find that the collection of consumer data—even SSNs and geolocation data—is not sufficiently intimate to state a claim. *See* Mot. 63 (collecting cases). Plaintiffs also fail to acknowledge that, in the consumer context, collection of data is not highly offensive if that information is also viewable in public. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023).[31]

### 3. <u>Plaintiffs' public disclosure of private facts claim fails.</u>

Plaintiffs do not specify whether they intend to assert a claim for public disclosure of private facts, and they acknowledge that New York and North Carolina

[31] Plaintiffs do not respond to GM's argument that the California Constitution sets a "high bar" for an invasion of privacy claim, requiring an "egregious breach of social norms," which Plaintiffs do not allege. Mot. 66 n.45. GM also incorporates the CRA Defendants' reply argument that the California Constitution does not provide a private right of action for money damages. *See* CRA Defs.' Reply § VIII.A.iii.

do not recognize that claim. Opp. 52. Regardless, Plaintiffs concede GM did not make any *public* disclosure of private facts because none of GM's disclosures were made to the public at large—such disclosures were only to LNRS and Verisk. Mot. 61-62. The Court must dismiss any claim for public disclosure of private facts.

**4. <u>Plaintiffs fail to state a claim for false light.</u>**

Plaintiffs' false light claim fails on numerous grounds.[32] First, as explained above, Plaintiffs do not dispute that any alleged false publicity was not made to the "public at large" or to "members of the general public." *See* Mot. 62 n.41; *Ass'n Servs., Inc. v. Smith*, 549 S.E.2d 454, 459 (Ga. Ct. App. 2001); *see also* Mot. Ex. 5. Second, Plaintiffs assert that GM "does not address" the requirement that the publicity "depict[ ] the plaintiff as something or someone which he is not." Opp. 58 n.48. That is incorrect. GM explained that Plaintiffs allege their data was "flawed" only in the way it was *later* presented to insurers by LNRS/Verisk; indeed, most "Plaintiffs do not identify any actual inaccuracies in their Driving Data." Mot. 65. Plaintiffs have not alleged that *GM* depicted them in a false light.

Finally, Plaintiffs fail to allege that any "false publicity" is highly offensive, as required by every relevant jurisdiction. *See* Mot. Ex. 5. While Plaintiffs acknowledge this element, they do not explain how the disclosure of purportedly

---

[32] Plaintiffs do not dispute that Florida, New York, Texas, and North Carolina do not recognize a claim for false light. Mot. 65 n.44.

false information regarding their driving behavior to Verisk and LNRS is "highly offensive to a reasonable person." *Bazemore v. U. S. Bank N.A.*, 872 S.E.2d 491, 499 (Ga. Ct. App. 2022). Commonplace driving behaviors, like exceeding the speed limit or hard braking, are not "highly offensive."[33]

#### 5. <u>Plaintiffs' misappropriation claim fails.</u>

Plaintiffs' only reference to the claim of "misappropriation" is in a footnote parenthetical. Opp. 56 n.46. The claim must therefore be dismissed. *See Jackson Nat'l Life Ins. v. Crum*, 2023 WL 6442932, at *4 (N.D. Ga. July 20, 2023) (noting a "passing reference to an issue in a brief is not enough") (citation omitted).[34]

### E. Plaintiffs' Trespass to Chattels Claim Must Be Dismissed.

Plaintiffs' trespass claim relies on allegations that GM interfered with property rights in their Driving Data and vehicles. Neither suffices. Plaintiffs again assert that Georgia law applies to this claim, but they ignore the controlling Georgia statutes, instead relying on the Restatement and cases from other jurisdictions. Opp. 59-64. Regardless of the law applied, Plaintiffs have failed to state a claim.

#### 1. <u>Plaintiffs' Driving Data is not a chattel.</u>

GM explained why Driving Data cannot form the basis of a trespass to chattels

---

[33] Plaintiffs incorrectly assert that GM does not challenge their civil conspiracy claim. Opp. 51 n.42. Because the invasion of privacy claim fails, their conspiracy claim also fails. *See* Mot. 66 n.45.

