**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection | No. 1:24-md-3115-TWT |

**VERISK ANALYTICS, INC.'S AND LEXISNEXIS RISK SOLUTIONS INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED CLASS ACTION COMPLAINT AS TO THE FEDERAL WIRETAP ACT, STATE STATUTORY, AND COMMON LAW CLAIMS**

# TABLE OF CONTENTS

**Page**

I. THE MCC IS AN IMPROPER SHOTGUN PLEADING. ............................ 1

II. PLAINTIFFS STILL FAIL TO STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT. ............................ 3

A. Driving Data are not "contents" under the FWA. ............................ 3

B. Plaintiffs' Driving Data were collected by a "tracking device." ......... 4

C. The FWA's "party exception" defeats Plaintiffs' claims. .................... 5

III. PLAINTIFFS STILL FAIL TO STATE A CLAIM UNDER ANY STATE WIRETAP STATUTE. ............................ 6

IV. PLAINTIFFS' COMMON LAW CLAIMS FAIL BECAUSE NONE IDENTIFIES A SOURCE OF LAW. ............................ 8

V. THE UNJUST ENRICHMENT CLAIM FAILS. ............................ 10

VI. THE TRESPASS TO CHATTELS CLAIM FAILS. ............................ 13

A. Driving Data is not a "chattel." ............................ 13

B. Plaintiffs were not damaged by any alleged trespass. ........................ 14

VII. PLAINTIFFS CANNOT AVOID DISMISSAL OF THEIR COMMON LAW INVASION OF PRIVACY CLAIMS. ............................ 15

A. Plaintiffs still fail to state a claim for intrusion upon seclusion. ......... 15

B. Plaintiffs offer no facts to state a claim for public disclosure of private facts or publicity which places them in a false light. ............. 16

C. Disclosure of Driving Data for purposes of insurance underwriting is not highly offensive. ............................ 16

D. Plaintiffs still fail to state a claim for civil conspiracy. ...................... 17

VIII. THE STATUTORY INVASION OF PRIVACY CLAIM FAILS. ............. 17

A. Plaintiffs ignore the requirements to state a claim for invasion of privacy in violation of California's Constitution. .......... 17

i. Plaintiffs have no legally protected interest in Driving Data. .......... 17

ii. Plaintiffs still fail to allege how CRA Defendants' conduct was "highly offensive." .......... 18

iii. The California Constitution does not provide a private right of action for monetary damages. .......... 19

B. Plaintiffs still fail to state a claim for a violation of the California Consumer Privacy Act. .......... 20

IX. PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY STATE CONSUMER PROTECTION STATUTE. .......... 21

A. No plaintiff alleges any purchase of goods or services from CRA Defendants, which is required to seek relief under the cited statutes. .......... 22

B. Several Plaintiffs fail to allege any economic harm, as required by their applicable state statutes. .......... 26

C. All Plaintiffs fail to allege that any damages could have been caused by any specific act or statement of CRA Defendants. .......... 28

D. Plaintiffs' allegations are too vague and conclusory to state a claim. .......... 29

E. Plaintiffs' failure to plead with particularity warrants dismissal of 14 claims (Counts 11-12, 18, 24, 28-29, 31-33, 37, 44, 50, 52, 54). .......... 31

F. Plaintiffs fail to satisfy certain statutory pre-suit requirements. .......... 32

X. PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF. .......... 34

**CONCLUSION** .......... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actiq Sales & Mktg. Pracs. Litig.*,
790 F. Supp. 2d 313 (E.D. Pa. 2011) ........ 25

*In re Acuity Brands, Inc. Secs. Litig.*,
2019 U.S. Dist. LEXIS 231099 (N.D. Ga. Aug. 12, 2019) ........ 10, 22, 31

*ALK 2, LLC v. K2 Marine, Inc.*
647 F. Supp. 3d 1253 (M.D. Ala. 2022) ........ 29

*Am. Online, Inc. v. LCGM, Inc.*,
46 F. Supp. 2d 444 (E.D. Va. 1998) ........ 13

*Amin v. Mercedes-Benz USA, LLC*,
349 F. Supp. 3d 1338 (N.D. Ga. 2018) ........ 11

*In re AndroGel Antitrust Litig. (No. II)*,
687 F. Supp. 2d 1371 (N.D. Ga. 2010) ........ 9, 27

*In re Application of the U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*,
849 F. Supp. 2d 526 (D. Md. 2011) ........ 5

*Archer v. Holmes*,
2018 U.S. Dist. LEXIS 10961 (N.D. Ga. Jan. 23, 2018) ........ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 14

*Ass'n Servs., Inc. v. Smith*,
549 S.E.2d 454 (Ga. Ct. App. 2001) ........ 17

*Bardelas v. City of Doral, Fla.*,
2021 U.S. Dist. LEXIS 72988 (S.D. Fla. Apr. 15, 2021) ........ 2

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021) ........ 2

*Barrett Fin. of N.J., LLC v. Creative Fin. Grp. of N.J.*,
2018 U.S. Dist. LEXIS 123368 (D.N.J. July 24, 2018) ....................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 ..........................................................................................34

*In re Blackbaud, Inc., Customer Data Breach Litig*.,
2021 U.S. Dist. LEXIS 151831 (D.S.C. Aug. 12, 2021)....................................25

*Bolling v. Mercedes-Benz USA*, *LLC*,
2024 U.S. Dist. LEXIS 154238 (N.D. Ga. Aug. 27, 2024)............................2, 11

*Bolling v. Mercedes-Benz USA, LLC*,
2025 U.S. Dist. LEXIS 5774 (N.D. Ga. Jan. 10, 2025).....................................11

*Bowen v. Porsche Cars, N.A, Inc.*,
561 F. Supp. 3d 1362 (N.D. Ga. 2021)..........................................................14

*Boxy, LLC v. Jay at Play Int'l Hong Kong, Ltd.*,
2021 U.S. Dist. LEXIS 64220 (S.D. Fla. Mar. 31, 2021) ....................................9

*Brenner v. Future Graphics, LLC*,
258 F.R.D. 561 (N.D. Ga. 2007) ...................................................................11

*Chemence, Inc. v. Doherty*,
2007 WL 10025204 (N.D. Ga. Mar. 23, 2007) ................................................12

*Clayworth v. Pfizer, Inc.*,
233 P.3d 1066 (2010)....................................................................................24

*Clifford v. Federman*,
855 F. App'x 525 (11th Cir. 2021)...................................................................3

*CompuServe Inc. v. Cyber Promotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997)..........................................................14–15

*Crook v. Foster*,
775 S.E.2d 286 (Ga. Ct. App. 2015)...............................................................12

*Cumberland Contractors v. State Bank & Trust Co.*,
755 S.E.2d 511 (Ga. Ct. App. 2014)...............................................................17

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020) ....................9

*Dep't of Labor v. McConnell*,
828 S.E.2d 352 (Ga. 2019) ....................17

*Doe v. McCoy*,
2024 U.S. Dist. LEXIS 33901 (N.D. Ga. Feb. 28, 2024) ....................16

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ....................15

*In re Facebook, Inc. Internet Tracking Priv. Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................6

*Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*,
2013 U.S. Dist. LEXIS 159929 (C.D. Ill. Nov. 8, 2013) ....................13

*Frasco v. Flo Health, Inc.*,
2025 U.S. Dist. LEXIS 95333 (N.D. Cal. May 19, 2025) ....................19, 20

*Frazier v. U.S. Bank Nat'l Assoc.*,
2013 U.S. Dist. LEXIS 48601 (N.D. Ill. Apr. 4, 2013) ....................23

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018) ....................27

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ....................19

*Hann v. Pitchford*,
2024 U.S. Dist. LEXIS 209658 (C.D. Cal. Sept. 5, 2024) ....................20

*Harris v. Orange S.A.*,
636 Fed. Appx. 476 (11th Cir. 2015) ....................34

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................19

*Hill v. NCAA*,
865 P.2d 633 (Cal. 1994) ....................19

*Hudson v. Norfolk S. Ry. Co.*,
209 F. Supp. 2d 1301 (N.D. Ga. 2001)........................................................................1

*Humphrey v. Citibank NA*,
2013 U.S. Dist. LEXIS 137465 (N.D. Miss. Sept. 25, 2013)............................29

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008)................................24

*In re iPhone Application Litig.*,
844 F. Supp.2d 1040 (N.D. Cal. 2012)...............................................................4, 18

*Jackson v. Bank of Am., N.A.*,
898 F.3d 1348 (11th Cir. 2018) ...........................................................................2

*Jones v. Bank of Am., N.A.*,
564 F. App'x 432 (11th Cir. 2014) .......................................................................1

