**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection Litigation | No.: 1:24-md-3115-TWT |

**GENERAL MOTORS LLC AND ONSTAR, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO SEARCH CERTAIN ESI CUSTODIANS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

LEGAL STANDARD ..................................................................................... 2

ARGUMENT .................................................................................................. 3

I. The In-House Counsel Are Attorneys Whose Communications Are Predominantly Privileged. ......................................................................... 3

II. The In-House Counsel Are Unlikely to Have Relevant, Non-Privileged Documents. .............................................................................................. 6

III. Designating the In-House Counsel as Custodians Would Impose a Disproportionate, Undue Burden on GM. ....................................................... 8

CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atta v. Cisco Sys., Inc.*,
2019 WL 12383117 (N.D. Ga. Apr. 26, 2019)....................................................2

*Dale v. Deutsche Telekom AG*,
2024 WL 4416761 (N.D. Ill. Oct. 4, 2024) ..........................................2, 7, 9, 10

*Does 1-5 v. Kaiser Found. Health Plan, Inc.*,
2025 WL 815934 (N.D. Cal. Mar. 14, 2025) ......................................................6

*Hazel v. Prudential Fin., Inc.*,
2024 WL 5440736 (N.D. Cal. Oct. 24, 2024) .....................................................6

*Lauris v. Novartis AG*,
2016 WL 7178602 (E.D. Cal. Dec. 8, 2016).......................................................4

*N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*,
2012 WL 12870300 (S.D. Cal. Oct. 31, 2012)........................................5, 8, 10

*Newman v. Assoc. Press*,
2024 WL 4433465 (S.D. Fla. Oct. 4, 2024) ...............................................2, 4, 8

*United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*,
2012 WL 13234162 (N.D. Ga. May 24, 2012)....................................................2

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
2019 WL 3369659 (D. Del. July 15, 2019) .........................................................9

*Thomas v. U.S. Roadways Enters. Inc.*,
2024 WL 7004417 (N.D. Ga. Apr. 30, 2024).....................................................6

*United States v. Davita Inc.*,
2014 WL 11516550 (N.D. Ga. Aug. 13, 2014)...................................................5

*VIC Equip., LLC v. Hewlett Packard Co.*,
2012 WL 13076708 (S.D. Ala. Oct. 11, 2012)..................................................10

## INTRODUCTION

Plaintiffs' Motion ("Mot.") (Dkt. 218) seeks to force Defendants General Motors LLC and OnStar, LLC (together, "GM") to designate four in-house counsel as ESI custodians (the "In-House Counsel"), in addition to the *forty-two* custodians GM has already agreed to. Plaintiffs' Motion should be denied.

Plaintiffs fall short of establishing that the In-House Counsel are likely to hold relevant, non-privileged documents. Each was a member of GM's legal department and reported up to GM's General Counsel. The majority of their documents are privileged, meaning very few documents will be produced if they are designated as custodians, and any non-privileged documents will almost certainly be captured by the forty-two custodians GM has already agreed to. The Motion also fails to establish that including these In-House Counsel would be proportional to the needs of the case. While Plaintiffs suggest they seek only to compel a "threshold ***search*** for responsive documents," they ultimately insist that GM review and then produce or log documents identified through that search. Mot. at 1-2. Forcing GM to review attorney documents only to generate an extensive privilege log would impose significant costs that outweigh any minimal benefit Plaintiffs might receive.

The impropriety of Plaintiffs' request is underscored by the fact that they do not cite a *single* case ordering the designation of company counsel as custodians. Contrary to Plaintiffs' position, courts frequently deny such requests due to burden

and proportionality concerns. In *Dale v. Deutsche Telekom AG*, 2024 WL 4416761 (N.D. Ill. Oct. 4, 2024),[1] for example, the court refused to compel the designation of three in-house attorneys as custodians—in addition to the agreed-upon fifty custodians—because the existing custodians provided a "reasonable opportunity" for plaintiffs to investigate their case. *Id.* at *3, 5. The court also found that, due to the time-consuming and costly nature of privilege review, "[a]dding three or four in-house counsel to that list is out of proportion to the needs of the case." *Id.* at *3-4.

As in *Dale,* the Court should deny Plaintiffs' motion to compel GM to designate its In-House Counsel as ESI custodians here.

## **LEGAL STANDARD**

A court should deny a motion to compel when "the burden or expense of the proposed discovery outweighs its likely benefit." *United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*, 2012 WL 13234162, at *2 (N.D. Ga. May 24, 2012). A plaintiff seeking additional ESI custodians must show that the request is proportional to the needs of the case and would provide unique, relevant information not obtainable from existing custodians. *Atta v. Cisco Sys., Inc.*, 2019 WL 12383117, at *1 (N.D. Ga. Apr. 26, 2019); *Newman v. Assoc. Press*, 2024 WL 4433465, at *4 (S.D. Fla. Oct. 4, 2024).

