**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection Litigation | No.: 1:24-md-3115-TWT |

# DEFENDANT LEXISNEXIS RISK SOLUTIONS INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SEARCH OF CERTAIN ESI CUSTODIANS

**INTRODUCTION**

Plaintiffs' Motion to Compel the Search of Certain ESI Custodians ("Motion") should be denied. Plaintiffs contend that simply because an individual appeared in an email thread in a production to regulators (in certain cases, a *single* email thread), signed a contract, or made a public comment about "data", they are entitled to burden LexisNexis Risk Solutions Inc. ("LNRS") with reviewing seven years' worth of their ESI, regardless of whether those custodians are otherwise relevant to the claims at issue here. They are not so entitled.

Plaintiffs have failed to satisfy their burden of showing each proposed custodian has unique, relevant information not obtainable from an already agreed-to custodian or that the requested custodians are proportional to the needs of the case. Indeed, LNRS has already agreed to twelve (12) custodians who can comprehensively cover the topics relevant to the litigation, including the development of the Telematics OnDemand ("TOD") consumer report that utilized driving behavior data furnished by GM and LNRS' related contract and negotiations with General Motors, LLC ("GM"). The custodians about whom Plaintiffs are moving to compel consist of the global CEO of LNRS, the CEO of LNRS' Insurance business line, two in-house lawyers, and an unnamed Data Protection Officer ("DPO")—none of whom are relevant, proportional custodians or were otherwise involved in the day-to-day issues pertinent to this case.

For the reasons explained below, LNRS requests Plaintiffs' Motion be denied.

## **PROCEDURAL BACKGROUND**

The parties have been negotiating ESI custodians for nearly one year. LNRS originally identified nine (9) custodians.[1] Plaintiffs responded by proposing that every LNRS employee identified in LNRS' early document production (*see* Dkt. No. 129) be a custodian. Plaintiffs' proposal included twenty-five (25) *additional* individuals. Through extensive meet and confers, LNRS agreed to add three (3) more custodians, and Plaintiffs eventually dropped seventeen (17) of their proposed custodians.

Despite the year-long negotiation process, five individuals remain at issue: global CEO of LNRS Mark Kelsey, CEO of LNRS' Insurance business unit William Madison, in-house attorneys Patricia Lee and Annette Gaines, and LNRS' DPO(s) during the relevant period.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) limits discovery to information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality requires weighing "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

[1] Pages 2-3 of Exhibit 2 to the Motion provide details about the custodians' roles.

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. These considerations are particularly significant in the context of ESI, where the volume of data to be searched, reviewed, and produced can impose substantial costs on the responding party. *See* Fed. R. Civ. P. 26(b)(2)(B).

Courts apply a three-part inquiry when a party moves to compel additional ESI custodians. *See Newman v. Associated Press*, Case No. 24-CV-20684, 2024 U.S. Dist. LEXIS 182443, at *10 (S.D. Fla. Oct. 4, 2024). First, the requesting party must show that the existing custodian selection was inadequate. *Id*. Second, the requesting party must demonstrate that the proposed custodian "would provide unique relevant information not already obtained" from existing custodians. *Id.* at *12. Third, the court weighs if compelling the designation "would be proportional to the needs of the case." *Id*. at *14-15.

The proportionality burden is particularly acute for senior executives and in-house counsel. Where an executive has no unique discovery materials because he or she was "not involved in the micro-level decision-making" and deferred to subordinates, courts have declined to compel designation because "a search of [their] documents will not be proportional to the needs of the case." *Id.* at *13, 15. In-house counsel designations raise additional proportionality concerns because privilege claims as to documents from lawyers far exceed those for non-attorneys. *Dale v.*

*Deutsche Telekom AG*, No. 22 C 3189, 2024 U.S. Dist. LEXIS 181384, at *10-11 (N.D. Ill. Oct. 4, 2024). Plaintiffs bear the burden of demonstrating each proposed custodian possesses unique, non-duplicative, relevant information unavailable through existing custodians, and the designation is proportional to the needs of this case. Plaintiffs cannot satisfy this burden; thus, their motion should be denied.

## LEGAL ARGUMENT

### I. LNRS' Executives (Kelsey and Madison) Are Not Appropriate ESI Custodians

Plaintiffs' sole bases for proposing Mr. Madison and Mr. Kelsey are that they signed agreements with GM and insurance carriers and they made broad, public comments about telematics data; neither appears in any email LNRS produced in its early document production. *See* Motion, p. 4-5. Mere connection to events "does not automatically mean that such person must be included as an ESI custodian." *See Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 U.S. Dist. LEXIS 193556, at *10 (E.D. Pa. June 8, 2016). Plaintiffs have not shown that the relevance of Mr. Kelsey's and Mr. Madison's ESI outweighs the burden of collection, review, and production.

