**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection | No. 1:24-md-3115-TWT<br><br>GM/OnStar Track |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO GENERAL MOTORS LLC AND ONSTAR, LLC'S MOTION FOR PARTIAL RECONSIDERATION**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................1

LEGAL STANDARD ....................................................................................2

ARGUMENT ...............................................................................................3

I. GM's attempt to relitigate its motion to dismiss Plaintiffs' FWA claim is an improper basis for reconsideration. ..........................................3

II. GM identifies no clear error warranting reconsideration of this Court's ruling on Plaintiffs' FWA claim. ..........................................6

A. The Court correctly determined that Plaintiffs plausibly alleged an "electronic communication." ..........................................6

B. The Court correctly determined that Plaintiffs plausibly alleged the interception was "contemporaneous" with transmission. ..........................7

C. The Court correctly determined that Plaintiffs plausibly alleged GM intercepted the "contents" of the electronic communication. ....................8

D. The Court correctly declined to apply the party exception at the pleading stage. ..........................................9

E. The Court's order requires no clarification. ..........................................13

CONCLUSION ..........................................................................................14

# TABLE OF AUTHORITIES

*Am. Home Assurance Co. v. Glenn Estess & Assocs.*,
763 F.2d 1237 (11th Cir. 1985) ....................................................................6

*B.B.I. Design, Inc. v. Gilmer Cnty.*,
2023 WL 11763158 (N.D. Ga. Mar. 21, 2023) .............................................3, 5

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .........................................................12

*Cox Commc'ns, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
2010 WL 5092282 (N.D. Ga. Dec. 8, 2010) .....................................................6

*Doe v. Wellstar Health Sys., Inc.*,
799 F. Supp. 3d 1268 (N.D. Ga. 2025) ..........................................................12

*Ga. Advoc. Off. v. Georgia*,
2025 WL 2979702 (N.D. Ga. Sept. 19, 2025) ...................................................2

*Galardi v. City of Forest Park*,
2011 WL 13214217 (N.D. Ga. Aug. 30, 2011) ..................................................5

*In re Allstate & Arity Consumer Priv. Litig.*,
2026 WL 594708 (N.D. Ill. Mar. 3, 2026) ......................................................12

*In re D.C.*,
792 F.3d 96 (D.C. Cir. 2015) ..........................................................................2

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015) ............................................................... 9, 10, 11

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ................................................................... 9, 11, 13

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) ..........................................................................9

*Karwowski v. Gen Digital, Inc.*,
2025 WL 3002610 (9th Cir. Oct. 27, 2025) .....................................................11

*McCoy v. Macon Water Auth.*,
966 F. Supp. 1209 (M.D. Ga. 1997) .............................................................5, 11

*Pottayil v. Thyssenkrupp Elevator Corp.*,
574 F. Supp. 3d 1282 (N.D. Ga. 2021) ............................................................2

*Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
916 F. Supp. 1557 (N.D. Ga. 1995)....................2

*Rene v. G.F. Fishers, Inc.*,
817 F. Supp. 2d 1090 (S.D. Ind. 2011) ....................7

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)....................12

*Sheffler v. Americold Realty Tr.*,
2023 WL 3918491 (11th Cir. June 9, 2023)....................2

*Shuler v. Garrison*,
718 F. App'x 825 (11th Cir. 2017)....................2

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) .................... 2, 9, 11

*TPN Props., LLC v. Home-Owners Ins. Co.*,
2022 WL 17908562 (N.D. Ga. Nov. 29, 2022)....................3, 5

*United States v. Barrington*,
648 F.3d 1178 (11th Cir. 2011) ....................7

*United States v. Ropp*,
347 F. Supp. 2d 831 (C.D. Cal. 2004)....................7

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) ....................7

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ....................11

Statutes

18 U.S.C. § 2511(2)(d)....................12

## INTRODUCTION

In a detailed, 20-plus page analysis, this Court held that Plaintiffs stated a claim under the Federal Wiretap Act (FWA). It determined Plaintiffs plausibly alleged that whenever they operate their vehicles, they transmit detailed driving data through their vehicle's onboard system and GM contemporaneously intercepts that data. Whether the statutory party exception applies, the Court concluded, could not be resolved on the pleadings.

