**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection Litigation | No.: 1:24-md-3115-TWT |

**DEFENDANTS GENERAL MOTORS LLC AND ONSTAR, LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION**

GM seeks reconsideration because the Court's Order (ECF No. 203) rejected applicability of the Federal Wiretap Act's ("FWA's") party exception based on the erroneous factual premise that Plaintiffs were communicating only "with themselves." That premise is drawn from Plaintiffs' Motion to Dismiss Opposition but is not found in the Master Consolidated Complaint (the "Complaint" or "MC") itself. And that premise actually conflicts with the allegations of the Complaint, which do not allege any means by which Plaintiffs could view Driving Data without that data first being transmitted from the vehicle to GM and then from GM back to Plaintiffs. Plaintiffs do not dispute this critical point in their opposition brief—indeed, they do not even address it—because they cannot.

To survive a motion to dismiss, the factual allegations in the Complaint—not conclusory statements in opposition briefing—must state a claim to relief that is

plausible on its face. Here they do not. Based on Plaintiffs' own allegations, the party exception must apply because any purported self-communication necessarily required GM to have received the Driving Data. This point alone warrants reconsideration of the Court's Order and dismissal of Plaintiffs' FWA claim. Plaintiffs' failure to identify any electronic communication to which GM was not a party and that GM is alleged to have intercepted contemporaneously should result in dismissal of the FWA claim.

## I. GM Seeks Reconsideration of Clear Error.

The principal error identified in GM's motion flows from an incorrect factual premise in the Court's Order: That Plaintiffs were communicating "with themselves." That premise, which formed the basis for the Court's rejection of the party exception, finds no support in Plaintiffs' Complaint. Additionally, neither the Complaint nor the Order (nor Plaintiffs' opposition brief here) states *which* electronic communication was allegedly intercepted—a threshold inquiry that must be addressed before determining whether GM was a party to that communication. Contrary to Plaintiffs' position, reconsideration is proper when a court's order is based on an inaccurate "factual premise." *United States v. Wheat*, 2025 WL 2965205, at *5 (N.D. Ga. Oct. 21, 2025); *see also J & J Sports Prods., Inc. v. Salas*, 2021 WL 2581430, at *1 (N.D. Ga. May 14, 2021) (noting that reconsideration is

appropriate where there is a "need to correct a clear error of law *or fact*") (emphasis added).[1]

At bottom, "whether to grant a motion for reconsideration is committed to the sound discretion of the Court." *Abdullah by Stephens v. Pennymac Loan Servs., LLC*, 2025 WL 3676263, at *1 (N.D. Ga. Nov. 19, 2025). The reasons set out in GM's motion (and below) show why the Court should exercise that discretion here, particularly given the potential damages associated with Plaintiffs' FWA claim and the burdens of conducting discovery to counter Plaintiffs' inadequately defined (and ultimately non-cognizable) theory.

## II. Plaintiffs' Self-Communication Theory Cannot Support an FWA Claim.

Plaintiffs' Complaint does not allege that Plaintiffs intended to communicate Driving Data only to themselves, nor does it support any such plausible inference. Although Plaintiffs now argue that they "alleged that they were communicating only with themselves through the onboard systems within their own vehicles," they do not actually cite their Complaint for that proposition; instead, Plaintiffs cite back to a portion of their Motion to Dismiss Opposition discussing their since-dismissed claim under the Computer Fraud and Abuse Act, a discussion that merely describes

---

[1] Further, GM respectfully identified a legal error in the Order's reasoning—namely, the Court's ruling that the applicability of the party exception depends on "effective consent." Order at 34. As GM's motion explained, that interpretation would effectively nullify § 2511(2)(d)'s independent "prior consent" exception. ECF No. 226-1 at 17. Plaintiffs make no argument to the contrary.

three (of forty-seven) Plaintiffs' purported "understanding" that Driving Data "would be provided only to them for their own personal use." ECF No. 253 at 10 (citing ECF No. 153 at 30).[2]

Most importantly, Plaintiffs' allegations establish that they cannot state an FWA claim because no "self-communication" could occur unless the Driving Data was first sent to GM. As explained in detail in GM's motion, ECF No. 226-1 at 7-10, the Complaint effectively establishes that Plaintiffs required GM to act as an intermediary for them to be able to communicate feedback on their Driving Data to themselves. Plaintiffs allege that the data must first be transmitted to GM before it is made available to consumers, *see* MC ¶¶ 834-36, through the OnStar website or GM's mobile apps, *see* MC ¶¶ 805, 889(i), 950(a). Plaintiffs repeatedly state that GM "collected" the data and then "provided" it back to users, MC ¶¶ 829, 835, 908 (first image), which *necessarily means the data was already in GM's possession*

