**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: Consumer Vehicle Driving Data Tracking Collection | No.: 1:24-md-3115-TWT |

**DEFENDANTS GENERAL MOTORS LLC AND ONSTAR, LLC'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION**

On July 10, 2026, Plaintiffs notified this Court of the Supreme Court's decision in *Chatrie v. United States*, No. 25-112, 2026 WL 1855568 (U.S. June 29, 2026), contending that it supports denial of the motion for reconsideration (ECF No. 226) filed by Defendants General Motors LLC and OnStar, LLC (together, "GM"). It does not. *Chatrie* answers a Fourth Amendment question about when law enforcement conducts a "search" by obtaining cell-phone location data from Google; it does not interpret the Federal Wiretap Act ("FWA"), address the FWA's party exception, or decide whether automatically generated location data constitutes "contents" under the FWA.

This distinction is dispositive. Plaintiffs concede that "*Chatrie* interprets the Fourth Amendment, not the Federal Wiretap Act." ECF No. 285 at 1. Plaintiffs' argument that evolving Fourth Amendment standards should influence interpretation

of the FWA ignores the critical differences between constitutional and statutory analysis. It is true that in *Chatrie* and its predecessor, *Carpenter v. United States*, 585 U.S. 296 (2018), the Court applied constitutional principles to certain cell phone location data. In doing so, the Supreme Court expressly acknowledged that it was interpreting the Fourth Amendment to cover technological advances that "[t]hose who drafted the Amendment could not have imagined." *Chatrie*, 2026 WL 1855568, at *17. That principle, however, does not give courts a license to update *a statute* enacted by Congress. *See, e.g.*, *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654-55 (2020) ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives.").[1] As the Eleventh Circuit has acknowledged, only Congress can revise or update the FWA. *See United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003) ("Until Congress brings the laws in line with modern technology, protection of the Internet ... will remain a confusing and uncertain area of the law.").

Even if the court were inclined to consider *Chatrie's* constitutional analyses in applying the FWA's party exception, *Chatrie* does not undercut GM's argument

[1] Indeed, this distinction is likely "why" (ECF No. 285 at 3-4 n.2) the Ninth Circuit recognized that "Fourth Amendment jurisprudence is largely irrelevant to this enterprise of statutory interpretation." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

and if anything, supports it. The Court in *Chatrie* (relying on *Carpenter*) held that an individual does not forfeit his expectation of privacy *from the government* in location data merely by "expos[ing] … that information to Google" in the course of "avail[ing] himself of one of the services on his cell phone." 2026 WL 1855568, at *15. Accordingly, law enforcement's accessing such data constitutes a search, requiring a warrant in the absence of an applicable exception (such as exigency). *See, e.g.*, *id.* at *4, *16 & n.11. But *Chatrie* does not hold that users have a legitimate expectation of privacy *from Google* as to the collection of such data. To the contrary, the opinion recognizes that "[n]o doubt, Google itself uses those records to improve the quality of its apps" and that "exposure of that information to Google … is the automatic price of conventional cell phone usage." *Id.* at *12, *15.[2]

Besides, as GM has explained, the FWA's party exception turns on whether the defendant was the *recipient* of a transmission—not on the plaintiff's intent, and

[2] In fact, *Carpenter* and *Chatrie* underscore why vehicle-generated location data is different than the cell-phone-generated data at issue in those cases: "[A] cell phone—almost a feature of human anatomy—tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private [spaces]." *Carpenter*, 585 U.S. at 311 (internal citations and quotation marks omitted). The Court again emphasized this distinction in *Chatrie*. *See* 2026 WL 1855568, at *14 ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy … because the car is always in plain view. By contrast, the movements that Location History reveals are not limited to public streets." (internal citations and quotation marks omitted) (discussing *United States v. Knotts*, 460 U.S. 276 (1983))).

certainly not on his expectation of privacy. *See* ECF No. 226-1 at 5-10. Nothing in *Chatrie* supports Plaintiffs' attempt to hold GM liable for draconian civil penalties based on its receipt of data while providing connected vehicle services. Rather, whatever technological similarity exists between *Chatrie* and this case serves only to show that Plaintiffs' FWA theory, if adopted, would criminalize much of the modern information economy—an absurd consequence that the 1986 Congress could not have intended.

Plaintiffs' "contents" argument fares no better. As Plaintiffs acknowledge, "*Chatrie* did not address the FWA's contents element." ECF No. 285 at 3 (internal quotation marks omitted). *Chatrie* did not address, let alone overrule, GM's cited cases holding that location data is not content when it is automatically generated by a device. *See* ECF No. 226-1 at 13 (citing cases). In any event, the Court has already ruled that Plaintiffs' FWA claim cannot be based on location data because of the tracking device exception in the statute (which is not an exception relevant to Fourth Amendment jurisprudence). *See* ECF No. 203 at 22 ("Defendants may avail themselves of the tracking device exception with respect to all allegations pertaining to location tracking." (internal quotation marks omitted)). So, *Chatrie*'s discussion of location information is irrelevant here.

Dated: July 16, 2026

By: */s/ David L. Balser*

**KING & SPALDING LLP**
David L. Balser
Georgia Bar No. 035835
Susan M. Clare
Georgia Bar No. 262830
John C. Toro
Georgia Bar No. 175145
Peter Starr
Georgia Bar No. 648453
Matthew B. Rosenthal
Georgia Bar No. 871852
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
dbalser@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
pstarr@kslaw.com
mrosenthal@kslaw.com

*Attorneys for Defendants*
*General Motors LLC and OnStar, LLC.*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for Defendants General Motors LLC and OnStar, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

DATED this 16th day of July, 2026.

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for Defendants General Motors LLC and OnStar, LLC.*