August 12, 2026

**VIA ECF**
The Honorable Thomas W. Thrash, Jr.
Senior United States District Judge
Northern District of Georgia, Atlanta Division
75 Ted Turner Driver, SW, Chambers – 2188
Atlanta, Georgia 30303-3309

**Re: Plaintiffs' Letter Brief Regarding the Scope of Discovery**
***In re: Consumer Vehicle Driving Data Tracking Collection Litig.*****,**
**Case No. 1:24-md-03115-TWT**

Dear Judge Thrash:

Pursuant to the Court's directive during the July 27, 2026 status conference, and in advance of the September 2, 2026 discovery hearing, Plaintiffs submit this letter brief to address GM's objections to the scope of discovery.[1]

The issue before the Court is straightforward. This case concerns GM's collection, use, and dissemination of consumers' Driving Data.[2] Three months ago, Plaintiffs served discovery requests directed at three questions central to the case:

1. What Driving Data has GM collected from consumers?
2. What has GM done with that data?

---

[1] Plaintiffs submitted this letter brief by email on August 10, 2026, and requested that the Court treat the letter brief and accompanying exhibits as provisionally under seal while the Parties conferred regarding whether any of the materials required confidential treatment under the Protective Order.

[2] *See* Am. Compl., Doc. 109 ¶¶ 1–5; Pls.' Memo in Support of Mot. to Compel GM to Search Certain ESI Custodians, Doc. 218-1 at 1.

3. Who, outside of GM, has received that data, and what have they done with it?[3]

GM refuses to answer these questions. GM's refusal rests on a single contention: that Plaintiffs' claims are limited to the Smart Driver program GM publicly discontinued in June 2024.[4] As a result, GM argues, any discovery beyond Smart Driver—including into what GM continues to do with consumers' Driving Data—is "overly broad, unduly burdensome, [] disproportionate to the needs of the case, and irrelevant."[5] Based on that premise, GM has withheld Plaintiffs' own Driving Data (*see* Section I), and discovery into GM's collection, use, and dissemination of Driving Data to third parties, including from mid-2024 through the present (*see* Sections II–IV).

Neither the facts nor the law justify GM's position. Plaintiffs' requests are not confined to Smart Driver because Plaintiffs allege that GM collected and shared Driving Data outside of Smart Driver, including from consumers who never enrolled in the program, and it continues to do so today.[6] That is why:

---

[3] *See* Ex. 1, Pls.' First Set of Requests for Production ("RFPs") to GM; Ex. 2, Pls.' First Set of Interrogatories ("Irogs") to GM.
[4] Ex. 6, GM's July 17, 2026 Letter to Pls. at 2.
[5] Ex. 3, GM's Resps. to Pls.' RFP Nos. 6–20, 22–43 (objecting to Plaintiffs' requests as "overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the extent that [they] seek[] information about programs or products other than Smart Driver"); Ex. 4, GM's Resps. to Pls. Irog Nos. 1–9 (same).
[6] Am. Compl., Doc. 109 ¶¶ 769–85 (alleging GM sold "billions of miles of Driving Data," to unnamed third parties, including on drivers "who activated the internet connection for their GM car, even if they did not enroll in Smart Driver," explaining:

- In the first paragraph of the Complaint, Plaintiffs focus the case on Driving Data (Am. Compl., Doc. 109 ¶ 1), consistent with the order establishing this MDL and Plaintiffs' preliminary report;[7]

- The Complaint explains GM's contention the "OnStar Terms" themselves, not Smart Driver-specific terms, authorize it to collect and share Driving Data (*see, e.g.*, Am. Compl., Doc. 109 ¶ 859; Doc. 84 at 5–7; Doc. 142-1 at 29);