[34] Plaintiffs abandoned their claims under N.Y. Civil Rights Law §§ 50 and 51 (Count 49) by failing to respond to GM's arguments. *See Brown*, 2011 WL 1882522, at *5. They appear to have expressly withdrawn those claims. *See* ECF No. 152 at 30 n.13.

claim. Mot. 68-69. In response, Plaintiffs assert without citation that their "highly private data" constitutes "personal property" under "common law principles." Opp. 60. But they ignore that, in Georgia, only *physical* property that is "movable in nature" is subject to the tort. *See* O.C.G.A. § 44-1-3; *Dial HD, Inc. v. Clearone Comms., Inc.,* 2010 WL 3732115, at *10 (S.D. Ga. Sept. 7, 2010). Similarly, the "weight of authority" holds that "a plaintiff's 'personal information' does not constitute property." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012); Mot. Ex. 6. Plaintiffs' "digital trespass" cases are inapt because they involve allegations that the defendants' conduct harmed the functionality of computer systems. *See, e.g.*, *Bowen*, 561 F. Supp. 3d at 1376 (concerning allegations that a software update caused permanent damage to vehicle's infotainment system); *AT&T Mobility LLC v. Does 1-4*, 2011 WL 13213864, at *2 (N.D. Ga. May 26, 2011) (default judgment entered based on "high volume" of telemarketing calls that caused "damage to [AT&T's] property"); *Austrian Motors v. Travelers Ins.*, 275 S.E.2d 702 (Ga. Ct. App. 1980) (analyzing mechanic's claim for conversion for tires and wheels attached to a vehicle). Plaintiffs make no such allegations here.

**2. <u>Plaintiffs fail to allege that their data was damaged.</u>**

Plaintiffs concede that the "gist" of their trespass claim is "injury done to the possession of property." Opp. 60. They must allege damage to their chattel in the majority of jurisdictions, including Georgia. *See* O.C.G.A. § 51-10-3. Plaintiffs

contend their data "diminished in value," ¶ 1093, but they allege no facts showing *how* that occurred. *See supra* § II.B; *Provost v. Aptos, Inc.*, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) (plaintiff failed to allege "facts" showing her data was "less valuable"); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 328 (E.D.N.Y. 2005) (similar). Plaintiffs also argue they were harmed by "dissemination of their private information" and "economic harm related to the unauthorized exploitation" of their Driving Data. Opp. 62-63. But trespass to chattels concerns "physical harm *to the chattel*" itself. *Ticketmaster Corp. v. Tickets.com, Inc.*, 2000 WL 1887522, at *4 (C.D. Cal. Aug. 10, 2000).

**3. <u>Plaintiffs fail to allege interference with physical property.</u>**

With respect to their vehicles, Plaintiffs do not argue that GM dispossessed or deprived them of their vehicles, only that GM committed "intermeddling." In doing so, Plaintiffs fail to recognize that, under Georgia law (which Plaintiffs purport to apply), liability only attaches for dispossession or deprivation of property. *See* O.C.G.A. § 51-10-1; O.C.G.A. § 51-10-3; *Dial HD*, 2010 WL 3732115, at *10.

Nor have Plaintiffs alleged that GM "intermeddled" with their property under the Restatement, which governs in many jurisdictions. *See* Mot. Ex. 6. Plaintiffs acknowledge that the Restatement defines "intermeddling" as "intentionally bringing about a *physical contact* with the chattel." § 217, *cmt. e*. But physical contact with digital Driving Data is obviously impossible, and Plaintiffs have not

alleged that GM came into physical contact with their vehicles either. This alone requires dismissal. Beyond that fatal flaw, Plaintiffs must allege that such physical contact "impaired" the chattel "as to its condition, quality, or value." Plaintiffs make no allegations that the functionality of their vehicles was impaired. *See Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 417 (S.D.N.Y. 2018) (rejecting trespass claim where computer system was "neither damage[d] nor impair[ed]").[35]