*Jones v. Bank of N.Y. as Tr. for Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2004-7*,
542 F. Supp. 3d 44 (D. Mass. 2021) ...................................................................33

*Keilholtz v. Superior Fireplace Co.*,
2009 U.S. Dist. LEXIS 30732 (N.D. Cal. Mar. 30, 2009) ...............................25

*Knoth v. Apollo Endosurgery US, Inc.*,
425 F. Supp. 3d 678 (S.D. Miss. 2019) ..............................................................34

*Kramer v. Gwinnett Cnty., Ga.*,
306 F. Supp. 2d 1219 (N.D. Ga. 2004)...........................................................10, 15

*Kwikset Corp. v. Superior Ct. of Orange Cnty.*,
246 P.3d 877 (2011)...............................................................................................24

*Lan Li v. Walsh*,
2017 U.S. Dist. LEXIS 114551 (S.D. Fla. July 24, 2017) ................................12

*Learning Ctr., LLC v. Waste Connections of Fla., Inc.*,
2022 U.S. Dist. LEXIS 13457 (S.D. Fla. Jan. 25, 2022)....................................32

*Libman v. Apple, Inc.*
2024 U.S. Dist. LEXIS 175118, at *48 (N.D. Cal. Sep. 26, 2024) ......................6

*M.G. v. Therapymatch, Inc.*,
2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) .............................. 21

*Meyer v. Cnty. of San Diego*,
2025 U.S. Dist. LEXIS 23803 (S.D. Cal. Feb. 10, 2025) .................................. 20

*Mobley v. State*,
834 S.E.2d 785 (Ga. 2019) ........................................................................ 8

*Morris v. Walmart Inc.*,
2022 U.S. Dist. LEXIS 91698 (N.D. Ala. Mar. 23, 2022) ........................... 32, 33

*Nalley v. General Motors LLC*,
2022 U.S. Dist. LEXIS 236834 (N.D. Ga. Aug. 30, 2022) ................................ 11

*Peacock v. Retail Credit Co.*,
302 F. Supp. 418 (N.D. Ga. 1969) ............................................................... 16

*In re Pen Reg. & Trap/Trace Device with Cell Site Location Auth.*,
396 F. Supp. 2d 747 (S.D. Tex. 2005) ............................................... 5, 22, 30

*People v. Diaz*,
213 Cal. App. 4th 743 (Cal. Ct. App. 2012) .................................................... 8

*Price v. Creditors Fin. Grp., Inc.*,
2009 U.S. Dist. LEXIS 143710 (N.D. Ga. Jan. 21, 2009) ........................... 16, 17

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ........................................................... 23

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ................................. 6

*United States ex rel Riner v. Cmty. Primary Care of Ga., LLC*,
2022 U.S. Dist. LEXIS 240218 (N.D. Ga. May 9, 2022) .................................... 2

*Rudy v. Fam. Dollar Stores, Inc.*,
583 F. Supp. 3d 1149 (N.D. Ill. 2022) .......................................................... 27

*Severn Place Assocs. v. Am. Bldg. Servs., Inc.*,
930 So. 2d 125 (5th Cir. 2006) ............................................................... 28, 29

*Shah v. Cap. One Fin. Corp.*,
2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) ....................................21

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ....................................................27

*Somerson v. McMahon*,
956 F. Supp. 2d 1345 (N.D. Ga. 2012)....................................................12

*Sun Kin Chan v. State*,
552 A.2d 1351 (Md. Ct. Spec. App. 1989)..................................................7

*T.D. v. Piedmont Healthcare, Inc.*,
2024 U.S. Dist. LEXIS 154229 (N.D. Ga. Aug. 28, 2024)................................15

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
547 F. Supp. 3d 195 (D. Conn. 2021), *aff'd*,
79 F.4th 206 (2d Cir. 2023) ....................................................................26

*In re TikTok In-App Browser Priv. Litig.*,
2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 1, 2024) .....................................6

*Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*,
504 F. Supp. 2d 260 (N.D. Ohio 2007) ....................................................13

*Vanden Berg v. Nat'l Asset Mgmt. Agency*,
2012 U.S. Dist. LEXIS 198851 (N.D. Ga. July 6, 2012) ..................................10

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017).............................................18, 19

*Warfield v. Dorey*,
55 N.E.3d 887 (Ind. Ct. App. 2016) .........................................................33

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ...........................................................2, 3

*Weinberg v. Sun Co.*,
777 A.2d 442 (2001)..............................................................................24

*Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*,
247 F.3d 1262 (11th Cir. 2001) ...............................................................34

*Yarbray v. S. Bell. Tel. & Tel. Co.*,
409 S.E.2d 835 (Ga. 1991) ....................................................................................17

*Young v. Dish Network, LLC*,
2015 U.S. Dist. LEXIS 171122 (N.D. Okla. Dec. 23, 2015) ............................27

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..........................................................................3, 4

**Statutes**

15 U.S.C. § 1681, *et seq.* ...............................................................1, 17, 21

15 O.S. §§ 751, *et seq.* ...............................................................26, 27

18 U.S.C. § 2510, *et seq.* ...............................................................5, 7

18 U.S.C. § 3117 ...............................................................5

28 U.S.C. § 1407 ...............................................................9

Ala. Code §§ 8-19-1, *et seq.* ...............................................................30, 32, 33

Cal. Civ. Code § 1798.81.5 ...............................................................20

Cal. Civ. Code §§ 1798.100, *et seq.* ...............................................................20

Conn. Gen. Statutes §§ 42-110, *et seq.* ...............................................................26

Mass. Gen. Laws ch. 93 ...............................................................32

Miss. Code Ann. §§ 75-24-1, *et seq.* ...............................................................34

N.H. Rev. Stat. Ann § 570-A ...............................................................7, 8

N.J.S.A. §§ 56:11-28, *et seq.* ...............................................................17

N.Y. Gen. Bus. Law §§ 899, *et seq.* ...............................................................1

O.C.G.A. § 10-1-393.14 ...............................................................17

R.I. Gen. Laws §§ 6-13.1-1, *et seq.* ...............................................................1

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ........................................................ 13

Fed. R. Civ. P. 9(b) ........................................................................................ 31

Fed. R. Civ. P. 12(b)(6)...................................................................................... 1

Nothing in Plaintiffs' Opposition cures the MCC's fundamental defects. To the contrary, the Opposition shines a brighter light on Plaintiffs' failed effort to jam square factual pegs into round legal holes. The MCC alleges nothing more than routine aspects of modern automobile insurance underwriting: (i) the generation of "Driving Data" data by GM vehicles; (ii) the furnishing of that data by GM and OnStar to CRA Defendants; and (iii) the disclosure of the data by CRA Defendants to insurance companies for a permissible purpose (insurance underwriting) under the FCRA. There is nothing in those facts that supports Plaintiffs' claims as to CRA Defendants.[1] Accordingly, CRA Defendants again request that the Court dismiss the MCC with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. <u>THE MCC IS AN IMPROPER SHOTGUN PLEADING.</u>

As CRA Defendants' Motion explains, the MCC qualifies as an impermissible "shotgun" pleading in at least two ways: (1) by incorporating 973 paragraphs of

---

[1] Indeed, Plaintiffs have walked away from 7 of their claims. They affirmatively abandoned 3 of them: Count 38 (Massachusetts' wiretap statute), *see* Opp'n 14 n.8, Count 48 (New York's SHIELD ACT), *id.* at 30 n.13, and Count 49 (New York's civil rights law), *id.* And they entirely fail to respond to the argument related to 4 claims that Plaintiffs lack standing to pursue claims on behalf of state subclasses in which no named plaintiff resides. *See* ECF No. 141-1, Br. in Supp. of CRA Defs.' Mot. to Dismiss ("MTD" or "Motion") at 54–55. Those claims are thus waived: Count 37 (Massachusetts' consumer protection statute), Count 41 (Nebraska's wiretapping statute), Count 43 (New Hampshire's wiretapping statute), and Count 57 (Rhode Island's Deceptive Trade Practices Act). *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). The Court should dismiss these 7 claims.

factual allegations that span over 350 pages into each of its 65 counts, and (2) by improperly treating the differing defendants as a single group. *See* MTD at 6–7.