[1] A copy of *Dale* is attached as Exhibit 1 for the Court's convenience.

# ARGUMENT

## I. The In-House Counsel Are Attorneys Whose Communications Are Predominantly Privileged.

The four In-House Counsel Plaintiffs target here are current or former GM lawyers whose roles focused on privacy, cybersecurity, and data-related legal work. *See* Ex. 2, R. Bowers Decl. ¶¶ 2, 4–6. Specifically:

- Ryan Bowers has served as in-house counsel at GM since 2016 and is currently Director & Lead Counsel – Privacy, Cybersecurity, and Data. He has held various in-house counsel roles at GM, including Privacy Attorney, Counsel, Senior Counsel, and Lead Counsel. *Id.* ¶ 2.

- Susan Benington served as in-house counsel for GM from 2015 to 2020. During that time, she served as a Privacy Attorney and as Counsel for Data Privacy and Cybersecurity. *Id.* ¶ 6.

- Suzanne Miklos served as in-house counsel at GM for twenty-seven years. From 2015 to 2024, she filled several legal roles, including Attorney, Lead Counsel, Chief Counsel, Deputy General Counsel, Assistant General Counsel, and Chief Privacy Officer, among others. *Id.* ¶ 5.

- Christopher Murphy served as in-house counsel at GM from 2015 to 2019. His roles included Global Privacy Legal Advisor, Chief Privacy Officer, and Lead Counsel & Chief Privacy Officer from 2015 to 2019. *Id.* ¶ 4.

Plaintiffs try to minimize the legal nature of these roles by incorrectly characterizing the proposed custodians as individuals with "law degrees" who "performed a primarily business function." Mot. at 5. This characterization is wrong. Each individual acted primarily as in-house counsel for GM, providing legal advice to GM on a daily basis, and reporting up to GM's General Counsel. *Id.* ¶¶ 3-10.

Plaintiffs' reliance on the titles of "Chief Privacy Officer" ("CPO") and

"Privacy Manager" does not change this analysis. First, both are legal roles at GM. Second, these titles were not standalone positions; each individual was an in-house attorney who additionally held the role of CPO or the designation of Privacy Manager as part of their legal responsibilities. *See* R. Bowers Decl. ¶ 10.

At GM, the CPO is a legal role typically given as an additional title to an Assistant General Counsel or Lead Counsel to convey additional high-level responsibilities. *Id.* ¶ 8.[2] Specifically, as CPOs, these in-house counsel provided legal advice regarding GM's obligations under privacy, cybersecurity, consumer protection, and related laws and regulations. *Id.* Providing this advice required them to assess legal risk, interpret legal requirements, advise on legal compliance, and provide counsel regarding GM's data privacy practices. *Id.* The title of CPO confirms these lawyers' legal roles; it does not negate them.[3]

Likewise, "Privacy Manager" was not a standalone role at GM. "Privacy Manager" is the designation given to certain GM employees that conveys

---

[2] Ms. Miklos served as Assistant General Counsel as well as CPO. Mr. Murphy served as Lead Counsel in addition to the CPO title. *See* R. Bowers Decl. ¶ 8.

[3] Plaintiffs' request as to Ms. Miklos and Mr. Murphy is also improper given they were high-ranking "apex" executives, which courts frequently refuse to designate as custodians absent a showing that they will possess unique, relevant documents. *See, e.g.*, *Newman v. Assoc. Press*, 2024 WL 4433465, at *5 (S.D. Fla. Oct. 4, 2024); *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016). This is because senior executives "possess countless documents concerning [a company's] global operations unrelated to the instant action" that impose disproportionate costs. *Newman*, 2024 WL 4433465, at *5.

responsibilities regarding Privacy Impact Assessments ("PIAs"), including the ability to access, review, and comment on submitted draft PIAs. *See* R. Bowers Decl. ¶ 9. In connection with the PIA process, "Privacy Managers" assisted in fulfilling a legal compliance function, which entailed, among other things, evaluating whether a proposed data practice complies with applicable laws and legal obligations. *Id.* Plaintiffs focus on the fact that some individuals with the role of "Privacy Manager" are not attorneys. *See* Mot. at 5-6. This focus is misplaced because *all* of the In-House Counsel are attorneys, and any non-attorney Privacy Managers acted under the direction of GM's in-house counsel, similar to a paralegal. *See* R. Bowers Decl. ¶ 9. Moreover, Privacy Managers with responsibilities for PIAs relating to OnStar and connected services are *always* attorneys given the nature of that work, as exemplified by Mr. Bowers and Ms. Benington acting as Privacy Managers. *See id.* In other words, PIAs were "internal [workstreams] that were undertaken by [GM] employees for the purpose of providing the information to counsel (in-house or outside) in seeking legal advice on compliance with applicable regulatory schemes" and "fall within the attorney-client privilege." *United States v. Davita Inc.*, 2014 WL 11516550, at *4 (N.D. Ga. Aug. 13, 2014).