Due to their high-ranking CEO-level positions, neither Mr. Kelsey nor Mr. Madison were involved in micro-level decision making such that they would have unique discovery material. Mr. Kelsey, based in London, is the global CEO of LNRS, overseeing offices in 40 countries, over 11,000 employees, and four major

business units.[2] While he was the signatory on behalf of LNRS on the August 1, 2019 Data License Agreement and Statement of Work 001 with GM, his involvement ended there. And Mr. Madison signed the amendments to those agreements, including the amendment to the Data License Agreement dated October 1, 2019. Mr. Madison is CEO of the Insurance business unit, responsible for "all auto, home, life and commercial insurance business including solutions for underwriting, claims, and analytics, for the U.S. and International markets."[3] Both executives oversee numerous projects, divisions, employees. They evidently possess vast amounts of ESI ***unrelated to this litigation***, requiring LNRS to collect, review, and search years of ESI to find the minimal, if any, relevant documents. This is not proportional to the needs of this case. *See Newman*, 2024 U.S. Dist. LEXIS 182443 at *14-15 (finding potential search of CEO's ESI not proportional due to possession of countless documents unrelated to the litigation); *Dale*, 2024 U.S. Dist. LEXIS 181384, at *13 (under the proportionality analysis, "the balance tip[ped] decidedly over to the disproportionate side—especially given the unpersuasive arguments regarding the relevance of the discovery").[4]

---

[2] *See* About Us, https://risk.lexisnexis.com/about-us (last visited May 27, 2026); *see also* Executive Leadership, https://risk.lexisnexis.com/about-us/leadership (last visited May 27, 2026).

[3] *See* Executive Leadership, https://risk.lexisnexis.com/about-us/leadership (last visited May 27, 2026).

[4] This is especially true for Mr. Kelsey, whose ESI collection, due to his location within the United Kingdom, would be subject to the UK GDPR, which imposes strict

The disproportionate nature of Plaintiffs' request is further highlighted by considering the other custodians LNRS has already agreed to add. *See, e.g.*, *City of Chicago v. DoorDash, Inc.*, 2024 U.S. Dist. LEXIS 161474, at *17-18 (N.D. Ill. Sept. 9, 2024) (CEO not shown to possess "unique, relevant documents" not produced from other custodial files"). For example, LNRS designated as a custodian former Vice President Adam Hudson, who created the TOD product, negotiated the agreements with GM, and reported to Mr. Madison. *See* Motion, Exhibit 2, pp. 2-3. LNRS further designated LNRS' Senior Director Marc Gordan since he reported to Mr. Hudson and eventually succeeded upon Mr. Hudson's departure. *See id.* Any "communications between and among senior leadership, including directives, approvals, strategic assessments, and risk discussions" (Motion, p. 6) would be captured by Mr. Hudson and Mr. Gordan's ESI. *See Newman*, 2024 U.S. Dist. LEXIS 182443 at *13 (CEO not appropriate custodian even when on emails approving subordinate's decisions). In fact, the twelve (12) agreed-to custodians cover the full spectrum of claims and defenses in the case, ranging from the development, creation, marketing, and operation of the TOD product; the negotiations with GM; the negotiations with insurance carrier customers that purchased TOD reports; the day-to-day interactions between LNRS and GM, and

---

compliance costs, data minimization requirements, cross-border transfer mechanisms, and potential exposure to significant fines.

LNRS and its insurance carrier customers; and LNRS' consumer disclosure reports relevant to insurance carrier inquiries. *See id.*

Plaintiffs' Motion as to Mr. Kelsey and Mr. Madison should be denied.

## II. LNRS' In-House Attorneys (Gaines, Lee) Are Not Appropriate ESI Custodians

Plaintiffs' arguments with respect to LNRS in-house attorneys are without merit and adding attorneys as custodians would impose an undue burden on LNRS. First, Plaintiffs' only relevance argument is based on these attorneys' names appearing in LNRS' initial document production. Ms. Gaines was referenced in a single email from a TOD product team member as the "Data Furnisher Expert." *See* Motion, p. 6. Notably, there are no emails in LNRS' initial production from Ms. Gaines. While Ms. Lee was copied on some emails with GM during negotiations, those emails will already be within the review population because of the already agreed to custodians. Overall, these attorneys' minimal (if any) relevance to the case is evident from the lack of argument in Plaintiffs' Motion. And any unique, relevant ESI in their possession not captured by agreed-to custodians' ESI would be privileged due to their roles as attorneys.

In addition to their non-relevance, designating both as custodians would impose an unduly burdensome privilege review and logging process on LNRS that is not proportional to the needs of this case. *Dale*, 2024 U.S. Dist. LEXIS 181384, at *11-12 (declining to add in-house attorneys as custodians, noting privilege claims

for lawyers "far exceed" those for non-attorneys, privilege logs would "undoubtedly be huge," and resulting *in camera* review would be "time-consuming and burdensome."); *see also Sprint Communications Company L.P. v. Charter Communications, Inc*, 2019 U.S. Dist. LEXIS 116794, *4-5 (D. Del. July 15, 2019) (refusing in-house counsel designation where cost of privilege logging outweighed "the possibility of finding discoverable information"); *N. County. Comms. Corp. v. Verizon Global Networks, Inc.*, 2012 U.S. Dist. LEXIS 192308, at *10 (S.D. Cal. Oct. 31, 2012) ("vast majority" of in-house counsel communications were privileged, making production "overly burdensome"). Indeed, since both are attorneys that provided legal advice to LNRS business teams, every email needs to be assessed for privilege. LNRS would essentially be forced to search their emails for the sole purpose of creating a privilege log. *See*, *e.g.*, *Verizon*, 2012 U.S. Dist. LEXIS 192308, at *10.