GM now wants a do-over. Although it frames its motion as seeking "partial reconsideration directed only to the Court's ruling on the applicability of the Federal Wiretap Act's party exception," Doc. 226-1 (Mem.) at 5, the motion is far less modest. GM also challenges nearly every element of the FWA claim: whether Plaintiffs plausibly alleged that GM (1) contemporaneously intercepted (2) the contents of (3) an electronic communication. What the motion does not do is identify any error, much less the type of clear error required for reconsideration. Instead, GM rehashes arguments the Court considered and rejected.

Reconsideration is an extraordinary remedy, reserved only to correct clear error or to account for new controlling law or facts—not to give the losing party a chance to relitigate issues already decided against it. The Court should deny GM's motion.

## LEGAL STANDARD

A party may seek reconsideration "only when 'absolutely necessary.'" *Pottayil v. Thyssenkrupp Elevator Corp.*, 574 F. Supp. 3d 1282, 1300 (N.D. Ga. 2021) (quoting N.D. Ga. L.R. 7.2(E)). Reconsideration is appropriate only when there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error or prevent a manifest injustice." *Id.* (quoting *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995)).

Clear error, also referred to as manifest error, "'is not just any error,' a conclusion that 'may or may not have been error,' or a finding about which there is some 'doubt.'" *Ga. Advoc. Off. v. Georgia*, 2025 WL 2979702, at *2 (N.D. Ga. Sept. 19, 2025) (quoting *In re D.C.*, 792 F.3d 96, 98 (D.C. Cir. 2015)). Instead, it is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 5284883, at *1 (N.D. Ga. Dec. 10, 2024) (Thrash, J.) (quoting *Shuler v. Garrison*, 718 F. App'x 825, 828 (11th Cir. 2017)). This standard is "stringent." *Ga. Advoc. Off.*, 2025 WL 2979702, at *2 (quoting *Sheffler v. Americold Realty Tr.*, 2023 WL 3918491, at *2 (11th Cir. June 9, 2023)).

Mere disagreement with a ruling is not a basis for reconsideration. "Parties may not use a motion for reconsideration to show the court how it could have done

it better, to present the court with arguments already heard and dismissed, to repackage familiar arguments to test whether the court will change its mind, or to offer new legal theories or [facts] that could have been presented in the original briefs." *B.B.I. Design, Inc. v. Gilmer Cnty.*, 2023 WL 11763158, at *1 (N.D. Ga. Mar. 21, 2023) (Thrash, J.) (quoting *TPN Props., LLC v. Home-Owners Ins. Co.*, 2022 WL 17908562, at *1 (N.D. Ga. Nov. 29, 2022)). "If a party presents a motion for reconsideration under any of these circumstances, the motion must be denied." *Id.* (quoting *TNP Props.*, 2022 WL 17908562, at *1).

## ARGUMENT

### I. GM's attempt to relitigate its motion to dismiss Plaintiffs' FWA claim is an improper basis for reconsideration.

GM invokes "clear error" as the basis for its motion, Mem. at 6, but it fails to identify any error, let alone clear error, in the Court's ruling. Instead, GM does precisely what courts forbid: it rehashes arguments the Court already considered and rejected to see "whether the Court will change its mind." *B.B.I. Design*, 2023 WL 11763158, at *1 (quoting *TPN Props.*, 2022 WL 17908562, at *1).

Start with the stated basis for GM's motion. GM contends that reconsideration is appropriate because, in its telling, Plaintiffs face a fatal dilemma: "either the party exception applies, or else Plaintiffs have failed to allege the interception of an electronic communication in the first place." Mem. at 5. GM pressed the same (false) dilemma in its motion-to-dismiss briefs, arguing that "Plaintiffs' allegations put

them in a bind: There is either no . . . 'electronic communication'" that GM intercepted, "or there is a 'transfer' to GM, in which case the party exception applies." Doc. 165 at 16; *see also* Doc. 142-1 at 37 (arguing that Plaintiffs "fail to allege a contemporaneous interception" of "an electronic communication, much less one with communicative 'contents,'" and that the "party exception" applies).