---

[2] Elsewhere in their Motion to Dismiss Opposition, Plaintiffs argued as follows: "Whether Plaintiffs affirmatively or unknowingly enrolled in Smart Driver, Plaintiffs intended to communicate Driving Data (if at all) exclusively to themselves." ECF No. 153 at 15 (citing MC ¶¶ 665, 800-01, 828, 835, 836, 840, 866). But the question is not what Plaintiffs claim they "intended"; it is what communications actually took place. In any event, the cited allegations provide no support for any self-communicative intent. Rather, each concerns an alleged representation made by GM relating either to user privacy (MC ¶¶ 665, 800-01, 840, 866) or to the fact that Smart Driver provided users with information about their driving behavior (MC ¶¶ 828, 835, 836). None of these allegations suggests that Smart Driver was a tool for "self-communication," let alone without GM's involvement.

*before Plaintiffs viewed it*. Indeed, there is not a single allegation in the Complaint averring that Plaintiffs did or could access their Driving Data without GM's involvement. In their opposition brief, Plaintiffs do not even attempt to argue otherwise—because they cannot.

Based on these facts, as Plaintiffs have pled them, the party exception must apply because any "self-communication" necessarily required GM to receive the electronic communications and process them before Plaintiffs could have viewed them. When faced with a similar situation, the Ninth Circuit held that the party exception shielded from liability a defendant whose receipt of the plaintiffs' browsing history, though allegedly procured without consent, was "necessary" for the "website verification" services the defendant provided. *Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025). Plaintiffs weakly attempt to distinguish this case by arguing that the plaintiffs there "explicitly acknowledge[d]" that the defendant was a "necessary party." ECF No. 253 at 12. But here, as explained, Plaintiffs' own allegations similarly confirm that GM is a necessary party to any allegedly intercepted electronic communication because Driving Data cannot be viewed without GM's involvement. MC ¶¶ 805, 833-35, 889(i).

Plaintiffs' attempt to distinguish *Zak v. Bose Corp.*, 2019 WL 1437909, at *3-4 (N.D. Ill. Mar. 31, 2019), fares no better. There, the party exception applied to the

defendant, a headphone company, because "receiving" and "displaying" data about the user's music was a "primary function" of the defendant's app. *Id*. That's true here too: Displaying information about users' driving behavior was the primary function of Smart Driver, MC ¶ 829, and users could not access or view that information unless Driving Data first went to GM's servers, MC ¶ 834, before it was made available to users via GM's mobile app or website, MC ¶¶ 805, 889(i).

As for *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 952, 957 (N.D. Ill. 2024), arguably the most on-point case, Plaintiffs entirely fail to address it. There, the party exception applied because footage from the home security cameras and video doorbells necessarily passed through defendants' servers before Plaintiffs could view it on their cell phones (via an app). *See id.* As Plaintiffs have alleged, Smart Driver works the same way: The data is sent to GM's servers, MC ¶ 834, and is then made available to users through the website or mobile app, MC ¶¶ 805, 889(i). Thus, here, as in *Sloan*, any alleged electronic communications "necessarily required [GM's] participation, even if Plaintiffs did not intend to share their information with [GM]." *See Sloan*, 711 F. Supp. 3d at 957.

Plaintiffs point out that none of these cases is binding. That is true but irrelevant; GM does not argue that the Court erred by refusing to follow nonbinding case law. Rather, as explained, the Order misconstrued Plaintiffs' allegations by crediting an unpled self-communication theory that is belied and foreclosed by

Plaintiffs' allegations. *Karwowski*, *Zak*, and *Sloan* are analogous to the facts that Plaintiffs actually allege. They illustrate the Order's error by showing that the party exception applies where, as here, a defendant necessarily receives data while providing a service to the plaintiff.[3]

Seeking to avoid the merits of GM's argument, Plaintiffs contend that any arguments previously raised are a forbidden "rehash[]," ECF No. 253 at 1, 3, 7, while any new arguments are "waived" for not having been raised before, *id*. at 5, 11 n.2. The Court should reject this heads-I-win, tails-you-lose argument. If Plaintiffs' position were accepted, no motion for reconsideration could ever succeed and Local Rule 7.2(E) would be a dead letter. More fundamentally, GM is not rehashing old arguments or raising new ones; it is identifying a factual error—misapplying the allegations in the complaint and crediting unsupported theories in opposition briefing—which is precisely the purpose of a motion for reconsideration.