- Plaintiffs allege (1) GM shares Driving Data "on all drivers who activated the internet connection for their GM car, even if they did not enroll in Smart Driver" (Am. Compl., Doc. 109 ¶ 784); (2) "opting-out" of Smart Driver did not "result[] in GM terminating Driving Data collection for that driver," rather, GM "continued to collect, retain, [and] share Driving Data . . . even after consumers opted out of the program" (*id.* ¶¶ 914, 927); and (3) as a result, consumers "still remain today under pervasive surveillance compromising their privacy, autonomy, and basic human dignity" (*id.* ¶ 1053);

- Plaintiffs define the putative classes as persons whose "Driving Data was collected, stored, distributed, and/or sold by Defendants," (Am. Compl., Doc. 109 ¶ 963), not just those "consumers with GM vehicles enrolled in Smart Driver" (Ex. 3, GM's Resps. to Pls.' First RFPs at 5 ¶ 8);

- Plaintiffs allege the class period extends through the present, (Am. Compl., Doc. 109 ¶ 965), rather than "when GM discontinued the OnStar Smart Driver program" (Ex. 3, GM's Resps. to Pls.' First RFPs at 8–9); and

- Each Count concerns GM's interception, use, and dissemination of

---

"[i]f you drive a car made by General Motors and it has an internet location, your car's movements and exact location are being collected and shared").

[7] The Parties' Joint Preliminary Report & Discovery Plan, Doc. 84 at 1–2, 4–5 (explaining that this case is about Defendants' misuse of consumers' Driving Data); *In re Consumer Vehicle Driving Data Tracking Litig.*, 737 F. Supp. 3d 1355, 1358 (U.S. Jud. Pan. Mult. Lit. 2024) (noting common factual questions include "how General Motors and OnStar use the technology in General Motors vehicles to gather personal driving data, their policies and procedures surrounding gathering and sharing that data . . . and whether defendants disclosed or obtained informed consent from drivers before collecting and disseminating driver data").

> "Driving Data,"[8] not merely "data collected from vehicles enrolled in Smart Driver."[9]

In short, while Smart Driver is a critical part of the case, GM's collection, use, and dissemination of consumers' Driving Data did not begin or end with that program. GM's contention that the only challengeable conduct is Smart Driver is not a discovery objection, it is a disputed merits theory—and it is one the Court has already rejected as grounds to limit Plaintiffs' claims at this stage:

> Here, the factual allegations within the Amended Complaint support a finding that, without injunctive and declaratory relief, the Plaintiffs suffer "a real and immediate threat of future harm." *See Elend*, 471 F.3d at 1207 (citing *Lyons*, 461 U.S. at 105). While GM sunset the Smart Driver program and ceased sharing data with the CRA Defendants, (Am. Compl. ¶ 953), GM continues to share data with other companies. (*See* Am. Compl. ¶¶ 769-85, 1056, 1066). There is no indication within the Amended Complaint that GM has ceased such practices.

Doc. 203 at 198.

---

[8] *See, e.g.*, Am. Compl. Doc. 109 ¶ 994 (Count 1, Federal Wiretap Act claim, alleging "GM has disclosed and used the contents of the electronic communications described above by selling Plaintiffs' and Class Members' Driving Data"); *id.* ¶ 1027 (Count 3, Stored Communications Act claim, alleging "Plaintiffs and Class Members did not consent to GM accessing the Driving Data communications stored in the vehicle"); *id.* ¶ 1060 (Count 5, invasion-of-privacy claim, alleging "Defendants' conduct infringed Plaintiffs' and Class Members' privacy interests by, among other things: . . . allowing the dissemination and/or misuse of their Driving Data . . . [and] preventing Plaintiffs and Class Members from . . . being able to drive without their Driving Data being intercepted and made publicly available without Plaintiffs' and Class Members' knowledge or consent").

[9] *See* Ex. 3, GM's Resps. to Pls.' First Set of RFPs at 4–5 ¶ 7 ("Defendants will construe the term 'Driving Data' to refer to driving behavior information collected from GM vehicles enrolled in Smart Driver.").