### F. Plaintiffs' Breach of Contract Claim Must Be Dismissed.

For purposes of their breach of contract claim (asserted in the alternative), Plaintiffs do not dispute the enforceability of the User Terms and Privacy Statement. Opp. 67, 68 & n.53. But Plaintiffs still do not identify any contractual provision that was breached, instead arguing GM "exceed[ed] the scope of any authorization for data collection and commercial exploitation." *Id.* 68. Essentially, Plaintiffs acknowledge that the Terms and Privacy Statement *permit* the collection and sharing of Driving Data. Mot. 70-71. So they contend only that these agreements were "vague" and "ambiguous." Opp. 68. This generic argument does not state a claim.

The User Terms provide that GM "collects, uses, and shares information from and about You and your Vehicle." Mot. Ex. 1 § 26. The Privacy Statement provides GM "may collect . . . [i]nformation about the use of your vehicle, including . . .

[35] *Register.com, Inc. v. Verio, Inc.*, is inapposite because Plaintiffs do not allege GM depleted the capacity of the vehicles' computer systems. 356 F.3d 393 (2d Cir. 2004).

"geolocation, route history, driving schedule, speed, . . . [and] sensor data," and that GM "may also share data with third parties." *Id.* Ex. 2 at 2–5. Neither amounts to a promise that was breached, and because the plain meaning of these provisions could not be "reasonably understood in different ways," no ambiguity exists. *Albonajim v. Allstate Ins.*, 2005 WL 2319122, at *1 (Mich. Ct. App. Sept. 22, 2005).[36]

### G. Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.

Plaintiffs' unjust enrichment argument illustrates the infirmities in their approach to choice of law. Plaintiffs contend they have stated a claim for unjust enrichment in "virtually every state" by alleging "GM knowingly obtained a benefit when it seized Plaintiffs' Driving Data, did not compensate Plaintiffs, and should be required to return the benefit." Opp. 64-65. That high-level recitation ignores significant variations in the law of unjust enrichment across states. *See* Mot. Ex. 7. Numerous states impose additional requirements, including that a plaintiff expected payment or suffered detriment. Plaintiffs' own authority is a case in point. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *36 (N.D. Ill. June 29, 2015) (plaintiffs "fail[ed] to specify which states' laws . . . give rise to their unjust enrichment claims, which presents another viable ground for dismissal").

---

[36] Plaintiffs' implied covenant of good faith and fair dealing claim (*see* Opp. 67) fails because the implied covenant cannot override express terms allowing the collection and sharing of data. *Jacobson v. BH Assocs. Ltd. P'ship*, 2001 WL 738408, at *1 (Mich. Ct. App. June 29, 2001).

Plaintiffs argue that the "expectation of payment" element, which is required in numerous states, does not apply because their data was "taken without consent." Opp. 66.[37] But Plaintiffs rely on cases where the plaintiff *did* expect payment. *See Chemence, Inc. v. Doherty*, 2007 WL 10025204, at *2 (N.D. Ga. Mar. 23, 2007) (plaintiff's proprietary trade secrets, "the product of years of effort and substantial expense," were stolen); *Lan Li v. Walsh*, 2017 WL 3140522, at *8 (S.D. Fla. July 24, 2017) (financial investments in real estate properties were stolen). In contrast to those plaintiffs—who clearly had an expectation they would be compensated for their work—Plaintiffs here do not allege they intended to monetize their Driving Data or otherwise expected payment. Plaintiffs' *post-hoc* demand for payment is irrelevant because this inquiry focuses on plaintiffs' expectations *at the time* of the alleged benefit. *See, e.g.*, *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 563 (D.S.C. 2020) (rejecting "untenable" unjust enrichment claim because plaintiffs could not have expected payment from the unconsented use of their PII); *Rodgers Grp., LLC v. Lewis*, 2022 WL 4095785, at *6 (D.N.J. Sept. 7, 2022) (similar).