Plaintiffs incorrectly argue that adopting factual allegations into each count is proper, citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1324 (11th Cir. 2015) and *Bolling v. Mercedes-Benz USA, LLC*, 2024 U.S. Dist. LEXIS 154238, at *16–18 (N.D. Ga. Aug. 27, 2024). But neither court endorsed Plaintiffs' approach. Indeed, courts in the Eleventh Circuit regularly find such conduct constitutes a shotgun pleading. *See United States ex rel Riner v. Cmty. Primary Care of Ga., LLC*, 2022 U.S. Dist. LEXIS 240218, at *5 n.1 (N.D. Ga. May 9, 2022).[2]

By incorporating 973 paragraphs of factual allegations into each of its 65 counts, the MCC renders all Defendants, and this Court, unable to "parcel out and identify the facts relevant to each claim," thereby "materially increas[ing] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d

[2] Courts in this Circuit routinely hold that incorporating by reference all factual allegations into each count makes the pleading a shotgun pleading. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (complaint in which all factual allegations are included in many of the counts, making it unclear which facts are relevant to which counts, is a typical shotgun pleading); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (complaint was a shotgun pleading in part because it "incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief"); *Bardelas v. City of Doral, Fla.*, 2021 U.S. Dist. LEXIS 72988, at *9 (S.D. Fla. Apr. 15, 2021) (complaint that reincorporated the first 99 paragraphs into each claim was a shotgun pleading).

at 1324. Defendants should not be required to guess which facts, scattered across 350 pages, relate to which claims. Similarly, the MCC improperly lumps all Defendants' alleged misconduct together. While Plaintiffs respond that they do so because Defendants acted together, *see* ECF 152, Brief in Opposition to CRA Defendants' Motion to Dismiss ("Opp'n") at 7, that is contradicted by the MCC. *See, e.g.*, MCC ¶¶ 19, 25, 33, 41, 55, 63. For instance, Plaintiffs allege Defendants intentionally interfered with Plaintiffs' private property by "embedding, enabling, and activating software/hardware to extract Driving Data from Plaintiffs' vehicle." *Id.* ¶ 1092. But CRA Defendants have nothing to do with Plaintiffs' vehicles. Where a complaint alleges wrongdoing against multiple defendants, it must specify "how each is responsible for the acts or omissions that give rise to a claim for relief." *Clifford v. Federman,* 855 F. App'x 525, 528 (11th Cir. 2021) (citing *Weiland*, 792 F.3d 1323–25). The MCC does not.

## II. PLAINTIFFS STILL FAIL TO STATE A CLAIM UNDER THE FEDERAL WIRETAP ACT.

### A. Driving Data are not "contents" under the FWA.

Plaintiffs' FWA claim fails from inception because Plaintiffs concede (as they must) that "[t]he 'term 'contents' [in the FWA] refers to the *intended message conveyed* by [a] communication.'" Opp'n at 9 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)) (emphasis in original). That concession is fatal.

Plaintiffs do not allege that their Driving Data constitutes a "message" of any sort. To the contrary, Plaintiffs acknowledge their Driving Data was "created by vehicle sensors," generating "information regarding each vehicle's operations," which Plaintiffs characterize as "***their vehicles'*** communications." Opp'n at 8–9 (emphasis added). But that is not what Congress intended by the term "contents." *See In re Zynga*, 750 F.3d at 1106 ("Congress intended the word 'contents' to mean ***a person's intended message to another***.") (emphasis added); *see also* MTD at 9.

Although Plaintiffs urge the Court to disregard CRA Defendants' on-point supporting caselaw on the term contents, Opp'n at 8, Plaintiffs fail to acknowledge the fundamental rule this caselaw establishes: that where "data is generated automatically, rather than through the intent of the user, [it] does not constitute 'content'" within the meaning of the FWA. *In re iPhone Application Litig.*, 844 F. Supp.2d 1040, 1061 (N.D. Cal. 2012). That rule controls the outcome here and warrants dismissal.

**B. Plaintiffs' Driving Data were collected by a "tracking device."**

Plaintiffs are also unable to rebut the fact that that their alleged Driving Data were collected by a "tracking device." Plaintiffs contend that "when a device tracks location *and* sends other electronic communications, the 'tracking device' exception [in the FWA] does not extend to the other electronic communications sent by the device." Opp'n at 10 (emphasis in original). But the tracking device exception is

not limited to location information: by its terms, it applies to any information collected by a device "which permits the tracking of the ***movement of a person or object***." 18 U.S.C. § 3117(b) (emphasis added). Thus, a device that permits the tracking of a vehicle's movements, including speed, acceleration, hard braking, or time spent idle, among other metrics, functions as a "tracking device" regardless of whether it also permits the tracking of the vehicle's location. Indeed, that is why Plaintiffs allege "[t]he TCU . . . is an 'electronic tracking device' . . . which reveals the vehicles' location ***or movement*** by the transmission of electronic signals . . ." MCC ¶ 1183 (emphasis added). Accordingly, the data at issue are not "electronic communications" within the meaning of the FWA. *See* 18 U.S.C. § 2510(12)(C).[3]

**C. The FWA's "party exception" defeats Plaintiffs' claims.**

Plaintiffs cannot escape their allegations, in writing and in an accompanying visual aid, that the TCUs in Plaintiffs' vehicles ***were OnStar units***, a GM subsidiary and a party to this case. *See* MCC ¶ 850 ("The following image depicts the TCU (***labeled 'OnStar'***) installed in a GM vehicle's internal electronic communications network[.]") (emphasis added); *id*. ¶ 851 (diagram reflecting same).

[3] The cases cited in Plaintiffs' Opposition do not hold otherwise. *See* Opp'n at 10. They simply reiterate that where a cell phone is used to track the movement of an object, *i.e.*, the phone itself, it functions as a tracking device under 18 U.S.C. § 3117. *See In re Application of the U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 575–76 (D. Md. 2011); *In re Pen Reg. & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 755–56 (S.D. Tex. 2005).

Plaintiffs now contend, however, that GM was not a "party" to the communications because it "was not a participant in the exchange of data between Plaintiffs and their vehicles." Opp'n at 12. But none of the cases Plaintiffs cite in in support of their theory save their claim. In every one, the court concluded that the defendant was not a party to communications between users and ***third party websites***. *See In re Facebook, Inc. Internet Tracking Priv. Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *1–6 (N.D. Cal. Oct. 23, 2019); *In re TikTok In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597, at *41–42 (N.D. Ill. Oct. 1, 2024). Nothing of the sort happened here. The components inside GM's vehicles, including OnStar TCUs, were the direct recipients of the communications alleged in the MCC. The FWA's "party exception" squarely applies on these alleged facts.

## III. PLAINTIFFS STILL FAIL TO STATE A CLAIM UNDER ANY STATE WIRETAP STATUTE.

Plaintiffs also insist that the Driving Data constituted protected "communications" or "telecommunications" under the wiretapping statutes of California, Maryland, New Hampshire, and Illinois. Plaintiffs are incorrect.

**California**. Plaintiffs ignore the core holding of *Libman v. Apple, Inc.*: "the term 'communication' for purposes of CIPA connotes ***a singular conversation or exchange between two or more participants***." 2024 U.S. Dist. LEXIS 175118, at *48 (N.D. Cal. Sep. 26, 2024) (emphasis added) (citation omitted). Plaintiffs are

unable to point to a single allegation in their MCC that classifies Driving Data as a "conversation" or "exchange" of any kind. It is thus not a "communication" under California law.

**Maryland**. Maryland courts have similarly held that the mere transmission of data is not a "communication" where the data transmission lacks a substantive message. *See Sun Kin Chan v. State*, 552 A.2d 1351, 1361 (Md. Ct. Spec. App. 1989). Plaintiffs claim their Driving Data ***does*** include a substantive message, *i.e.*, "information concerning the substance, purport, or meaning of signals, data, or intelligence . . ." Opp'n at 16. But, as discussed above, Driving Data is not a "communication" because it does not meet the definition of "contents" under the FWA. *See* 18 U.S.C. § 2510(8).

**New Hampshire**. Driving Data is not a protected "telecommunication" under New Hampshire's Wiretapping and Eavesdropping Act ("NHWEA"). Although courts have generally held that the NHWEA provides greater protections than the FWA, Opp'n at 16 (citing cases), Plaintiffs conveniently omit that, unlike the FWA, the NHWEA requires that a "telecommunication" be transferred by a carrier that provides communication services to the general public. N.H. Rev. Stat. Ann § 570-

A:1(I), (IX). That is ***not*** true of the data at issue here, which Plaintiffs acknowledge was "created by [] sensors that are processed within [their] vehicles." Opp'n at 8.[4]

**Illinois.** Plaintiffs fail to establish that Driving Data is a "private electronic communication" or that there is a reasonable expectation of privacy in data generated by a vehicle. The chief case Plaintiffs cite, *Mobley v. State*, 834 S.E.2d 785, 792 (Ga. 2019), was decided on trespass grounds and the court did not apply a reasonable-expectation-of-privacy test. *See* ECF No. 153, Br. in Opp. to GM Mot. to Dismiss, at 53. In contrast, other courts have expressly held that drivers have no expectation of privacy in their vehicle's recorded data because "others could observe [the] vehicle's movements, braking and speed, either directly or through the use of technology such as radar guns or automated cameras." *People v. Diaz*, 213 Cal. App. 4th 743, 757–58 (Cal. Ct. App. 2012). The same rationale applies here.