Because the In-House Counsel were attorneys who routinely provided legal advice, their files will be full of privileged communications, making them inappropriate sources of discovery. *See N. Cnty. Commc'ns Corp. v. Verizon Global*

*Networks, Inc.*, 2012 WL 12870300, at *3 (S.D. Cal. Oct. 31, 2012). The fact that the legal advice they provided concerned privacy, data, and compliance-related topics does not alter this conclusion, as privacy-related compliance work is squarely privileged. *See, e.g.*, *Does 1-5 v. Kaiser Found. Health Plan, Inc.*, 2025 WL 815934, at *6–7 (N.D. Cal. Mar. 14, 2025) (documents "concerning regulatory compliance" are often privileged, particularly when they involve "discussion of (and questions about) legal and regulatory risk issues"); *Hazel v. Prudential Fin., Inc.*, 2024 WL 5440736, at *2 (N.D. Cal. Oct. 24, 2024) (agreeing that privacy compliance work was "intertwined with advice" from lawyers and thus privileged).

## II. The In-House Counsel Are Unlikely to Have Relevant, Non-Privileged Documents.

Plaintiffs bear "the burden of showing the information [sought] is relevant." *Thomas v. U.S. Roadways Enters. Inc.*, 2024 WL 7004417, at *3 (N.D. Ga. Apr. 30, 2024). Plaintiffs cannot meet this burden because the In-House Counsel are unlikely to hold relevant, non-privileged documents.

As noted above, the In-House Counsel are attorneys whose work focused on providing legal advice regarding, among other things, privacy, cybersecurity, products, and data compliance. To the extent their work involved topics at issue in this case—including Smart Driver, data sharing, or other privacy-related topics—they acted in a legal capacity advising GM's business personnel on privacy-related legal and compliance issues. *See* R. Bowers Decl. ¶¶ 7-10. Any relevant information

held by the In-House Counsel would thus very likely be privileged and not subject to production. In short, designating the In-House Counsel as custodians is not likely to result in the production of a significant amount of information.

Plaintiffs argue that the In-House Counsel are proper custodians because "business personnel consulted with CPOs regarding GM's data sharing relationship with LNRS" and because Privacy Managers "supervised" certain non-lawyers in connection with PIAs. Mot. at 3, 6. But the In-House Counsel's role in "consult[ing]" with "business personnel" on these topics involved advising on related legal issues—communications that are squarely privileged. GM has also already agreed to designate forty-two non-attorney custodians, meaning the business personnel that consulted with the In-House Counsel as to these topics are already included.[4] Plaintiffs will have access to non-privileged documents concerning the business aspects of these privacy-related topics through these forty-two custodians.

Because the vast majority of the In-House Counsel's documents concerning data compliance and other privacy-related topics would be privileged, their inclusion

[4] These forty-two custodians, which include individuals who had responsibilities over a broad swath of GM's business, are sufficient on their own. For instance, several agreed-upon custodians had responsibilities for PIAs and privacy related matters, such as Saejin Park, Dalia Poulis, Rathan Raj, and Charles Thomas. *See* Dkt. 188 at 75. As the *Dale* court explained: "[F]rankly, fifty custodians is a lot. And, it's *really* a lot when they are essentially all of the requesting parties' choosing." *Dale*, 2024 WL 4416761, at *3. These custodians "certainly provide a reasonable opportunity—at the very least—for the plaintiffs to reasonably investigate their case." *Id.* at *5.

as custodians is not likely to lead to the production of relevant, non-privileged documents concerning these issues. This warrants denial of Plaintiffs' Motion. *See N. Cnty. Commc'ns Corp.*, 2012 WL 12870300, at *3 (finding "the vast majority of those communications are subject to attorney-client privilege and work-product protection" and "any unprivileged information . . . lacks evidentiary value").[5]

**III. Designating the In-House Counsel as Custodians Would Impose a Disproportionate, Undue Burden on GM.**

Any benefit of including the In-House Counsel as custodians is outweighed by burden and proportionality concerns. Requiring GM to parse through a high percentage of privileged documents in the hopes of uncovering some limited number of unique, relevant, and non-privileged documents would be disproportionate to the needs of the case, especially considering the substantial cost and burden of reviewing the In-House Counsel's files. *Newman,* 2024 WL 4433465, at *5 (refusing to compel custodians where a search "would not be proportional to the needs of the case").