Rather than address proportionality and burden, Plaintiffs conflate LNRS' argument with attorney-client privilege protections. Motion, p. 7. Plaintiffs mischaracterize LNRS' position as asserting that these attorneys should be excluded simply because searching their files would require a privilege review, and claim a privilege log resolves the concern. *Id.* That argument misses the point.[5] Adding

[5] None of Plaintiffs' authorities address proportionality or support their motion. Each address only whether collected documents were properly withheld under claims of attorney-client privilege. *See United States v. Davita, Inc.*, 301 F.R.D. 676

custodians whose ESI has not been shown to be unique or relevant and that would also require extensive privilege review of nearly every document and communication in their records, given their roles as attorneys and the inability to apply ordinary privilege search terms (such as the attorneys' email addresses) that would otherwise narrow searches imposes an ***undue burden*** that runs afoul of the limitations in Fed. R. Civ. P. 26. *See SS&C Tech. Holdings, Inc. v. AIG Specialty Ins. Co.*, 2019 U.S. Dist. LEXIS 212149, at *1 (S.D.N.Y. Dec. 9, 2019) (refusing general counsel as custodian since burden "would be too high").

## III. LNRS' DPO Is Not an Appropriate ESI Custodian

Despite agreeing to drop their request for other custodians on LNRS' data security team, Plaintiffs continue to press for LNRS to agree to name a "DPO" as an ESI custodian. In their Motion, Plaintiffs argue a DPO is relevant because "[t]his is a consumer privacy case, and LNRS's consumer data privacy policies and practices are squarely at issue." Motion, p. 8. Specifically, Plaintiffs assume "[t]he DPO is the point of contact for consumer inquiries related to LNRS's global privacy policy and its processing of consumer information" and the DPO "is responsible for how LNRS uses and shares consumer data." *Id*.

---

(N.D. Ga. 2014); *In re Piedmont Office Realty Trust Inc. Securities Litigation*, No. 1:07-CV-02660-CAP, 2011 U.S. Dist. LEXIS 164062 (N.D. Ga. Oct. 27, 2011); and *In re Conagra Peanut Butter Products Liability Litigation*, No. 1:07-MD-1845-TWT, 2009 U.S. Dist. LEXIS 31122 (N.D. Ga. Mar. 24, 2009).

A DPO is not relevant to Plaintiffs' claims against LNRS. LNRS had no direct relationship with Plaintiffs or other consumers potentially implicated in this litigation. Consequently, LNRS' "consumer privacy policies and practices" are inapplicable. In fact, there are no allegations in Plaintiffs' 627-page Master Consolidated Complaint that any Plaintiff ever contacted an LNRS DPO.

Even the public documents Plaintiffs cite do not establish the relevance of a DPO. Plaintiffs point to a Privacy Policy directing consumer inquiries to a DPO located in the United Kingdom, then claim that a "Privacy Manager" referenced in the U.S. Consumer Privacy Notice is the same person. *Id.* But they fail to show how either policy or role relates to the TOD product, which LNRS sold to insurance carrier customers as consumer reports subject to the FCRA (and not state privacy laws). Plaintiffs also cite interviews with current DPO Rick Gardner, who is also an attorney, but there are no references to GM, TOD, or LNRS' TOD insurance carrier customers in that interview, and his name does not appear in the initial production. Plaintiffs offer nothing to support the DPO's relevance.

## **CONCLUSION**

For all the foregoing reasons, LNRS respectfully requests that the Court deny Plaintiffs' Motion.

Dated: May 27, 2026

By: */s/ Ronald I. Raether, Jr.*
Ronald I. Raether, Jr. (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
100 Spectrum Center Drive
Suite 1500
Irvine, California 92618
Tel: (949) 622-2700
ron.raether@troutman.com

Julie Hoffmeister Smith (*pro hac vice*)
Timothy J. St. George (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
1001 Haxall Point
Richmond, Virginia 23219
Tel: (804) 697-1200
julie.hoffmeister@troutman.com
timothy.st.george@troutman.com

Cindy D. Hanson
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
Tel: (404) 885-3000
cindy.hanson@troutman.com

*Attorneys for Defendant LexisNexis Risk Solutions Inc.*

## RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Ronald I. Raether, Jr.*
Ronald I. Raether, Jr.

*Attorney for Defendant LexisNexis Risk Solutions Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

DATED this 27th day of May, 2026.

*/s/ Ronald I. Raether, Jr.*
Ronald I. Raether, Jr.

*Attorney for Defendant LexisNexis Risk Solutions Inc.*