GM's assertion that Plaintiffs failed to allege it intercepted an electronic communication to which it was not a party also rests on the same recycled arguments. GM contends, as it did before, that the only transmissions it was not a party to are "intra-vehicle transmissions." Mem. at 15; *compare id.*, *with* Doc. 142-1 at 44–45 (same). GM then offers three reasons any interception of those transmissions falls outside the FWA—each lifted from its motion to dismiss:

- *First*, GM argues that the intra-vehicle transfers do not constitute "electronic communications" under the FWA because they did not travel "through a system that affects interstate commerce." Mem. at 15–16. *Compare id.*, *with* Doc. 142-1 at 44–45 (same argument, relying on same keystroke-logger cases), *and* Doc. 165 at 20–22 (same).

- *Second*, GM asserts that the transmissions already "reached [their] destination" when any interception occurred, so there was no "contemporaneous" interception. Mem. at 16–17. *Compare id.*, *with* Doc. 142-1 at 44 (same), *and* Doc. 165 at 20 (same).

- *Third*, GM contends that the driving data lacks "contents" under the FWA because the data consists of mere "records about the operation of" the vehicle, and "not substantive messages the driver composed and conveyed." Mem. at 17. *Compare id.*, *with* Doc. 142-1 at 40–41 (same argument, same cases), *and* Doc. 165 at 16–18 (same).

GM's argument for why the party exception otherwise applies is also the same. GM contends that if Plaintiffs' FWA claim is instead "premised on the alleged interception of transmissions from the [telematics control unit (TCU)] to GM," then the party exception must apply—even if Plaintiffs were induced to send GM the communications by deceit. Mem. at 9–10. That is because, GM says, it was the "direct recipient" of those transmissions "by design," and "Plaintiffs identify no other recipient." *Id.* at 9. Recall that GM made this precise argument in its motion to dismiss. *See* Doc. 142-1 at 46–47 ("Plaintiffs allege that GM, by design, was the intended recipient of the TCU's transmissions . . . . No other intended recipient is identified."); Doc. 165 at 22 (same). Even if GM's assertion that it was a "necessary intermediary" is a new theory, the argument is waived. *See Galardi v. City of Forest Park*, 2011 WL 13214217, at *7 (N.D. Ga. Aug. 30, 2011) (noting that arguments made for the first time in a motion to reconsider "are deemed waived" (quoting *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997))).

A motion for reconsideration is not the place to present "arguments already heard and dismissed, to repackage familiar arguments to test whether the court will change its mind, or to offer new legal theories or [facts]." *B.B.I. Design*, 2023 WL 11763158, at *1 (quoting *TNP Props*, 2022 WL 17908562, at *1). Because that is all GM does here, its motion should be denied on that basis alone. *See id.*

## II. GM identifies no clear error warranting reconsideration of this Court's ruling on Plaintiffs' FWA claim.

Even if the Court were to consider GM's arguments, GM fails to show any error in the Court's ruling—much less "the sort of clear and obvious error" that "the interests of justice demand that [the Court] correct." *Cox Commc'ns, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2010 WL 5092282, at *2 (N.D. Ga. Dec. 8, 2010) (Thrash, J.) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1239 (11th Cir. 1985)). Instead, GM merely suggests the "possibility" that the Court "misunderstood Plaintiffs' allegations or GM's position," without pointing to any misunderstanding, and then repeats its motion-to-dismiss arguments. Mem. at 6.

The Court engaged in a careful, twenty-plus page analysis of Plaintiffs' FWA claim. *See* Doc. 203 (Order) at 15–37. It applied the statute's text, considered the parties' arguments, and analyzed the facts alleged in the operative complaint against the cases the parties relied on. *See id.* While GM may be dissatisfied with the Court's refusal to dismiss the FWA claim, the Court did not commit clear error.