Plaintiffs also argue that GM's "necessary intermediary" theory is waived. It is not. GM has consistently argued that the party exception applies based on GM's receipt of Driving Data. *E.g.*, ECF No. 142-1 at 23 ("Here, Plaintiffs allege that GM, by design, was the intended recipient of the TCU's transmissions via the 'cellular

[3] Plaintiffs allude to the three purportedly open factual questions identified in the Order (at pages 34-35), but Plaintiffs fail to explain why these factual questions matter. ECF No. 253 at 10-11. Thus, Plaintiffs fail to rebut GM's argument that they do not. As GM's motion explained, the party exception applies regardless of how these factual questions are answered. ECF No. 226-1 at 15-17.

network connection' that GM installed in all cars."); ECF No. 165 at 9 ("Plaintiffs allege that GM acquires Driving Data when the TCU transmits data directly to GM, and that GM is the sole recipient of that transmission.").[4]

**III. Plaintiffs Fail to Explain Which "Electronic Communication" Is at Issue.**

Finally, Plaintiffs conspicuously fail to define "the precise contours of the electronic communication." ECF No. 253 at 13. That is because their claim cannot withstand this scrutiny. Contrary to Plaintiffs' argument, "Driving Data" is not, and cannot possibly be, the electronic communication at issue. An "electronic communication" can only be a "transfer" of information, and the information must be "transmitted" through a "system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). As the Court recognized, there must "be an origin and a destination." ECF No. 203 at 18 (citing *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003)). Thus, only a particular *transfer* of Driving Data, not the Driving Data

[4] Ironically, it is Plaintiffs themselves who raise a truly new issue in their opposition, arguing that there is "an open question about whether GM can claim party protection under the 'crime/tort' exception." *See* ECF No. 253 at 12 n.3. Plaintiffs have never made that argument before. Even if they had, the FWA's crime-tort exception requires "a tortious or criminal act independent from the act of recording itself." *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 5284883, at *4 (N.D. Ga. Dec. 10, 2024) (Thrash, J.) (quoting *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024)). Plaintiffs' Stored Communications Act ("SCA") claim and intrusion-on-seclusion claim do not rest on independent acts; each is merely an additional theory for why GM's collection of and access to Driving Data (i.e., its interception) was unlawful. And Plaintiffs' breach-of-contract claim is neither a crime nor a tort.

itself, could possibly be an "electronic communication." The Complaint describes two potential transfers: (1) the TCU-to-GM transmission; and (2) intra-vehicle transfers (i.e., between vehicle components). But neither can support an FWA claim. GM was a necessary recipient of the former, so the party exception applies. And, as explained in GM's motion, the latter does not occur through a system that affects interstate commerce, is not alleged to have been intercepted while "in flight," and does not constitute "contents." ECF No. 226-1 at 11-13.

Plaintiffs' only response is to argue that the Court has already rejected this argument. ECF No. 253 at 7. Not so. The Court's discussion of *Barrington* and *Ropp* assumed that the electronic communications at issue left the vehicle; that reasoning therefore does not apply with respect to any intra-vehicle transfer. *See* Order at 20 ("Furthermore, because the information was not intended for transmission to GM, but *rather to the OnStar system and Smart Driver program* for the Plaintiffs' benefit, *Ropp* and *Barrington* are inapplicable here." (emphasis added)).[5] Plaintiffs' refusal to commit to a theory of electronic communication should be seen for what it is: An acknowledgment that their FWA claim cannot survive rigorous statutory analysis.

[5] As explained in GM's motion, the Complaint does not allege that GM intercepted a transmission intended for OnStar or Smart Driver; rather, it treats GM and OnStar as the same entity and acknowledges that Smart Driver is a service provided, not an independent entity. ECF No. 226-1 at 6 n.1.

***

For these reasons, in addition to those explained in GM's motion, the Court should grant the motion for partial reconsideration and dismiss Plaintiffs' claims under the FWA. At a minimum, GM respectfully asks the Court to clarify its holding regarding the party exception. The Court concluded that discovery was needed to "resolve outstanding factual questions" regarding the application of the party exception. Order at 35. While GM respectfully disagrees with that conclusion, in order to conduct discovery aimed at resolving those factual questions, GM must understand precisely which communication is at issue.

Dated: June 17, 2026

By: */s/ David L. Balser*
**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Susan M. Clare
Georgia Bar No. 262830
John C. Toro
Georgia Bar No. 175145
Peter Starr
Georgia Bar No. 648453
Matthew B. Rosenthal
Georgia Bar No. 871852
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
dbalser@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
pstarr@kslaw.com

mrosenthal@kslaw.com

*Attorneys for Defendants*
*General Motors LLC and OnStar, LLC.*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for Defendants General Motors LLC and OnStar, LLC.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

DATED this 17th day of June, 2026

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for Defendants General Motors LLC and OnStar, LLC.*