GM has offered no other basis to limit Plaintiffs to discovery that is narrower than their claims. Discovery exists to ensure a "full and accurate understanding of the true facts" so that "the ultimate resolution of disputed issues . . . embod[ies] a fair and just result." *Lowery v. AmGuard Ins. Co.*, 2022 WL 458595, at *2 (N.D. Ga. Jan. 24, 2022). That is what Plaintiffs seek here. Plaintiffs respectfully request that the Court order GM to produce: (1) Plaintiffs' Driving Data; (2) discovery regarding GM's collection, use, and dissemination of consumers' Driving Data beyond Smart Driver; (3) discovery through the present; and (4) discovery regarding third parties that received consumers' Driving Data.

## I. The Court should compel GM to produce Plaintiffs' Driving Data.

In April, Plaintiffs asked GM to produce the Driving Data it collected from the named Plaintiffs.[10] GM refused, objecting to the request as unduly burdensome.[11]

---

[10] Ex. 1, Pls.' First Set of RFPs to GM at 4, RFP No. 14 (seeking "any Driving Data" obtained from Plaintiffs); *id.* at 8, RFP No. 34 (seeking all Personal Information, including "Driving Data," concerning each Plaintiff, including "any information necessary to decipher" it); *see also* Ex. 2, Pls.' First Set of Irogs to GM, at 2, Irog No. 2 ("For each Plaintiff, identify all Driving Data . . . collected, maintained, or processed . . . .").

[11] Ex. 3, GM's Resps. to Pls.' First Set of RFPs at 26–27 (GM's response to RFP No. 14: "To the extent Plaintiffs are requesting the production of driving behavior or geolocation data for these individuals, Defendants are not producing that information at this time but will meet and confer with Plaintiffs regarding the scope of this Request and the information sought."); *id.* at 49–50 (GM's response to RFP No. 34: "Defendants further object to this Request as unduly burdensome in that it seeks '[a]ll Personal Information' and 'Driving Data' concerning each Plaintiff. . . . Defendants refer to their response to Request for Production No. 14."); Ex. 4, GM's Resps. to Pls.' First Set of Irogs at 11–12 (GM's response to Irog No. 2: "Defendants

Plaintiffs have exhausted their efforts to confer with GM on this issue:

- After receiving GM's responses to Plaintiffs' discovery requests, Plaintiffs asked GM to either "specify the basis for withholding Plaintiffs' Driving Data" or agree to produce it.[12] GM responded that it "objected to Plaintiffs' request for underlying driving data on burden grounds."[13] Instead of substantiating the burden, GM asked for a call.[14]

- The Parties met and conferred on July 22, 2026. During that conference, Plaintiffs again asked GM to substantiate its burden argument. GM admitted it was not prepared to do so but promised to "compile information" regarding the burden. Plaintiffs proposed a reasonable first step: that GM produce complete Driving Data for a subset of Plaintiffs. GM rejected that proposal.[15]

- After the July 27 status conference, Plaintiffs again asked GM to provide the factual basis for its burden objections by August 3.[16] GM refused, stating that it would address burden "as appropriate" through further conferral and briefing.[17]

- The Parties then, again, met and conferred on August 5, 2026. During that conference, GM proposed a "sampling" procedure in which GM would only agree to produce a sample of the Driving Data collected through

---

also object to this Interrogatory as irrelevant, overly broad and unduly burdensome, especially to the extent that it seeks 'all Driving Data . . . collected, maintained, or processed' for each named Plaintiff. . . . Defendants understand this Interrogatory to request information about the date on which each named Plaintiff enrolled or unenrolled in Smart Driver. Defendants will search for this enrollment information.").

[12] Ex. 5, Pls.' June 26, 2026 Letter to GM at 6.

[13] Ex. 6, GM's July 17, 2026 Letter to Pls. at 11.

[14] *Id.*

[15] *See* Ex. 7, Pls.' July 22, 2026 email to GM ("GM continues to assert burden objections without providing any basis for them—even on today's call, GM was not prepared to articulate how it is any burden to produce Plaintiffs' personal information and Driving Data. This issue requires Court attention."); Ex. 7, GM's July 23, 2026 email to Pls.