Plaintiffs' unjust enrichment claim also fails because Plaintiffs do not allege they suffered a detriment. Plaintiffs point to allegations concerning the "loss of control" of their Driving Data, Opp. 79, but such allegations do not establish a

[37] Plaintiffs assert that Georgia law does not require expectation of payment. Opp. 64. That is incorrect. *See Sitterli v. Csachi*, 811 S.E.2d 454, 457 (Ga. Ct. App. 2018) (party conferring benefit must "act with the expectation" of payment).

detriment. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 946 (N.D. Cal. 2023) (plaintiffs had "neither directly expended their own resources, nor shown that their property has become less valuable" after alleged data sharing); *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *7 (D.N.J. Apr. 26, 2023) ("[v]ague references to" "loss of control over" biometric data did not suffice).

## III. Plaintiffs' State Statutory Claims Must Be Dismissed.[38]

### A. Claims Lacking a Representative Plaintiff Must Be Dismissed.

In response to GM's argument that Plaintiffs lack standing to assert UDAP claims from states in which no Plaintiff resides, Mot. 75-76, Plaintiffs argue only that this inquiry should be left for class certification. Opp. 69-70. That approach ignores clear Eleventh Circuit precedent. In *Mills v. Foremost Ins. Co.*, for example, the Eleventh Circuit analyzed at the pleading stage whether the named plaintiffs had "standing as putative class representatives," which it "stress[ed]" is "an issue distinct from whether they qualify under Rule 23 to represent the class." 511 F.3d 1300, 1307 (11th Cir. 2008); *see also Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (analyzing "class representative standing" at the pleadings). Because "[n]amed plaintiffs are parties from the start," a court "must immediately concern itself with their standing." *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 297 (6th Cir. 2023). Courts in the Eleventh Circuit follow this directive and dismiss class claims

---

[38]Plaintiffs withdraw Count 48 (N.Y. Gen. Bus. Law §§ 899-aa, 899-bb). Opp. 82.

from states in which no named plaintiff resides. *See In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010) (noting standing "must be resolved for each named plaintiff before" class certification and dismissing "all state statutory claims where no named plaintiff resides in the state").[39]

**B. Plaintiffs Failed to Comply with Pre-Suit Notice Requirements.**

Plaintiffs' failure to comply with pre-suit notice requirements warrants dismissal of eight UDAP Claims. Mot. 77. Plaintiffs argue that the "sufficiency and timeliness" of notice are an "issue of fact." Opp. 70-71. But that makes no sense—pre-suit notice provisions would have no effect if a case could proceed to discovery regardless of a plaintiff's compliance. And courts routinely dismiss claims on this basis. *See, e.g.*, *Stanley v. Huntington Nat'l Bank*, 492 F. App'x. 456, 461 (4th Cir. 2012) (dismissing West Virginia claim); *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399-1400 (N.D. Ala. 1997) (similar); *Blackmore v. Wachovia Mortg. Corp.*, 2013 WL 504388, at *3 (D. Utah Feb. 8, 2013) (similar).[40]

Plaintiffs also argue that pre-suit notice requirements are procedural rules under *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.* 559 U.S. 393 (2010). Opp. 71-72. However, they rely on out-of-circuit authority applying Justice Scalia's

[39] *Accord Callen v. Daimler AG*, 2021 WL 4523436, at *3–4 (N.D. Ga. Oct. 4, 2021); *Riley v. Gen. Motors, LLC*, 664 F. Supp. 3d 1336, 1344 (M.D. Fla. 2023).