## IV. PLAINTIFFS' COMMON LAW CLAIMS FAIL BECAUSE NONE IDENTIFIES A SOURCE OF LAW.

Confronted with their failure to identify the applicable law for their various common law claims, Plaintiffs ask the Court to punt the issue until class certification. *See* Opp'n at 18. But this is a pleading issue. Namely, Plaintiffs have failed to place

---

[4] Plaintiffs' claim under the NHWEA should also be dismissed because there is no named plaintiff to represent the putative New Hampshire Subclass. *See* MTD 54–55. Because Plaintiffs have failed to respond to this argument, their claim under the NHWEA is waived. *See* Section I, *supra*.

CRA Defendants on notice of the specific state law that forms the basis for their claims for relief. *See Boxy, LLC v. Jay at Play Int'l Hong Kong, Ltd.*, 2021 U.S. Dist. LEXIS 64220, at *28–29 (S.D. Fla. Mar. 31, 2021); *see also* MTD at 17–19.

Plaintiffs' attempt to now seek the application of Georgia law should be rejected. First, nowhere in the MCC is Georgia law identified as the source of Plaintiffs' claims. That is fatal.[5] Second, the request to apply Georgia law is improper at least as to Verisk because Georgia lacks jurisdiction over Verisk. Although the MCC asserts Plaintiffs have personal jurisdiction over LNRS in Georgia, MCC ¶ 8, the purported basis for jurisdiction over Verisk is the complaint captioned *Dinitz, et al. v. Verisk Analytics, Inc.*, Case No. 2:24-cv-11157, which was filed in the ***District of New Jersey*** and transferred to this MDL under 28 U.S.C. § 1407 as Case No. 1:25-cv-00149 on January 14, 2025. *See* Compl., *Dinitz*, ECF No. 1, ¶ 6. Georgia common law cannot apply to Verisk, because, "[w]hile in the MDL, [an] action generally remains subject to the substantive law and choice of law rules to which it would have been subject in the transferor court." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020) (citation omitted).

Rather than engage with CRA Defendants' arguments, Plaintiffs fail to address the application of any state's law besides Georgia. That renders CRA

[5] "[P]laintiff[s] cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *In re AndroGel Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010) (Thrash, J.) (citation omitted).

Defendants' arguments regarding the application and effect of New Jersey and other jurisdictions' law unopposed. *See* Section X, *infra*; *see also In re Acuity Brands, Inc. Secs. Litig.*, 2019 U.S. Dist. LEXIS 231099, at *84–85 (N.D. Ga. Aug. 12, 2019); *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"). Below, CRA Defendants respond to Plaintiffs' arguments regarding Georgia law, but do not concede that Georgia law applies. Accordingly, the court should dismiss the common law claims.

## V. THE UNJUST ENRICHMENT CLAIM FAILS.

Nothing in Plaintiffs' Opposition resuscitates their unjust enrichment claim.

***Plaintiffs possess an adequate remedy at law.*** There is no relief Plaintiffs seek that is unavailable through one of their dozens of legal claims demanded in the MCC, *see* MTD at 29-30, and Plaintiffs do not argue otherwise. Instead, they assert that they are permitted to raise inconsistent theories of recovery. *See* Opp'n at 24. But the issue with this claim is not Plaintiffs' pursuit of inconsistent theories. The problem is that the MCC "does not sufficiently dispel the conclusion that an adequate remedy at law . . . exists." *Vanden Berg v. Nat'l Asset Mgmt. Agency*, 2012 U.S. Dist. LEXIS 198851, at *31 (N.D. Ga. July 6, 2012) (unjust enrichment claim dismissed where complaint did not allege alternative remedy would be inadequate).

***Plaintiffs did not confer a direct benefit on CRA Defendants.*** To state a

claim for unjust enrichment, Plaintiffs must have conferred a direct benefit upon CRA Defendants. *See, e.g.*, *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007); *see also* MTD at 30. Plaintiffs attack this principle by citing three cases that are clearly distinguishable. Two of those cases held that the unjust enrichment claim was sufficiently pled ***only*** because plaintiffs asserted an agency theory of liability, which is absent from the MCC. *See Bolling v. Mercedes-Benz USA, LLC*, 2025 U.S. Dist. LEXIS 5774, at *24 (N.D. Ga. Jan. 10, 2025) (Thrash, J.); *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1363 (N.D. Ga. 2018). The third, *Nalley v. General Motors LLC*, permitted the unjust enrichment claim to proceed in factually distinct circumstances: against a manufacturer related the purchase of that manufacturer's vehicle at a car dealership. 2022 U.S. Dist. LEXIS 236834, at *26 (N.D. Ga. Aug. 30, 2022). Unlike *Bolling*, *Amin*, or *Nalley*, there is no allegation that GM was an agent of CRA Defendants, sold products manufactured by CRA Defendants, or otherwise acted on behalf of CRA Defendants. Plaintiffs attempt to hold CRA Defendants liable even though "there is no alleged relationship at all between the [CRA] Defendants and the Plaintiff[s]." *Archer v. Holmes*, 2018 U.S. Dist. LEXIS 10961, at *11 (N.D. Ga. Jan. 23, 2018) (Thrash, J.).

***Plaintiffs did not expect remuneration from CRA Defendants.*** Plaintiffs also fail to plead they expected remuneration from CRA Defendants. *See* MTD at 30–31. Plaintiffs first argue that they do not need to "expressly" allege an expectation

of remuneration, citing to *Chemence, Inc. v. Doherty*, 2007 WL 10025204, at *3 (N.D. Ga. Mar. 23, 2007) and *Lan Li v. Walsh*, 2017 U.S. Dist. LEXIS 114551, at *8 (S.D. Fla. July 24, 2017). But neither case is on point. *Walsh* interpreted Florida law, and the only issue in *Doherty* was damages after entry of default judgment. *Doherty*, 2007 WL 10025204, at *3.

Next, Plaintiffs assert the purpose of the remuneration requirement is to distinguish between voluntarily provided benefits and those that should be compensated, citing to *Crook v. Foster*, 775 S.E.2d 286, 289 (Ga. Ct. App. 2015). But *Crook*, a case on appeal after a directed verdict, considered an unusual set of facts where it was unclear whether the plaintiff conferred a gift. *Id.* The court did not analyze the requirement that a plaintiff plead an expectation of remuneration.

In any event, Plaintiffs' position is inconsistent with extensive precedent. In *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1357 (N.D. Ga. 2012), for example, the plaintiff alleged that he performed work and was not properly compensated. Applying Plaintiffs' logic, there would be no question that he performed this work "involuntarily." Yet *Somerson* held the defendant could not be liable for unjust enrichment because the plaintiff had not expected the defendant to be responsible for paying him. *Id.* That holding is impossible to square with Plaintiffs' theory.

## VI. THE TRESPASS TO CHATTELS CLAIM FAILS.

### A. Driving Data is not a "chattel."

Plaintiffs remain unable to explain how Driving Data is a "chattel." While Plaintiffs accuse CRA Defendants of "ignor[ing] the evolution of tort law in the digital age," Opp'n at 27, Plaintiffs ignore that a chattel is a "[m]ovable or transferable property; personal property; esp., a physical object," Black's Law Dictionary (12th ed. 2024); *see also* MTD at 32. Courts have found that applying trespass to chattels to electronic data is "at odds with traditional understanding of the term." *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 2013 U.S. Dist. LEXIS 159929, at *33 (C.D. Ill. Nov. 8, 2013); *see also Barrett Fin. of N.J., LLC v. Creative Fin. Grp. of N.J.*, 2018 U.S. Dist. LEXIS 123368, at *33–34 (D.N.J. July 24, 2018).

Although some courts have held that "digital" trespass to chattels claims may proceed, the MCC does not allege a digital trespass. Digital trespass requires a direct connection between intangible data and physical property sufficient to bring the alleged property interest within the scope of traditional common law. *See Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 268 (N.D. Ohio 2007) ("[T]he focus of a trespass to chattel claim, although it involves something as amorphous as 'the internet,' must still maintain some link to a physical object."); *see also Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 452 (E.D. Va. 1998) (similar). Here, Plaintiffs' trespass claim is based on intangible Driving

Data, which was not linked to any physical property when CRA Defendants allegedly used it.