Designating the In-House Counsel as custodians would be time-consuming

[5] Plaintiffs assert that "business communications" held by the In-House Counsel would not be privileged. Mot. at 5. Any such documents would likely be duplicative of or captured by documents held by the dozens of agreed-upon custodians. This "weighs heavily against designating" the In-House Counsel. *Newman*, 2024 WL 4433465, at *5. For instance, Plaintiffs assert that the "CPO is also a voting member of" the Data & Analytics Strategy Committee (formerly the Data Council). *Id.* at 3. GM has already agreed to include as custodians the Chief Data & Analytics Officers during this time period, as well as several voting members of the Data & Analytics Strategy Committee. *See, e.g.,* Dkt. 188 at 5, 60, 62.

and costly given the need for extensive privilege review. The number of documents required to undergo privilege review will increase exponentially by adding these custodians, as nearly every document that hits on search terms must be carefully reviewed for privilege (rather than just a fraction of the documents, as with most custodians). Conducting such review also requires specialized attorneys with higher billing rates to make privilege determinations. *Cf. Dale*, 2024 WL 4416761, at *3 (declining to add attorneys as ESI custodians due to lack of proportionality).

Plaintiffs fault GM for contending, "without any support," that searching these files "is not proportional or is burdensome." Mot. at 6. But GM has *already* provided such support. In the parties' joint letter brief on custodians (Dkt. 188), GM estimated the costs and burden based on its experience reviewing documents in parallel litigation. *See* Dkt. 188-3.[6] GM estimates the In-House Counsel's files will contain "5 times the privilege content compared to non-attorney custodians" and will require "twice as much review time." *Id.* ¶¶ 19, 20. The review and production of the In-House Counsel's files would cost an estimated $223,000 per custodian (more than ***double*** that of non-attorneys) for a total of $892,000. *Id.* ¶¶ 15, 18, 21.

This onerous burden is precisely the reason courts reject requests for the inclusion of attorneys as custodians—finding that the burden outweighs the speculative "possibility of finding discoverable information." *Sprint Commc'ns Co.*

[6] GM reattaches the Declaration of Ronni Dawn Solomon (Dkt. 188-3) as Exhibit 3.

*L.P. v. Charter Commc'ns, Inc.*, 2019 WL 3369659, at *1–2 (D. Del. July 15, 2019) (refusing to compel designation of in-house counsel in light of "the $100,000 or more Charter would have to spend on creating a privilege log"); *cf. N. Cnty. Commc'ns Corp*, 2012 WL 12870300, at *2–3 (similar).[7]

*Dale* is again on point. The *Dale* court found the designation of three attorneys as custodians would be unduly burdensome and disproportionate. *Dale*, 2024 WL 4416761, at *3-4. Privilege review and resulting disputes would be "time-consuming and costly" because privilege claims for attorney custodians would "far exceed" that for non-attorneys. *Id.* The massive volumes of data, extensive privilege logs, and serial privilege challenges would require exhaustive court and party resources, leading to a "time-consuming and burdensome" in camera review process. *Id.* at *3. Forcing GM to review and log the In-House Counsel's privileged ESI would be unduly burdensome and disproportionate. *Id*. at *3–4.[8]

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion To Compel.

---

[7] Plaintiffs cite *VIC Equip., LLC v. Hewlett Packard Co.*, 2012 WL 13076708 (S.D. Ala. Oct. 11, 2012). There, the court ***denied*** a motion to compel. *Id.* at *9. Like here, the defendant proved undue burden because it "supplied the Court," through a declaration, evidence that "reveals the nature of the burden" of the discovery. *Id.*

[8] Plaintiffs assert that "de-duplication" would address burden concerns. However, they ignore GM's previous explanation that de-duplication typically removes only 20% to 30% of a given custodian's documents. *See* Ex. 3, R. Solomon Decl. ¶ 24.

Dated: May 27, 2026

By: */s/ Susan M. Clare*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Susan M. Clare
Georgia Bar No. 262830
John C. Toro
Georgia Bar No. 175145
Peter Starr
Georgia Bar No. 648453
Matthew B. Rosenthal
Georgia Bar No. 871852
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
dbalser@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
pstarr@kslaw.com
mrosenthal@kslaw.com

*Attorneys for Defendants*
*General Motors LLC and OnStar, LLC.*

## RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Susan M. Clare*
Susan M. Clare
Georgia Bar No. 262830

*Attorney for Defendants General Motors LLC and OnStar, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

DATED this May 27, 2026.

*/s/ Susan M. Clare*
Susan M. Clare
Georgia Bar No. 262830

*Attorney for Defendants General Motors LLC and OnStar, LLC.*