### A. The Court correctly determined that Plaintiffs plausibly alleged an "electronic communication."

GM first repeats its argument that Plaintiffs failed to allege an "electronic communication" under the FWA because any "intra-vehicle" data transfers are "local" and thus do not travel "through a system that affects interstate commerce." Mem. at 15–16. In support, GM relies on the same cases it cited in its motion to

dismiss, all of which dealt with keystroke loggers on individual computers. *Compare id.* at 15–16 & n.4 (citing *United States v. Barrington*, 648 F.3d 1178 (11th Cir. 2011); *United States v. Ropp*, 347 F. Supp. 2d 831 (C.D. Cal. 2004); *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090 (S.D. Ind. 2011)), *with* Doc. 142-1 at 45 (same).

The Court analyzed this line of cases. *See* Order at 20. But it found them "inapplicable here" and concluded that "the consumer driving data does constitute 'electronic communication.'" *Id.* GM identifies no error in the Court's analysis. Indeed, GM fails to engage with that analysis at all and instead simply rehashes the same arguments the Court already rejected.

**B. The Court correctly determined that Plaintiffs plausibly alleged the interception was "contemporaneous" with transmission.**

GM also fails to identify any error in the Court's conclusion that Plaintiffs plausibly alleged the interception was contemporaneous with transmission. Instead, GM recycles the argument it made before—that under *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003), Plaintiffs alleged no contemporaneous interception because any "intra-vehicle communication reached its destination" before "the TCU transmitted the data to GM." Mem. at 16–17. *Compare id.*, *with* Doc. 142-1 at 43–44 (same).

The Court already considered this argument and rejected it. In its order, the Court agreed with GM that *Steiger* was "the applicable precedent." Order at 29. But it found GM's argument under *Steiger* "erroneous when examining the Amended

Complaint" and determined that Plaintiffs "adequately identified" a contemporaneous interception. *Id.* at 29–30. That GM disagrees with this conclusion does not establish plain error.

**C. The Court correctly determined that Plaintiffs plausibly alleged GM intercepts the "contents" of the electronic communication.**

GM next argues, again, that Plaintiffs' driving data does not constitute "contents"—that is, the essential part of a communication—under the FWA. Mem. at 17. As GM sees it, the driving data are mere "records about the operation of a machine." *Id.* GM relies on the same cases it cited before holding that phone-call and geolocation data are not "contents." *Compare id.*, *with* Doc. 142-1 at 40–41.

The Court analyzed those cases, but it disagreed with GM that Plaintiffs' driving data is akin to phone-call or geolocation data. Order at 24–28. In the Court's view, it was "far too reductive to assume" that the driving data were simply records and "not essential in any capacity." *Id.* at 25–26. That data includes:

> (1) the number of times the consumer used the car, (2) the date each trip was made, (3) each time the consumer exceeded 80 miles per hour within the vehicle, (4) every time the consumer braked hard, (5) each time the consumer rapidly accelerated, (6) how long the consumer drove in the day and at night, and (7) vehicle mileage.

*Id.* at 26. The Court noted that "[t]he true extent of the data taken in real time will only be uncovered during discovery." *Id.* But "at the maximum," it determined, "the intimate nature of the consumers' driving behavior, especially when such data may lead to injury for the consumers, is more central to the notion of it being material or

central to the information conveyed through the electronic communication." *Id.* The Court therefore held that the driving data GM harvested constitutes "contents" under the FWA. *Id.*

GM identifies no clear error in the Court's analysis. It simply reiterates the same approach the Court already rejected as having "glaring errors when applied to the facts of the instant case."[1] *Id.* at 25.

### D. The Court correctly declined to apply the party exception at the pleading stage.

GM fails to show clear error in the Court's refusal to apply the party exception at the motion-to-dismiss stage. The party exception is an affirmative defense, and the burden of proving it rests on GM, the party invoking it. *See In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003).