[16] Ex. 8, Pls.' July 29, 2026 email to GM.

[17] Ex. 8, GM's July 30, 2026 email to Pls.

> Smart Driver for a subset of Plaintiffs and a limited period of time—confirming it would not agree to provide Plaintiffs full Driving Data. Further, during the call, Plaintiffs again asked GM to explain its burden arguments. GM conceded that it did not plan to make specific burden arguments after all but would instead rely on "more of a relevance" argument.

Despite standing behind a burden objection for months, GM never explained exactly how Plaintiffs' request for their own Driving Data unduly burdens GM; instead, GM avoided the issue and then abandoned it days before this submission.[18] That objection was implausible from the start. GM is required, under its settlement with the FTC, to "maintain a simple, easily-located means" for consumers to request a copy of their Driving Data,[19] and GM publicly acknowledges that consumers have a "privacy right" to access and obtain a portable copy of their Driving Data from GM.[20] Regardless, if GM can collect and distribute Driving Data to data brokers, it can produce it in discovery.

GM's only other basis for withholding Plaintiffs' Driving Data is relevance.

---

[18] *See, e.g.*, *PharMerica, Inc. v. HealthPrime, Inc.*, 2008 WL 779329, at *4 (N.D. Ga. Mar. 19, 2008) (ordering defendant to produce documents when it "made no attempt" to show undue burden).

[19] FTC Order at 8 (Jan. 13, 2026), https://www.ftc.gov/system/files/ftc_gov/pdf/2423052c4828gmlexisfinalorder.pdf.

[20] General Motors, U.S. Consumer Privacy Statement at 13, https://www.gm.com/content/dam/company/docs/us/en/gmcom/privacy-statement/US_Consumer_Privacy_Statement_June_2026.pdf (last updated June 17, 2026) (explaining consumers have a right to "[a]ccess and obtain a portable copy of [their] Personal Information"); *id.* at 4 (defining "Personal Information" to include driver behavior information and geolocation).

That argument is meritless, particularly given that "the parties still dispute the true extent of the driving data collected on each individual Plaintiff." Doc. 203 at 138; *see also id.* at 135–36.[21] If Driving Data is not relevant, it is difficult to imagine what is. The Court should overrule GM's objections and compel GM to produce the named Plaintiffs' Driving Data.

## II. The Court should compel GM to produce discovery on its collection, use, and dissemination of Driving Data outside of Smart Driver.

Plaintiffs have asked GM for discovery regarding its collection, use, and dissemination of Driving Data to third parties, including after GM sunset Smart Driver.[22] As explained above, GM has refused to provide discovery beyond the

[21] *See also id.* at 130 n.33 ("[T]he Plaintiffs may have a significant privacy interest in their driving data as alleged in the Amended Complaint. Determining the extent of their privacy interest is a fact-intensive inquiry that can only be understood more fully after discovery."); *id.* at 26 ("The true extent of the data taken in real time will only be uncovered during discovery."); *id.* at 140 ("The extent of the data collected by the GM Defendants, as alleged in the Amended Complaint, is extensive and can be likened to electronic surveillance. Whether such surveillance is reasonable is to be determined on a totality of the circumstances.").

[22] *See, e.g.*, Ex. 1, Pls.' First Set of RFPs to GM at 5, RFP No. 17 (seeking "Documents and Communications concerning or relating to how Driving Data was collected in or from Class Members' vehicles and transmitted from the vehicles"); *id.* at 9, RFP No. 39 (seeking "Documents and Communications concerning or relating to Your decisions or the decisions of any other Defendant or third party to stop sharing, collecting, using, retaining, transmitting, or selling any Driving Data"); *id.* at 10, RFP No. 43 (seeking "Documents and Communications concerning or relating to Your collection, storage, transmission, use, sharing, leasing, or sale of Driving Data after Your decision to discontinue Smart Driver"); Ex. 2, Pls.' First Set of Irogs to GM at 1–2, Irog No. 1 ("Identify each category and specific data element of Driving Data collected by You, and for each: . . . identify each internal use case . . . ; [and] identify whether each data element was shared outside of GM . . . and if