[40] Plaintiffs do not dispute they failed to meet the pre-suit requirements of Miss. Code § 75-24-15(2), which requires "a reasonable attempt" at resolution through an "informal dispute settlement program approved by the Attorney General."

plurality opinion. *See* Opp. 71. Most courts—including in the Eleventh Circuit—consistently apply "[Justice] Stevens's narrower holding," *Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *14 (N.D. Ga. Mar. 23, 2016), and conclude that *Shady Grove* does not preclude dismissal based on failure to provide pre-suit notice. *See In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1345 (S.D. Fla. 2016).[41]

### C. Plaintiffs Fail to Satisfy Rule 9(b).

#### 1. Rule 9(b) applies to the UDAP claims.

Instead of arguing that the UDAP claims meet Rule 9(b)'s heightened standards, Plaintiffs assert that Rule 9(b) does not apply to their claims at all because they are not based on fraud, but on "unfair or unconscionable conduct." Opp. 73. While certain allegations use the terms "unfair" or "unconscionable" in a conclusory fashion, the gravamen of Plaintiffs' UDAP claims is fraud. In each UDAP count cited in the Opposition, *see* Opp. 73 n.56 (listing claims), the MC alleges GM "engaged in unfair, [or] unconscionable" practices, but goes on to allege GM's "deceptive acts" included "omitting, suppressing, and concealing" material facts and "misrepresenting the purpose of OnStar," which "deceived" consumers. *See, e.g.*, ¶¶

[41] Plaintiffs also argue that certain statutes' pre-suit notice requirements are inapplicable. In West Virginia, however, "[a]n action may not be brought . . . until 45 days after" notice has been provided. W. Va. Code § 46A-5-108(a). In Indiana, an act is only incurable if is "part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8). Plaintiffs fail to allege that GM acted with such intent. *See* Mot. § III.F.

1116, 1120, 1130, 1133, 1227, 1921. That Plaintiffs pursue a fraud theory is clear from the first page of their Opposition, which proclaims: "GM lied." Opp at 1.

Plaintiffs cite *CFPB v. Frederick J. Hanna & Associates*, 114 F. Supp. 3d 1342, 1373-74 (N.D. Ga. 2015), to argue that there must be a "directive" from the Eleventh Circuit to "impose a heightened pleading standard." Opp. 72. Since that case was decided, the Eleventh Circuit *has* directed that Rule 9(b) applies to state UDAP claims that "sound in fraud." *See Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023). The Court should apply Rule 9(b) here.[42]

**2. Plaintiffs fail to allege omissions, causation, or reliance with sufficient specificity.**

Plaintiffs do not contend they have stated UDAP claims based on any affirmative misrepresentations; they rely on omissions—GM's alleged "failure to disclose . . . unlawful data collection and use practices." Opp. 73. Plaintiffs' omissions-based claims fail for several reasons.[43]

---

[42] Plaintiffs also note that this Court declined to apply Rule 9(b) to UDAP claims in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1335 (N.D. Ga. 2019). *Equifax* is distinguishable because it involved "claims related to a consumer data breach" that did not sound in fraud. *Young*, 57 F.4th at 875. In contrast to the failure-to-protect-data claims in *Equifax*, Plaintiffs' UDAP claims concern GM's alleged misrepresentations and omissions concerning OnStar Smart Driver.

[43] Plaintiffs concede that omissions claims are subject to Rule 9(b) but suggest that only a "relaxed" version of Rule 9(b) applies. Opp. 74. The Eleventh Circuit has never adopted such a "relaxed" standard—it holds that Rule 9(b) requires "statements, representations, ***or omissions***" to be specifically identified. *Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*, 762 F. App'x 719, 726 (11th Cir. 2019).