### B. Plaintiffs were not damaged by any alleged trespass.

Nothing in Plaintiffs' Opposition shows alleged damage from any purported "trespass." First, Plaintiffs fail to respond to CRA Defendants' argument that their vague allegation of harm to their Driving Data is sufficient to state a claim. *See* MTD at 33-34; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiffs' unsupported assertion that they have pled "enough," Opp'n at 29, should be rejected.

Second, Plaintiffs fail to rebut CRA Defendants' argument that they did not maintain an interest in their Driving Data that was subject to potential harm. Sidestepping all CRA Defendants' cited cases, s*ee* MTD at 34, Plaintiffs instead cite three cases to argue that "harm" to their Driving Data is actionable damage.[6] All are inapposite. The first, *Bowen v. Porsche Cars, N.A, Inc.*, 561 F. Supp. 3d 1362 (N.D. Ga. 2021), not only fails to address the types of harms that may sustain a trespass to chattels claim, but is also factually distinct. The harm there was to a communication device in a plaintiff's vehicle that malfunctioned because of a trespass, not harm to any data. *See id.* at 1366, 1376. The second, *CompuServe Inc. v. Cyber Promotions, Inc.*, similarly addresses harms to computer equipment. 962 F. Supp. 1015, 1021–

[6] Plaintiffs also assert that trespass need not result in physical damage. *See* Opp'n at 28–29. Not only do their cases not support their position, but CRA Defendants do not argue that Plaintiffs must suffer physical harm to recover for trespass.

22 (S.D. Ohio 1997). The final case, *In re Facebook Privacy Litigation*, 572 F. App'x 494 (9th Cir. 2014), does not examine trespass to chattels at all.

## VII. <u>PLAINTIFFS CANNOT AVOID DISMISSAL OF THEIR COMMON LAW INVASION OF PRIVACY CLAIMS.</u>

As discussed *supra*, Plaintiffs' argument that Georgia law governs all their common law claims is wrong. *See* Section IV. Because Plaintiffs fail to identify which states' laws apply, and because Plaintiffs fail to consider that *Dinitz* was filed in New Jersey, the Court should consider CRA Defendants' arguments regarding the application of such state laws as unopposed. *See Kramer*, 306 F. Supp. 2d at 1221. But Plaintiffs fail to state a claim for invasion of privacy under Georgia law as well.

### A. Plaintiffs still fail to state a claim for intrusion upon seclusion.

Plaintiffs must establish "a physical intrusion which is analogous to a trespass," or that the defendant "conducted surveillance of the plaintiff or otherwise monitored [the plaintiff's] activities." *T.D. v. Piedmont Healthcare, Inc.*, 2024 U.S. Dist. LEXIS 154229, at *6 (N.D. Ga. Aug. 28, 2024) (citation omitted). The MCC alleges no such activity by CRA Defendants. Instead, Plaintiffs contend "Defendants' actions amount to intrusion . . . because Defendants continued to share information which they illicitly collected with third parties." Opp'n at 20. But allegations of sharing are ***not*** allegations of physical intrusion or surveillance.

### B. Plaintiffs offer no facts to state a claim for public disclosure of private facts or publicity which places them in a false light.

Plaintiffs still point to nothing in the MCC supporting a claim for public disclosure of private facts. *See Doe v. McCoy*, 2024 U.S. Dist. LEXIS 33901, at *18 (N.D. Ga. Feb. 28, 2024) (requiring "disclosure in which information is distributed to the public at large"). The same is true for their false light claim, which also requires a public disclosure. *See Price v. Creditors Fin. Grp., Inc.*, 2009 U.S. Dist. LEXIS 143710, at *7 (N.D. Ga. Jan. 21, 2009).

The MCC includes no allegations of a public disclosure. It only alleges that CRA Defendants may have shared Driving Data with one or a handful of insurance companies. *See*, *e.g.*, MCC ¶¶ 705, 749, 940. That is not disclosure to the public at large. *See*, *e.g.*, *Peacock v. Retail Credit Co.*, 302 F. Supp. 418, 423 (N.D. Ga. 1969) (disclosure of credit and insurance reports furnished to insurance companies, banks and other businesses was not disclosure to the public at large).[7]

### C. Disclosure of Driving Data for purposes of insurance underwriting is not highly offensive.

Plaintiffs do not come close to showing how the sharing of any Driving Data was highly "offensive to a reasonable person," as required by every one of Plaintiffs'

[7] It is irrelevant if "LNRS's insurance company portfolio alone represents 42% of the U.S. auto insurance market." Opp'n at 21. Market share still would not constitute disclosure to the public. *Peacock*, 302 F. Supp. at 420 n.3 (defining "public" as "***not limited or restricted to any particular class of the community***") (emphasis added).

common law privacy claims. *See Yarbray v. S. Bell. Tel. & Tel. Co.*, 409 S.E.2d 835, 837 (Ga. 1991) (intrusion upon seclusion); *Dep't of Labor v. McConnell*, 828 S.E.2d 352, 360 (Ga. 2019) (public disclosure or private facts); *Price*, 2009 U.S. Dist. LEXIS 143710, at *5 (false light). In fact, even the disclosure of something as private as a Social Security number is insufficient. *See Cumberland Contractors v. State Bank & Trust Co.*, 755 S.E.2d 511, 517 (Ga. Ct. App. 2014); *see also* MTD at 24.

Data pertaining to publicly observable driving behavior is distinctly ***less*** private than personal identifiers. That is especially true here, where the data was disclosed to insurance companies for underwriting, as permitted under the FCRA and state law. *See* 15 U.S.C. § 1681b(a)(3)(C); O.C.G.A. § 10-1-393.14; N.J.S.A. § 56:11-31(a)(3)(c).

### D. Plaintiffs still fail to state a claim for civil conspiracy.

Because Plaintiffs fail to state a claim for invasion of privacy, their claim for conspiracy to commit invasion of privacy cannot survive. *See Ass'n Servs., Inc. v. Smith*, 549 S.E.2d 454, 460 (Ga. Ct. App. 2001) ("[A] plaintiff cannot maintain an action for a conspiracy in the absence of underlying actionable conduct.").

## VIII. THE STATUTORY INVASION OF PRIVACY CLAIM FAILS.

### A. Plaintiffs ignore the requirements to state a claim for invasion of privacy in violation of California's Constitution.

#### i. Plaintiffs have no legally protected interest in Driving Data.

Plaintiffs ignore CRA Defendants' voluminous caselaw holding that Plaintiffs have no legally protected interest in their Driving Data under the California Constitution, *see* MTD at 36, citing instead a Ninth Circuit case, *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017). Opp'n at 30. But *Vizio* is inapposite because the "data" at issue in that case is not interchangeable with the Driving Data here.[8] *See Vizio*, 238 F. Supp. at 1232–33. Rather, the data at issue in *Vizio* included an "array" of information about users' digital identities and viewing histories, which, as relevant here, fell into the first of the two categories of legally protected privacy interests in California: "(1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Id.* (citation omitted). Here, the Driving Data falls into ***neither***—it is not particularly sensitive or confidential. *See* MTD at 17; *see also* Section III.

**ii. Plaintiffs still fail to allege how CRA Defendants' conduct was "highly offensive."**

Plaintiffs' Opposition is silent on how CRA Defendants' conduct was an "egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp.

[8] This case also is easily distinguishable from *Vizio* because the defendant's alleged disclosures of information (*e.g.*, video viewing and purchase histories) were deemed ***prohibited*** by the Video Protection Privacy Act. 238 F. Supp. 3d at 1223–24. The MCC does not allege that CRA Defendants engaged in the same conduct here.

2d at 1063 (citing *Hill v. NCAA*, 865 P.2d 633, 655 (Cal. 1994)).

First, although Plaintiffs make a conclusory assertion that CRA Defendants' conduct was highly offensive, *see* Opp'n at 31, the single case they cite is inapposite. In *Vizio*, the court found the conduct highly offensive specifically because the data was deemed: (i) highly personal; (ii) collected even after users opted out; and (iii) collected in violation of industry norms. 238 F. Supp. 3d at 1232. Here, the Driving Data was not sensitive, and its disclosure was permitted under the FRCA.

Second, while Plaintiffs argue CRA Defendants' conduct was highly offensive because they "conspired" with GM, *see* Opp'n at 31, they point to no alleged facts or legal support for this assertion. Neither *Google Location History* nor *Hart* involved conspiracies to invade privacy, but rather involved ignoring users' expressed privacy choices or failing to disclose data tracking during the consent process. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1158 (N.D. Cal. 2021); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 601–02 (N.D. Cal. 2021). CRA Defendants did not engage in such conduct here, and Plaintiffs do not allege otherwise because there was no relationship between them, and CRA Defendants could not have known about their privacy choices.