In its motion to dismiss, GM argued that the party exception applied because GM was the "intended recipient" of the electronic communications, relying on *In re*

---

[1] The only time GM engages with the Court's analysis is in a footnote. *See* Mem. at 17 n.5. GM argues that although the Court relied on *In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014), for the definition of "contents" and held that the driving data met the definition, it should have instead concluded that the data is "record information" because the data is "automatically generated." Mem. at 17 n.5. GM already advanced this argument in its motion to dismiss, *see* Doc. 142-1 at 41; Doc. 165 at 16, and it is wrong. While record information is usually automatically generated, that does not mean *all* automatically generated data constitutes record information, and *Zynga* nowhere holds otherwise. But even if *Zynga* had so held, there would still be no clear error here because the Ninth Circuit's decisions do not bind this Court. *See T.D.*, 2024 WL 5284883, at *1.

*Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125 (3d Cir. 2015). Doc. 142-1 at 46–47. In response, Plaintiffs explained that they never alleged GM was an intended recipient. Doc. 153 at 30. To the contrary, Plaintiffs alleged that they were communicating only with themselves through the onboard systems within their own vehicles. *Id.* Plaintiffs also noted that three other circuit courts have rejected the Third Circuit's approach in *In re Google* and urged the Court to do the same. *Id.*

In its order, the Court acknowledged this circuit split, but it declined to take sides at this stage. Order at 32. The Court explained that although courts disagree on "whether the 'party exception' applies where a defendant uses GET commands or cookies," "the technology incorporated by GM vehicles is entirely different," and "factual questions . . . must be resolved before deciding whether the 'party exception' applies here." *Id.* Even assuming *In re Google* was persuasive, the Court stated, it lacked "many of the facts available to the court" in that case. *Id.* at 33. For example, "it is unclear whether the TCU sends all information available to the vehicle to GM automatically." *Id.* at 34 (citing *In re Google*, 806 F.3d at 140–41). It is likewise "unclear whether any translation of information that occurred along the path from data taken by the sensors to the eventual transmission from the TCU would constitute a 'direct transmission.'" *Id.* (citing *In re Google*, 806 F.3d at 142). And

setting *In re Google* aside, the Court separately noted that it lacked information about "whether the Plaintiffs were able to give effective consent." *Id.*

GM disagrees that the Court needs those facts to apply *In re Google*. Mem. at 19. But the Court explained why the technological questions matter here, and it has not yet decided whether it will adopt the Third Circuit's approach in *In re Google* in the first place. While GM may disagree with this Court's decision, it identifies no controlling authority that would warrant departing from the Court's ruling.

Instead, GM cites for the first time three nonprecedential, out-of-circuit cases to argue that the party exception should apply because it was a "necessary intermediary." *Id.* at 10–14. Noncontrolling cases cannot establish clear error.[2] *T.D.*, 2024 WL 5284883, at *1. In any event, GM's newly cited cases only underscore why this Court appropriately declined to apply the party exception at the pleading stage. In each case, the court applied the exception only because the facts before it established that the defendant was a party to the communication. *See, e.g.*, *Zak v. Bose Corp.*, 2019 WL 1437909, at *3–4 (N.D. Ill. Mar. 31, 2019) (applying the party exception because "[i]t [was] clear from the facts alleged in the [complaint]" that defendant was the "intended recipient"); *Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) (concluding that the party exception applied

[2] And as explained above, to the extent this "necessary intermediary" theory is new, GM has waived it. *See McCoy*, 966 F. Supp. at 1223.

where plaintiffs "explicitly acknowledge[d]" that defendant was a "necessary party"). Here, by contrast, "the facts underlying the Amended Complaint leave factual questions that must be resolved before deciding whether the 'party exception' applies."[3] Order at 32.

In short, nothing in GM's motion shows that the Court erred—much less clearly erred—in reserving the party-exception question until after the facts are developed in discovery.