Smart Driver program. Instead of justifying this refusal with facts, GM complains that Plaintiffs are trying to "expand the scope of this case" through a "boundless investigation" aimed at "*all* of [its] data practices."[23] But Plaintiffs' requests each target "Driving Data"[24] consistent with Paragraph 1 of Plaintiffs' Complaint,[25] and GM identifies no request that goes beyond that subject. GM's otherwise unexplained burden, proportionality, and relevance objections are not grounds to resist discovery.[26]

With the facts against it, GM has adopted a different strategy, which is to demand that Plaintiffs narrow discovery based on information that only GM possesses and has only partially produced. Specifically, GM insists that, if Plaintiffs want discovery into GM's Driving Data practices beyond Smart Driver, that Plaintiffs should identify the specific "Tasks"[27] involved in the collection of Driving

so, for what purpose and when"); *id.* at 3, Irog No. 5 ("Describe how you track whether You obtained consent from Class Members for the access, use, lease, collection, storage, transmission, sharing, or sale of Driving Data"); *id.* at 4, Irog No. 8 ("Describe in detail each and every way that GM has used or is using Driving Data.").

[23] Ex. 6, GM's July 17, 2026 Letter to Pls. at 2.

[24] *See generally* Ex. 1, Pls.' First Set of RFPs to GM; Ex. 2, Pls.' First Set of Irogs to GM.

[25] Am. Compl., Doc. 109 ¶ 1 (defining "Driving Data").

[26] *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550 at 1559 (11th Cir. 1985); *Connell v. Nelson*, 2026 WL 2070597 at *3 (M.D. Ga. July 17, 2026).

[27] "Tasks" are what GM internally refers to as groupings of data collected for certain purposes. The same Driving Data (for example, geolocation, hard braking, acceleration data, etc.) can be collected under different Tasks. GM has represented that one of the tasks used to collect Driving Data relates to Smart Driver.

Data before GM will provide discovery on them. But GM will not produce a full list of Tasks for the relevant time period—it maintains that Plaintiffs should only have access to a list of Tasks used from 2021–2024. When Plaintiffs asked GM for a full Task List that accounts for Tasks used from 2015 to 2021, and 2024 to present, GM refused. When Plaintiffs repeated that request during an August 5, 2026 meet and confer, GM refused again, stating that this is precisely the information GM does not want to disclose. That is no compromise. And while GM suggests, without explanation, that Plaintiffs should at least use the partial Task List to "identify which other types of data they believe to be relevant,"[28] Plaintiffs have already told GM the "types of data" that are relevant: Driving Data, which is defined in the Complaint's first paragraph. GM cannot demand that Plaintiffs identify information hidden inside documents GM refuses to produce.

Plaintiffs have exhausted their efforts to confer with GM on this issue. The Court should compel full discovery into GM's collection, use, and dissemination of consumers' Driving Data, which is the core of this case.

[28] Ex. 6, GM's July 17, 2026 Letter to Pls. at 2.

**III. The Court should compel GM to produce discovery through the present.**

Plaintiffs seek discovery through the present.[29] That time frame is both relevant and proportional because Plaintiffs challenge GM's ongoing collection, use, and dissemination of Driving Data and seek prospective relief. *See* Doc. 203 at 196–199 ("the Court will not dismiss the Plaintiffs' request for injunctive or declaratory relief"). Yet GM has drawn the line at June 26, 2024, the date GM publicly ended Smart Driver, and refuses to provide post-2024 discovery for nearly every request.[30]

GM's only substantive objection is that Smart Driver ended in June 2024—not that its collection, use, and dissemination of driving Data ended at that time. Because GM's collection and sharing of Driving Data continued after Smart Driver publicly ended, discovery should too.[31]

---

[29] Ex. 1, Pls.' First Set of RFPs to GM, App. 1, at 8 ("Unless otherwise specified, the relevant time period for these Requests is January 1, 2015, through to the present date."); Ex. 2, Pls.' First Set of Irogs to GM, App. 1, at 8 (same).