First, Plaintiffs do not dispute that many UDAP statutes do not impose a free-standing duty to disclose at all. Plaintiffs argue that a duty to disclose arose from GM's "partial and misleading statements" in the User Terms and Privacy Statement. Opp. 74-75. But those disclosures make clear that GM "collects, uses, and shares information" about "the use of your vehicle," including with "usage-based insurance providers." *See* Mot. Ex. 1 § 26; Ex. 2 at 2, 4. Such statements are not misleading and do not impose a duty to provide every single detail about these topics. *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786 (S.D.N.Y. 2018) (revealing one fact about a subject does not alone "trigger a duty to reveal all facts on the subject").[44]

Second, Plaintiffs fail to allege causation with specificity. They argue GM's alleged deception was a "substantial factor" in causing their injuries because they otherwise "would not have purchased … their vehicles." Opp. 78-79. But to establish causation for an omission, Plaintiffs must allege they would have "become aware of a theoretical disclosure," which they fail to do. *See, e.g.*, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 4532937, at *53 (N.D. Cal. Oct. 15, 2024); *In re ZF-TFW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 767 (C.D. Cal. 2022). It is inadequate for Plaintiffs to allege they "would not

---

[44] Plaintiffs also argue that GM's public statements and instructions to dealerships support their claims, Opp. 75, but (1) generic statements about the importance of data privacy are "not sufficient" to state an omissions claim and (2) non-public communications to dealers cannot mislead consumers who never saw them. *Conti v. Am. Honda Motor Co.*, 2019 WL 10371067, at *6 (C.D. Cal. Oct. 17, 2019).

have purchased" a GM vehicle; courts require detailed factual allegations, such as data privacy being an important factor in their buying decision. *Gumner v. Pepsico*, 2023 WL 8351560, *3 (C.D. Cal. Oct. 5, 2023). No Plaintiff makes such allegations.

### D. Plaintiffs Fail to Allege Scienter.

Plaintiffs' claims under 11 UDAP statutes fail because they do not allege GM's scienter. Mot. 84-85. While scienter can be alleged "generally," Opp. 80, Plaintiffs' own cases explain that "a complaint must [still] include factual content" allowing such a "reasonable inference." *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338 (11th Cir. 2015). Allegations that GM acted "intentionally" or "maliciously" are not entitled to deference. Indeed, Plaintiffs' allegations cut against any inference of scienter, given that most Plaintiffs allege their dealers enrolled them without their consent, in violation of GM's own policies. *See* Mot. Ex. 3; ¶¶ 896-97.[45]

## CONCLUSION

For the foregoing reasons, the MC should be dismissed in its entirety.

---

[45] Finally, Plaintiffs' CCPA claim should be dismissed because Plaintiffs do not allege a security breach. Plaintiffs' argument that the CCPA covers a "wide range" of conduct beyond security breaches is contrary to the statute's text and the weight of authority. *See Kenney v. Bank of Am., N.A.*, 2025 WL 1489549, at *8 (C.D. Cal. May 23, 2025) ("mishandl[ing]" of personal information did not state CCPA claim); *In re TikTok, Inc., Consumer Priv. Litig*., 617 F. Supp. 3d 904, 923 (N.D. Ill. 2022) (the CCPA "provides for such actions only [for] a defendant's failure to prevent data breaches, not for unauthorized collection of personal information"). GM further incorporates the CRA Defendants' CCPA arguments. CRA Defs.' Reply § VIII.A.B.

Dated: June 23, 2025

By: */s/ Susan M. Clare*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Susan M. Clare
Georgia Bar No. 262830
John C. Toro
Georgia Bar No. 175145
Peter Starr
Georgia Bar No. 648453
Matthew B. Rosenthal
Georgia Bar No. 871852
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
dbalser@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
pstarr@kslaw.com
mrosenthal@kslaw.com

*Attorneys for Defendants*
*General Motors LLC and OnStar, LLC.*

## RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Susan M. Clare*
Susan M. Clare
Georgia Bar No. 262830

*Attorney for Defendants General Motors LLC and OnStar, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

DATED this 23rd day of June, 2025.

*/s/ Susan M. Clare*
Susan M. Clare
Georgia Bar No. 262830

*Attorney for Defendants General Motors LLC and OnStar, LLC.*