**iii. The California Constitution does not provide a private right of action for monetary damages.**

Ignoring almost two decades of well-established federal case law, Plaintiffs cite *Frasco v. Flo Health, Inc.*, 2025 U.S. Dist. LEXIS 95333, at *62–63 (N.D. Cal.

May 19, 2025), to argue that damages can be sought for claims under Article 1 Section 1 of the California Constitution. That is incorrect. *See, e.g.*, *Meyer v. Cnty. of San Diego*, 2025 U.S. Dist. LEXIS 23803, at *76 (S.D. Cal. Feb. 10, 2025) ("California's constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction but it does not confer on a litigant a private right of action for damages.") (citation omitted); *Hann v. Pitchford*, 2024 U.S. Dist. LEXIS 209658, at *8 (C.D. Cal. Sept. 5, 2024). Although the *Frasco* court did certify damages classes, including for a claim under the California Constitution, it did so in direct conflict with established precedent and without explanation for the departure.[9] This Court should follow the established, majority position.

### B. Plaintiffs still fail to state a claim for a violation of the California Consumer Privacy Act.

Plaintiffs' Driving Data does not qualify as "personal information" under the CCPA. *See* Cal. Civ. Code § 1798.81.5(d). Plaintiffs cite ***no authority*** otherwise, instead only pointing to a conclusory allegation in the MCC that the data is covered. *See* Opp'n. at 32 (citing MCC). This is not consistent with the text of the CCPA.

The CCPA explicitly limits the private right of action to data breaches, defined as a breach of a "duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150. Legislators were so concerned that

---

[9] Flo Health, Inc. is currently appealing the class certification order. *See Erica Frasco, et al. v. Flo Health, Inc.*, Case No. 21-cv-00757-JD, ECF No. 628.

unscrupulous plaintiffs would attempt to abuse the CCPA and circumvent the limitation on the private right of action that they amended the CCPA with SB 1121 in 2018 to clarify that the private right of action is only available for data breaches.[10]

Plaintiffs also fail to show that the disclosure of Driving Data to insurers was "unauthorized." To the contrary, as Plaintiffs admit, the FCRA provides a specific permissible purpose for insurance underwriting. *See* MCC ¶¶ 1097-1110 (noting insurance-related disclosures); *see also* 15 U.S.C. § 1681b(a)(3)(C).

## IX. PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY STATE CONSUMER PROTECTION STATUTE.

Although Plaintiffs assert claims against CRA Defendants under nineteen different state consumer protection statutes, they fail to address key elements of multiple state consumer protection act claims.[11] This Court should not permit

---

[10] *See* Assembly Committee On Privacy And Consumer Protection Rep. on SB 1121, (2018) (stating that the purpose of the bill is to "[c]larif[y] PRA applies only to the data breach portion of the CCPA"). Neither of the cases cited—*Shah v. Cap. One Fin. Corp.*, 2025 U.S. Dist. LEXIS 42677, at *23 (N.D. Cal. Mar. 3, 2025), and *M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *21 (N.D. Cal. Sept. 16, 2024)—consider legislative intent or address the amendment to the CCPA. As neither of these decisions is controlling precedent for this court, it should disregard them. But the Court should also disregard them because each is easily distinguishable from the Plaintiffs' allegations here. The courts in those cases found that defendants had a duty of care and violated it by allowing third-party trackers to collect their users' data. *Id.* No such duty or violation is alleged here. CRA Defendants obtained the Driving Data from GM, and any duty to protect it and implement security procedures did not rest with CRA Defendants.

[11] For example, regarding the requirement of a commercial relationship between each named Plaintiff and CRA Defendants, Plaintiffs respond with caselaw of only

Plaintiffs to proceed against CRA Defendants on claims for which they fail to include any opposing substantive argument. *See In re Acuity Brands*, 2019 U.S. Dist. LEXIS 231099, at *84–85 (citations omitted).[12]

### A. No plaintiff alleges any purchase of goods or services from CRA Defendants, which is required to seek relief under the cited statutes.

Plaintiffs fall short in their response to CRA Defendants' argument that 18 out of 19 claims should be dismissed for lack of a commercial relationship between named Plaintiffs and CRA Defendants. Plaintiffs only cite to caselaw from

---

five relevant states—California, Illinois, Indiana, New York, and Pennsylvania, ignoring all others CRA Defendants briefed. *Compare* MTD at 42–43, Appendix B, Column 2 ("Commercial Relationship Required"), *with* Opp'n at 33–35. Setting aside the flaws in these cases discussed *infra*, Plaintiffs omit opposing arguments for ***13*** of the relevant 18 state consumer protection claims. Moreover, Plaintiffs inadequately address the causation element of all 19 state consumer protection statutes. *Compare* MTD at 44–47, Appendix B, Column 4 ("Causal Nexus Required"), *with* Opp'n at 37–39. Plaintiffs rely on caselaw from only four relevant states—California, Connecticut, Illinois, and New York—and two states for which no claim is brought against CRA Defendants. *See* MCC ¶¶ 589–90 (Count 60 brought by Texas Subclass against GM only); 604 (Count 64 brought by Washington Subclass against GM only). That leaves ***15*** distinct statutory claims brought by Plaintiffs against CRA Defendants where Plaintiffs failed to respond.

[12] Accordingly, the following ***15*** counts should be dismissed: Count 21 (Connecticut) should be dismissed for failure to address the claim's consumer transaction requirement; Counts 31 (Indiana) and 50 (Nevada) should be dismissed for failure to address the causation requirement for each claim; and Counts 11 (Alabama), 12 (Arizona), 24 (Florida), 28 (Idaho), 32 (Kansas), 33 (Kentucky), 37 (Massachusetts), 40 (Mississippi), 44 (Nevada), 52 (Oklahoma), 57 (Rhode Island), and 58 (South Carolina) should be dismissed for the dual failure to address ***either*** of these two essential requirements.

California, Indiana, Illinois, New York, Pennsylvania, and Texas,[13] omitting—and therefore conceding—their claims under the remaining state statutes.

Moreover, even the cherry-picked cases Plaintiffs cite do not support their arguments. Instead, they underscore exactly what CRA Defendants argued: there can be no claims under the applicable state consumer protection statutes without a commercial relationship involving the plaintiff and the defendant. Opp'n at 34-35. Plaintiffs' citation to the unreported case of *Frazier v. U.S. Bank National Association*, 2013 U.S. Dist. LEXIS 48601, at *4 (N.D. Ill. Apr. 4, 2013), was recently addressed in the reported decision of *Ramirez v. LexisNexis Risk Solutions*, 729 F. Supp. 3d 838 (N.D. Ill. 2024), wherein the *Ramirez* court observed that "[t]he Illinois Supreme Court has not opined on which version [of a consumer nexus test] is correct," but found that the plaintiff could not satisfy the test in ***any*** form. *Id.* at 847. Even though the defendant had collected and sold the personal information of Illinois consumers, the court found plaintiff could not state a claim under the Illinois consumer protection statute because the Defendant sold its ***products*** to "private corporations, government agencies, and law enforcement agencies" rather than to individual consumers in the general market. *Id.* at 846–47. The same is true here for CRA Defendants. The products sold by CRA Defendants are purchased by

[13] As noted *supra*, n. 14, Count 60 (Texas subclass) is not asserted against CRA Defendants.

insurance companies, ***not by consumers and certainly not by the named Plaintiffs themselves***. Plaintiffs therefore cannot establish the requisite consumer relationship.

The remaining cases cited by Plaintiffs are similarly unavailing. In fact, several explicitly confirm that state consumer protection claims ***require*** a transaction that links a plaintiff and a defendant. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008), *as amended* (Nov. 6, 2008) (plaintiff did not meet reliance requirement because he failed to allege that any statement or conduct by defendant ***caused plaintiff to purchase defendant's product***); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1086–87 (2010) (standing requirements for California Unfair Competition Law were intended to prevent lawsuits by plaintiffs "who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant") (*accord Kwikset Corp. v. Superior Ct. of Orange Cnty.*, 246 P.3d 877, 884 (2011)); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (2001) ("There is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement might deceive members of the audience and might influence a purchasing decision ***when the plaintiff himself was neither deceived nor influenced."***) (emphasis added).