[3] Indeed, there is also an open question about whether GM can claim party protection under the "crime/tort" exception. That exception removes a communication from the party protection when the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of" any law. 18 U.S.C. § 2511(2)(d); *see also Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1278–79 (N.D. Ga. 2025). Courts have repeatedly held that allegations that a defendant installed tools to intercept communications and then use such communications to invade the plaintiffs' privacy suffice to invoke the crime/tort exception. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090–91 (N.D. Cal. 2025); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *Doe*, 799 F. Supp. 3d at 1278–79. Plaintiffs allege just that: GM designed and installed tools to intercept Plaintiffs' driving data, and it then used and disseminated that data to invade their privacy—conduct the Court has already found actionable. Order at 60 (sustaining Stored Communications Act claim), 140 (sustaining intrusion-upon-seclusion claim), 149 (sustaining breach-of-contract claim); *see also, e.g.*, *In re Allstate & Arity Consumer Priv. Litig.*, 2026 WL 594708, *11 (N.D. Ill. Mar. 3, 2026) (holding that substantially similar allegations involving the tracking of driving events invoked the crime/tort exception).

### E. The Court's order requires no clarification.

As a final matter, GM argues that if the Court declines to reverse course and dismiss Plaintiffs' FWA claim, it should clarify "exactly what electronic communication is at issue." Mem. at 18. That request is both unnecessary and improper.

The Court was clear: "the consumer driving data does constitute 'electronic communication.'" Order at 20. The Court also specifically rejected GM's argument that "all signals sent from the TCU are excepted from the definition." *Id.* at 21. Every "data point that is not related to location tracking," the Court made clear, will "be considered 'electronic communications.'" *Id.* at 22. There is nothing to clarify.

Nor does GM truly seek clarification. GM has always understood that Plaintiffs' driving data is the alleged electronic communication. *See* Doc. 142-1 at 40 (moving to dismiss Plaintiffs' FWA claim in part on the ground that "Plaintiffs' Driving Data . . . is not an 'electronic communication'" with "content" under the Act). Instead, what GM seeks now is an order narrowing Plaintiffs' FWA claim before Plaintiffs and the Court have the benefit of a complete factual record. Limiting the precise contours of the electronic communication now—before discovery—is inappropriate, and GM cites no authority to show it is entitled to such relief. The Court should deny this request.

## CONCLUSION

For these reasons, the Court should deny GM's motion for reconsideration.

Date: June 3, 2026

Respectfully submitted,

/s/ *John R. Bevis*
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

/s/ *Norman E. Siegel*
Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

***MDL Co-Lead Counsel***

Bryan L. Clobes,
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com

Amy Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel: (312)214-7900
akeller@dicellolevitt.com

***OnStar Track Co-Lead Counsel***

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 24th Floor
New York, New York 10169
Tel: (212) 223-4478
jguglielmo@scott-scott.com

Sabita J. Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel: (510) 254-6808
ssoneji@tzlegal.com

***LNRS/Verisk Track Co-Lead Counsel***

Kiley L. Grombacher,
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Tel: (805) 270-7100
Kgrombacher@bradleygrombacher.com

Emily E. Hughes,
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
eeh@millerlawpc.com

P. Graham Maiden
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9670
gmaiden@motleyrice.com

Thomas E. Loeser
**COTCHETT, PITRE & MCCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Tel: (206) 802-1272
tloeser@cpmlegal.com

Adam E. Polk,
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
apolk@girardsharp.com

John A. Yanchunis,
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
jyanchunis@forthepeople.com

***OnStar Track Steering Committee***

Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
gmb@cglaw.com

Gary S. Graifman
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Rd., Suite 200
Montvale, New Jersey 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com

Jennifer M. French
**JENNIFER M. FRENCH, APC**
1050 University Ave. E107 80
San Diego, California 92103
(858) 205-4119
jenn@frenchlawapc.com

Chris Springer
**KELLER ROHRBACK LLP**
801 Garden Street, Suite 301
Santa Barbara, California 93101
Tel: (805) 456-1496
cspringer@kellerrohrback.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

*LNRS/Verisk Track Steering Committee*

M. Brandon Smith
**CHILDERS, SCHLUETER & SMITH LLC**
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Tel: (404) 419-9500
bsmith@cssfirm.com

*Plaintiffs' Liaison Counsel*

**CERTIFICATE OF SERVICE AND TYPE SIZE COMPLIANCE**

I certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record. I further certify that the foregoing was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1.

3rd day of June, 2026.

/s/ *James Ulwick*
*Attorney for Plaintiffs*