[30] *See* Ex. 2, GM's Objs. to RFPs 1–43, 45; Ex. 3, GM's Objs. to Irogs 1–8. The only requests not objected to on this basis are five RFPs (44, 46–49) for insurance policies, expert disclosures, and documents supporting GM's initial disclosures, interrogatories, and affirmative defenses and one Irog (No. 9) relating to regulatory investigations.

[31] General Motors, U.S. Consumer Privacy Statement at 13, https://www.gm.com/content/dam/company/docs/us/en/gmcom/privacy-statement/US_Consumer_Privacy_Statement_June_2026.pdf (last updated June 17, 2026) (confirming that GM still collects and shares Driving Data today, including geolocation, vehicle speed, information about braking and acceleration habits, trip time and duration, and driver attention).

GM faults Plaintiffs for rejecting GM's "efforts to reach a compromise by considering this issue" on a request-by-request basis.[32] But there was no compromise to reject: when Plaintiffs asked GM whether it would consider extending discovery through the present for any of Plaintiffs' discovery requests, GM's answer was "no." GM's complaints about a lack of compromise are simply a distraction from the absence of any substantive basis for its position.

GM's only remaining argument is that discovery needs an endpoint. That truism does not explain why the endpoint should be June 2024 rather than the present, when Plaintiffs allege ongoing conduct that GM has failed to dispute. Indeed, Plaintiffs needs discovery through the present to determine what Driving Data GM collects today, how GM uses it today, and the extent to which the practices challenged in this case continue today. Thus, the Court should compel GM to provide discovery through the present. *See, e.g.*, *Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*, 2025 WL 2977928, at *4 (D. Ariz. Oct. 22, 2025) (holding discovery "should extend to the present given that [p]laintiff alleges ongoing harm and seeks injunctive relief").

---

[32] Ex. 6, GM's July 17, 2026 Letter to Pls. at 4.

## IV. The Court should compel GM to produce discovery on all third parties that received Driving Data.

Plaintiffs seek discovery into GM's disclosure of Driving Data to third parties.[33] That discovery goes to the heart of the privacy violations asserted in this case. Plaintiffs allege that "only some" of the third parties "have been identified to date," meaning the full extent of consumers' exposure and resulting harm are unknown. Am. Compl., Doc. 109 ¶¶ 769, 1056, 1066.

In response, GM refuses to search for and produce information concerning all third-party recipients and uses of Driving Data. GM objects that this discovery is overly broad, unduly burdensome, and disproportionate to the needs of the case, and arbitrarily limits its responses to its co-Defendants and two data brokers identified by name in the Complaint, Wejo and Jacobs Engineering, Inc.[34] In other words, GM has excluded from discovery not only unknown third parties, but also dozens of

[33] *See, e.g.*, Ex. 1, Pls.' First Set of RFPs to GM at 6, RFP No. 22 (seeking "Documents and Communications concerning or relating to Your sale, sharing, transmitting, or licensing of Driving Data . . . to any third party"); Ex. 2, Pls.' First Set of Irogs to GM at 2–3, Irog No. 3 ("Identify all third parties with or to whom you sold, leased, licensed, transmitted, shared, or authorized access to Driving Data . . . .").

[34] Ex. 3, GM's Resps. to Pls.' First Set of RFPs at 36 (GM's response to RFP No. 22: "Defendants further object to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case"); *see also* Ex. 4, GM's Resps. to Pls.' First Set of Irogs at 13 (GM's response to Irog No. 3: "Defendants also object to this Interrogatory as overly broad and unduly burdensome, especially to the extent that it seeks identification of 'all third parties with or to whom you sold, leased, licensed, transmitted, shared, or authorized access to Driving Data.'").

recipients already revealed in GM's regulatory production, including data brokers, government agencies, consultants, retailers, marketing companies, and other commercial users.[35]

Plaintiffs have exhausted their efforts to confer with GM on this issue. GM has offered no legitimate basis for blocking discovery into who received consumers' Driving Data. GM has made no attempt to substantiate its burden objection. But even if GM contends that its sharing practices are so extensive that identifying all recipients of Driving Data imposes an undue burden, that argument only underscores why Plaintiffs need full discovery on who has access to their data.