Finally, Plaintiffs stretch the holdings of a handful of cases that allowed consumer protection claims by a plaintiff that was either an end consumer who purchased a defendant's product through an intermediary, or an intermediary that

paid for a defendant's product on behalf of an end consumer. In either situation, even without a contract establishing privity between the plaintiff and defendant, there was still an alleged commercial relationship with the plaintiff based on one or more consumer-oriented transactions. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, 2021 U.S. Dist. LEXIS 151831, at *4 (D.S.C. Aug. 12, 2021) (finding standing where "Plaintiffs are patrons of [defendant's] customers" and defendant made numerous alleged misrepresentations directly to plaintiffs); *Keilholtz v. Superior Fireplace Co.*, 2009 U.S. Dist. LEXIS 30732, at *9–10 (N.D. Cal. Mar. 30, 2009) (holding a homeowner could bring a claim against the manufacturer of a fireplace that was purchased and installed in the plaintiff's home by the homebuilder); *In re Actiq Sales & Mktg. Pracs. Litig.*, 790 F. Supp. 2d 313, 326 (E.D. Pa. 2011) (holding that, under Indiana law, a third-party payor could bring a claim against a pharmaceutical manufacturer because the third-party payor paid for the drug prescriptions of its individual members and beneficiaries).

All of Plaintiffs' cases demonstrate a clear requirement of a commercial relationship involving the plaintiff and the defendant. But here, no Plaintiff had any relationship with CRA Defendants—nor could they—for the simple reason that ***CRA Defendants do not sell their products to individual consumers.*** Plaintiffs did not purchase or lease their vehicles from CRA Defendants, and Plaintiffs admit that they "neither chose to engage with nor received benefits from" CRA Defendants for any

other transaction. Opp'n at 35, n.19. This precludes Plaintiffs from stating a claim under all but one of the state consumer protection statutes they invoke. *See* MTD at Appendix B, Column 2 ("Commercial Relationship Required").

**B. Several Plaintiffs fail to allege any economic harm, as required by their applicable state statutes.**

Plaintiffs similarly fail to offer any authority that would allow the claims of Plaintiffs Brunet (Connecticut), Brakefield (Oklahoma), Guc (Pennsylvania), and Gray (Illinois) to proceed without allegations of specific economic harm, *see* MCC ¶¶ 100–107, 215–225, 537–545, 579–589, because economic damages are a threshold requirement for a cause of action in each of their respective states. *See* MTD at 43–44, Appendix B, Column 3 ("Type of Injury Required").

Plaintiffs' cited caselaw does not hold otherwise. Indeed, those cases confirm that these states' statutes each require economic damages to state a claim. As to the Connecticut Unfair Trade Practices Act ("CUTPA"), the court in *Tarpon Bay* dismissed the plaintiff's claim for failure to demonstrate an "ascertainable—that is, measurable—loss," which it described as a "threshold issue for all CUTPA claims." *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 547 F. Supp. 3d 195, 226–27 (D. Conn. 2021) (holding that because plaintiff was "out-of-pocket $0 as a result of the [dispute]" and "provide[d] no indication—let alone any factual basis—regarding how one might measure the amount it claims it lost," the claim failed), *aff'd*, 79 F.4th 206 (2d Cir. 2023). Similarly, for the Oklahoma Consumer Protection

Act, Plaintiffs ignore the prerequisite that a plaintiff must first establish economic damages to be eligible to recover for additional non-economic harms. *See* MTD at Appendix B, Column 3; *see also Young v. Dish Network, LLC*, 2015 U.S. Dist. LEXIS 171122, at *10–11 (N.D. Okla. Dec. 23, 2015) (rejecting claim for emotional distress under Oklahoma Consumer Protection Act because such damages are only recoverable ***in addition to*** economic and property damages). Moreover, although Plaintiffs cite *In re General Motors LLC Ignition Switch Litigation*, 339 F. Supp. 3d 262, 331 (S.D.N.Y. 2018), to assert that Plaintiff Brakefield can recover for "lost free or personal time," Plaintiff Brakefield makes no such allegations of lost time. *See* MCC ¶¶ 537–45. His allegations cannot be supplemented in briefing. *See AndroGel*, 687 F. Supp. 2d at 1381.

Plaintiffs' cited cases *In re Solara* and *Rudy v. Family Dollar Stores* are similarly unavailing. Although they hold that a lost benefit of a bargain can meet the "ascertainable loss" element of a Pennsylvania UTPCPL claim or the "pecuniary harm" element of an Illinois CFA claim, Plaintiffs Guc and Gray allege no such lost benefit caused by CRA Defendants; they only allege this as to ***GM***.[14] *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1308 (S.D. Cal. 2020); *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160

[14] Plaintiffs' vague assertion that Plaintiff Gray's Driving Data "***may be used in the future*** to increase his insurance premiums" does not establish pecuniary harm sufficient to state a claim at the present time. *See* Opp'n at 36 (emphasis added).

(N.D. Ill. 2022); *see also* MCC ¶ 587 (if Plaintiff "had known ***that GM*** would intercept and sell his Driving Data to LexisNexis, Verisk, and other third parties . . . he would not have purchased the [GM vehicle]") (emphasis added).

**C. All Plaintiffs fail to allege that any damages could have been caused by any specific act or statement of CRA Defendants.**

Plaintiffs offer little more than hand waving to assert that they have adequately pleaded causation as to CRA Defendants for all 19 of their state consumer protection statute claims. Regardless of the applicable causation standard, Plaintiffs' factual allegations regarding CRA Defendants—as distinct from GM—fall far short of establishing a plausible causal chain. Plaintiffs admit that they "neither chose to engage with nor received benefits from" CRA Defendants at any time. Opp'n at 35, n.19. Accordingly, there is simply no route for Plaintiffs to allege that any statement, conduct, or omission by CRA Defendants influenced their decisions to purchase GM vehicles or was a proximate, but-for, or substantial cause of any alleged damages stemming from those vehicle purchases.

Plaintiffs also fail to distinguish *Severn Place*. *See Severn Place Assocs. v. Am. Bldg. Servs., Inc.*, 930 So. 2d 125, 127–29 (5th Cir. 2006) (collecting cases from New York, California, Georgia, Connecticut, South Dakota, Florida, Ohio, and Wisconsin). *Severn Place* examined numerous scenarios in which plaintiffs alleged that a third party (such as a negligent driver) caused their insurance premiums to increase. *Id.* In such cases, courts have declined to find causation between the third

party's alleged actions and a plaintiff's increased insurance premiums because the third-party actions are "too remote" to establish causation. *Id.* Plaintiffs argue that *Severn Place* is distinguishable by claiming it involved "incidental" third parties, but that description is not true. *See* Opp'n at 25. If a negligent driver who causes a car accident is not a proximate cause of a plaintiff's subsequently higher insurance premiums, then the attenuated chain of connections that Plaintiffs allege here must be "too remote" to establish causation as well. *Id.* at 127–29. In short, Plaintiffs fail to demonstrate that they were harmed because of CRA Defendants' conduct, as opposed to the myriad other factors, including their own driving behavior, that could have caused their premiums to increase. *See* MTD at 42–45.

**D. Plaintiffs' allegations are too vague and conclusory to state a claim.**

Plaintiffs attempt to sidestep the *Twombly/Iqbal* plausibility pleading standard—which they cannot meet—by exclusively addressing CRA Defendants' argument that Plaintiffs failed to identify the specific statutory provisions upon which twelve of their nineteen consumer protection act claims rest.[15] *See* Opp'n at 40–41. Yet Plaintiffs' argument on that point is still unavailing because, to the extent

[15] Identifying the statutory provisions CRA Defendants are alleged to have violated is not a "hyper-technical" requirement, as Plaintiffs assert in their brief. Opp'n at 41. Without such information, CRA Defendants and this Court have no practical basis for evaluating Plaintiffs' claims. *See* MTD at 47–48, n.26; *see also ALK 2, LLC v. K2 Marine, Inc.* 647 F. Supp. 3d 1253, 1260 (M.D. Ala. 2022); *Humphrey v. Citibank NA*, 2013 U.S. Dist. LEXIS 137465, at *14–18 (N.D. Miss. Sept. 25, 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 137466.

they claim to have identified any specific statutory violations in the MCC, those allegations pertain ***only to GM***, not to CRA Defendants. *Compare* MCC ¶¶ 1116–17 (alleging six paragraphs of specific conduct by GM and asserting that such conduct violates Ala. Code § 8-19-5 subsections (5), (7), (9), and (27)), *with* MCC ¶¶ 1121–22 (no allegations of specific conduct by CRA Defendants and no alleged violations of any subsections of Ala. Code § 8-19-5). This pleading defect is dispositive for 12 of the 19 claims at issue here. *See* MTD at 47–48.

Plaintiffs' Opposition also omits any discussion of the far more substantive argument from CRA Defendants' Motion: that Plaintiffs fail to plausibly plead facts to support each element of their claims, such as commercial relationships, causation, reliance, and damages. *Compare* Opp'n at 40–41, *with* MTD at 47–48 and Appendix B, Columns 2-3 and Column 7. Notably, Plaintiffs do not even attempt to argue that they have adequately alleged every element of their claims. Indeed, their citations to the MCC in footnote 27 only show the weakness of their allegations, as paragraphs 702–734 and 738–768 contain no allegations of any deceptive acts by either CRA Defendant, and no allegations that Plaintiffs had any contact with or exposure to CRA Defendants' conduct or statements—thereby negating any possibility that Plaintiffs relied on such conduct or statements, or engaged in any commercial relationship with CRA Defendants. *See* Opp'n at 40, n. 27.