GM's remaining arguments fail. While GM tries repeatedly to reframe this case as limited to "insurance-related uses stemming from Smart Driver,"[36] it is not. Although GM argues that "many of th[e] entities" identified in GM's regulatory production "never received *Smart Driver* data,"[37] GM does not and cannot dispute that those entities received Driving Data through other Tasks. And while GM asserts that "the third parties that receive vehicle data from GM include data shares for

---

[35] GM's own justification for that arbitrary limitation is also internally inconsistent. GM has excluded other recipients specifically named in the Complaint, including Inrix and OnStar Insurance, *see* Am. Compl. ¶¶ 777–78, 787–90, along with the third parties who received Driving Data from Wejo and Jacobs.

[36] Ex. 6, GM's July 17, 2026 Letter to Pls. at 3.

[37] *Id.* (emphasis added).

numerous purposes that are not relevant to Plaintiffs' claims,"[38] that is a merits position Plaintiffs must be allowed to test—not a basis to withhold discovery.[39]

Finally, GM attempts to shift the burden to Plaintiffs to "identify third parties of interest" from its regulatory production or to "identify any additional categories of third parties they believe are relevant to their claims."[40] But Plaintiffs have already identified the relevant category: all third parties that received Driving Data. Only GM knows which third parties fit that description. It cannot use Plaintiffs' limited visibility into that universe as a basis to shift the burden to Plaintiffs and withhold discovery.

In sum, Plaintiffs are entitled to discover the full scope of GM's disclosures of Driving Data, including who received it, what they did with it and why, and what GM knew about these activities. The Court should overrule GM's unsupported objections and compel GM to produce this discovery.

Respectfully submitted: August 12, 2026

*/s/ John R. Bevis*
John R. Bevis
Georgia Bar No. 056110
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street

*/s/ Norman E. Siegel*
Norman E. Siegel*****
Missouri Bar No. 44378
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200

[38] *Id.*
[39] GM has made this argument before, only to reverse course once facts come to light. *See* GM's Opp. to Pls.' Mot. to Serve Preservation Subpoenas, Doc. 101 at 19–20 (arguing that Wejo does not "fall within the scope of Plaintiffs' claims"); Ex. 6, GM's July 17, 2026 Letter to Pls. at 3 (offering discovery into Wejo).
[40] Ex. 6, GM's July 17, 2026 Letter to Pls. at 3.

Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com

Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

***MDL Co-Lead Counsel***

Bryan L. Clobes*
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle St., Suite 3210
Chicago, Illinois 60603
Tel: (312) 782-4880
bclobes@caffertyclobes.com

Amy E. Keller*
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Ste Sixth Floor
Chicago, Illinois 60602
Tel: (312)214-7900
akeller@dicellolevitt.com

***OnStar Track Co-Lead Counsel***

Joseph P. Guglielmo*
**SCOTT & SCOTT, ATTORNEYS AT LAW, LLP**
230 Park Avenue, 21th Floor
New York, New York 10169
Tel: (212) 223-4478
jguglielmo@scott-scott.com

Sabita J. Soneji*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel: (510) 254-6808
ssoneji@tzlegal.com

***LNRS/Verisk Track Co-Lead Counsel***

* Admitted Pro Hac

## CERTIFICATE OF SERVICE AND TYPE SIZE COMPLIANCE

I certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which generates an email notice of the filing to those parties registered to receive electronic notices in this case. I further certify that the foregoing was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1.

Dated: August 12, 2026

/s/ *John R. Bevis*
John R. Bevis
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Tel: (770) 227-6375
bevis@barneslawgroup.com