Accordingly, ***all*** consumer protection claims (Counts 11, 12, 18, 21, 24, 28,

29, 31, 32, 33, 37, 40, 44, 46, 50, 52, 54, 57, and 58) should be dismissed.

### E. Plaintiffs' failure to plead with particularity warrants dismissal of 14 claims (Counts 11-12, 18, 24, 28-29, 31-33, 37, 44, 50, 52, 54).[16]

Plaintiffs suggest they have not brought any claims sounding in fraud, and they make no attempt to argue they have complied with the heightened pleading requirements of Rule 9(b) for any claims. *See* Opp'n at 41–43 ("Plaintiffs' UDAP claims against CRA Defendants are based on unfair and/or unlawful conduct, not fraudulent conduct, and therefore are not subject to Rule 9(b)."). As a result, Plaintiffs fail to address the four state statutes that require the satisfaction of Rule 9(b). *See* MTD at 49. Counts 11, 12, 29, and 37 should therefore be dismissed. *See, e.g.*, *In re Acuity Brands*, 2019 U.S. Dist. LEXIS 231099, at *84–85.

As to the remaining state law claims, although Plaintiffs assert their claims do not sound in fraud, the MCC tells another story. Plaintiffs argue that they are not subject to Rule 9(b)'s heightened pleading requirement because they "alleged the UDAP clams premised on unfair and/or unlawful acts, not on fraudulent or deceptive practices." Opp'n at 42. But, as discussed *supra* at Section VIII, Plaintiffs specifically claim CRA Defendants' conduct was deceptive. *See* Opp'n at 30-31. Plaintiffs cannot disclaim allegations of fraud or otherwise cure their inability to satisfy Rule 9(b) by re-pleading the MCC through their Opposition.

[16] *See* Appendix B, Column 6 ("Rule 9(b) Pleading With Particularity Required").

### F. Plaintiffs fail to satisfy certain statutory pre-suit requirements.

Plaintiffs offer no basis to either ignore the pre-suit notice requirements of Indiana, Massachusetts, and Mississippi, or to find that Plaintiffs satisfied them, warranting dismissal of Counts 31, 37, and 40. Plaintiffs' arguments to this effect rely on inapposite caselaw and misapply different legal principles to these statutory prerequisites to filing a lawsuit.[17] Contrary to Plaintiffs' assertions, Opp'n at 44, courts regularly grant motions to dismiss for failure to comply with statutory pre-suit notice requirements. *See, e.g.*, *Morris v. Walmart Inc.*, 2022 U.S. Dist. LEXIS 91698, at *22, n.6 (N.D. Ala. Mar. 23, 2022) ("Courts applying § 8-19-10(e) routinely dismiss ADTPA claims when a plaintiff neglects to make a pre-suit demand."). This Court should do the same here.

Plaintiffs are incorrect in arguing that the Massachusetts pre-suit notice requirement does not apply. *See* Opp'n at 44-45. Although pre-suit notice is not required if a defendant "does not maintain a place of business or does not keep assets within the Commonwealth," Mass. Gen. Laws ch. 93A, § 9(3), that exception does not apply here because Verisk and LNRS have places of business in Massachusetts.[18]

[17] For example, Plaintiffs rely on one case that did not involve pre-suit notice at all. *See Sunshine Child.'s Learning Ctr., LLC v. Waste Connections of Fla., Inc.*, 2022 U.S. Dist. LEXIS 13457, at *11 (S.D. Fla. Jan. 25, 2022) (assessing whether failure to send advance notice of increase in plaintiff's service rates was a contract breach).

[18] *See* https://www.verisk.com/company/about/locations/ (Verisk offices located in Woburn, MA and Boston, MA); https://risk.lexisnexis.com/corporate/office-locations#americas (LNRS office located in Cambridge, MA).

The Court may take judicial notice of these publicly available facts in deciding the sufficiency of Plaintiffs' pre-suit notice. *See, e.g.*, *Morris*, 2022 U.S. Dist. LEXIS 91698, at *25. Accordingly, Plaintiffs' noncompliance is fatal to their claims.[19] *See Jones v. Bank of N.Y. as Tr. for Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2004-7*, 542 F. Supp. 3d 44, 57 (D. Mass. 2021).

Plaintiffs' attempt to evade Indiana's pre-suit notice provision fares no better. Without citing any caselaw, Plaintiffs assert that pre-suit notice was not required because CRA Defendants allegedly caused Plaintiff Lima "incurable harm." Opp'n at 45. But for a deceptive act to be "incurable" and trigger Indiana's exception to the pre-suit notice requirement, the defendant must have "acted with an intent to defraud or mislead the consumer." *Warfield v. Dorey*, 55 N.E.3d 887, 892 (Ind. Ct. App. 2016). Yet Plaintiffs expressly disclaim that any claims sound in fraud and never allege CRA Defendants engaged in any incurable acts. *See* Opp'n at 41-43. This negates any potential argument that Plaintiffs are exempted from the Indiana pre-suit notice requirement which they did not meet. *See* MTD at 52.

Finally, Plaintiffs wrongly declare that noncompliance with pre-suit requirements cannot bar a lawsuit in federal court, including as to their Mississippi

[19] The Alabama pre-suit notice statute includes the same exceptions as the Massachusetts statute. *See* Ala. Code § 8-19-10(e). As CRA Defendants do not have places of business in Alabama, they reserve argument for summary judgment where they may submit evidence of assets in Alabama.

claim. Opp'n at 45. Not true. Federal courts routinely dismiss claims for failure to comply with a state's pre-suit requirements. *See Knoth v. Apollo Endosurgery US, Inc.*, 425 F. Supp. 3d 678, 688 (S.D. Miss. 2019) ("[Because] Plaintiff has failed to attempt to resolve the case through an informal dispute program approved by the Mississippi Attorney General, as required under Miss. Code Ann. § 75-24-15(2) . . . her claim must be dismissed as a matter of law."). Plaintiffs' failure to comply with pre-suit requirements for Counts 31, 37, and 40 warrants dismissal of those claims.

## X. PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF.

Plaintiffs fail to establish an immediate risk of injury as a result of future conduct by CRA Defendants. *See Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). Although they acknowledge CRA Defendants no longer receive Driving Data from GM, Plaintiffs speculate that unidentified third parties may misuse already-disclosed data sometime in the future. Opp'n at 47. Such a risk is the epitome of conjecture that cannot survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555; *Harris v. Orange S.A.*, 636 Fed. Appx. 476, 484 (11th Cir. 2015); *see also* MTD at 54.

## CONCLUSION

For the foregoing reasons and those in CRA Defendants' opening brief, CRA Defendants respectfully request that the MCC be dismissed against them in its entirety and with prejudice.

Dated: June 23, 2025

Respectfully submitted,

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja (*pro hac vice*)
**HOGAN LOVELLS US LLP**
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267)-675-4667
jasmeet.ahuja@hoganlovells.com

Allison J. Caplis (*pro hac vice*)
**HOGAN LOVELLS US LLP**
100 International Drive, Suite 2000
Baltimore, MD 21202
Tel: (410)-659-2784
allison.caplis@hoganlovells.com

*Attorneys for Defendant Verisk Analytics, Inc.*

*/s/ Ronald I. Raether, Jr.*
Ronald I. Raether, Jr. (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
100 Spectrum Center Drive
Suite 1500
Irvine, California 92618
Tel: (949) 622-2700
ron.raether@troutman.com

Julie Hoffmeister Smith (*pro hac vice*)
Timothy J. St. George (*pro hac vice)*
**TROUTMAN PEPPER LOCKE LLP**
1001 Haxall Point
Richmond, Virginia 23219
Tel: (804) 697-1200
julie.hoffmeister@troutman.com
timothy.st.george@troutman.com

Cindy D. Hanson
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
Tel: (404) 885-3000
cindy.hanson@troutman.com

*Attorneys for Defendant LexisNexis Risk Solutions Inc.*

**CERTIFICATE OF COMPLIANCE**

By her signature below, and as required by Local Rule 7.1(D), counsel for Defendant Verisk certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), namely Times New Roman (14 point).

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja
Hogan Lovells US LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June, 2025, I have caused a copy of the foregoing Motion to Dismiss to be filed electronically with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja
Hogan Lovells US LLP